# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

**FILED**
NOV 21 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---

UNITED STATES OF AMERICA,

V.

**CR 13 764 RS**

ALFONZO WILLIAMS, A/K/A "FONZ," A/K/A "RELLY";
ANTONIO GILTON, A/K/A "TG, A/K/A "TONE";
BARRY GILTON, A/K/A "PRELL";
and
LUPE MERCADO,

DEFENDANT(S).

---

## INDICTMENT

18 U.S.C. § 1959(a)(1) – Vicar Murder;
18 U.S.C. § 924(c) – Use of Firearm During Crime of Violence;
18 U.S.C. § 924(j) – Murder With a Firearm;
18 U.S.C. § 3 – Accessory After the Fact

---

A true bill.

_Nancy J. Peterson_
Foreman

Filed in open court this ___21st___ day of

_November 2013,_

_Ada Means_       Clerk

NO BAIL WARRANT as to all defendants

Bail, $

_Jacqueline Scott Corley_
United States Magistrate Judge

AO 257 (Rev 6/78)

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT
☐ SUPERSEDING

---- OFFENSE CHARGED ----

Title 18, United States Code, Section 1959(a)(1)
Title 18, United States Code, Section 924(c)
Title 18, United States Code, Section 924(j)
Title 18, United States Code, Section 3

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: Please see attached

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

FILED
NOV 21 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---- DEFENDANT - U.S ----

▶ ALFONZO WILLIAMS et al.,

DISTRICT COURT NUMBER
CR 13 764

RS

---- PROCEEDING ----

Name of Complaintant Agency, or Person (& Title, if any)
FBI

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY ☐ DEFENSE
} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
}

Name and Office of Person Furnishing Information on this form   MELINDA HAAG
☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   WILLIAM FRENTZEN

---- DEFENDANT ----

IS NOT IN CUSTODY
1) ☐ Has not been arrested, pending outcome this proceeding.
   If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge
5) ☐ On another conviction     } ☐ Federal ☒ State
6) ☒ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution
   San Francisco County Jail

Has detainer ☐ Yes } If "Yes" give date filed
been filed? ☒ No

DATE OF ARREST ▶ Month/Day/Year

Or... if Arresting Agency & Warrant were not·

DATE TRANSFERRED ▶ Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

---- ADDITIONAL INFORMATION OR COMMENTS ----

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☒ WARRANT    Bail Amount: None

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:                Before Judge:

Comments:

## Penalty Information for ALFONZO WILLIAMS et al.,:

### Count One (VICAR Murder)

Not less than life imprisonment; not more than $250,000 fine; not more than five years of supervised release; $100 special assessment.

### Count Two (Use/Brandish/Discharge Firearm)

Not less than 10 years imprisonment consecutive to any term of imprisonment for other offenses; not more than $250,000 fine; not more than five years of supervised release; $100 special assessment.

### Count Three (Use of Firearm in Murder)

Not more than life imprisonment; not more than $250,000 fine; not more than five years supervised release; $100 special assessment.

### Count Four (Accessory After the Fact)

Not more than 15 years imprisonment; not more than $250,000 fine; not more than three years supervised release; $100 special assessment.

MELINDA HAAG (CABN 132612)
United States Attorney

FILED
NOV 21 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> v. <br> ALFONZO WILLIAMS, A/K/A "FONZ," A/K/A "RELLY"; <br> ANTONIO GILTON, A/K/A "TG, A/K/A "TONE"; <br> BARRY GILTON, A/K/A "PRELL"; and <br> LUPE MERCADO, <br> Defendants. | CRIMINAL NO. CR 13 764 RS <br> INDICTMENT <br> VIOLATIONS – 18 U.S.C. § 1959(a)(1) – Vicar Murder; 18 U.S.C. § 924(c) – Use of Firearm During Crime of Violence; 18 U.S.C. § 924(j) – Murder With a Firearm; 18 U.S.C. § 3 – Accessory After the Fact |

## INDICTMENT

The Grand Jury charges:

At all times relevant to the Indictment:

COUNT ONE: (18 U.S.C. § 1959(a)(1) – Murder in Aid of Racketeering)

The Racketeering Enterprise

1. Central Divisidero Playas, also known as Central Divis Playas, also known as the "CDP" gang (hereafter "CDP"), is a violent street gang with members operating in the City and County of San

1

Francisco, whose activities affected other parts of the United States. The members of CDP primarily conduct their activities in the Western Addition or Fillmore neighborhood of San Francisco, centered in the area of Central and Divisidero Streets. CDP has been in existence since before 2000.

