Ismail Ramsey (CSB 189820)
izzy@ramsey-ehrlich.com
Amy E. Craig (CSB 269339)
amy@ramsey-ehrlich.com
RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, CA 94710
(510) 548-3600
(510) 291-3060 fax

Attorneys for Defendant Jaquain Young

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff;<br><br>vs.<br><br>JAQUAIN YOUNG,<br><br>    Defendant. | Case No.: CR-13-00764 WHO<br><br>**DEFENDANT JAQUAIN YOUNG'S MOTION *IN LIMINE* REGARDING PORTIONS OF JAILHOUSE RECORDING THE GOVERNMENT INTENDS TO USE AT TRIAL** |

1    To comply with this Court's Order on Mr. Young's *Massiah* Motion (Dkt. No. 895), the

2  government provided a fifty-five page transcript of statements from its June 18, 2014 jailhouse

3  recording that it plans to use at trial.  *See* Exhibits A and B to Declaration of Amy Craig, filed

4  herewith.  This Court should suppress several of these statements because they 1) violate this

5  Court's Order suppressing statements about pimping, 2) are about Mr. Young's involvement with

6  CPD and thus are incriminating with respect to the pimping charges pending at the time the

7  recording, and 3) are about Mr. Young's ability to avoid detection, which are incriminating with

8  respect to the pimping charges.  The transcript also contains statements that this Court should

9  suppress under Rules of Evidence 404(b) and 403.

10    The Court should suppress the statements described below—they are divided into these four

11  categories.

**Statements This Court Should Suppress**

12

13  **A.  Category I:  Statements About Pimping**

14    This Court has held that "Young's statements about pimping—whether about the particular

15  conduct underlying the then-pimping charges, pimping in general, or other acts of pimping—are

16  incriminating with respect to those charges and must be suppressed." Dkt. No. 895 at 9:20-23.

17  Nevertheless, the government seeks to introduce numerous statements about pimping.  For

18  example, the government seeks to introduce a number of statements that reference "bitches" and

19  Mr. Young's live-in girlfriend.  These statements are incriminating with respect to the pimping

20  charges as the government has repeatedly alleged that 1) Mr. Young uses the term "bitches" to

21  describe women who prostitute for him (*see* Dkt. No. 738 at 14:11-12 "[T]he defendant repeatedly

22  volunteered information about his other prostitutes, whom he called his 'bitches'" and that 2) Mr.

23  Young's girlfriend prostitutes for him.  *Id.* at 10:2-4 and 18:22 (describing Mr. Young's girlfriend as

24  his "prostitute.")).  Because the following statements reference pimping, they should be suppressed

25  in keeping with the Court's order:  *See* Statement 3 (Transcript at 3:18-5:9) (*see, e.g.,* "he never see me

26  with a group of bitches" *id.* at 4:10-13), Statement 4 (Transcript at 5:10-6:18) ("somebody else

27  pimping and pandering" *id.* at 5:18), Statement 9 (Transcript at 10:3-17:25) (*see, e.g.,* "even though

28

1   she out there hoing [sic]" *id.* at 12:25), Statement 10 (Transcript at 18:8-20:21) (*see, e.g.,* "Two bitches

2   in the club getting money . . ." *id.* at 19:11-26), Statement 11 (Transcript at 21:14-34:26) (*see, e.g.*,

3   references to the Camaro), Statement 12 (Transcript at 35:13-37:2) (*see, e.g.,* reference to getting

4   "back out there doing it" *id.* at 35:16 and "Take off your panties and shake your ass and get all that."

5   *id.* at 36:26), and Statement 14 (Transcript at 45:13-53:22).

6       **B.  Category II:  Statements describing Mr. Young's alleged involvement with CDP**

7           The government has alleged that CDP was an organization devoted to "pimping, including

8   the pimping of minors." Dkt. No. 895 at 10:18-28-11:1-4.  And this Court has held that a jury might

9   view Mr. Young's statements "regarding his membership in CDP"[1] as evidence that he was soliciting

10  the undercover officer to engage in prostitution.  *Id.* The Court recognized the "acute" risk that a

11  juror could use any evidence that Mr. Young is a CDP member as a link in the chain to proving that

12  Mr. Young is guilty of pimping.  *Id.* This finding was based on the fact that, in addition to the

13  various overt acts regarding pimping, the "Second Superseding Indictment accuses CDP and its

14  members and associates of promoting and enhancing CDP and the activities of its members and

15  associates, including . . . pimping," and the pimping of minors.  *Id.* at 10:22-27. Thus, this Court

16  should suppress Mr. Young's illegally elicited statements about his involvement with CDP,

17  specifically the followings statements:  Statement 4 (Transcript at 5:10-6:18) (*see, e.g.,* "We from the

18  same block, from the same area" *id.* at 5:16), Statement 5 (Transcript at 7:1-24), Statement 7

19  (Transcript at 8:17-9:11), Statement 8 (Transcript at 9:21-26), Statement 9 (Transcript at 10:3-17:25),

20  Statement 10 (Transcript at 18:8-20:21), Statement 11 (Transcript at 21:14-34:26) (*see e.g.,* "back in

21

22  _____

23

24

25

26  [1] While Mr. Young makes no admissions that he belongs to CDP, the government intends to point to
    statements regarding Mr. Young's relationship with his cousin, Esau Ferdinand, and other alleged CDP
27  members, as well as the fact that he lived in the Fillmore area, to assert that he was a member of the CDP.
    For ease of reference, we adopt the Court's shorthand ("his membership in CDP" in describing this category
28  of statements.

