MARK GOLDROSEN, ESQ. (CSBN 101731)
Attorney at Law
255 Kansas Street, Suite 340
San Francisco, CA 94103
Telephone: (415) 565-9600
Facsimile: (415) 565-9601

Attorney for Defendant ANTONIO GILTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 13–0764–WHO |
| Plaintiff | DEFENDANT ANTONIO GILTON'S IN LIMINE MOTIONS |
| vs. | |
| ANTONIO GILTON, | |
| Defendant. | DATE: May 6, 2016<br>TIME: 9:00 a.m.<br>DEPT: Hon. William H. Orrick, District Judge |

# TABLE OF CONTENTS

Page

IN LIMINE MOTION NO. 1: THE COURT SHOULD NOT READ THE INDICTMENT TO THE JURY OR SEND IT INTO THE JURY ROOM DURING DELIBERATIONS. . . . . 1

IN LIMINE MOTION NO. 2: JAIL CALLS PLACED BY GILTON SHOULD BE EXCLUDED SINCE THEY ARE IRRELEVANT AND UNDULY PREJUDICIAL. . . . . . . . . . . . . 3

IN LIMINE MOTION NO. 3: STATEMENTS OF OTHER DEFENDANTS DESCRIBED BY THE GOVERNMENT IN ITS SUMMARIES OF CO-CONSPIRATOR STATEMENTS SHOULD NOT BE ADMITTED UNLESS THE GOVERNMENT ESTABLISHES ADMISSIBILITY UNDER FED. R. EVID. 801(D)(2)(E). . . . . . . . . . . . . . . . . . . . . . . . 4

IN LIMINE MOTION NO. 4: STATEMENTS OF CO-DEFENDANTS AND ALLEGED UNINDICTED CO-CONSPIRATORS NOT PREVIOUSLY DISCLOSED AND SUMMARIZED BY THE GOVERNMENT IN ITS NOVEMBER 24, 2015 LETTER (EXHIBIT B) SHOULD BE EXCLUDED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IN LIMINE MOTION NO. 5: EVIDENCE REGARDING GILTON'S FIREARM POSSESSION ON APRIL 19, 2007 SHOULD BE EXCLUDED BECAUSE THE GOVERNMENT DID NOT PROVIDE TIMELY NOTICE OF ITS INTENT TO INTRODUCE SUCH EVIDENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IN LIMINE MOTION NO. 6: EVIDENCE OF NOTICED "ADDITIONAL ACTS," INCLUDING GILTON'S POSSESSION OF A FIREARM ON APRIL 6 2007 AND POSSESSION OF DRUGS ON MAY 1, 2008, SHOULD BE EXCLUDED AS IRRELEVANT, UNDULY PREJUDICIAL AND CUMULATIVE. . . . . . . . . . . . . . . . 15

IN LIMINE MOTION NO. 7: THE GOVERNMENT SHOULD BE PROHIBITED FROM USING PRIOR CONVICTIONS TO IMPEACH GILTON, SHOULD HE TESTIFY. . . 19

IN LIMINE MOTION NO. 8: THE GOVERNMENT SHOULD NOT BE ALLOWED TO USE GUILTY PLEAS OR CONVICTIONS OF ITS WITNESSES AS SUBSTANTIVE PROOF OF GILTON'S GUILT OF THE RICO CONSPIRACY. . . . . . . . . . . . . . . . . 21

IN LIMINE MOTION NO. 9: MUG SHOTS SHOULD BE EXCLUDED. . . . . . . . . . . . . . . . 22

IN LIMINE MOTION NO. 10: EXCLUSION OF GRUESOME, UNDULY PREJUDICIAL PHOTOGRAPHS OF HOMICIDE VICTIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IN LIMINE MOTION NO. 11: WITNESSES SHOULD BE EXCLUDED FROM THE COURTROOM WHEN NOT TESTIFYING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IN LIMINE MOTION NO. 12: GOVERNMENT SHOULD BE ORDERED TO PROVIDE ADVANCE NOTICE OF WITNESSES TO BE CALLED AND INCIDENTS TO BE COVERED DURING A TRIAL WEEK. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IN LIMINE MOTION NO. 13: JOINDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

i

**TABLE OF AUTHORITIES**

Page

3  *Bourjaily v. United States*, 483 U.S. 171 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

4  *Fiswick v. United States*, 329 U.S. 211 (1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5  *Gordon v. United States*, 383 F.2d 936 (D.C. Cir. 1967). . . . . . . . . . . . . . . . . . . . . . . 19, 20

6  *Miranda v. Arizona*, 384 U.S. 436 (1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7  *People v. Chavez*, 50 Cal. 2d 778 (1958).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

8  *Rivers v. United States*, 270 F.2d 435 (9th Cir. 1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

9  *Robles v. United States*, 279 F.2d 401 (9th Cir. 1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

10  *United States v. Bagley*, 772 F.2d 482 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

11  *United States v. Barreiro*, No. 5:13–cr–636, 2015 WL 7734139 (N.D. Cal. Dec. 1, 2015) . . . 1, 2

12  *United States v. Brackeen*, 969 F.2d 827 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . 19

13  *United States v. Brito*, 427 F.3d 53 (1st Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

14  *United States v. Carrillo-Figueroa*, 34 F.3d 33 (1st Cir. 1994). . . . . . . . . . . . . . . . . . . . . . 22

15  *United States v. Castaldi*, 547 F.3d 699 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

16  *United States v. Castillo*, 615 F.2d 878 (9th Cir. 1980).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

17  *United States v. Cervantes*, - F. Supp. 3d -, No. 4:12–cr–792, 2016 WL 1029585, *4 (N.D. Cal.
18  2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

19  *United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

20  *United States v. Eubanks*, 591 F.2d 513 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . 4-7

21  *United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . 2

22  *United States v. Fielding*, 645 F.2d 719 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . 5-8

23  *United States v. Freeman*, 619 F.2d 1112 (5th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . 3

24  *United States v. George,* 160 Fed.Appx. 450 (6th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . 22

25  *United States v. Gotti*, 399 F. Supp. 2d 417 (S.D.N.Y. 2005). . . . . . . . . . . . . . . . . . . . 16, 18

26  *United States v. Gross*, 603 F.2d 757 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

27  *United States v. Halbert*, 640 F.2d 1000 (9th  Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . 21

28  *United States v. Harrington*, 490 F.2d 487 (2d Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Hines*, 955 F.2d 1449 (11th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Jaeger*, 298 F.2d 1003 (D. Haw. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. James*, 590 F.2d (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Jimenez*, 214 F.3d 1095 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Mehrmanesh*, 689 F.2d 822 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Montgomery*, 384 F.3d 1050 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Mouzin*, 785 F.2d 682 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Polizzi*, 500 F.2d 856 (9th Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Puco*, 453 F.2d 539 (2d Cir. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Reyes*, No. 2:11-cr-77, 2014 WL 4722505, *18 (N.D. Ind. Sep. 23, 2014). . . . . 19

*United States v. Root*, 366 F.2d 377 (9th Cir. 1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Silverman*, 861 F.2d 571 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Smith*, 790 F.2d 789 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Tamez*, 941 F.2d 770 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Taylor*, 210 F.3d 311 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Terrigno*, 838 F.2d 371 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Torres-Flores*, 827 F.2d 1031 (5th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Yarbrough*, 852 F.2d 1522 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

**FEDERAL RULES OF CRIMINAL PROCEDURE**

Rule 7(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**FEDERAL RULES OF EVIDENCE**

609(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rule 104(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rule 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Rule 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Rule 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 19, 22, 23

Rule 404(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 22

Rule 609 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Rule 609(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rule 615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Rule 801(d)(2)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-9, 13

