WINSTON Y. CHAN, SBN 214884
  wchan@gibsondunn.com
JOSEPH R. ROSE, SBN 279092
  jrose@gibsondunn.com
CASSANDRA L. GAEDT-SHECKTER, SBN 280969
  cgaedt-sheckter@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

Attorneys for Defendant Paul Robeson

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:13-cr-00764-WHO |
| Plaintiffs, | **DEFENDANT PAUL ROBESON'S MOTIONS IN LIMINE** |
| v. | **Hearing:** |
| ALFONZO WILLIAMS, et al., | Date: May 27, 2016 |
| Defendant. | Time: 9:00 a.m. |
| | Place: Courtroom 4, 17th Floor |
| | Judge: Hon. William H. Orrick |

### NOTICE OF MOTIONS AND MOTIONS

To this Honorable Court; Brian J. Stretch, Acting United States Attorney for the Northern District of California; and Damali Taylor, William Frentzen, and Scott D. Joiner, Assistant United States Attorneys:

Please take notice that on May 27, 2016, at 9:00 a.m., in Courtroom 4 of the above-captioned court, located on the 17th Floor at 450 Golden Gate Avenue, San Francisco, California 94102, or as soon thereafter as may be heard, Defendant Paul Robeson will, and hereby does, move in limine for the following orders:

1.      Motion in Limine No. 1 to exclude evidence of Mr. Robeson's mere presence when others were found in possession of crack cocaine [exhibit numbers 343-44; witness numbers II-63, II-80, II-105, II-200].

2.     Motion in Limine No. 2 to exclude evidence of prior drug possession [exhibit numbers 245-47, 1251; witness numbers II-65, II-68, II-152].

3.     Motion in Limine No. 3 to exclude evidence of overt act 17.h [exhibit number 678; witness numbers II-8, II-53, II-82, II-113, II-137].

4.     Motion in Limine No. 4 to exclude evidence of overt act 17.i [exhibit numbers 679-86; witness numbers II-8, II-249].

5.     Motion in Limine No. 5 to exclude evidence of overt act 17.l [exhibit number 687; witness numbers II-8, II-61, II-92, II-108, II-148, II-243].

6.     Motion in Limine No. 6 to exclude incomplete evidence of text messages and Facebook communications between Mr. Robeson and SFPD Officer Julia Angalet [exhibit numbers 298-99, 701-09, 711, 719-20] as well as oral testimony about the contents of deleted communications [witness numbers II-7, II-79, II-179, custodian 11].

7.     Motion in Limine No. 7 to exclude Mr. Robeson's alleged Facebook profile and other Facebook material post-dating the charged conduct [exhibit numbers 702-06, 722].

8.     Motion in Limine No. 8 to exclude evidence of the defendant's tattoos under Federal Rules of Evidence 401 & 403 [exhibit number 12].

9.     Motion in Limine No. 9 to join the motions in limine filed by co-defendants that are applicable to Mr. Robeson.

Gibson, Dunn &
Crutcher LLP

1    These motions are brought pursuant to the Court's Order Revising Pre-Trial Schedule of

2   January 22, 2016, and are based upon this Notice, the attached Memorandum of Points and

3   Authorities, the Declaration of Winston Y. Chan filed concurrently herewith and exhibits thereto,

4   other applicable case law, records and files in the instant action, and any other matters as may be

5   adduced at the hearing of this motion.[1]

6

7   Dated: April 8, 2016

8                                      WINSTON Y. CHAN
                                       JOSEPH R. ROSE
9                                      CASSANDRA L. GAEDT-SHECKTER
                                       GIBSON, DUNN & CRUTCHER LLP
10

11
                                       By:  /s/ Winston Y. Chan
12                                               Winston Y. Chan

13                                     Attorney for Defendant Paul Robeson

14

15

16

17

18

19

20

21

22

23

24

25

26
    _____

27  [1]  Mr. Robeson endeavored to list the exhibits and witnesses applicable to each motion.  Mr.
    Robeson reserves the right to supplement the listed exhibits and witnesses because the
28  Government has yet to designate and identify exhibits and witnesses, failed to produce designated
    exhibits, and identified exhibits by invalid Bates numbers.

DEFENDANT PAUL ROBESON'S MOTIONS IN LIMINE
CASE NO. 3:15-CR-00127-WHO

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

I.    Motion in Limine No. 1 to Exclude Evidence of Mr. Robeson's Mere Presence When Others Were Found in Possession of Crack Cocaine [Ex Nos. 343-44; Witness Nos. II-63, II-80, II-105, II-200] ...................................................................1

    A.    Mr. Robeson's Alleged Presence Is Not Related to the Alleged CDP Enterprise ...................................................................................................................2

    B.    Admitting Mr. Robeson's Presence Will Cause Unfair Prejudice and Mislead the Jury ...............................................................................................3

II.   Motion in Limine No. 2 to Exclude Evidence of Prior Drug Possession [Ex Nos. 345-47, 1251; Witness Nos. II-65, II-68, II-152]...........................................................4

    A.    Mr. Robeson's Alleged Drug Possession Is Not Relevant to the Alleged CDP Enterprise ..............................................................................................5

    B.    Federal Rule of Evidence 404 Prohibits Evidence of Possession of Drugs for Personal Use to Show Conspiracy to Sell Drugs ........................................5

    C.    Admitting Evidence of Mr. Robeson's Drug Possession Will Cause Unfair Prejudice ...................................................................................................6

III.  Motion in Limine No. 3 To Exclude Evidence of Overt Act 17.h [Ex. Nos. 678; Witness Nos. II-8, II-53, II-82, II-113, II-137] ...........................................................7

    A.    The Evidence of Mr. Robeson's Alleged Conduct on August 6, 2005 Is Irrelevant .........................................................................................................7

    B.    The Evidence of Mr. Robeson's Alleged Conduct on August 6, 2005 Is Inadmissible Under Rule 404 ...................................................................8

    C.    Admitting Evidence of Overt Act 17.h Will Cause Unfair Prejudice ..........................9

IV.  Motion in Limine No. 4 To Exclude Evidence of Overt Act 17.i [Ex Nos. 679-86; Witness Nos. II-8, II-249] ..........................................................................................9

    A.    Mr. Robeson's Alleged Enticement on November 16, 2005 Is Not Relevant to the Alleged CDP Enterprise.........................................................9

    B.    Rule 404 Prohibits Evidence of Mr. Robeson's Alleged Enticement ........................10

    C.    Evidence of Mr. Robeson's Alleged Enticement Will Cause Unfair Prejudice ...................................................................................................11

V.   Motion in Limine No. 5 To Exclude Evidence of Overt Act 17.l [Ex. No. 687; Witness Nos. II-8, II-61, II-92, II-108, II-148, II-243]...........................................12

    A.    Mr. Robeson's Alleged Attempted Kidnapping Is Not Relevant to the Alleged CDP Enterprise.....................................................................12

    B.    Rule 404 Prohibits Evidence of Overt Act 17.l............................................................13

    C.    Admitting Evidence of Overt Act 17.l Will Cause Unfair Prejudice..........................14

Page

VI. Motion in Limine No. 6 to Exclude Incomplete Evidence of Text messages and Facebook Communications Between Mr. Robeson and SFPD Officer Julia Angalet [Ex. Nos. 698-99, 701-09, 711, 719-20] As Well As Oral Testimony About the Contents of Deleted Communications [Witness Nos. II-7, II-79, II-179, Custodian 11] .................................................................................................................. 14

 A. Factual Background ........................................................................................ 14

 B. The Court Should Exclude the Surviving Facebook Communications and Text Messages Because They Are Incomplete and Will Mislead the Jury ................... 16

  1. Admission of the Surviving Communications Will Violate the Doctrine of Completeness ........................................................................ 17

  2. Admission of the Surviving Communications Is Unfairly Prejudicial ................................................................................................ 18

 C. The Court Should Also Exclude Any Oral Testimony about the Contents of the Deleted Text Messages .......................................................................... 19