2. Some members of CDP signified their membership by wearing tattoos reading "CDP," "237," "D Block," "D Boys," "Banga," "Uptown," or similar words and symbols. Also, CDP members from time to time marked their territory or signified their presence through use of graffiti, clothing, social media, and hand signs. Some CDP members have hidden tattoos in order to avoid detection by law enforcement or opted not to utilize tattoos and symbols. CDP members frequently referred to one another by their gang names or monikers. CDP members displayed gang signs by, among other things, forming the letters "c" and "d" with their hands or signifying "Uptown" by placing two fists together with the thumbs up to form a "U." CDP members also used the numbers "237" to signify CDP, as those are the numbers corresponding to spelling CDP on a telephone keypad.

3. Members of CDP were expected to protect the name, reputation, and status of the gang and its individual members from harm, insult, or disrespect by rival gang members and other persons. CDP members required that all individuals show respect and deference to the gang, its membership and associates, and the families associated with the gang. To protect the gang and to enhance its reputation, CDP members were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence.

4. Members of CDP engaged in criminal activity, including murder, attempted murder, narcotics distribution, assault, robbery, extortion, interstate transportation in aid of racketeering, pimping, pimping of minors, illegal firearms possession, and obstruction of justice by threatening and intimidating witnesses whom they believed to be cooperating with law enforcement and by destroying evidence and providing false information to law enforcement. CDP members could be required to commit acts of violence to maintain and enhance membership and discipline within the gang, including violence against rival gang members, those perceived to be rival gang members, rivals in general, those who disrespected or committed violence against CDP members, friends or family, as well as CDP members and associates who violated the gang's rules.

5. CDP worked cooperatively with other gangs in the Western Addition to engage in criminal activity

2

and to assist one another in avoiding detection by law enforcement. The groups that CDP aligned with called themselves, collectively, Uptown. Uptown included CDP, Chopper City, a/k/a "223," Mac Block, 800 Block, Page Street Mob, a/k/a "PST," and Knock Out Posse, a/k/a "KOP," a/k/a "KO." In or around 2008, one of these groups, KOP, became a violent rival of CDP. The principal rivals to CDP are gang members of a Western Addition gang called Eddy Rock, a/k/a "Outta Control," a/k/a "OC," who also referred to themselves as the Downtown faction of the Western Addition.

6. There were leaders of CDP. While they had no official titles, there were individuals who were feared, respected, and whose directions were followed by other members. Below the leaders were "shooters," those gang members who were prepared and known to commit violence on behalf of the gang and to protect each other. Below the shooters were gang members who dealt narcotics, pimped out women, or who might commit robberies, but who were either hesitant to commit other violent acts on behalf of the gang, or who had not had an opportunity to commit other violent acts.

7. CDP members communicated about gang activities with other CDP members using mobile telephones, telephone text messages, and other modes of electronic and wire communications.

8. CDP, including its leadership, members, and associates constituted an "enterprise" as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that was engaged in, and its activities affected interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit that had a common purpose of achieving the objectives of the enterprise.

Purposes of the Enterprise

9. The purposes of the CDP gang enterprise, including its members and associates, included, but were not limited to, the following:

   a. Preserving and protecting the power, territory, reputation, and profits of the enterprise, its members, and family members, through the use of intimidation, violence, threats of violence, assaults, and murder;

   b. Promoting and enhancing the enterprise and the activities of its members and associates, including, but not limited to, murder, attempted murder, conspiracy to murder, narcotics

3

trafficking, robbery, pimping, and other criminal activities;

c. Keeping victims, potential victims, and community members in fear of the enterprise and its members and associates through violence and threats of violence;

d. Providing financial support and information to CDP members, including those incarcerated; and

e. Providing assistance to other CDP members who committed crimes for and on behalf of the gang, to hinder, obstruct, and prevent law enforcement officers from identifying the offenders, apprehending the offenders, and successfully prosecuting and punishing the offenders.