DEFENDANT JAQUAIN YOUNG'S MOTION IN LIMINE REGARDING PORTIONS OF JAILHOUSE RECORDING THE
GOVERNMENT INTENDS TO USE AT TRIAL, CR-13-0764 WHO
PAGE 3

1    the day when you were in the streets . . ." *id.* at 21:14), Statement 13 (Transcript at 37:5-45:9), and

2    Statement 14 (Transcript at 45:13-53:22).

3        **C. Category III:  Statements regarding the government's lack of evidence and Mr.
         Young's alleged efforts to avoid detection**

4

5        At the government informant's prompting, Mr. Young commented on the government's lack of

6    evidence against him.  Mr. Young does not specify which crime he is referring to, but the context

7    makes clear that he meant both the charged conduct and the uncharged conduct, as he knew that

8    the government intended to include his existing charges into a superseding indictment with new

9    charges.  And at the time he made these statements Mr. Young was in the federal courthouse for a

10   hearing in his then-pending pimping case.

11       This Court should suppress Mr. Young's statements about the government's lack of

12   evidence and his ability to avoid criminal charges because they are incriminating with respect to the

13   then-pending pimping charges.  The jury may infer from his statements about the government's lack

14   of evidence on the pimping charges that such evidence does in fact exist, and would have been

15   presented to the jury had Mr. Young not successfully covered his trail.  Because the following

16   statements are incriminating with respect to the then-pending charges, they should be suppressed:

17   Statement 2 (Transcript at 2:23-25), Statement 3 (Transcript at 3:18-5:9), Statement 5 (Transcript at

18   7:1-24), Statement 6 (Transcript at 8:17-9:11), Statement 8 (Transcript at 9:21-26), Statement 9

19   (Transcript 10:3-17:25), Statement 11 (Transcript at 21:14-34:26), Statement 13 (Transcript at 37:5-

20   45:9), and Statement 16 (Transcript at 57:22-60:3).

21       **D. Category IV: Statements That Violate Rules 403 and 404(b)**

22       The government's transcript also contains numerous statements about Mr. Young's other

23   acts, including his use of marijuana, credit card fraud, and past concealment of weapons, as well as

24   puffery about "bodies" for which he is responsible.  None of these acts are linked to the crimes of

25   which he is charged, namely pimping and pandering charges of an undercover officer and the

26   murder of Jelvon Helton on November 1, 2010.  Further, many of these statements are clearly

27   hypothetical, as evidenced by the fact that Mr. Young references engaging in acts with the

28   government's informant, whom he didn't know until he was jailed for the instant offenses.  *See, e.g.*,

1   Statement 4 ("Because they sayin' ok me and [government informant[2]], we from the same block." *id.*

2   at 5:11, and "Me and [government informant] did something wrong, so now it's a RICO" *id.* at 5:13),

3   Statement 5 ("A gun got found, me and [government informant] right here.  Oh ok, [government

4   informant] and Jaquain Young got caught with strap right here." *id.* at 7:11-13) and Statement 13

5   ("Continuity meaning me and [government informant] got busted on the (UI), boom." *id.* at 40:16-

6   20.  Other acts discussed occurred many years before the crimes in questions.  *See, e.g.*, Statement 11

7   in which Mr. Young expressly states that he is talking about something that happened in 1994 or

8   1995, fifteen years before Jelvon Helton's murder.  Statement 11 (*see, e.g., id.* at 27:10 ("This was in

9   like, I want to say this probably, like ninety – four or five.")

10          The government also seeks to introduce statements regarding acts that occurred years *after*

11   Mr. Helton's 2010 murder.  *See, e.g.*, Statement 11  ("when they caught me right now, I had a gun in

12   the car." *id.* at 28:1)  On its face, it is clear that Statement 11 refers to Mr. Young's arrest in March of

13   2013 on the pending pimping charges, two and a half years after Mr. Helton's murder. *Id.* During

14   that arrest, the government impounded Mr. Young's Camaro.  The government has never alleged

15   that Mr. Young's Camaro was tied to the Jelvon Helton murder.  Rather, they allege that Mr. Young

16   was traveling in his girlfriend's Acura on the night of the murder.  Dkt. No. 738 at 17 ("Defendant

17   Young then went on to discuss the fact that the FBI had analyzed the Acura vehicle he used to flee

18   the Helton murder for DNA but found nothing.")  Mr. Young's comments about the Camaro, with

19   or without respect to any hidden compartments (*see, e.g.,* Statement 11) only bear on his then-

20   pending charges and thus should be suppressed.  A jury could likely find that the fact that Mr.