**LOCAL RULES**

Local Rule 16–1(c)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATUTES**

18 U.S.C. § 1961(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 1961(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 2422(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 2422(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 2422(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21 U.S.C. § 174. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**OTHER AUTHORITIES**

1 Wright & Miller, *Fed. Prac. & Proc. Crim.* § 128 (4th ed.) . . . . . . . . . . . . . . . . . . . . . . . 2

MARK GOLDROSEN, ESQ. (CSBN 101731)
Attorney at Law
255 Kansas Street, Suite 340
San Francisco, CA 94103
Telephone: (415) 565-9600
Facsimile: (415) 565-9601

Attorney for Defendant ANTONIO GILTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR No. 13–0764–WHO |
| | ) | |
| Plaintiff | ) | DEFENDANT ANTONIO GILTON'S |
| | ) | IN LIMINE MOTIONS |
| vs. | ) | |
| | ) | |
| ANTONIO GILTON, | ) | |
| | ) | |
| Defendant. | ) | DATE: May 6, 2016 |
| | ) | TIME: 9:00 a.m. |
| | ) | DEPT: Hon. William H. Orrick, District Judge |

TO THIS HONORABLE COURT, ASSISTANT UNITED STATES ATTORNEYS WILLIAM

FRENTZEN, DAMALI TAYLOR, AND SCOTT JOINER, AND ALL DEFENSE COUNSEL:

PLEASE TAKE NOTICE that Defendant Antonio Gilton, through undersigned counsel,

submits the following in limine motions pursuant to the Court's scheduling order.

**IN LIMINE MOTION NO. 1: THE COURT SHOULD NOT READ THE INDICTMENT TO THE JURY OR SEND IT INTO THE JURY ROOM DURING DELIBERATIONS**

"[I]t is well settled that the jury must be fairly apprised of the nature of the charges

against the defendant, but this does not necessarily require a reading of the indictment to the jury

either in whole or in part." *Robles v. United States*, 279 F.2d 401, 403–404 (9th Cir. 1960).

Instead, the choice whether or not to read an indictment to the jury or send it into the jury room is

within the sound discretion of the trial court. *United States v. Polizzi*, 500 F.2d 856, 876 (9th Cir.

1974); see also *United States v. Barreiro*, No. 5:13–cr–636, 2015 WL 7734139, *3–4 (N.D. Cal.

1

Dec. 1, 2015) (granting defendants' motion in limine not to read indictment or send it into jury room). The indictment in the present case is twenty-four pages long, and contains many "background" allegations that are both prejudicial and inessential to the charges. *See* Second Superseding Indictment, Dkt. 139 at ¶¶ 1–14 (hereinafter "Indictment"). Its references to the Grand Jury might lead a juror unfamiliar with our system to believe that the truth of the allegations has already been established by another jury. As in *Barreiro*, the Court can fairly apprise the jury of the charges against Gilton by reading a joint statement of the case to be agreed among the parties, rather than by reading the Indictment or any part of it.

In the alternative, pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure, Gilton moves to strike paragraphs 1–14 of the Indictment and the words "including, but not limited to" in paragraph 17 of the Indictment, and bar the reading of charges against defendants not presently on trial. The purpose of a motion under Rule 7(d) is to "protect a defendant against 'prejudicial or inflammatory allegations that are neither relevant nor material to the charges.'" *United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988); *see also* 1 Wright & Miller, *Fed. Prac. & Proc. Crim.* § 128 (4th ed.) (where "prosecutors . . . insert unnecessary allegations for 'color' or 'background' hoping that these will stimulate the interest of the jurors . . . . [t]he proper course for the defense is to move to strike the surplusage"). "[D]escriptive material" that precedes the language of the statute can therefore be stricken, *United States v. Root*, 366 F.2d 377, 381 (9th Cir. 1966), as can background allegations in a conspiracy case that "do not qualify as overt acts supporting the conspiracy count." *United States v. Fernandez*, 388 F.3d 1199, 1220 (9th Cir. 2004).

In the present case, paragraphs 1–14 are just the kind of prejudicial "descriptive material" that may be stricken under *Root* and *Fernandez*. Wearing a "Banga" tattoo, cupping one's hands together to form a "U," being called a "shooter," or "promot[ing] a climate of fear" is not an element of any charged offense, nor is the fact that CDP has allegedly been in existence "since at least the mid-1990s." Indictment at ¶¶ 1, 2, 10(b). Likewise, the allegation that "CDP members have been expected to use any means necessary to force respect from those who showed disrespect" is mere "color" or "background," unnecessary to state the government's case and

useful only to inflame to jury against the defendants. The prejudicial effect of all these inessential background paragraphs is obvious. To the extent that they allege overt acts or other elements essential to charge, they merely duplicate allegations elsewhere in the Indictment. *Compare id.*, ¶ 8 *with* ¶ 15; *id.*, ¶ 4 *with* ¶ 17(a)–(ii). They should therefore be stricken.

Finally, paragraph 17 alleges overt acts in furtherance of the conspiracy "including, but not limited to," 35 listed acts. The words "including, but not limited to" are surplusage, and are prejudicial, since they hint to the jury that the Grand Jury were told about other unalleged acts. *See United States v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980) (words "including, but not limited to" before list of alleged overt acts were surplusage).

## IN LIMINE MOTION NO. 2: JAIL CALLS PLACED BY GILTON SHOULD BE EXCLUDED SINCE THEY ARE IRRELEVANT AND UNDULY PREJUDICIAL

Government Exhibit 0884 is described as "10 Jail Calls – 8 jails calls with Antonio Gilton." United States' Exhibit List, Dkt. 926 at 31. Defendant Gilton moves to exclude the eight recordings of his jail calls, which he placed to friends and family during the evening of his arrest on July 4, 2012. The recordings last 58 minutes and 28 seconds in total. The government has not told Gilton what parts, if any, it will seek to admit. Most of the conversation is wholly unrelated to the case. Among other things, Gilton talks about his bail, asks people to come to his next court date, asks people to put money on his jail account and on his jail phone, chats about his family and visiting at the jail, expresses concern for his mother, and complains about feeling unwell. Ex. A at ¶ 2 (Declaration of Mark Goldrosen).

Under Rule 402 of the Federal Rules of Evidence, "[i]rrelevant evidence is not admissible." Here, it is readily apparent that large swathes of the jail calls are entirely irrelevant. Nor has the government made a proffer establishing that any part of the jail calls tends to prove or disprove any fact at issue in this case.

As well as being irrelevant, the calls are subject to exclusion under Rule 403. Under that rule, the district court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. On the recordings, Gilton occasionally uses profanities, argues with his girlfriend about how long he is able to talk with her, and talks about

problems he is having in his relationship. Moreover, his girlfriend accuses him of being untruthful when he says he will call her back in 30 minutes. Ex. A at ¶ 2. These unfavorable glimpses into Gilton's personal life have no probative value, and are likely to cause unfair prejudice.[1]

**IN LIMINE MOTION NO. 3: STATEMENTS OF OTHER DEFENDANTS DESCRIBED BY THE GOVERNMENT IN ITS SUMMARIES OF CO-CONSPIRATOR STATEMENTS SHOULD NOT BE ADMITTED UNLESS THE GOVERNMENT ESTABLISHES ADMISSIBILITY UNDER FED. R. EVID. 801(D)(2)(E)**

On November 24, 2015, the government provided the defense with a letter that contained summaries of forty-four co-conspirator statements it intends to introduce at trial. *See* Ex. B (Letter). It is clear that at least some of the statements, including Co-Defendant Jaquain Young's recorded statement to an inmate informant on June 18, 2014,[2] do not qualify as co-conspirator statements and should be excluded. The remaining statements should not be admitted unless the government first introduces evidence establishing by a preponderance of the evidence that the elements of Rule 801(d)(2)(E) of the Federal Rules of Evidence have been satisfied.