 D. In the Alternative, the Court Should Give an Adverse Inference As to the Government's Failure to Preserve Evidence ................................................... 20

VII. Motion in Limine No. 7 to Exclude Mr. Robeson's Alleged Facebook Profile and Other Facebook Material Post-Dating the Charged Conduct [Ex Nos. 702-06, 722] .................................................................................................................................. 22

VIII. Motion in Limine No. 8 To Exclude Evidence of the Defendant's Tattoos Under Federal Rules of Evidence 401 & 403 [Ex No. 12] .................................................... 24

IX. Motion in Limine No. 9 for Joinder .......................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

**Cases**

*Akiona v. United States,*
    938 F.2d 158 (9th Cir. 1991)......................................................................21

*Ashton v. Knight Transp., Inc.,*
    772 F. Supp. 2d 772 (N.D. Tex. 2011)........................................................21

*Byrnie v. Town of Cromwell,*
    243 F.3d 93 (2d Cir. 2001).........................................................................21

*Dees v. California State Univ., Hayward,*
    33 F.Supp.2d 1190 (N.D. Cal. 1998)......................................................3, 5, 7

*Glover v. BIC Corp.,*
    6 F.3d 1318 (9th Cir. 1993)....................................................................20, 21

*Halaco Eng'g Co. v. Costle,*
    843 F.2d 376 (9th Cir. 1988)......................................................................20

*Headley v. Chrysler Motor Corp.,*
    141 F.R.D. 362 (D. Mass. 1991)................................................................19

*Lewis v. Ryan,*
    261 F.R.D. 513 (S.D. Cal. 2009)................................................................21

*Luce v. United States,*
    469 U.S. 38 (1984).....................................................................................1

*Reddy v. Litton Indus., Inc.,*
    912 F.2d 291 (9th Cir. 1990)..................................................................3, 5, 7

*Residential Funding Corp. v. DeGeorge Fin. Corp.,*
    306 F.3d 99 (2nd Cir. 2002)....................................................................20, 21

*Sacramona v. Bridgestone/Firestone, Inc.,*
    106 F.3d 444 (1st Cir. 1997)......................................................................19

*Seiler v. Lucasfilm, Ltd.,*
    808 F.2d 1316 (9th Cir. 1986)....................................................................20

*State v. Altajir,*
    33 A.3d 193 (Conn. 2012)..........................................................................23

*Surowiec v. Capital Title Agency, Inc.,*
    790 F. Supp. 2d 997 (D. Ariz. 2011)...........................................................21

*Turner v. Hudson Transit Lines, Inc.,*
    142 F.R.D. 68 (S.D.N.Y. 1991)..................................................................20

Page

*Unigard v. Lakewood,*
    982 F.2d 363 (9th Cir. 1992)........................................................................................20

*United States v. Bailey,*
    696 F.3d 794 (9th Cir. 2012)...........................................................................6, 8, 10, 13

*United States v. Bailleaux,*
    685 F.2d 1105 (9th Cir. 1982).........................................................................6, 8, 10, 13

*United States v. Baker,*
    63 F.3d 1478 (9th Cir. 1995)........................................................................................17

*United States v. Busby,*
    No. CR 11-00188, 2013 WL 3296537 (N.D. Cal. June 28, 2013)...................................1

*United States v. Castillo,*
    140 F.3d 874 (10th Cir. 1998)......................................................................................16

*United States v. Chandler,*
    No. 2:10-CR-00482-GMN, 2011 WL 1979713 (D. Nev. May 19, 2011) .....................25

*United States v. Curtin,*
    489 F.3d 935 (9th Cir. 2007).........................................................................................11

*United States v. Dhingra,*
    371 F.3d 557 (9th Cir. 2004).........................................................................................11

*United States v. Hill,*
    953 F.2d 452 (9th Cir. 1991)...........................................................................................6

*United States v. LeMay,*
    260 F.3d 1018 (9th Cir. 2001)......................................................................................16

*United States v. Luna,*
    21 F.3d 874 (9th Cir. 1994)............................................................................6, 8, 10, 13

*United States v. Moore,*
    732 F.2d 983 (D.C. Cir. 1984)......................................................................................18

*United States v. Rodriguez,*
    192 F.3d 946 (10th Cir. 1999)......................................................................................18

*United States v. Romero,*
    282 F.3d 683 (9th Cir. 2002)..........................................................................6, 8, 10, 13

*United States v. Sivilla,*
    714 F.3d 1168 (9th Cir. 2013)......................................................................................21

Gibson, Dunn &
Crutcher LLP

<u>Page</u>

*United States v. Staufer,*
    38 F.3d 1103 (9th Cir. 1994).............................................................................................18

*United States v. Vizcarra-Martinez,*
    66 F.3d 1006 (9th Cir. 1995)...............................................................................................6

*United States v. Yevakpor,*
    419 F. Supp. 2d. 242 (N.D.N.Y. 2006) ........................................................................17, 18

**Statutes**

18 U.S.C. § 1961(1) ...............................................................................................................2, 3

18 U.S.C. § 1962(d) ...................................................................................................................1

18 U.S.C. § 2422 .......................................................................................................................1

Cal. Penal Code § 1210.1 (2009) .............................................................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

Paul Robeson is charged in three counts of the Second Superseding Indictment. *See* Dkt. No. 139 [hereinafter "Indictment"]. He is charged in Count 1 for conspiring to conduct the affairs of an enterprise through a pattern of racketeering activity, 18 U.S.C. § 1962(d). And he is charged in Counts 16 and 17 for attempting to entice an individual, allegedly a minor, to engage in prostitution, 18 U.S.C. § 2422. Much of the evidence the Government intends to use against Mr. Robeson, however, is inadmissible and should be excluded. The Government also alleges that Mr. Robeson committed six overt acts in furtherance of the alleged conspiracy. *See* Indictment ¶¶ 17.c, 17.e, 17.h, 17.i, 17.l, 17.gg. But the evidence related to these allegations is similarly inadmissible.

The Court enjoys broad discretion to grant motions *in limine* to exclude anticipated irrelevant or prejudicial evidence before it is offered at trial. *See Luce v. United States*, 469 U.S. 38, 41 (1984); *see also United States v. Busby*, No. CR 11-00188, 2013 WL 3296537, at *7 n.8 (N.D. Cal. June 28, 2013) ("[M]otions *in limine* are designed to streamline trials by settling evidentiary disputes in advance and by minimizing side-bar conferences and other disruptions at trial."). The Court should exercise that discretion here and exclude the inadmissible and impermissible evidence and testimony against Mr. Robeson.

## I. MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF MR. ROBESON'S MERE PRESENCE WHEN OTHERS WERE FOUND IN POSSESSION OF CRACK COCAINE [EX NOS. 343-44; WITNESS NOS. II-63, II-80, II-105, II-200]

Paragraph 17.c of the Indictment alleges that "[o]n or about January 13, 2003, CHARLES HEARD, PAUL ROBESON and another CDP member, now deceased, were together when HEARD and the other CDP member were found in possession of approximately 4.83 grams of cocaine base." Yet Mr. Robeson's mere presence—being "together" with Heard and the other alleged CDP member—when *they* were found in possession of cocaine base is not an overt act that could further the alleged conspiracy. Even if the Government alleged that the evidence could prove distribution of a controlled substance, Mr. Robeson was not involved with or aware of any such dealing. His mere presence is not a racketeering activity and is thus irrelevant and inadmissible under Rule 401. Alternatively, mention of Mr. Robeson in connection with this incident will cause unfair prejudice and mislead the jury and should thus be excluded under Rule 403.