The Means and Methods of the Enterprise

10. The means and methods by which the defendants and the members and associates of CDP conducted and participated in the conduct of the affairs of CDP included, but were not limited to:

a. Members of CDP committed, attempted, and threatened to commit violence, including murder, to protect and expand the enterprise's criminal operation, which included assaults, murder, intimidation, and threats of violence directed against rival gang members, rivals in general, those who disrespected CDP, its members, associates, and families, and potential witnesses to the crimes of the enterprise;

b. Members of CDP promoted a climate of fear through intimidation, violence, and threats of violence intended to promote the authority of the enterprise and its members and insulate its members from liability for the other criminal actions of the enterprise;

c. Members of CDP used the enterprise to murder, attempt to murder, assault, and threaten those who posed a threat to the enterprise; and

d. Members and associates traveled in interstate and foreign commerce, and affected interstate and foreign commerce to conduct the affairs of the enterprise.

11. The above-described CDP enterprise, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving murder and robbery, in violation of the California Penal Code, acts indictable under Title 18, United States Code, Section 2422, namely acts involving pimping and pimping minors, and acts

4

involving narcotics trafficking, in violation of Title 21, United States Code, Section 841(a)(1) and 846.

Murder in Aid of Racketeering of Calvin Sneed

12. On or about June 4, 2012, in the Northern District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the CDP enterprise, and for the purpose of gaining entrance to and maintaining and increasing their positions in CDP, an enterprise engaged in racketeering activity, the defendants,

ALFONZO WILLIAMS, a/k/a "Fonz," a/k/a "Relly,"

ANTONIO GILTON, a/k/a "TG,"

BARRY GILTON, a/k/a "Prell," and

LUPE MERCADO,

each aided and abetted by the other, unlawfully and knowingly did murder Calvin Sneed, in violation of California Penal Code Sections 187, 188, and 189.

All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

COUNT TWO: (18 U.S.C. § 924(c)(1)(A) – Use/Possession/Brandish/Discharge of Firearm in Furtherance of Crime of Violence)

On or about June 4, 2012, in the Northern District of California, the defendants,

ALFONZO WILLIAMS, a/k/a "Fonz," a/k/a "Relly,"

ANTONIO GILTON, a/k/a "TG,"

BARRY GILTON, a/k/a "Prell," and

LUPE MERCADO,

each aided and abetted by the other, willfully and knowingly did use and carry and brandish and discharge a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the murder in aid of racketeering of Calvin Sneed charged in Count One of this Indictment, and did possess and brandish and discharge a firearm in furtherance of the offense charged in Count One of this Indictment.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

COUNT THREE: (18 U.S.C. § 924(j) – Use/Possession of a Firearm in Murder)

On or about June 4, 2012, in the Northern District of California, the defendants,

ALFONZO WILLIAMS, a/k/a "Fonz," a/k/a "Relly,"

ANTONIO GILTON, a/k/a "TG,"

BARRY GILTON, a/k/a "Prell," and

LUPE MERCADO,

each aided and abetted by the other, willfully and knowingly, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the murder in aid of racketeering of Calvin Sneed charged in Count One of this Indictment, did use and carry a firearm, and in furtherance of such crime, did possess a firearm, and in the course of that crime did cause the death of a person through the use of a firearm, which killing is murder as defined in Title 18, United States Code, Section 1111(a), namely, the defendants caused the death of Calvin Sneed by discharging a firearm at Calvin Sneed.

All in violation of Title 18, United States Code, Sections 924(j)(1) and 2.

COUNT FOUR: (18 U.S.C. § 3 – Accessory After the Fact)

From on or about June 4, 2012, up to June 9, 2012, in the Northern District of California, the defendant,

LUPE MERCADO,

knowing that offenses against the United States had been committed, namely the murder and unlawful use of firearms as charged in Counts One, Two, and Three of the Indictment, did knowingly and willfully receive, relieve, comfort and assist the offenders in order to hinder and prevent their apprehension, trial, and punishment for those offenses.

//
//
//
//

6

All in violation of Title 18, United States Code, Section 3.

DATED: *November 21, 2013*

A TRUE BILL

*Nancy J. Peterson*
FOREPERSON

MELINDA HAAG
United States Attorney

*J. Douglas Wilson*
J. DOUGLAS WILSON
Chief, Criminal Division

(Approved as to form:  _____ )
AUSA William Frentzen
AUSA Damali A. Taylor

7