21   Young had a gun on the day he was arrested as evidence that he arrived to meet the undercover

22   agent while acting as a pimp.

23   —————————————

24

25

26

27   [2] The transcript provided by the government includes its informant's name.  While Mr. Young is aware of
     the identity of the informant, in order to avoid objections from the government, Mr. Young continues to

28   refer to the informant by his name and has redacted his name from the attached transcript.

1    Similarly, Mr. Young's statements regarding credit card fraud have no bearing on the instant

2 charges. *See, e.g.*, Statement 9, Statement 10, Statement 11). The government's indictment does not

3 allege that credit card fraud was one of the "means and methods" of CDP. See Dkt. No. 139

4 (Second Superseding Indictment). Accordingly, any discussion relating to credit card fraud should

5 be suppressed.

6    Because the statements described above are not evidence that Mr. Young committed the

7 crimes of which he stands charged, their only purpose is to signal to the jury that Mr. Young is a *bad*

8 man who has engaged in illegal conduct and has admitted to having guns at some point. This Court

9 should suppress these statements because they are incriminating with respect to the then-pending

10 pimping charges (i.e., Mr. Young is a bad man, so he must have intended to solicit the undercover

11 agent to act as a prostitute). They also run afoul of Rule 404(b)'s prohibitions on the introduction of

12 a defendants' other bad acts. "Evidence of a defendant's prior conviction, wrong, or other act is

13 inadmissible to prove the defendant's bad character or propensity to commit the charged offenses."

14 *United States v. Hardrick*, 766 F.3d 1051, 1055 (9th Cir. 2014).

15    Evidence of extrinsic acts must be excluded under Rule 404(b) unless the government

16 establishes relevance to an actual issue in the case. *Arizona v. Elmer*, 21 F.3d 331, 336 (9th Cir. 1994).

17 "The rule is designed to avoid a danger that the jury will punish the defendant for offenses other

18 than those charged, or at least that it will convict when unsure of guilt, because it is convinced that

19 the defendant is a bad man deserving of punishment." *United States v. Hill*, 953 F.2d 452, 457 (9th

20 Cir. 1991), quoting *United States v. Brown*, 880 F.2d 1012, 1014 (9th Cir. 1989) (citation omitted). This

21 danger is particularly great when "the extrinsic activity was not the subject of a conviction; the jury

22 may feel that the defendant should be punished for that activity even if he is not guilty of the

23 offense charged." *United States v. Bradley*, 5 F.3d 1317, 1321 (9th Cir. 1993) (citation omitted).

24    Even when the evidence is admissible under Rule 404(b), under Rule 403, the Court may

25 admit other acts evidence only if the probative value is not substantially outweighed by the danger of

26 unfair prejudice to the defendant, or misleading the jury, or by considerations of undue delay, waste

27 of time, or needless presentation of cumulative evidence. Rule 403; *Arizona v. Elmer*, 21 F.3d at 336.

28

1  "Because evidence of other crimes, wrongs, or acts carries with it the inherent potential to see the

2  defendant simply as a bad person and then to convict because of who he is rather than what he did,

3  a trial court must take appropriate care to see that this does not happen." *United States v. Curtin*, 489

4  F.3d 935, 957 (9th Cir. 2007) (*en banc*).  The Ninth Circuit, therefore, requires the district court to

5  undertake a detailed analysis of each piece of evidence of other crimes, wrongs, or acts under Rule

6  403 to determine whether unfair prejudice may result. *Id.* at 958.

7  　　　　Here, the statements indicating that Mr. Young engaged in other illegal acts or had a gun at

8  some point in time are not tied to the alleged crimes and thus have no probative value with the

9  respect to the pending charges.  Similarly, Mr. Young's statements that refer to women as "bitches"

10  are prejudicial without any redeeming probative value and should be suppressed.  *See, e.g.*, Statement

11  1, Statement 3, Statement 9, Statement 10, Statement 12, Statement 13, Statement 14, Statement 15.

12  　　　　In sum, under Rule 403 and 404(b), the following statements must be suppressed:

13  Statements 1 (Transcript at 2:9-22), Statement 3 (Transcript at 3:18-5:9), Statement 5 (Transcript at

14  7:1-24), Statement (Transcript at 7:25-8:16), Statement 9 (Transcript at 10:3-17:25), Statement 10

15  (Transcript at 18:8-20:21), Statement 11 (Transcript at 21:14-34:26), Statement 14 (Transcript at

16  45:13-53:22), Statement 15 (Transcript at 54:3-57:19), and Statement 16 (Transcript at 57:22-60:3.)

17

18  Dated: April 1, 2016　　　　　　　　　　　Respectfully Submitted,

19  　　　　　　　　　　　　　　　　　　　　/s/

20  　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Ismail Ramsey

21  　　　　　　　　　　　　　　　　　　　　Amy Craig
　　　　　　　　　　　　　　　　　　　　Ramsey & Ehrlich LLP

22  　　　　　　　　　　　　　　　　　　　　*Counsel to Jaquain Young*

23

24

25

26

27

28