Rule 801(d)(2)(E) holds that statements made by co-conspirators "during the course and in furtherance of the conspiracy" are not made inadmissible by the hearsay rule. However, before admitting a statement under this rule, the Government must show that "(1) the declaration was in furtherance of the conspiracy, (2) it was made during the pendency of the conspiracy, and (3) there is independent proof of the existence of the conspiracy and of the connection of the declarant and the defendant to it." *United States v. Eubanks*, 591 F.2d 513, 519 (9th Cir. 1979). These essential elements must be proven by a preponderance of the evidence. *Bourjaily v. United*

---

[1]The government lists other jail calls as exhibits, but the list is not specific as to who participated in these calls. For example, Exhibit 1008 is described as "Jail Calls for 415-554-2380 from 6/18/12-1/02/12." Dkt. 926 at 37. This specified phone number belongs to the San Francisco Sheriff's Department. The list does not identify the Bates Number that corresponds to these calls, but counsel believes the exhibit may refer to BG075356, which consists of hundreds, if not thousands, of jail calls. Without knowing which calls, if any, the government intends to use, Gilton is unable to make appropriate objections at this time. Gilton reserves the right to object when the government has identified the calls it intends to put in evidence.

[2]Gilton made the same argument regarding the inadmissibility of Young's statement to the jailhouse informant in his Motion for Severance (Dkt. 939). That motion is also scheduled to be heard on May 6, 2016.

*States*, 483 U.S. 171, 175 (1987).

While the court can consider the statements themselves as some evidence of these foundational requirements, out-of-court statements are presumptively unreliable and should not be admitted unless corroborated by "fairly incriminating evidence." *See United States v. Silverman*, 861 F.2d 571, 578 (9th Cir. 1988) ("Although . . . Fed. R. Evid. 104(a) permits a trial judge to consider the co-conspirator's out-of-court statement in assessing the statement's admissibility, Rule 104(a) does not diminish the inherent unreliability of such a statement. . . . Evidence of wholly innocuous conduct or statements by the defendant will rarely be sufficiently corroborative of the co-conspirator's statement to constitute proof, by a preponderance of the evidence, that the defendant knew of and participated in the conspiracy"). For that reason, co-conspirator statements cannot be corroborated by other co-conspirator statements. *Id*. at 579 ("One presumptively unreliable statement cannot be invoked to corroborate another").

The Ninth Circuit has narrowly interpreted the "in furtherance" language of Rule 801(d)(2)(E). The Rule does not apply to "[m]ere conversations between co-conspirators, or merely narrative declarations among them." *United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988). Nor does it apply to "casual admission[s] of culpability to someone [the declarant has] individually decided to trust." *United States v. Fielding*, 645 F.2d 719, 726 (9th Cir. 1981) (citation omitted); *United States v. Castillo*, 615 F.2d 878, 883 (9th Cir. 1980). Rather, to be "in furtherance," the statements must further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy. *Eubanks*, 591 F.2d at 520. In short, the statements must assist the conspirators in achieving their objectives. *Id*.

Moreover, statements made after a co-conspirator has been apprehended are generally not considered "in furtherance" of the conspiracy, except where the purpose of the statement is concealment. *See Fiswick v. United States*, 329 U.S. 211, 217 (1946). "[C]onfession or admission by one coconspirator after he has been apprehended is not in any sense a furtherance of the criminal enterprise. It is rather a frustration of it." *Id*. Once a co-conspirator confesses the existence of the conspiracy, he "cease[s] to act in the role of a conspirator." *Id*.

Whether a statement was made "in furtherance" of a conspiracy depends not "on its actual

5

effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement." *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991). For example, in *United States v. Fielding*, 645 F.2d 719 (9th Cir. 1981), a co-conspirator "spoke generally" about the conspiracy to an undercover agent. The statements, which were "narrations of things [the conspirators] had done in the past," were part of the declarant's attempts "to impress [the agent] in order to facilitate a new deal involving a new conspiracy that did not include appellant." *Id*. at 725, 727. Those statements were not admissible under Rule 801(d)(2)(E) because they were not "in furtherance of" the charged conspiracy. *Id*. at 727.

Similarly, in *Eubanks*, the Ninth Circuit held inadmissible various statements made by a co-conspirator to his common-law wife. 591 F.2d at 520. The statements detailed plans to buy drugs in various locations from various people. *Id*. The wife was not involved in the conspiracy at the time, although she later joined. *Id*. Nevertheless, the Court held that the statements did not meet the "in furtherance" element of Rule 801(d)(2)(E). The co-conspirator "was not seeking to induce [his wife] to join the conspiracy and his statement did not assist the conspirators in achieving their objectives." *Id*. Rather, "he was merely informing his common-law wife about his activities." *Id*.

A number of the statements described in the government's disclosure fail to qualify as co-conspirator statements on their face. Summary No. 44 describes the recorded statement made by Co-Defendant Jaquain Young to an inmate informant on June 18, 2014. At the time, Young was in custody following his indictment for (1) attempted enticement of a minor to engage in violation of 18 U.S.C. § 2422(b); and (2) attempted enticement of an individual to travel for prostitution in violation of 18 U.S.C. § 2422(a). *United States v. Young*, No. 13–cr–00229–EMC (N.D. Cal. filed Mar. 13, 2013). According to the disclosure:

> Defendant Young made a number of admissions concerning himself and other members of CDP. These include statements about the murder of Jelvon Helton and the FBI investigation into that murder; statements about his girlfriend's attempts to conceal evidence; statements about himself and other members possessing and hiding guns; statements about himself and other members committing murder; statements about the RICO case that his fellow gang members had been charged with and whether Young would also be charged.

Ex. B at 9.

Rule 801(d)(2)(E) is inapplicable to Young's statements here, for several reasons. First, the alleged conspiracy had ceased to exist as of June 2014. Mr. Gilton was arrested July 4, 2012, charged in state court, and initially indicted here on November 21, 2013. In addition, the Second Superseding Indictment alleges overt acts only up to December 17, 2013. By the time of Young's statements, all of the defendants, like Young, were in government custody. The statements were therefore not made "during the pendency of the conspiracy." *Eubanks*, 591 F.2d at 519.

Even assuming, arguendo, that the conspiracy was ongoing, the statements were not made "in furtherance of" it. The statements merely narrated past events and, as in *Fielding*, appear to have been made for the purposes of "impressing" the informant, not advancing the goals or objectives of the conspiracy. The notion that Young somehow intended to further the conspiracy by airing all its supposed secrets—describing a litany of past crimes allegedly committed by Mr. Gilton and others—is wholly unrealistic.

Moreover, as in *Eubanks*, there is nothing to indicate that Young sought to recruit the informant into the conspiracy. Nor is there anything suggesting that Young sought to conceal the existence of the conspiracy. The statements themselves are nothing more than "casual admissions" made to someone Young thought he could trust. *See Fielding*, 645 F.2d at 725. The alleged conspiracy was in no way "furthered" by his jailhouse admissions.

Other statements summarized in the government's disclosure are also inadmissible on their face. These include: Summary Nos. 2, 4, 5 (communications between Charles Heard and Gary Owens from August 8 to August 15, 2008), 9 (letter written by Esau Ferdinand), 10 (letter written by Ijeoma Ogbuagu), 12–13 (letters written by Reginald Elmore on August 31 and September 19, 2012), 16, 18–22 (text messages by Esau Ferdinand), 27, 30, 32, 33, 35, 36 and 38 (text messages between Jaquain Young and women described as prostitutes on various dates after July 4, 2012). Ex. B at 4–8. Nos. 9, 12 and 13 do not fall within the hearsay exception because they are "mere[] narrative declarations" among alleged co-conspirators, and do nothing to further the goals of the conspiracy. *See Yarbrough*, *supra*, 852 F.2d at 1535. Nos. 2, 4 and 5 likewise consist of mere narrative declarations: the exception is even less applicable to those statements since Gary Owens, the man to whom Heard was speaking, is not alleged to be a CDP member.