## A. Mr. Robeson's Alleged Presence Is Not Related to the Alleged CDP Enterprise

Irrelevant evidence is not admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. Mr. Robeson's mere presence with two others when they—not Mr. Robeson—were found with cocaine base is irrelevant to prove the charged RICO conspiracy. There is neither evidence nor allegation that Mr. Robeson possessed a controlled substance or participated in any other criminal activity. Furthermore, possession of a controlled substance is not a racketeering activity within the meaning of 18 U.S.C. § 1961(1),[2] and

_____

[2] "Racketeering activity" is defined as:

(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1351 (relating to fraud in foreign labor contracting), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581–1592 (relating to peonage, slavery, and trafficking in persons).,[1] section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), sections 175–178 (relating to biological weapons), sections 229–229F (relating to chemical weapons), section 831 (relating to nuclear materials), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or

*(Cont'd on next page)*

Gibson, Dunn & Crutcher LLP

the small quantities of cocaine base allegedly recovered from the scene—2.53 grams and 2.30 grams—strongly suggest personal use.  *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (dismissing a RICO claim where the plaintiff could not allege an overt act "that [wa]s a defined predicate act under 18 U.S.C. § 1961(1)"); *Dees v. California State Univ., Hayward*, 33 F.Supp.2d 1190, 1202 (N.D. Cal. 1998) (dismissing a RICO claim where only one of several alleged overt acts "constitute[d] 'racketeering activity' as enumerated in 18 U.S.C. § 1961(1)"); San Francisco Police Department Crime Laboratory Reporting System Narcotics Analysis Report, attached as Ex. 1 to Chan Decl.  Indeed, the police recovered no other indicia of distribution, such as scales or other measuring devices.  *See* San Francisco Police Department Incident Report 030048337, attached as Ex. 2 to Chan Decl.  Such possession for personal use cannot further a RICO conspiracy.

Even if the sparse evidence could sustain an inference that Mr. Heard or the other alleged CDP member was distributing a controlled substance, there is no evidence that Mr. Robeson was involved.  There is neither evidence nor allegation that Mr. Robeson knew anyone possessed a controlled substance, and there is neither evidence nor allegation that Mr. Robeson participated in the distribution of a controlled substance.  Thus, there is no evidence suggesting that Mr. Robeson's presence was connected to a conspiracy, so this evidence is irrelevant under Rule 401.

**B.**    **Admitting Mr. Robeson's Presence Will Cause Unfair Prejudice and Mislead the Jury**

Even if the Court finds that Mr. Robeson's presence is relevant, the evidence should still be excluded under Rule 403.  "The court may exclude relevant evidence if its probative value is

---

*(Cont'd from previous page)*

   section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B)[.]

18 U.S.C. § 1961(1).

substantially outweighed by a danger of . . . unfair prejudice . . . [or] misleading the jury . . . ." Fed. R. Evid. 403. A jury might assume that because Mr. Robeson and the others were allegedly together when cocaine base was found, all three were equally culpable or involved. This assumption, however, misleads the jury and unfairly prejudices Mr. Robeson, as there is no evidence in the discovery that Mr. Robeson was involved or even knew of the others' drug possession. Further, evidence of Mr. Robeson's presence during this incident may link Mr. Robeson's name to Mr. Heard's in the jurors' minds, despite there being no evidence of them jointly participating in a racketeering act. Indeed, this may be the Government's purpose in including Mr. Robeson in this incident, being that none of the other overt acts connect him to any of the other defendants or the alleged enterprise in any way. But the Government should not be permitted to substitute legitimate evidence of Mr. Robeson's alleged involvement in a RICO conspiracy—which indeed, it cannot produce—with circumstantial evidence that Mr. Robeson was present in a vehicle with two other men from his neighborhood. Such evidence is unfairly prejudicial and misleads the jury, and thus should be excluded under Rule 403.

## II.    MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE OF PRIOR DRUG POSSESSION [EX NOS. 345-47, 1251; WITNESS NOS. II-65, II-68, II-152]

Paragraph 17.e of the Indictment alleges that "[o]n or about March 18, 2004, PAUL ROBESON possessed 40 packaged rocks (approximately 4.73 grams) of cocaine base." Mr. Robeson is not charged separately with crack possession; instead, the Indictment alleges that he possessed crack "[i]n furtherance of the conspiracy" alleged in Count 1. Indictment ¶ 17. However, discovery regarding this incident reveals that the Government has no evidence of any kind connecting the incident with any conspiracy or even any other person. To the contrary, the police testimony describing this incident, the amount of drugs involved, and Mr. Robeson's related guilty plea can prove nothing more than possession for personal use. Because the Indictment does not allege that Mr. Robeson or any other CDP member *used* crack for the benefit of the alleged enterprise (an absurd proposition in any event), evidence of simple possession for personal use is irrelevant and inadmissible.

## A. Mr. Robeson's Alleged Drug Possession Is Not Relevant to the Alleged CDP Enterprise

Irrelevant evidence is not admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. The evidence of Mr. Robeson's prior drug possession is irrelevant to the charged RICO conspiracy. Mr. Robeson pled guilty to the charge of transportation of a controlled substance for personal use in state court on July 29, 2004, and was placed on probation for three years subject to the conditions of California's Proposition 36. *See* Cal. Penal Code § 1210.1 (2009); Tr. of Change of Plea at 3-4, attached as Ex. 3 to Chan Decl. Transportation of a controlled substance for *personal* use, however, is not a racketeering activity within the meaning of 18 U.S.C. § 1961(1) and is irrelevant to the alleged RICO conspiracy. *See Reddy v. Litton Indus., Inc.*, 912 F.2d at 296 (dismissing a RICO claim where the plaintiff could not allege an overt act "that [wa]s a defined predicate act under 18 U.S.C. § 1961(1)"); *Dees v. California State Univ., Hayward*, 33 F.Supp.2d at 1202 (dismissing a RICO claim where only one of several alleged overt acts "constitute[d] 'racketeering activity' as enumerated in 18 U.S.C. § 1961(1)"). Indeed, as the Presentence Form Report and as his probation reflects, the rocks of cocaine "were 'basically crushed up' and for his personal use only." San Francisco Adult Probation Department Probation Officer's Prop 36 Presentence Form Report, attached as Ex. 4 to Chan Decl. There is no evidence connecting this incident to any other defendant—or anybody else at all—much less the alleged CDP enterprise. This evidence does not establish a valid overt act and is therefore irrelevant under Rule 401.

## B. Federal Rule of Evidence 404 Prohibits Evidence of Possession of Drugs for Personal Use to Show Conspiracy to Sell Drugs

For similar reasons, the evidence should be excluded under Federal Rule of Evidence 404(b). Evidence of past crimes or wrongs is not admissible as character evidence. Fed. R. Evid. 404(b)(1). Rather, such evidence may be used only for a limited number of purposes: to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). Courts in this circuit use a four-part test:

Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.

*United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (quoting *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002)); *see also United States v. Luna*, 21 F.3d 874, 878 n.1 (9th Cir. 1994) ("[S]imilarity is a prerequisite when the other crimes evidence is introduced to prove intent. . . . [S]imilarity is also a prerequisite when the other crimes evidence is used to prove identity."). "[T]he use of such evidence must be narrowly circumscribed and limited." *United States v. Bailleaux*, 685 F.2d 1105, 1109 (9th Cir. 1982).

Mr. Robeson's alleged conduct on March 18, 2004 proves no material point. Possession of a narcotic—without any evidence of an intent to distribute, transport for sale, or otherwise engage in some conduct that could further a conspiracy to commit racketeering acts—is irrelevant to an alleged racketeering conspiracy. *See United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1015 (9th Cir. 1995) (holding that possession of "a small amount of the drug, does not tend to prove that [the defendant] participated in a conspiracy to manufacture it. We believe that this is precisely the type of abuse that Rule 404 was designed to prevent."); *United States v. Hill*, 953 F.2d 452, 457 (9th Cir. 1991) (holding that evidence of the defendant's prior use of cocaine could not be admitted as evidence to convict him of conspiracy and attempt to possess with intent to distribute cocaine).

Indeed, the only inference is impermissible. Evidence that Mr. Robeson possessed a small amount of drugs consistent with personal use has nothing to do with the RICO allegations against him. It instead suggests that he has broken the law before and is therefore more likely to do so again. That is the precise kind of propensity inference that Rule 404 shuns.