Nos. 16 and 18–20 consist, at most, of "casual admission[s] of culpability" to third parties, some unknown, and are therefore also inadmissible: indeed, it appears from the summaries that nothing of substance was admitted. *See Fielding*, 645 F.2d at 726.

Although Ferdinand is listed as the "Declarant" in Summary Nos. 21–22, the only relevant statements appear to have been written by a party whose identity is unknown, and therefore cannot qualify as a co-conspirator for hearsay purposes. *United States v. Mouzin*, 785 F.2d 682, 692–93 (9th Cir. 1986) ("Knowledge of the identity of the declarant is essential to a determination that the declarant is a conspirator whose statements are integral to the activities of the alleged conspiracy."). Finally, Nos. 27, 30, 32, 33, 35, 36 and 38, text messages exchanged between defendant Young and a woman described as a prostitute, do not fall within the hearsay exception because they do not facilitate prostitution, arrange payment, or otherwise further the goals of the alleged conspiracy.

The remaining statements summarized in the government's disclosure (Nos. 1–8, 10–11, 14–17 and 23), although not objectionable as described, should not be admitted until the government first establishes by preponderance of the evidence that the elements of FRE 801(d)(2)(E) have been satisfied.[3] Although a pretrial evidentiary hearing is not required, a hearing is requested here because of the number of statements involved and because many of the summaries do not contain sufficient detail to allow the Court to rule on the admissibility of the statements. *See Bourjaily*, 483 U.S. at 176 n. 1; *United States v. Tamez*, 941 F.2d 770, 775 (9th Cir. 1991); *see also United States v. James*, 590 F.2d 575 (5th Cir. 1979) (suggesting that a pre-trial determination is appropriate). Without a pre-trial hearing on the admission of the statements, a tremendous amount of in-trial time will be used to resolve these issues, causing interruptions in the presentation of evidence to the jury.

*///*

*///*

---

[3] The defense is operating under the assumption that the government is only seeking to introduce those portions of the extrajudicial statements that are described in the forty-four summaries. If the government seeks to introduce other portions of the statements, Gilton may have additional objections.

**IN LIMINE MOTION NO. 4: STATEMENTS OF CO-DEFENDANTS AND ALLEGED UNINDICTED CO-CONSPIRATORS NOT PREVIOUSLY DISCLOSED AND SUMMARIZED BY THE GOVERNMENT IN ITS NOVEMBER 24, 2015 LETTER (EXHIBIT B) SHOULD BE EXCLUDED**

This Court's Order Setting Pre-Trial and Trial Schedule (Dkt. 353) directed the government to produce co-conspirator statements on or before November 23, 2015. In addition, Local Rule 16–1(c)(4) requires that the government disclose "[a] summary of any statement the government intends to offer under F. R. Evid. 801(d)(2)(E) in sufficient detail that the Court may rule on the admissibility of the statement." Pursuant to the Court's order and the local rule, the government provided the defense with summaries of forty-four alleged co-conspirator statements, as explained above. *See* Ex. B.

The government's exhibit list (Dkt. 926) includes numerous exhibits that consist of statements made by co-defendants or alleged unindicted co-conspirators. These statements are custodial interrogations, interviews, letters, text messages, notes, emails, telephone calls, phone messages, and plea transcripts. Admissibility against Gilton turns on whether they qualify as co-conspirator statements pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence. However, the vast majority of these statements were not mentioned in the government's co-conspirator statement disclosure.

The statements not previously disclosed in Exhibit B include the following: Exhibit Nos. 0050 (Gordon Statement), 0054 (Ferdinand Jail letter and envelope), 0055 (Ferdinand miscellaneous notes in jail property), 0073 (Gordon's Recorded Statement), 0087–90 (Facebook returns for Carmichael, Gordon, Carmichael, and Gordon), 0091 (Owens BOP Email 10-25-11-1), 0092 (Owens BOP Email Content), 94 (BOP Report), 0103 (BOP info re calls to Owens), 0106 (Facebook, unidentified), 0107 (Phone Download Report–Ferdinand), 0108 (Phone Download Report–Vernon Carmichael), 0111 (Vernon Carmichael interview), 0117–18 (Facebook Returns – Carmichael and Gordon), 0128 (Greg Walker Jail Calls 10-01-11 to 10-26-2011), 0144 (Jail Calls), 0166– 0169 (rap songs and unidentified YouTube videos),0170 (Daryl

Jones letter to Charles Heard), 0172 (Charles Heard letter to Ijeoma Ogbuagu)[4], 0174 (Ogbuago letter to Charles Heard 9_7_2011)[5], 0177 (Ijeoma Ogbuagu Note), 0178–0180 (rap videos), 0197 (SFSO Classification Interviews with Defendants and various unindicted CDP members)[6], 0215 (Transcript of plea by Heard), 0232 (unidentified statement), 0289 (25–cd–02 Interview), 0290 (Interview Adrian Gordon), 0302 (Baxter Bradley Interview), 0303 (Reginald Elmore Interview), 0325 (Daryl Jones Interview), 0326 (Esau Ferdinand Interview), 0327 (Marzette Parker Interview), 0328 (Monzell Harding Interview), 0329 (Vernon Carmichael Interview), 0330 (Frederick Maye Interview), 0341 (Transcript – Guilty Plea by Williams), 0364 (CD–Deron Cheeves Interview), 0365 (CD–Deron Cheeves & Quinci Green Interview), 0366 (CD–Gregory Walker Interview),0391 (27 CDs–Jail Calls), 0399 (Deron Cheeves Interview), 0400 (Elmore Interview), 0401 (Quincy Green interview first), 0402 (Quincy Green interview 2nd), 0403 (Quincy Green interview 3rd), 0404 (Green and Cheeves recording),0414 (Myspace printouts), 0429 (Gregory Walker jail calls 01-10-2011), 0430 (Jail calls Gregory Walker 02-26-2011 to 9-26-2011), 0440 (GW–0221 Jail Calls), 0443 (Jail Calls), 0444 (Interview with Julius Hughes), 0507 (Phone Dump Kyocera Metro PCS, 08-14-2008), 0517 (Victim Phone Downloads), 0544–0551 (Wire calls between Charles Heard and Gary Owens)[7], 0559 (Heard's phone messages), 563 (Jail calls incident to booking), 0565 (Jail calls: 415-947-9206, 415-678-0010, 415-410-4832), 0567 (phone extraction), 0574 (Cell phone extraction report – 415-577-3197), 0582 (Phone download – 415-568-7552), 0583 (Charles Heard Jail Calls – 7/28/09-8/5/09), 0594 (04–CD–01 Jail Calls), 0595 (04–CD–02 Phone Download), 0596 (Harding Interview), 0632

---

[4]The government disclosure (Ex. B) lists a letter from Heard to Ogbuagu, dated June 29, 2011, as Summary No. 11. Because the government did not include the date of the letter listed as Exhibit No. 0172, the undersigned cannot determine whether the exhibit is the same letter.

[5]The government disclosure (Ex. B) includes a letter from Ogbuago to Heard dated May 15, 2011 as Summary No. 10, not a letter dated September 7, 2011.

[6]This Court previously ruled that Gilton's statement regarding gang affiliation during the jail classification process was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and was therefore inadmissible. Similar motions made by other defendants are being held in abeyance until the Ninth Circuit decides the government's appeal.

[7]The exhibit list includes six wire calls between Heard and Owens on August 15, 2008, but the government disclosure (Ex. B) only notices three (Summary Nos. 3–5).