### C. Admitting Evidence of Mr. Robeson's Drug Possession Will Cause Unfair Prejudice

Alternatively, the evidence should still be excluded because it will cause unfair prejudice under Rule 403. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." Fed. R. Evid. 403. Evidence of Mr. Robeson's personal use of cocaine base and his prior guilty plea will unfairly prejudice him. *See United States*

1    *v. Vizcarra-Martinez*, 66 F.3d 1006, 1017 (9th Cir. 1995) ("Evidence that a defendant uses drugs is

2    highly prejudicial. We have explicitly held that far less damaging evidence regarding drug use—a

3    misdemeanor conviction for possessing one marijuana cigarette nine years before the crime was

4    committed—could have a 'significant' prejudicial effect on the jury's decision."). Despite the

5    distinct lack of evidence in this case connecting Mr. Robeson to any drug dealing conspiracy,

6    evidence of Mr. Robeson's prior drug possession may unfairly prejudice him in the jurors' minds: he

7    is more likely participate in a conspiracy involving drug distribution if he has used drugs in the past,

8    relieving the Government of its burden to present actual evidence of the charge. Instead, the

9    evidence relating to this incident, which occurred more than ten years ago and involved no other

10    defendants aside from Mr. Robeson, should be excluded as unfairly prejudicial under Rule 403.

11    **III.**    **MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE OF OVERT ACT 17.H [EX.**
**NOS. 678; WITNESS NOS. II-8, II-53, II-82, II-113, II-137]**

12

13    Paragraph 17.h of the Indictment alleges: "On or about August 6, 2005, PAUL ROBESON

14    harassed and attempted to recruit an individual to work for ROBESON as his prostitute with

15    ROBESON as her pimp." Yet again, this overt act does not constitute a racketeering activity as

16    defined in 18 U.S.C. § 1961(1). And even if this act was a racketeering activity, the Government has

17    produced no evidence connecting this act to any other defendant, alleged CDP member, or the alleged

18    CDP enterprise. Instead, this evidence serves only to support an impermissible propensity inference

19    and unfairly prejudice Mr. Robeson, violating both Rules 403 and 404.

20    **A.**    **The Evidence of Mr. Robeson's Alleged Conduct on August 6, 2005 Is Irrelevant**

21    Irrelevant evidence is not admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any

22    tendency to make a fact more or less probable than it would be without the evidence; and the fact is

23    of consequence in determining the action." Fed. R. Evid. 401. The evidence of Mr. Robeson's

24    alleged attempt to recruit an individual for purposes of prostitution is irrelevant to the charged RICO

25    conspiracy. Attempted recruiting of an individual for purposes of prostitution is not an enumerated

26    racketeering activity under 18 U.S.C. § 1961(1). Thus, it cannot constitute an overt act. *See Reddy v.*

27    *Litton Indus., Inc.*, 912 F.2d at 296 (dismissing a RICO claim where the plaintiff could not allege an

28    overt act "that [wa]s a defined predicate act under 18 U.S.C. § 1961(1)"); *Dees v. California State*

*Univ., Hayward*, 33 F.Supp.2d at 1202 (dismissing a RICO claim where only one of several alleged overt acts "constitute[d] 'racketeering activity' as enumerated in 18 U.S.C. § 1961(1)"). Furthermore, there is no evidence connecting this incident to any other defendant or alleged CDP member. Nor is there any evidence that Mr. Robeson committed this act in furtherance of the conspiracy. For example, there is no evidence that Mr. Robeson committed this act at the direction of another individual, that Mr. Robeson agreed to commit this act with anybody else, that Mr. Robeson intended to share his profits from this act if successful, or that Mr. Robeson anticipated gaining respect as a result of this act. Indeed, the evidence shows that he operated and acted alone. Thus, the evidence of this overt act is wholly irrelevant to the RICO conspiracy, and it must be excluded under Rule 401.

**B.     The Evidence of Mr. Robeson's Alleged Conduct on August 6, 2005 Is Inadmissible Under Rule 404**

Evidence of past crimes or wrongs is not admissible as character evidence. Fed. R. Evid. 404(b)(1). Rather, such evidence may be used only for a limited number of purposes: to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). Courts in this circuit use a four-part test:

> Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.

*Bailey*, 696 F.3d at 799 (quoting *Romero*, 282 F.3d at 688); *see also Luna*, 21 F.3d at 878 n.1 ("[S]imilarity is a prerequisite when the other crimes evidence is introduced to prove intent. . . . [S]imilarity is also a prerequisite when the other crimes evidence is used to prove identity."). "[T]he use of such evidence must be narrowly circumscribed and limited." *Bailleaux*, 685 F.2d at 1109.

Mr. Robeson's alleged conduct in August 2005 is irrelevant as it bears no similarity to the current allegations. As a result, it has no permissible purpose in this case. There is no suggestion that his conduct was related to gang activity. Nor is there any allegation in the Indictment's counts against Mr. Robeson that he tried to entice women into prostitution through harassment or verbal

8

abuse.  There is simply no factual similarity.  Therefore, this evidence only supports an impermissible propensity inference: past allegations that Mr. Robeson tried to entice a woman into prostitution makes it more likely that he tried to entice women into prostitution as charged by the Indictment.

### C.    Admitting Evidence of Overt Act 17.h Will Cause Unfair Prejudice

Even if this evidence is relevant, it should still be excluded because it is unfairly prejudicial.  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."  Fed. R. Evid. 403.  Evidence of this overt act, an uncharged incident that occurred more than ten years ago, serves only to prejudice Mr. Robeson in the minds of the jurors.  Although there is no evidence connecting this overt act to the alleged conspiracy, the evidence from this incident may lead the jury to draw the conclusion that a person who would commit such an act might also be the type of person who would participate in a gang or conspiracy.  But both Rules 404(b) and 403 prohibit this type of unfair, prejudicial inference about character.

## IV.    MOTION IN LIMINE NO. 4 TO EXCLUDE EVIDENCE OF OVERT ACT 17.I [EX NOS. 679-86; WITNESS NOS. II-8, II-249]

Paragraph 17.i of the Indictment alleges:  "On or about November 16, 2005, PAUL ROBESON enticed a minor to engage in prostitution."  Yet there is no evidence connecting this incident with any conspiracy, another alleged CDP member, or any other defendant in this case.  It is thus irrelevant under Rule 401.  Further, the admission of this evidence would violate Rule 404.  And it is also the precise type of inflammatory evidence that is unfairly prejudicial to the defendant.  For all these reasons, evidence of this overt act should be excluded.

### A.    Mr. Robeson's Alleged Enticement on November 16, 2005 Is Not Relevant to the Alleged CDP Enterprise

The alleged enticement is irrelevant to the charged RICO conspiracy.  Similar to overt act 17.h, there is no evidence connecting this incident to the alleged enterprise.  For example, there is no evidence suggesting that Mr. Robeson committed this act at the direction of another individual, that Mr. Robeson committed this act with anybody else, that Mr. Robeson shared any proceeds gained (or would share anticipated proceeds), or that Mr. Robeson gained any respect as a result of this act.  Instead, the police report and the chronological of investigation, which recount several

interviews with the alleged victim, describe acts committed by Mr. Robeson alone. *See* San Francisco Police Department Incident Report 051293688, attached as Ex. 5 to Chan Decl.; San Francisco Police Department Chronological of Investigation, Case No. 51293688, attached as Ex. 6 to Chan Decl. These documents make no mention of CDP. Nor do they intimate that Mr. Robeson was a gang member. *See* Exs. 5-6. Because the evidence of this incident cannot be connected to the alleged CDP enterprise in any way, it is irrelevant to the RICO conspiracy and must be excluded under Rule 401.

### B. Rule 404 Prohibits Evidence of Mr. Robeson's Alleged Enticement

The only similarity between this incident and Counts 16-17 is the fact that they both involved a minor. That is not enough under Rule 404.