(Metro PCS–Text Messages), 0648 (03–Jail Calls), 0656 (Phone download – Baxter Bradley), 0657 (Phone download – Monzell Harding), 0658 (Phone download – Vernon Carmichael), 0663 (110893533 – Phone Exam Report), 0666 (Jail Calls), 0667 (Gordon Interview), 0680 (Transcript of Robeson Interview), 0685 (Robeson Interview), 0686 (One statement), 0698 (Phone download of UC phone containing texts with Robeson), 0701 (MMS messages traded between Robeson and the UC), 0702 (Facebook messages with Robeson), 0707 (Deleted text messages recovered from the UC phone), 0708 (Text messages traded between the UC and Robeson from UC phone), 0709 (MMS messages traded between the UC and Robeson from UC phone), 0719 (SMS and MMS texts traded between the UC and Robeson – combined),[8] 0731 (email and letter from Facebook), 0735 (Printout of Google Voice text messages between the UC and Jaquain Young), 0737 (CD–2 Phone calls between the UC and Young), 0739 (CD–Kik messages), 0742 (Google Voice text messages provided by the UC), 0743 (Facebook messages between the UC and Young provided by the UC), 0748 (CD– Emails), 0749 (CD–Jail calls), 0750 (KIK Message), 0753 (Phone download of UC Blackberry containing texts with Young), 0754 (Phone download of UC Blackberry containing texts with Young), 0755 (Phone download of UC Metro PCS phone containing texts with Young), 0756 (Text messages recovered from Young's Sprint phone between the UC Blackberry and Young), 0757 (Text messages recovered from Young's Sprint phone between the UC Google Voice and Young), 0758 (MMS messages recovered from Young's Sprint phone between the UC and Young), 0760 (Facebook messages between the UC and Young from UC Facebook account "Katie Marie"),[9] 0768 (Young rap song),

---

[8] Summary No. 43 of the government disclosure is "All SMS, MMS, Facebook and phone conversations between Robeson and the UC regarding prostitution" occurring on or about October 2102. *See* Ex. B at 8. Counsel is uncertain whether Exhibits 0698, 0701, 0708, 0709, 0719 are referenced in Summary No. 43 since the government did not include dates for these exhibits in its list.

[9] The government disclosure includes summaries of nineteen statements made by Jaquain Young (Summary Nos. 24–42) regarding his alleged involvement in pimping. The disclosure specifies the approximate date on which each statement was made. Ex. B at 7–8. In the exhibit list, however, the government provides no dates with respect to any of the exhibits relating to statements made by Young. Due to the vagueness of the exhibit list, it cannot be determined whether Exhibits 0731, 0735, 0737, 0739, 0742–0743, 0748–0750, 0753– 0758, and 0760 are referenced in the disclosure.

0774 (Emails), 0783 (Text Message Photographs), 0790 (Email–Re Ferdinand), 0791 (Email–Re Norry), 0792 (Email–Video Canvass), 0796 (Norry phone report), 0811 (Facebook Messages – Katelyn Wagner – UC Facebook Account), 0815 (Telephone Download–Esau Ferdinand), 0819 (Blackberry SMS), 0823 (Jail Calls Jaquain Young), 0824 (32–cd–24 Jail Calls – Esau Ferdinand – Incidental to Booking), 0825 (32–cd–25 JY cell 408-375-7277 0 2012-345657-0001), 0847 (Data from Young's Sprint Phone), 0848 (Data from cell phone), 0856 (All Audio recordings between Young and CS (excised)), 0858 (Enhanced Audio from ERF–FAVIAU (Forensic Audi/Video & Image Analysis Unit – 2/6/2014 from Glenn Dyer Detention Facility between CW and Jaquain Young)), 0860 (Enhanced Audio from ERF–FAVIAU (Forensic Audi/Video & Image Analysis Unit – 1/15/2014 from Glenn Dyer Detention Facility between CW and Jaquain Young)), 0861 ((U) 2/6/2014; CW with Jaquain Young at Glenn Dyer Detention Facility), 0862 ((U//FOUO) Audio recording on 2/5/2014 from Glenn Dyer Detention Facility between CW and Jaquain Young), 0863 ((U) Audio recording from Glenn Dyer Detention Facility from 01/15/2014 with CW, Jaquain Young and unknown); 0864 ((U) 1/14/2014; Audio recording from Glenn Dyer Detention Facility), 0865 ((U) Audio recorded from 01/10/2014–01/12/2014 from Glenn Dyer Detention Facility)[10], 0867 (Phone call to Barry Gilton from SFPD Inspector Kevin Jones at 8:52), 0868 ((Phone call to Barry Gilton from SFPD Inspector Kevin Jones at 11:33), 0869 (Phone call to Barry Gilton from SFPD Inspector Kevin Jones at 12:38), 0870 (Phone Message left by Barry Gilton to SFPD Inspector Kevin Jones at 2:32), 0871 (Phone call to Barry Gilton from SFPD Inspector Kevin Jones at 2:48), 0876 (7 jail calls placed by Lupe Mercado), 0879 (Phone Data – Download of Alfonzo Williams' Blackberry cell phone), 0882 (3 jail calls placed by Lupe Mercado), 0883 (Jail Calls–7 jail calls placed by Alfonso Williams), 0885 (Jail Recordings – 5 with Lupe Mercado and remainder with Alfonso Williams), 0886 (16 Jail Call Recordings – 12 with Lupe Mercado, 4 with a male), 0894 (Interview of Barry Gilton), 0896 (Interview of Lupe Mercado),0904 (Interview of Alfonzo Williams), 0911 (Cellbrite

---

[10]Summary No. 44 of the government's disclosure describes a recorded conversation between Young and an inmate informant on June 18, 2014. Exhibit B at 9. Exhibits 0856, and 0858–0865 describe recorded jail conversations involving Young on other dates, and are therefore not included in the disclosure.

Examination Report, Haggarty) 0914 (Cellbrite Exam/report), 0916 (Barry Gilton.doc – Transcript of recorded statement – Barry Gilton), 0917–0929 (Transcripts of Lupe Mercado recorded statements, 6/4/2012, 6/9/012, and 6/16/2012), 0973 (Summaries of calls made by Lupe Mercado), 0976 (Printout of Leticia Gilton's text messages), 0980 (Emails), 1008 (Jail Calls for 415-554-2380 frm 6/18/12–01/02/12), 1049 (Transcript of recorded statement of Lupe Mercado 6-9-12), 1053 (Transcript of recorded statement of Barry Gilton), 1082–83 (download of Williams' phone), 1088 (Note containing telephone numbers possessed by B. Gilton in jail), 1090 (report re Barry Gilton's phone), 1091 (report re Mercado phone), 1096 (Download of Williams' phone) 1142 (CD containing the SFPD download of Alfonzo Williams' Blackberry cellular phone).

Since the exhibits described above were not included in the government's letter disclosing co-conspirator statements (Ex. B), such evidence should not be admitted against Gilton at the trial, even if they meet the elements of Rule 801(d)(2)(E). Moreover, the government should only be allowed to introduce these statements at Gilton's trial if they qualify as admissions against the declarants and the declarants are being tried in the same trial as Gilton. The Court should then instruct the jury on the limited admissibility of the statements.

**IN LIMINE MOTION NO. 5: EVIDENCE REGARDING GILTON'S FIREARM POSSESSION ON APRIL 19, 2007 SHOULD BE EXCLUDED BECAUSE THE GOVERNMENT DID NOT PROVIDE TIMELY NOTICE OF ITS INTENT TO INTRODUCE SUCH EVIDENCE**

In its exhibit list, the government identifies fourteen exhibits (Nos. 0235–0248) related to the possession of a firearm by Gilton on April 19, 2007. Dkt. 926 at 9. The government has not previously provided notice of its intent to introduce evidence of this crime. No reference is made to the gun possession incident in the Second Superseding Indictment or in any of the government's disclosures identifying acts it intends to introduce at trial.