Evidence of past crimes or wrongs is not admissible as character evidence. Fed. R. Evid. 404(b)(1). Rather, such evidence may be used only for a limited number of purposes: to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). Courts in this circuit use a four-part test:

> Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.

*Bailey*, 696 F.3d at 799 (quoting *Romero*, 282 F.3d at 688); *see also Luna*, 21 F.3d at 878 n.1 ("[S]imilarity is a prerequisite when the other crimes evidence is introduced to prove intent. . . . [S]imilarity is also a prerequisite when the other crimes evidence is used to prove identity."). "[T]he use of such evidence must be narrowly circumscribed and limited." *Bailleaux*, 685 F.2d at 1109.

First, there is insufficient similarity for this evidence to be indicative of a modus operandi. There is no evidence or allegation that the 2005 incident involved the internet, social media, or telephonic communication. There is no evidence or allegation that the 2005 incident took place over a similar amount of time, in similar locations, or in a similar manner. In short, there is no similarity to suggest Mr. Robeson had a particular, relevant modus operandi. The only purpose of this evidence

1   would be to suggest that Mr. Robeson is guilty of enticing a minor to engage in prostitution as

2   charged in the indictment because he did the same thing in 2005. That, of course, is improper.

3           Second, the 2005 incident is not probative of Mr. Robeson's state of mind. The crimes are

4   too different, too far apart, and too ambiguous to have a proper use. As discussed above, the 2005

5   incident bears almost no resemblance to Counts 16 and 17. Moreover, that alleged conduct is stale—

6   more than ten years old. And there is no definitive evidence supporting the existence of criminal

7   activity in 2005: neither a conviction nor any direct evidence supports the allegation that Mr.

8   Robeson enticed a minor to engage in prostitution in 2005. It is specious to say that different

9   conduct, in a different place, over a different amount of time, involving different individuals, and

10  under entirely different circumstances would be probative of Mr. Robeson's state of mind in 2012.

11  Rather, the only use of the 2005 incident is to suggest—based on thin, circumstantial evidence of a

12  single event that is now eleven years old—that Mr. Robeson has a propensity to entice minors into

13  prostitution based on similar allegations against him in the past.

14          **C.      Evidence of Mr. Robeson's Alleged Enticement Will Cause Unfair Prejudice**

15          Further, this evidence should be excluded as it is unfairly prejudicial to Mr. Robeson. Under

16  Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially

17  outweighed by a danger of . . . unfair prejudice . . . ." Fed. R. Evid. 403. "The measure of undue

18  prejudice is whether admission of the evidence created an undue tendency to suggest decision on an

19  improper basis, commonly, though not necessarily, an emotional one." *United States v. Dhingra*, 371

20  F.3d 557, 565 (9th Cir. 2004) (internal quotation marks and citations omitted). There can be no doubt

21  that evidence involving minors engaging in sexual activity is highly prejudicial. *See, e.g.*, *United*

22  *States v. Curtin*, 489 F.3d 935, 964 (9th Cir. 2007) ("Even normal biological functions induce disgust

23  when exposed to public view. Perverse sexual fantasies generate even more intense disgust. We

24  accept without need of extensive argument that implications of child molestation . . . and abuse of

25  women unfairly prejudice a defendant.") (internal quotation marks omitted). The evidence of the

26  alleged enticement is exactly the type that would produce disgust in the minds of the jurors, making it

27  likely that they would render a decision on an improper or emotional basis. Although the evidence

28  shows that Mr. Robeson never engaged in any type of illicit sexual activity with the alleged victim,

DEFENDANT PAUL ROBESON'S MOTIONS IN LIMINE
CASE NO. 3:15-CR-00127-WHO

Gibson, Dunn &
Crutcher LLP

and that he believed at all times that she was seventeen years old (and he, at the time, was twenty-three years old), the fact that the incident involved a thirteen-year-old girl—which the Government is sure to emphasize, if this evidence is admitted—will be extremely prejudicial to Mr. Robeson. Its probative value, on the other hand, is little, if any, as it does not further the Government's allegation that Mr. Robeson was involved in any conspiracy. Thus, it must be excluded under Rule 403.

## V. MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE OF OVERT ACT 17.L [EX. NO. 687; WITNESS NOS. II-8, II-61, II-92, II-108, II-148, II-243]

Paragraph 17.l of the Indictment alleges: "On or about March 10, 2007, Paul Robeson attempted to kidnap a woman by trying to force her into a vehicle." Yet like the others, this overt act bears no relevance to the alleged CDP enterprise, as yet again there is absolutely no evidence connecting this act to any defendant, any other person, or the alleged CDP enterprise. Instead, it serves only to serve as impermissible character or propensity evidence that is unfairly prejudicial to Mr. Robeson. The Court should exclude this evidence.

### A. Mr. Robeson's Alleged Attempted Kidnapping Is Not Relevant to the Alleged CDP Enterprise

Irrelevant evidence is not admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. Any alleged evidence of attempted kidnapping is immaterial in this case.

First, there is no indication that this incident was tied to CDP or any organized crime. The Government did not allege that CDP or its members kidnapped others to further the purposes of their conspiracy to conduct a criminal enterprise. The indictment's list of crimes attributable to CDP omits kidnapping:

> Members of CDP have engaged in criminal activity, including murder, attempted murder, narcotics distribution, assault, robbery, extortion, interstate transportation in aid of racketeering, pimping, pimping of minors, illegal firearms possession, and obstruction of justice . . . . CDP members have committed acts of violence to maintain and enhance membership and discipline within the gang, including violence against rival gang members, those perceived to be rival gang members, rivals in general, those who disrespected or committed violence against CDP members, friends or family, as well as CDP members and associates who violated the gang's rules.

Indictment ¶ 4.  Indeed, kidnapping is not even among CDP's alleged "means and methods."  *See id.* ¶¶ 10-14.  Thus, by the Government's own allegations, the alleged attempted kidnapping is not tied to the larger alleged enterprise.

Further, there is no suggestion that the attempted kidnapping could conceivably be tied to the alleged enterprise.  There is no suggestion that Mr. Robeson's alleged conduct generated money, respect, or anything of value to the alleged gang.  Nor is there any indication that he acted in concert with any other alleged gang members.  Even taken at face value, the Government's allegation—and any evidence supporting it—is simply irrelevant to the RICO charges in this case.

Nor is the evidence relevant to the specific charges against Mr. Robeson.  In other words, the attempted kidnapping is a non-sequitur.  Therefore, any evidence of overt act 17.l is irrelevant and inadmissible.

### B.      Rule 404 Prohibits Evidence of Overt Act 17.l

Evidence of past crimes or wrongs is not admissible as character evidence.  Fed. R. Evid. 404(b)(1).  Rather, such evidence may be used only for a limited number of purposes: to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  Fed. R. Evid. 404(b)(2).  Courts in this circuit use a four-part test:

> Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.

*Bailey*, 696 F.3d at 799 (quoting *Romero*, 282 F.3d at 688 ); *see also Luna*, 21 F.3d at 878 n.1 ("[S]imilarity is a prerequisite when the other crimes evidence is introduced to prove intent. . . . [S]imilarity is also a prerequisite when the other crimes evidence is used to prove identity.").  "[T]he use of such evidence must be narrowly circumscribed and limited."  *Bailleaux*, 685 F.2d at 1109.

First, the alleged kidnapping has neither a link to the alleged enterprise nor any intrinsic relevance to allegedly conspiring to conduct an enterprise through racketeering activities.  Indeed, the only use for evidence of attempted kidnapping is to suggest that Mr. Robeson committed the crimes charged because he has committed crimes in the past.  Such propensity evidence is inadmissible.

1    Further, the evidence of attempted kidnapping is not probative of any other charges against

2    Mr. Robeson.  There is no factual similarity between the pimping counts in the indictment and the

3    alleged attempted kidnapping.  I therefore has no permissible use toward proving attempting to entice

4    individuals into prostitution: there simply is no logical connection between the two.  None of the

5    other allegations against Mr. Robeson involve kidnapping anyone for any purpose.  In fact, Mr.