The Second Superseding Indictment identifies thirty-five overt acts allegedly committed in furtherance of the RICO conspiracy, charged in Count One. *See* Indictment at ¶ 17. Three overt acts involve crimes allegedly committed by Gilton – possession of a loaded firearm in a vehicle on April 6, 2007 (*id.* at ¶ 17(m)), possession of 9.84 grams of cocaine base on May 1,

2008 (*id.* at ¶ 17(o)), and murder of Calvin Sneed on June 4, 2012 (*id.* at ¶ 17(cc)). The indictment makes no reference to Gilton's possession of a firearm on April 19, 2007 as an overt act in furtherance of the conspiracy.

This Court's initial Order Setting Pre-Trial and Trial Schedule required that the government produce "evidence of other racketeering acts not described in the Second Superseding Indictment" on or before October 21, 2015. Dkt. 353 at 4. On November 10, 2015, Co-Defendant Williams filed a Motion for Racketeering Acts to be Used at Trial, requesting that the government identify what acts referenced in the discovery produced by October 21, 2015 it intended to use. Dkt. 575 at 3. On November 24, 2015, the government provided a letter to the defense stating, "In addition to each of the overt acts listed in the Second Superseding Indictment, the government is aware of the following prior bad acts by the named defendants that may be subject to admission at trial under Rule 404(b)." Ex. C (Letter dated November 24, 2015). The letter listed thirteen events by date and SFPD Incident Report Number. The defense was also provided with each incident report. None of the events identified in the government's letter involved Gilton's possession of a firearm on April 19, 2007.

On December 3, 2015, the government filed an opposition to Williams' request for a list of racketeering acts. Dkt. 675. In its opposition, the government claimed it had put the defense on notice of the incidents it may seek to introduce as enterprise evidence at trial via the list of overt acts in the Second Superseding Indictment and materials concerning other incidents produced in discovery. The government then listed examples of the discovery materials that discussed other acts evidence. Dkt. 675 at 2. Again, the government made no mention of Gilton's possession of a firearm on April 19, 2007 as an additional act it intends to prove at trial.

On December 30, 2015, in its ruling on Williams' motion, this Court ordered that the government clarify which other racketeering acts it intends to use at trial. The government was given until January 15, 2016 to "provide a good faith list of additional acts it intends to prove at trial in the form of a limited bill of particulars." Dkt. 758 at 3.

In response to that order, the government filed United States' Further Statement Regarding Additional Acts the Government Intended to Introduce at Trial. Dkt. 808. In that

pleading, the government stated that it intends to introduce evidence of the overt acts listed in the Second Superseding Indictment as well as other acts referenced in "numerous filings and disclosures the government has provided to the defense during the course of this case." Dkt. 808 at 1. The government also listed twenty-one additional other crimes it intends to introduce at the trial. *Id.* at 2–4. Again, the government made no mention of Gilton's possession of a firearm on April 19, 2007 as an additional act to be proven at trial.

Subsequent to the government's filing of its further statement regarding additional acts, this Court asked that the government specifically identify all of the additional acts it intends to introduce at trial in a single pleading, rather than incorporate by reference other pleadings or refer generally to the discovery. On January 29, 2016, the government filed United States' Consolidated Statement Regarding Additional Acts the Government Intends to Introduce at Trial. Dkt. 851. This pleading specifically described all of the incidents the government intends to prove at trial. Again, the government made no mention of Gilton's possession of a firearm on April 19, 2007.

Since the government has not provided timely notice of its intent to introduce evidence of Gilton's possession of a firearm on April 19, 2007, all evidence regarding this incident should be excluded.

**IN LIMINE MOTION NO. 6: EVIDENCE OF NOTICED "ADDITIONAL ACTS," INCLUDING GILTON'S POSSESSION OF A FIREARM ON APRIL 6 2007 AND POSSESSION OF DRUGS ON MAY 1, 2008, SHOULD BE EXCLUDED AS IRRELEVANT, UNDULY PREJUDICIAL AND CUMULATIVE**

Gilton moves to limit the amount of evidence of "additional acts" (that is, uncharged acts by him, and acts by other defendants and unindicted alleged co-conspirators) that the government may offer against him at trial. Some of them plainly have no connection to the alleged enterprise, and are therefore irrelevant. Other acts have only a marginal connection, and are far more likely to prejudice the jury against him than they are to prove the existence of a conspiracy or a pattern of racketeering activity. Moreover, the evidence the government intends to present is needlessly cumulative. As few as two acts of racketeering activity can establish a "pattern" for RICO purposes. 18 U.S.C. § 1961(5). But according to its pleadings, the government intends to prove at

15

least seventy-eight discrete acts. *See* Indictment at ¶ 17; Dkt. 851. The Court should impose a reasonable limit of five additional acts, and should require the government to establish the relevance of each act to the alleged conspiracy before presenting evidence of it to the jury.

Uncharged acts, including acts committed by others, may be relevant to prove the existence and workings of a racketeering conspiracy. But before offering evidence of such acts, the government must make an "affirmative showing how proof of each incident . . . constitutes proof of the scope of a charged conspiracy." *United States v. Cervantes*, — F. Supp. 3d —, No. 4:12–cr–792, 2016 WL 1029585, *4 (N.D. Cal. 2016) (citing *United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004)). Even if the government clears this hurdle for a given "additional act," the evidence may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or the other factors listed in Rule 403 of the Federal Rules of Evidence. In *United States v. Gotti*, 399 F. Supp. 2d 417, 418–421 (S.D.N.Y. 2005), for example, the district court found that the tit-for-tat murder of a Mafia hitman was relevant to prove the nature of the Gambino Family enterprise, because it was carried out to defend the enterprise's reputation and further its goals. The court nevertheless excluded evidence of the murder under Rule 403, reasoning that it would be cumulative with testimony about other murders and violent crimes, and that its "slight" probative value was outweighed by the risk that the jury would infer a propensity to violence. *Id.*

Here, the government has not yet made an "affirmative showing" that any of the acts it lists are proof of the scope of the conspiracy, and in many cases, it is impossible to see how it could. Take, for example, the bullet point at the bottom of page 2 in the government's Consolidated Statement Regarding Additional Acts. Dkt. 851. In that single entry, the government states that it intends to offer evidence of the "various acts committed by unindicted CDP members" contained in 1,987 pages of Gang Task Force police reports (BG087628–89614).[11] *Id.* at 2. Those pages contain more than two hundred different incident

---

[11]It does not specify which. As the Court observed when ordering the government to produce a good faith list of additional acts it intended to prove, "It is unclear . . . what crimes from the . . . wiretap materials or police reports from the gang task force it intends to use." Dkt.

reports. Some of those reports date back to 1995, when Antonio Gilton was nine years old, and are scarcely probative of the scope and workings of the alleged enterprise he is alleged to have joined many years later. *See* Ex. A at ¶ 5. Many of them have no conceivable relevance: for example, the ones that relate to fights between schoolchildren in the late 1990s which did not result in any arrest. *Id.* Likewise, several prior acts the government lists individually—for example, Williams' solo narcotics possession in 1997 (when Gilton was 11), Ferdinand's solo narcotics possession in November 2000, and Heard and Elmore's solo firearms possessions in February 2005 and April 2007 respectively—have so little apparent connection to the conspiracy the government alleges that they must also be excluded on relevance grounds.