6    Robeson has never been arrested, much less charged, with *any* violent crime.  Nor is there any

7    evidence of any kind that Mr. Robeson ever used physical coercion to recruit or retain a prostitute.

8    As a result, the evidence is inadmissible under Federal Rule of Evidence 404.

9        **C.    Admitting Evidence of Overt Act 17.l Will Cause Unfair Prejudice**

10           Even if the evidence has some relevance, it is minimal.  The alleged attempted kidnapping is

11   unconnected to the major allegations in the case: it is not indicative of the defendants acting in

12   concert as part of a RICO conspiracy; it is not indicative of violence or profit-centered crimes that

13   promote the alleged gang's purposes; and it is not indicative of any issue in counts 16 and 17.  Yet it

14   would be extremely prejudicial.  It would suggest he is violent—a prejudicial notion that is not

15   probative of Mr. Robeson's nonviolent crimes.  And, given the paucity of evidence against Mr.

16   Robeson, it would serve as an irrelevant—but prejudicial—reminder of his alleged criminal past.

17   **VI.   MOTION IN LIMINE NO. 6 TO EXCLUDE INCOMPLETE EVIDENCE OF TEXT
           MESSAGES AND FACEBOOK COMMUNICATIONS BETWEEN MR. ROBESON
18         AND SFPD OFFICER JULIA ANGALET [EX. NOS. 698-99, 701-09, 711, 719-20] AS
           WELL AS ORAL TESTIMONY ABOUT THE CONTENTS OF DELETED
19         COMMUNICATIONS [WITNESS NOS. II-7, II-79, II-179, CUSTODIAN 11]**

20       **A.    Factual Background**

21           Count 16 of the Indictment charges Mr. Robeson with attempting to persuade, induce, entice,

22   and coerce an individual to travel in interstate commerce to engage in prostitution in violation of 18

23   U.S.C. § 2422(a).  Count 17 charges him with the same offense involving a minor in violation of 18

24   U.S.C. § 2422(b).  Both counts arise from a sting operation by an undercover San Francisco Police

25   Officer (the "UC") posing on the internet as a prostitute working in Reno, Nevada.  The UC

26   maintained a Facebook profile under the name "Katie Marie" that hinted she was in the prostitution

27   business.  *See, e.g.*, Facebook Profile of "Katie Marie," attached as Ex. 7 to Chan Decl. (SFPD UC

28   Facebook profile listing interests including "Hookers" and "Gangstas and Hoes").  The Government

alleges that starting on October 1, 2012, Mr. Robeson made contact with the UC's Facebook profile through his own Facebook account (allegedly under the name "Young MackinAss PWorld"), and then through Facebook messages, text messages, and a telephone call, he encouraged her to move from Reno to the San Francisco Bay Area to work for him as a prostitute. The Government further alleges that at some point during their communications, the UC revealed to Mr. Robeson that she was sixteen years old. Mr. Robeson and the UC supposedly hatched a plan for "Katie Marie" to travel from Reno to the Bay Area and meet Mr. Robeson at a motel. However, the UC broke off contact with Mr. Robeson when "Katie Marie" was purportedly in transit—either on October 8 or 9, 2012. They never met in person.

Despite the fact Counts 16 and 17 are built almost entirely upon Facebook posts, Facebook messages, and text messages, the Government has failed to preserve key interactions between the UC and Mr. Robeson. Indeed, some of these communications are the most direct evidence of Mr. Robeson's state of mind with respect to the UC's age—a crucial issue in his defense against the § 2422(b) charge and its ten-year mandatory minimum sentence. In particular, the Government failed to preserve:

10. The Facebook communication or text message in which the UC allegedly revealed to Mr. Robeson that she was sixteen.

11. The UC's Facebook profile or comments to the UC's Facebook images as they appeared to Mr. Robeson in early October 2012, during the time of the charged offenses.

12. The comments Mr. Robeson allegedly posted on the UC's Facebook photos through which the Government asserts Mr. Robeson initiated the entire interaction.

Such communications are essential for establishing whether the UC first approached Mr. Robeson or vice versa, whether and to what extent the UC cajoled and entrapped Mr. Robeson into agreeing to be her pimp, and whether the UC's Facebook profile appeared to belong to an adult woman as opposed to a sixteen-year-old girl.

On December 8, 2014, Mr. Robeson brought a motion to compel production of the missing communications or to suppress those partial communications that survived the Government's

Gibson, Dunn & Crutcher LLP

negligence. *See* Dkt. No. 222. In opposing the motion, the Government submitted declarations from both SFPD Officer Angalet and FBI Special Agent Jacob Millspaugh confirming that text messages had been irretrievably lost for some unknown reason. *See* Dkt. No. 252 at 12-21. Furthermore, neither Officer Angalet nor SA Millspaugh denied that no effort had been made to preserve Facebook materials as they existed in October 2012. *See id.* The Court, however, declined to suppress the surviving communications because it found no evidence the Government had acted in bad faith rather than with mere negligence.

To allow the introduction of some, but not all, of the text messages and Facebook communications between Mr. Robeson and the UC would reward the Government for its own negligence at the expense of Mr. Robeson's ability to present a full defense. Such incomplete writings are impermissible under Rule 403. Furthermore, the contents of the UC's Facebook page as of September 2013 are irrelevant to conduct that allegedly occurred in October 2012. Finally, oral testimony regarding the missing communications would violate the original document rule. The Government negligently failed to preserve the documents at issue, and should not be permitted to rely on its own poor conduct to justify the use of an inferior form of evidence.

### B. The Court Should Exclude the Surviving Facebook Communications and Text Messages Because They Are Incomplete and Will Mislead the Jury

Rule 403 empowers the Court to exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "'[A]pplication of Rule 403 . . . should always result in the exclusion of evidence' that is so prejudicial as to deprive the defendant of his right to a fair trial." *United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001) (quoting *United States v. Castillo*, 140 F.3d 874, 883 (10th Cir. 1998)). If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time. Fed. R. Evid. 106. The rule is designed to avoid "the misleading impression created by taking matters out of context." Fed. R. Evid. 106 advisory committee's note.

## 1.    Admission of the Surviving Communications Will Violate the Doctrine of Completeness

Should the Government introduce text messages that were allegedly exchanged between Mr. Robeson and the UC, Mr. Robeson may require the introduction of the remainder of their text communications under Rule 106's doctrine of completeness. The rule seeks to prevent "the misleading impression created by taking matters out of context" and contemplates "the inadequacy of repair work when delayed to a point later in the trial." Fed. R. Evid. 106 advisory committee's note. The doctrine of completeness stresses that the Government cannot use cherry-picked segments of evidence when the remainder of evidence from the same source has been lost subsequent to a defendant's arrest. *See United States v. Yevakpor*, 419 F. Supp. 2d. 242, 252 (N.D.N.Y. 2006). Partial forms of evidence are inappropriate when "having not saved the [lost or destroyed] material the Government has prevented the Defense and the Court from undertaking a proper evaluation of what other evidence may have existed in the missing portions . . . ." *Id.* at 250 n.4.

Without the text messages that the Government has lost, the remaining messages will take the matter of Mr. Robeson's alleged knowledge of the UC's age out of context. The missing messages contain communications that are critical to demonstrating Mr. Robeson's belief, or lack thereof, as to the UC's status as a minor. The only preserved communication in which the UC's age is discussed is a recorded telephone call that allegedly took place between the UC and Mr. Robeson on October 5, 2012. However, the Original Complaint alleges that the UC informed Mr. Robeson of her age via text message prior to this phone call. The Government's account is ambiguous as to precisely how the UC allegedly relayed her age to Mr. Robeson. If the missing text messages contain the initial discussion of the UC's age, as the Government alleges, then they are crucial to establishing Mr. Robeson's *mens rea* as to the charge involving a minor. The timing of the UC's representation of her age is also relevant to a defense of sentencing entrapment. If the UC had no reason to believe Mr. Robeson was predisposed to attempt to pimp a *minor* at the time she told him she was sixteen, then Mr. Robeson could argue that she chose to represent herself as a minor with the sole purpose of triggering the ten-year mandatory minimum. *See United States v. Baker*, 63 F.3d 1478, 1500 (9th Cir. 1995) ("Sentencing entrapment . . . occurs when 'a defendant, although predisposed to commit a

minor or lesser offense, is entrapped into committing a greater offense subject to greater punishment.'") (quoting *United States v. Staufer*, 38 F.3d 1103, 1106 (9th Cir. 1994)).