The government has only listed two prior acts committed by Gilton himself: possession of a firearm in his car's center console on April 6, 2007 (Indictment at ¶ 17(m)), and possession of 9.84 grams of cocaine base on May 1, 2008 (*id.* at ¶ 17(o)). Neither incident is relevant to the alleged conspiracy or probative of Gilton's participation in it. In both cases, Gilton was by himself when he was arrested; neither of the arrests took place in the Western Addition, where the government claims that CDP principally operates. The gun possession occurred in the Lakeview and the drug possession in the Tenderloin.[12] No evidence links either the firearm or the drugs to the alleged enterprise, any other defendant, or indeed any other person. Many people illegally carry guns or drugs without being involved in an overarching criminal conspiracy. For that reason, solo possession of a firearm or of narcotics, without more, does not tend to prove the existence of a multi-year, multi-member racketeering enterprise-still less membership in a named, charged enterprise.

Even supposing these two acts were relevant, whatever probative value they could offer is slight. Indeed, possession of a firearm is not even included in the definition of racketeering activity under 18 U.S.C. § 1961(1). The minimal probative value would be dwarfed by their prejudicial effect. Gilton is charged with a shooting murder, in which it is alleged that the killers

---

758 at 3. The government's Consolidated Statement does not add any clarity.

[12] *See* Ex. D (April 6, 2007 incident report); Ex. E (May 1, 2008 incident report).

traveled to and from the scene by car. If the jury hears that Gilton has previously been arrested for possession of a firearm in his car, no instruction could prevent them from thinking that he typically drives around San Francisco armed with a gun, and that the instant charge is simply a "return to form." This improper inference of propensity would cause severe prejudice. Likewise, a prior arrest possession of crack cocaine may lead the jury to inferences about Gilton's lifestyle and character that will get in their way of their ability to fairly assess the evidence. Both acts should therefore be excluded.[13]

The same goes for the additional acts that do not involve Gilton. Even where the government can make a threshold showing of relevance, Rule 403 counsels exclusion of the evidence. Gilton cannot fairly be expected to meet dozens of discrete accusations that were never the subject of a conviction, and with which he was not personally involved. The longer ago the alleged incidents, the harder it is to meaningfully contest the government's evidence, and the greater the corresponding prejudice. This is so despite the fact that Gilton is charged with murder. *See Gotti*, 399 F. Supp. 2d at 420. Moreover, the government's presentation is needlessly cumulative. Among more than seventy-eight additional acts disclosed by the government, there are five homicides (not including the charged Calvin Sneed homicide), twelve instances of gun possession, and nineteen robberies. The legitimate purposes for which "additional acts" evidence is admissible—proving the existence of an enterprise, a conspiracy, or of a pattern of racketeering—can be achieved with a small selection of the acts the government lists. Once it has put on evidence of three or four serious crimes committed by alleged CDP members, putting on evidence of fifty more, including an armed robbery spree by other defendants against members of the public, serves little purpose other than inflaming the jury against anyone even tangentially associated with the perpetrators. A needlessly cumulative presentation on one element of the conspiracy and VICAR charges will not only waste time, but also risks impairing the jury's ability to judge whether the government has met its burden on the other elements.

---

[13]Nor are the incidents admissible under Rule 404(b) of the Federal Rules of Evidence. Arrests for possession of a gun and cocaine, more than four years before the charged homicide, do not tend to prove the killer's identity, Gilton's intent, or any other relevant fact.

1    Gilton proposes a limit of five additional acts in order to strike "the appropriate Rule 403

2    balance" in this case. *See United States v. Reyes*, No. 2:11-cr-77, 2014 WL 4722505, *18 (N.D.

3    Ind. Sep. 23, 2014) ("appropriate . . . balance" struck where government introduced evidence of

4    three uncharged murders and did not pursue ten others.) The acts should be chosen to achieve the

5    government's legitimate evidentiary objectives without causing undue prejudice to Gilton. The

6    Court should order the government to make an election of the five additional acts in advance of

7    trial so that Gilton can adequately prepare his defense. Moreover, it should not permit the

8    government to introduce evidence of any additional act until it has made the threshold showing

9    of relevance described in *Cervantes*. *Supra*, at *4.

10   **IN LIMINE MOTION NO. 7: THE GOVERNMENT SHOULD BE PROHIBITED FROM
     USING PRIOR CONVICTIONS TO IMPEACH GILTON, SHOULD HE TESTIFY**

11

12   Gilton moves to bar the government from impeaching him, should he testify, with his

13   2007 felony conviction for unlawful possession of a concealed firearm or his 2008 felony

14   conviction for possession of cocaine base for sale.

15   The admissibility of felony convictions for the impeachment of a defendant on the stand

16   is governed by Rule 609(a)(1)(B) of the Federal Rules of Evidence.[14] It puts the burden on the

17   prosecution to establish that the conviction's probative value in attacking the defendant's

18   truthfulness outweighs the prejudice it will cause him. *United States v. Bagley*, 772 F.2d 482,

19   487 (9th Cir. 1985). The source of the prejudice is simple: when exposed to prior convictions, the

20   jury may see the defendant as "a 'bad' person" who is predisposed to commit crimes. *See Gordon

21   v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967) (Burger, J.). Moreover, where the prior

22   conviction is sufficiently similar to the charged crime, exculpatory evidence may be

23

24       [14]A more permissive rule applies to crimes involving "a dishonest act or false statement."
     *See* Fed. R. Evid. 609(a)(2). But that does not embrace all crimes involving a lack of probity or
25   integrity–it is narrowly interpreted to cover "crimes that factually or by definition entail some
     element of misrepresentation or deceit." *United States v. Brackeen*, 969 F.2d 827, 831 (9th Cir.
26   1992) (en banc) (per curiam). Bank robbery, for example, is not a crime of dishonesty. *Id.* Nor is
     smuggling hashish into the United States: it is merely a "surreptitious activity," not necessarily
27   involving misrepresentation. *United States v. Mehrmanesh*, 689 F.2d 822, 833–34 (9th Cir.
     1982); *accord United States v. Gross*, 603 F.2d 757, 758–59 (9th Cir. 1979) ("narcotics offenses"
28   not crimes of dishonesty).

"overwhelmed by a jury's fixation on the human tendency to draw a conclusion which is impermissible in law: because he did it before, he must have done it again." *Id*. at 488. Unless the prosecution shows that the conviction's legitimate probative value outweighs the risk that the jury will draw these damaging inferences of propensity, the Court must exclude the conviction.

The Court considers five factors in judging whether the prosecution has met this burden: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *United States v. Jimenez*, 214 F.3d 1095, 1098 (9th Cir. 2000) (citing *United States v. Cook*, 608 F.2d 1175, 1185 n. 8 (9th Cir. 1979) (en banc)). The fourth factor refers to the risk that the defendant's right to testify in his own defense might be chilled by the threat of impeachment: as then-Judge Burger explained, "[e]ven though a judge might find that the prior convictions are relevant to credibility and the risk of prejudice to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment." *Gordon*, 383 F.2d at 940.

In this case, all five factors cut in favor of exclusion. Neither possession of cocaine base for sale nor possession of a concealed firearm are crimes of dishonesty, and neither have much rational bearing on a person's truthfulness. *See United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971) (error to allow impeachment with conviction for importation of narcotics, in violation of former 21 U.S.C. § 174, since it "negates credibility only slightly" and is not "particularly relevant to in-court veracity"). Both convictions are eight years old, just short of the presumptive ten-year limit that Rule 609 imposes, and Gilton has not suffered any felony convictions since. The convictions are both prejudicially similar to the charged conduct, since the conspiracy described in the Indictment involves both guns and drugs.[15] Gilton's testimony will shed light on

---

[15]For the reasons set out in Gilton's In Limine Motion No. 6, the Court should not allow evidence of his prior acts to be used as substantive evidence of the conspiracy. But even if it does allow such evidence, the convictions should still be excluded. Only the prior act, not the

his connection to the co-defendants and his defense to the charged homicide in a way that no other evidence likely could. Finally, although credibility is always important, it is by no means the central issue: in light of all the evidence the government plans to put on, the case is unlikely to "hinge[] on a credibility choice" in which the jury must "decide whether to believe the [defendant] or the police officers." *Cf. United States v. Brito*, 427 F.3d 53, 64 (1st Cir. 2005).