The Government's negligent failure to preserve the missing text messages has deprived Mr. Robeson and the Court of determining whether certain evidence was exculpatory or otherwise material to Mr. Robeson's defense. To allow the Government's incomplete text message evidence would cut against the purpose of the Federal Rules of Evidence, which "should be construed so as to administer every proceeding fairly . . . to the end of ascertaining the truth and securing a just determination." Fed. R. Evid. 102. Mr. Robeson cannot exercise his right to a fundamentally fair trial without access to evidence that in fairness ought to be considered at the same time as the Government's proffered evidence against him.

### 2. Admission of the Surviving Communications Is Unfairly Prejudicial

Even if the available text messages have any probative value regarding Mr. Robeson's actions or intent, their value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence may be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter. *See United States v. Rodriguez*, 192 F.3d 946, 951 (10th Cir. 1999).

Introducing snippets of the interactions that allegedly occurred between Mr. Robeson and the UC will be highly prejudicial and misleading to a jury. An incomplete presentation of evidence can give rise to significant prejudicial impact. *See, e.g.*, *United States v. Moore*, 732 F.2d 983, 995 (D.C. Cir. 1984) (finding that testimony which "consisted of only snippets from separate incidents, and contained no complete description" of the alleged criminal activity "created a situation ripe for prejudice"). Similarly, a lack of context decreases the probative value of evidence. *See Yevakpor*, 419 F. Supp. 2d at 250. The Government should not have the opportunity to utilize incomplete evidence to advance its narrative when the messages in their entirety may reveal a different narrative. Of particular importance to Mr. Robeson's defense are the facts surrounding the UC's alleged

disclosure of her age. Random references to the UC's age, with no context of how the subject was initially broached, will confuse the jury as to Mr. Robeson's state of mind. The partial sample of the text messages that the Government has preserved may suggest to a jury that Mr. Robeson intended, and was predisposed, to pimp a minor. Such a perception could have drastic consequences for Mr. Robeson, as the associated offense carries a hefty ten-year mandatory minimum sentence. The loss of the text messages before October 7, 2012 has critically limited Mr. Robeson's ability to rebut the Government's allegations. Admission of the remaining text messages would allow the Government to unfairly capitalize on its own negligence to severely punish Mr. Robeson without providing him the opportunity to present a full defense.

### C. The Court Should Also Exclude Any Oral Testimony about the Contents of the Deleted Text Messages

The Federal Rules of Evidence require an original document to prove the contents of writings. Fed. R. Evid. 1002. The Government seeks to prove that Mr. Robeson attempted to induce the UC to engage in prostitution through text messages and Facebook communications, which are writings for the purposes of Rule 1002. Any testimony related to the missing communications would go to the contents of the writings themselves. Therefore, Rule 1002 applies and the Government should not be allowed to offer oral testimony as to the contents of the text messages and Facebook contents that it has failed to preserve. Fed. R. Evid. 1002 advisory committee's note ("If . . . the event is sought to be proved by the written record, the rule applies.").

It is true that original documents may not be required if "all the originals are lost or destroyed, and not by the proponent acting in bad faith." Fed. R. Evid. 1004. However, several courts faced with similar facts have held that bad faith is not essential to provide a basis for the exclusion of evidence. *See Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 447 (1st Cir. 1997) ("If [destroyed] evidence is mishandled through carelessness, and the other side is prejudiced, we think the district court is entitled to consider . . . exclusion of the evidence."); *Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362, 365 (D. Mass. 1991) (considering whether the plaintiff was in good faith or bad faith as one of several factors in deciding whether evidence should be excluded). Importantly,

Gibson, Dunn & Crutcher LLP

the Ninth Circuit has held that "[a] federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence. Such power includes the power where appropriate to order the exclusion of certain evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (citing *Unigard v. Lakewood*, 982 F.2d 363 (9th Cir. 1992)). This circuit takes a particularly broad view of the district court's inherent powers, allowing for a remedy as severe as dismissal for "willfulness, bad faith, *or fault* by the offending party." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988) (emphasis added).

The Court should exercise its inherent powers to prevent the Government from offering oral testimony as to the documents that it could have easily preserved had it simply followed standard practices. Even if the Government's conduct was "merely" negligent, the Court should not allow oral testimony as to the contents of the lost or destroyed evidence. "It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y. 1991). Allowing testimony regarding the contents of the text messages or Facebook communications would likely force Mr. Robeson to respond to an unfamiliar account of the alleged events due to "the fallibility of the human memory as reliable evidence of the terms" of writings. *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1319 (9th Cir. 1986). Consequently, the burden of negative consequences stemming from the Government's failings would fall inappropriately onto Mr. Robeson. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2nd Cir. 2002) ("[E]ach party should bear the risk of its own negligence.").

### D. In the Alternative, the Court Should Give an Adverse Inference As to the Government's Failure to Preserve Evidence

Should the Court decide not to exclude text messages, Facebook communications, and testimony regarding the contents of such evidence, then the proper remedy is an adverse inference instruction, allowing the jury to assume that the missing evidence would have been unfavorable to the Government.

> [A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a

culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Id.* at 107 (citing *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-12 (2d Cir. 2001)). California district courts have adopted the Second Circuit's test. *See, e.g.*, *Lewis v. Ryan*, 261 F.R.D. 513, 521 (S.D. Cal. 2009). Bad faith is not required to establish a culpable state of mind. *See United States v. Sivilla*, 714 F.3d 1168, 1173 (9th Cir. 2013) ("Bad faith is the wrong legal standard for a remedial jury instruction."); *Glover*, 6 F.3d at 1329 ("[A] finding of bad faith will suffice, but so will simple notice of 'potential relevance to the litigation.'") (quoting *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)).

The Government had control over the relevant text messages and Facebook contents at the time they were destroyed, and had an obligation to preserve this evidence. "It is well established that the 'duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation.'" *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (quoting *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 800 (N.D. Tex. 2011)). The communications between Mr. Robeson and the UC, as well as the Facebook page through which the parties allegedly initially interacted, are unquestionably relevant, and should have been expected to be part of the eventual trial during the investigation. Accordingly, the Government had a duty to preserve this evidence. Instead, the relevant phone was repurposed for a different SFPD investigation and the text messages allegedly exchanged between Mr. Robeson and the UC were overwritten. Text messages were destroyed during the process of the FBI's attempted forensic recovery of texts. *See* Dkt. No. 222-2, Ex. I to Gaedt-Sheckter Decl., at 5-6. No apparent steps were taken to capture the relevant Facebook records. The Government's conduct, which resulted in the loss or destruction of relevant evidence, was at least negligent and demonstrates the culpability required for an adverse inference instruction. Not only was the Government aware of the evidence's potential relevance to this case, but its preservation should have been a trivial task. Yet not only was the phone at issue repurposed for another investigation, the Government inexplicably waited for months before attempting to recover relevant text message data. Similarly, a few screen shots of the UC's Facebook activity during her interactions with "PWorld" would have provided an important record of their

communications. The failure to take simple, obvious steps to preserve evidence has deprived Mr. Robeson and the Court of the ability to fully examine relevant materials to insure a fair trial.