The Court should bar impeachment using either conviction, or using any conviction the government has not disclosed. In the alternative, in order to minimize the inevitable prejudice, the Court should permit the government to ask only whether Gilton has ever been convicted of a felony, and bar impeachment using multiple felony convictions or the nature of the convictions.

**IN LIMINE MOTION NO. 8: THE GOVERNMENT SHOULD NOT BE ALLOWED TO USE GUILTY PLEAS OR CONVICTIONS OF ITS WITNESSES AS SUBSTANTIVE PROOF OF GILTON'S GUILT OF THE RICO CONSPIRACY**

It is expected that the government will call witnesses who have previously pled guilty to crimes. These witnesses may have pled guilty to the same conspiracy charge that is alleged in Count One against Gilton. In this motion, Gilton seeks an order from the Court precluding the government from using such guilty pleas or convictions as substantive proof of Gilton's guilt.

The law on this point is well settled. The guilty plea or conviction of a witness "may not be offered by the government and received over objection as substantive evidence of the guilt of those on trial." *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981). Such evidence is only admissible to allow the jury to assess the credibility of the witness. *Id.*; *see also United States v. Smith*, 790 F.2d 789, 793–94 (9th Cir. 1986).

Consistent with this authority, if the government in this case seeks to introduce evidence of a witness' guilty plea or conviction that evidence must be limited in purpose. The jury must be instructed accordingly.

///

conviction, is relevant to prove a conspiracy. *Cf. United States v. Taylor*, 210 F.3d 311, 316-17 (5th Cir. 2000) (convictions of unindicted co-conspirator not admissible as intrinsic evidence in support of conspiracy charge, since "[c]riminal judgments are not acts in furtherance of a conspiracy"). Allowing the government to impeach Gilton with the convictions as well as prove his guilt with the underlying acts would compound the prejudice to him, and make an improper inference of propensity all but unavoidable.

**IN LIMINE MOTION NO. 9: MUG SHOTS SHOULD BE EXCLUDED**

Government Exhibit 1086 is described on the exhibit list as "Mugshots for Williams, A Gilton, B Gilton and Mercado." Gilton moves to exclude his mug shot as well as mug shots of co-defendants from being admitted into evidence pursuant to FRE 401 and 403.

In *United States v. Jaeger*, 298 F.2d 1003, 1009 (D. Haw. 2003), the district court explained that courts "have generally held that it is error to admit an obvious mug shot from a prior arrest." The rationale for this rule was discussed in *United States v. George,* 160 Fed.Appx. 450, 456 (6th Cir. 2005) (unpublished). According to the Sixth Circuit,

> Trial courts generally exclude mug shots from evidence. Mug shots, like evidence of prior convictions, are usually not admissible under Fed.R.Evid. 404(b) (evidence of other crimes, wrongs, or acts). Even if relevant, a mug shot tends to make people believe that the person is "bad," and therefore can be unfairly prejudicial. Fed.R.Evid. 403. Moreover, the visual impact of a mug shot, apart from mere references to a prior conviction, can leave a lasting, although illegitimate, impact on the jury. [Citation.] Accordingly, the use of mug shots at trial is highly disfavored.

*Id*.; *see also United States v. Castaldi*, 547 F.3d 699, 704 (7th Cir. 2008) ("Mug shots are generally not admissible at trial because they are indicative of past criminal conduct and thus barred by concerns about presenting evidence of a defendant's past criminal conduct to a jury").

Mug shots from prior arrests have been found admissible in very limited circumstances. Numerous Circuits have identified three prerequisites to the admission of a defendant's mug shot from a prior arrest: (1) the government must have a demonstrable need to introduce the photographs; (2) the photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and (3) the manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs. *United States v. Harrington*, 490 F.2d 487, 494 (2d Cir. 1973); *accord United States v. Carrillo-Figueroa*, 34 F.3d 33, 40 (1st Cir. 1994) (citation omitted); *United States v. Torres-Flores*, 827 F.2d 1031, 1037 (5th Cir. 1987) (citation omitted); *United States v. Castaldi*, 547 F.3d 699, 704 (7th Cir. 2008) (citation omitted); *United States v. Hines*, 955 F.2d 1449, 1455–56 (11th Cir. 1992) (citation omitted).

Here, since the government has not met the narrow criteria for admitting mug shots from

prior arrests, the general rule calling for exclusion should be followed.

**IN LIMINE MOTION NO. 10: EXCLUSION OF GRUESOME, UNDULY PREJUDICIAL PHOTOGRAPHS OF HOMICIDE VICTIMS**

The government's exhibit list includes crime scene, autopsy and medical examiner photographs from six different homicides, but does not specify which photographs it actually intends to use. See Dkt. 926, Exhibits 0095–96 (Donte Levexier homicide), 0470–73 and 0476–81 (Helton and Turner homicides), 0571–72 (Richard Barrett homicide), 0785–86 (Jelvon Helton homicide), and 0988–89 (Calvin Sneed homicide). Each exhibit represents an array of photographs.

In *Rivers v. United States*, 270 F.2d 435, 437–38 (9th Cir. 1959), the Ninth Circuit explained the rule regarding the admissibility of photographs that depict homicide victims:

> Such photographs should be excluded where their principal effect would be to inflame the jurors against the defendant because of the horror of the crime; on the other hand, if they have a probative value with respect to a fact in issue that outweighs the danger of prejudice to the defendant, they are admissible, and the resolution of this question is primarily for the trial court in the exercise of its discretion.

*Id.* (quoting *People v. Chavez*, 50 Cal. 2d 778 (1958)).

At present, hundreds of photographs of homicide scenes and victims, many of them quite gruesome, are designated as trial exhibits. Pursuant to *Rivers*, Gilton moves for an order that government provide a selection of photographs it intends to use to the Court and the defense, so that they can be reduced to a less prejudicial and overwhelming quantity. The court should then exclude those photographs that either unduly prejudicial, because of their gruesomeness, or cumulative, pursuant to Rules 401 and 403 of the Federal Rules of Evidence.

**IN LIMINE MOTION NO. 11: WITNESSES SHOULD BE EXCLUDED FROM THE COURTROOM WHEN NOT TESTIFYING**

Rule 615 of the Federal Rules of Evidence states that: "at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses . . . ." Gilton hereby requests that the Court issue such an order pursuant to Rule 615.

///

**IN LIMINE MOTION NO. 12: GOVERNMENT SHOULD BE ORDERED TO PROVIDE ADVANCE NOTICE OF WITNESSES TO BE CALLED AND INCIDENTS TO BE COVERED DURING A TRIAL WEEK**

It is anticipated that the trial of this case will be very lengthy and that the government will call many witnesses to testify about a myriad of different incidents. The government's initial witness list has 341 names on it. Its exhibit list identifies 1,255 exhibits, and the Second Superseding Indictment refers to thirty-five RICO acts. In total, the government has identified more than seventy-eight additional acts about which it intends to introduce evidence at the trial.

In order to allow for effective preparation by defense counsel and to avoid mid-trial continuances, the government should be ordered to provide the defense with weekly witness lists, identifying the witnesses to be called each day of the following week and the incidents that will be covered by the testimony. Similar procedures have been used in other lengthy trials and fall within "the court's inherent authority to manage its docket." *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (court has power to order filing of "finalized" government witness list and bar undisclosed government witnesses).

**IN LIMINE MOTION NO. 13: JOINDER**

Gilton moves to join in the in limine motions filed by co-defendants that are applicable to him.

DATED: April 6, 2016                                        Respectfully submitted,


                                                             /s/ Mark Goldrosen
                                                             MARK GOLDROSEN
                                                             Attorney for Antonio Gilton

24