Finally, as noted above, the missing evidence at issue is highly relevant to the Government's claims against Mr. Robeson. The Government's case is largely based on a sting operation by the UC, who allegedly communicated with Mr. Robeson almost entirely through Facebook posts, Facebook messages, and text messages. The contents of these communications contain the basis for the charges, as well as information relevant to Mr. Robeson's potential defenses. The destroyed text messages allegedly contain the communication in which the UC revealed her age to Mr. Robeson. The unavailable Facebook records contained many other contents that may have been exculpatory or otherwise material to the preparation of Mr. Robeson's defense. For example, the UC's profile might have listed a date of birth indicating that she was an adult; or it might have contained photographs indicating that she was an adult, such as pictures of her inside casinos, bars, nightclubs, or other adults-only establishments. Similarly, "PWorld's" comments might have evinced an intent to interact only with other adults; they might have expressed doubt that "Katie Marie" was actually a minor; and they might have indicated that "PWorld" had no interest in prostitution in the first place, providing the basis for an entrapment defense.

The Government's failure to preserve this evidence was egregious and warrants an adverse inference. Had the Government complied with its obligation to preserve evidence during the course of its investigation, text messages and Facebook records would have been available in this litigation to provide evidence of Mr. Robeson's state of mind regarding the UC's age, among other possible exculpatory information. The Government's failure to comply with its obligations has severely prejudiced Mr. Robeson, and the Government should bear the cost of its own negligence or gross negligence.

## VII. MOTION IN LIMINE NO. 7 TO EXCLUDE MR. ROBESON'S ALLEGED FACEBOOK PROFILE AND OTHER FACEBOOK MATERIAL POST-DATING THE CHARGED CONDUCT [EX NOS. 702-06, 722]

The Government's failure to preserve evidence extends beyond the realm of text messages: Facebook communications and the Facebook profiles of the UC and "Young MackinAss PWorld" as they appeared at the time of the alleged incident are also no longer available. The UC failed entirely

Gibson, Dunn &
Crutcher LLP

to capture Mr. Robeson's alleged Facebook profile and related comments and photos at the time of the alleged offense, choosing instead to download some of the content of the "PWorld" profile in September of 2013—nearly a year after the alleged conduct occurred. Those after-the-fact downloads should be excluded under Rules 401 and 403. They are irrelevant as to what the "PWorld" Facebook looked like at the time of the charged offense and will mislead the jury into thinking that Facebook materials captured in September 2013 are probative of similar contents from October 2012.

Facebook is a dynamic environment. *See State v. Altajir*, 33 A.3d 193, 199 n.2 (Conn. 2012) ("[T]he social network's general infrastructure . . . is highly dynamic and in many cases may be accurately assessed only with reference to a limited time period."). Beyond the general infrastructure, users can easily edit their individual profiles to delete or alter the contents that are displayed. *See id.* at 197 n.1 ("Due to the dynamic nature of Facebook and other such social network sites, [details such as basic information, friends, and photos], as well as basic structural features of the social network, are subject to frequent modification."). In addition to choosing what content to post on a Facebook profile generally, a user can adjust privacy settings to customize the contents that are visible to specific categories of users (such as "Friends," "Friends of Friends," etc.). *See Choose Who You Share With*, FACEBOOK, https://www.facebook.com/help/459934584025324/ (last visited Mar. 29, 2016). The prospect of nearly constant change to a particular Facebook profile makes the timeliness of its preservation especially crucial for evidentiary purposes. An outdated record of Facebook contents is wholly unreliable evidence. As such, it does not have "any tendency to make a fact more or less probable than it would be without the evidence" and is not "of consequence in determining the action." Fed. R. Evid. 401. For the same reason, the evidence is unfairly prejudicial: presenting the jury with potentially-altered document with incriminating content will mislead jurors into accepting unreliable evidence as fact. Therefore, the evidence should also be excluded under Federal Rule of Evidence 403.

Gibson, Dunn & Crutcher LLP

# VIII. MOTION IN LIMINE NO. 8 TO EXCLUDE EVIDENCE OF THE DEFENDANT'S TATTOOS UNDER FEDERAL RULES OF EVIDENCE 401 & 403 [EX NO. 12]

Evidence must be relevant to be admissible. Fed. R. Evid. 402. Evidence is relevant if it tends "to make a fact more or less probable," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. But even if relevant, evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Mr. Robeson has tattoos on his forearms that say "UPT," "Mafia Boy," and "D Boyz." None are relevant. They tend to prove no fact of consequence. And the only inferences they raise are unfairly prejudicial.

To begin, the tattoos are not indicia of membership in CDP. The Government set forth several gestures, words, and symbols that it alleges are indicia of gang membership. Those include several hand gestures; the numbers "237," "567," "894," "778," and "223"; and the words "Banga," "D Block," "shotcallers," "shooters," and "hitters." Dkt. No. 858, Gov't's Supplemental Notice Regarding Gang Expert 1-3; Dkt. No. 892, Tr. of *Daubert* Hearing at 306 (discussing "D Block"). The Court then heard extensive testimony from the Government's gang expert, Task Force Officer Damon Jackson, about gang signs, symbols, and indicia. *See generally* Dkt. Nos. 892, 898, Tr. of *Daubert* Hearing. But neither the Government nor TFO Jackson ever identified "UPT," "Mafia Boy," or "D Boyz" as indicative of membership in CDP or any other Western Addition gang. Nor do these tattoos have such an intrinsic association. *Cf. id.* at 284 (TFO Jackson testifying that "a tattoo of a particular name of a gang" would be "good evidence that [the person with the tattoo is] in that particular gang."). In other words, Mr. Robeson's tattoos do not tend to prove any fact in consequence in the action.

Indeed, when asked about the symbols, hand signals, codes, and tattoos of Western Addition gangs, TFO Jackson testified, "I've seen . . . tattoos of individuals affiliated with CDP often had the tattoo 'Banga' -- B-A-N-G-A -- which is exclusive to individuals associated with CDP." Dkt. No. 898, Tr. at 77; *see also id.* at 101, 104-05; Dkt. No. 892, Tr. at 231-33, 306 (testifying about the alleged link between "Banga" tattoos and CDP). He also opined that "D Block" was interchangeable

with CDP.  Dkt. No. 892, Tr. at 323-24.  There is no indication, however, that "UPT," "Mafia Boy,"

2   or "D Boyz" suggests gang membership, especially with regard to CDP.  Thus, Mr. Robeson's tattoos

3   are irrelevant and should be excluded.

4         Even if these tattoos were somehow relevant, they should be excluded under Federal Rule of

5   Evidence 403.  The tangential relevance of Mr. Robeson's tattoos would be far outweighed by the

6   potential prejudice.  Assuming, without foundation, that "UPT" is an abbreviation of "uptown" and

7   the "d" in "D Boyz" refers to Divisadero Street, the tattoos simply refer to the neighborhood Mr.

8   Robeson grew up in.  And it is not disputed—and readily provable by other evidence—that Mr.

9   Robeson spent time growing up in the Fillmore neighborhood.  But admitting the tattoos could allow

10  the jury to unfairly prejudicial inferences.  Tattoos can often have highly prejudicial connotations,

11  including the implication that the defendant has committed severe crimes.  *See e.g.*, *United States v.*

12  *Chandler*, No. 2:10-CR-00482-GMN, 2011 WL 1979713, at *2 (D. Nev. May 19, 2011).  Given that

13  Mr. Robeson will be tried with codefendants accused of murder and other violent crimes, the

14  improper implication that Mr. Robeson also committed such heinous crimes—simply because of his

15  tattoos—would confuse the jury and be unfairly prejudicial.

16  **IX.    MOTION IN LIMINE NO. 9 FOR JOINDER**

17        Mr. Robeson moves to join in the motions in limine filed by co-defendants that are applicable

18  to him.

19

20  Dated: April 8, 2016

21

22                      WINSTON Y. CHAN
                    JOSEPH R. ROSE

23                      CASSANDRA L. GAEDT-SHECKTER
                    GIBSON, DUNN & CRUTCHER LLP

24

25                      By:  /s/ Winston Y. Chan

26                            Winston Y. Chan

27                   Attorney for Defendant Paul Robeson

28