SEVERA KEITH, CSBN 218167
THE KEITH LAW OFFICE, P.C.
214 Duboce Avenue
San Francisco, CA 94103
(415) 626-6000 - Telephone
(415) 225-8631 - Facsimile

Attorney for Defendant
MONZELL HARDING

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MONZELL HARDING, et al,<br><br>Defendant. | No. CR 13-00764-WHO<br><br>**DEFENDANT MONZELL HARDING'S MOTION *IN LIMINE***<br><br>DATE: May 6, 2016<br>TIME:<br>DEPT: Hon. Judge William H. Orrick |

**TO: THIS HONORABLE COURT; TO THE ASSISTANT UNITED STATES ATTORNEYS; AND TO COUNSEL FOR ALL CO-DEFENDANTS:**

PLEASE TAKE NOTICE that on May 6, 2016, or as soon thereafter as he may be heard, defendant Monzell Harding, by and through his counsel, will and hereby does ask this Court, pursuant to the Fifth Amendment to the United States Constitution, the Federal Rules of Criminal Procedure, and the Federal Rules of Evidence, to enter an Order granting the motions *in limine* listed below.

*U.S. v. Harding, Motions in Limine*

These motions are based on the instant Notice of Motions, the Memoranda that follow, the files and records of this case, the evidence adduced and the argument made at the hearing on these motions, and such further argument as may be later presented.

Dated:                                              Respectfully Submitted,
                                                    _____/s/_____
                                                    SEVERA KEITH
                                                    Attorney for Defendant
                                                    MONZELL HARDING

## MOTIONS *IN LIMINE*

Monzell Harding hereby moves the Court to exclude and preclude the following evidence.

**1.   Motion *in Limine*: Reservation of Rights to Bring Later Motions *in Limine***

Harding reserves the right to bring later Motions in Limine including, but not limited to:

(1) any discovery that is has not yet been disclosed;

(2) any exhibits not yet identifiable because the government has either identified the exhibits by new Bates ranges or without a Bates numbers at all;

(3) any Maps listed as Exhibits 0001-0007 in the government's exhibit list because they have not yet been disclosed;

(4) Exhibits 325-330, interviews with Monzell Harding, Daryl Jones, Esau Ferdinand, Marzette Parker, Vernon Carmichael, Frederick Maye taken on October 6, 2009, and any other previously undisclosed interviews;

(5) Exhibits 652-658, listed under "miscellaneous 404(b) evidence" in the government's exhibit list as Crime alert, photographs of crime scene, suspects, shoes, photographs of Harding's shoes, and phone downloads of Baxter Bradley, Monzell Harding, and Vernon Carmichael because none of these exhibits are identifiable and it is unclear what evidence the government is referring to; and

(6) Exhibit 210, Harding's Gang Task Force Gang Folder, in its entirety because the contents have not been identified and it is unclear whether other motions have been brought to exclude documents and other evidence contained in the folder.

(7) Furthermore, Harding reserves the right to bring further *Motions in Limine* based on any exhibit listed as "for reference only" in the government's exhibit list. Harding also requests that the government clarifies what "for reference only" means and reserves the right to further object if its meaning rests on an improper use of the exhibit.

As Mr. Harding continues to prepare for trial and during trial, he may discover additional issues he believes should be addressed pretrial to ensure the fair and efficient adjudication by jury of this dispute.

Should that circumstance arise, Mr. Harding shall alert the government and this Court and submit briefing as soon as practicable so that any such issues may be addressed fully and expeditiously.

## 2. Motion *in Limine* to Exclude Prior Specific Acts

Mr. Harding moves the court for an order precluding the government from introducing the following prior acts evidence regarding incidents noticed in the government's November 24, 2015 letter noticing 404(b) evidence under FRE 401/402, 403, and 404.

Rule 401 defines evidence as relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Moreover, evidence of uncharged, unsubstantiated crimes only serves to characterize Harding as a violent criminal. That is, at root, forbidden character evidence that is irrelevant, inflammatory and must be excluded from evidence. Fed. R. Evid. 403, 404(a) and (b)(1).

The Ninth Circuit has repeatedly noted that the limitations of Rule 404(b) are "designed to avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced the defendant is a bad man deserving of punishment." *United States v. Hill*, 953 F.2d 452, 457 (9th Cir. 1991) (citations and internal quotation marks omitted); *see also United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994) (noting that the reluctance to sanction the use of other-acts evidence "stems from the underlying premise of our criminal system, that the defendant must be tried for what he did, not for who he is"). Due to the danger that the jury will be swayed to convict a defendant based

upon uncharged conduct, the Ninth Circuit has mandated that "the use of such evidence must be narrowly circumscribes and limited." *See, e.g., United States v. Bailleux*, 685 F.2d 1105, 1109 (9th Cir. 1982); *see also Mayans*, 17 F.3d at 1181 ("[E]xtrinsic acts evidence is not looked upon with favor."). Other-acts evidence is thus generally disfavored.

Moreover, the incidents below are not relevant because they are not probative of any of the elements of the RICO charge nor does it make any fact more or less probable. Fed. R. Evid. 401, 402. Furthermore, any probative value is substantially outweighed by unfair prejudice. Evidence of uncharged, unsubstantiated crimes only serves to characterize Mr. Harding as a violent criminal. That is, at root, forbidden character evidence that is irrelevant, inflammatory and must be excluded from evidence. Fed. R. Evid. 403, 404(a) and (b)(1).

<u>August 24, 2011 Incident</u>

According to San Francisco Police Report No. 110677945, on August 24, 2011, at Fremont and Howard Streets, a victim reported that her iPhone had been taken by a black male wearing a grey sweatshirt who was accompanied by a black male wearing a teal shirt and a San Jose Sharks hat. Officers soon detained Clark, who matched the description of the robber, as he stood by a newspaper. Mr. Harding walked up as officers were detaining clear, and he was detained. Officers searched the newspaper stand and found two iPhones inside.

The officers released Harding after they determined that he did not partake in the incident or work in concert with Clark. *See* BG087528-087542. No charges were filed against Harding.

This incident is not relevant to because Clark is not associated with this case whatsoever, and this incident does not make Harding's involvement in a RICO conspiracy more or less probable under any theory permitted by FRE 404(b)(2). Furthermore, this robbery is especially prejudicial when the "evidence" shows that Mr. Harding was not involved in the incident and that the officers did not even have probable cause to arrest him. Admitting evidence of this incident would cause a trial within a trial, be a waste of time, and unfairly prejudice Harding. FRE 403.

In conclusion, this incident should be excluded to avoid a danger that the jury will punish Mr. Harding for offenses other than those charged or alleged that he committed, or at least that it will

*U.S. v. Harding, Motions in Limine*

convict when unsure of guilt, because it is convinced that Mr. Harding is a bad man deserving of punishment.

<u>October 12, 2011</u>

According to San Francisco Police Department Report No. 110823126 (BG086331-086334), on October 11, 2011, Sgt. Burrows observed Tyrice Ivy driving a car.  After making eye contact with Burrows, Ivy drove away at a high rate of speed.  Burrows followed.  Ivy drove a couple of blocks and parked in the lot at Lilly's BBQ.  Vernon Carmichael exited the back of the car and ran North on Divisadero.  Tyrice Ivy and Adrian Gordon got out of the car.  Carmichael returned in about 30 seconds and said, "Burrows I was just kidding."  The three of them were detained, and the vehicle was searched with negative results.  They were all released at the scene.   During the detention, Monzell Harding walked up and watched.

This incident is not relevant to because it does not make Harding's involvement in a RICO conspiracy more or less probable under any theory permitted by FRE 404(b)(2).  Furthermore, this incident is especially prejudicial when the "evidence" shows that Mr. Harding was merely present during a detention of others, who were not involved in illegal conduct.  FRE 403.

Mr. Harding also moves for an order precluding the government from introducing evidence of other prior acts that were disclosed in discovery under FRE 401/402, 403, and 404, and for the reasons set forth below.  Pertinently, the incidents below should be excluded because Mr. Harding did not receive notice of the government's intent to use these incidents as FRE 404(b) evidence, as required by the rule and by this court's order.

<u>April 11, 2009 Incident</u>

According to San Francisco Police Department Report No. 090380000, on April 11, 2009, San Francisco police officers responded to Scott and Eddy Streets regarding a possible shooting after someone anonymously reported seeing three males fleeing after they heard four shots.  Officers stopped five juvenile males matching the description given.[1]  One of the

---

[1] Harding's birth date is June 20, 1991; he was seventeen at the time of this incident.

*U.S. v. Harding, Motions in Limine*

individuals was Monzell Harding. No weapons were found during the officer pat searches of the suspects. A pellet gun was recovered on the ground in between two dumpsters nearby. All suspects were released. *See* Bates BG087458-087464. No charges were filed.

None of the individuals detained with Mr. Harding are associated with this case. This incident does not make Harding's involvement in a RICO conspiracy more or less probable under any theory permitted by FRE 404(b)(2). This is especially prejudicial when there is no indication that Mr. Harding or any of the other detained with him were either involved in the shots fired or were in possession of the pellet gun. There is no evidence related to this incident that is admissible under any theory, and admission of such "evidence" would be nothing more than highly prejudicial and inflammatory character evidence. FRE 404(a)(1); FRE 403.

If the court finds this incident to be admissible, the government should be limited to using the incident for the sole purpose of proving the charged conspiracy existed. The government may not use the pre-majority evidence to prove up substantive counts. This court has placed similar limitations on the use of defendants' juvenile records in RICO cases. *See United States v. Cerna, et al.*, No. 08-cr-00730-WHA, Dkt. No. 3644, at p. 14 (N.D. Cal. March 3, 2011) (omnibus order limiting the use of defendant's juvenile record as evidence of the conspiracy only).

Additionally, other circuits have held that juvenile records cannot be used to prove guilt in the current case. In *United States v. Thomas*, 114 F.3d 228, 266 (D.C. Cir.), cert. denied, 118 S. Ct. 635 (1997), the D.C. Circuit held that evidence of a defendant's pre-eighteen conduct was not admissible for the purpose of proving defendant's guilt, but rather was admissible only pursuant to Federal Rule of Evidence 404(b). Similarly, in *United States v. Maddox*, 944 F.2d 1223, 1233 (6th Cir. 1991), the court noted a defendant "cannot be held liable for pre-eighteen conduct, but such conduct can, of course, be relevant to put post-eighteen actions in the proper context."

This incident should be excluded pursuant to FRE 403 and 404, or it should be subject to limiting instructions.

<u>April 13, 2009 Incident</u>

According to San Francisco Police Department Report No. 090387598, on April 13, 2009, a juvenile named John Bivins was suspected of auto theft, and had fled from officers.

*U.S. v. Harding, Motions in Limine*

Later, officers searched the area and located Bivins as he was walking with three other males. Officers detained the four males including Bivins. Harding was one of the males detained. Officers recovered a firearm on Bivins and arrested him. Harding was released. *See* Bates BG087465-087475. No charges were filed against Harding.

This incident is not relevant because possession of a firearm by a person with no association with this case does not go to any elements of the RICO charge against Harding. Additionally, this evidence is especially prejudicial because Harding would be on trial for acts of a person that is not associated with the case– this unfairly prejudicial to Harding. Harding had nothing to do with the gun possession and would be forced to conduct a trial within a trial to defend himself. This incident should be excluded as irrelevant, unduly prejudicial, misleading to the jury, and improper character evidence, and the government precluded from introducing any evidence under it. FRE 401, 402, 403, 404.

Like the April 11, 2009 incident, if the court is inclined to admit this incident, the government should be limited to using it to prove the existence of the conspiracy, rather than Harding's guilt as to the RICO charge because Harding was a juvenile at the time.

<u>September 5, 2009 Incident</u>

According to San Francisco Police Report No. 090914386, on September 5, 2009, San Francisco officers responded to a robbery near Haight and Webster Street. Officers were advised that two males committed the robbery and six or seven other males were present when the robbery occurred. The officers located a group of six black males a couple of blocks from the incident site and detained them. Among the group detained was Harding. The suspects were pat searched. One suspect, Naeem Farley had a black Motorola phone in his sock. Thereafter, the officers noticed Marzette Parker walking away down the street but were unable to detain him. Harding was released with the rest of the group.

Later, the officers interviewed the victim who identified Marzette parker as one of the robbers who took his money and Motorola phone. The officers then located and arrested Farley, and later arrested Parker. The victim identified Parker. The victim did not identify Mr. Harding

*U.S. v. Harding, Motions in Limine*

as one of the six people who were with the perpetrators.  *See* Bates BG087441-087457.  No charges were filed against Harding.

This incident is not relevant because Harding was not present at the robbery; he was merely near the area where the robbery took place.  The officers did not find any stolen items on Harding; the victim did not identify Harding as one of the six or seven people with Farley and Parker when he was robbed; and there is no evidence additional evidence that Harding was involved.  Furthermore, with evidence so scarce against Harding, the only purpose of introducing this robbery would be to inflame the passions of the jury and unfairly prejudice Harding.  *See United States v. Hitt*, 981 F.2d 422, 423-425 (9th Cir. 1992) ("The evidence here was not only highly prejudicial and at most marginally probative - it was also misleading.  It's bad enough for the jury to be unduly swayed by something a defendant did; it's totally unacceptable for it to be prejudiced by something he seems to have done but in fact did not.)  Thus, this incident should be excluded.

<u>October 6, 2009 Incident</u>

According to San Francisco Sheriff's Department Report No. 09-109181, on October 6, 2009, Harding was searched during his intake at County Jail #9 when the deputies seized a plastic bag containing a small amount of suspected narcotics.  *See* Bates BG087436-087440. No charges were filed against Harding based on this incident.  The government has not disclosed that any drug analysis of the suspected narcotics occurred; there has been no notice of an intended drug expert; there is no drug identification lab report; it is not known whether or not the narcotics still exist; the defense has had no opportunity to review the suspected narcotics or have its own expert analyze the purported drugs; there are no chain of custody regarding the disposition of the suspected narcotics; and the only thing that has be disclosed is a photocopy of what is presumably a picture of the baggy and suspected narcotics.

This incident is not relevant to the RICO charge and does nothing but unfairly prejudice Harding and confuse the issues at trial, and must be excluded.  FRE 403.  There is no theory of admissibility that comports with the requisites of FRE 404(b)(2).

*U.S. v. Harding, Motions in Limine*

Additionally, this incident should also be excluded under FRE 104(a); 403; 702; 703 and the Fifth and Sixth Amendments to the United States Constitution. Any proffered expert or other opinion testimony of drug identification must be excluded where: (a) there is no drug identification lab report or (b) where the alleged drug evidence was destroyed by a law enforcement agency or otherwise lost, and thus where the defense had no opportunity for reliable independent review of the basis for the Government's expertise on the issue.

Here, no notice of expert was provided for this incident, and the government should be precluded from noticing one at this late date. Without an expert, the evidence is not otherwise admissible. The report cannot be introduced as an exhibit without an expert, and no other witness can reliably testify regarding the suspected narcotics. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). Further grounds to exclude this incident are that: there is no reliable scientific basis for the proposed testimony especially in view of the lack of 'reviewability' of test results within the meaning of *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The destruction of the actual evidence, especially when combined with the government's inability to provide sufficiently reviewable documentation, deprives the defense and the court as well of the opportunity to ensure the court's gatekeeping function under *Daubert* and Rules 104(a) and 702 is fulfilled. Also, the government's destruction of, or failure to provide, evidence to ensure reviewability violates Harding's rights under the Fifth Amendment due process requirement, under the Sixth Amendment's confrontation and fair trial requirements.

Thus, in addition to preclusion of the entire incident, Harding moves to exclude all alleged identification or description of items seized during his intake at County Jail #9, for the reasons set forth above.

**3.  Motion *in Limine* to Exclude All Untimely Disclosed Racketeering Acts as Violating the Pre-trial Order and FRCP Rule 16**

Harding moves the court for an order that the government be precluded from introducing all testimony, evidence, and exhibits regarding: possession of a firearm that allegedly occurred on November 23, 2009, as indicated in San Francisco Police Report No. 091206663; and fifteen

separate robberies that allegedly occurred from September 23, 2011 through October 5, 2011 (Bates BG091466-092033) as violating the pre-trial order and FRCP Rule 16.

On April 13, 2015, the Honorable Judge William Orrick issued an order setting an October 21, 2015 deadline for the government to produce discovery and evidence of other racketeering acts not described in the Second Superseding Indictment. *See United States v. Williams, et al*., No. 13-cr-00764-WHO, Dkt. No. 353, at 4:14-17 (N.D. Cal. April 13, 2015) (order setting pre-trial and trial schedule).

On November 2, 2015 and again November 24, 2015, the government produced previously-undisclosed discovery that contained, among other things, a copy of San Francisco Police Report No. 091206663. According to the police report, on November 23, 2009, San Francisco police officers stopped a vehicle owned by Bernard Peters and driven by defendant Esau Ferdinand. Monzell Harding and Peters were passengers. The officers searched the car and recovered a firearm and ammunition. All three suspects were arrested. On December 03, 2009, officers executed a search warrant on Harding to swab his mouth for DNA. *See* Bates BG087528-087542; BG089748-089757. No Charges were filed against Harding.

Also on November 2, 2015, the government produced previously-undisclosed discovery that contained, among other things, a copy of San Francisco Police Report No. 110796244. According to the half page narrative, on October 3, 2011, a victim was robbed at gunpoint on Ortega and Nahua Avenues. The victim explained that a silver van stopped in front of him; two suspects got out as a third, the driver, remained inside; the two suspects took the victim's wallet and keys; and the three suspects drove away. This report did not identify Monzell Harding, or anyone else, as a suspect. *See* Bates BG087543-087547.

On January 15, 2015, the government filed a further statement regarding acts it intended to produce at trial. *See United States v. Williams, et al*., No. 13-cr-00764-WHO, Dkt. No. 808 (N.D. Cal. January 29, 2016). This document listed fifteen robberies allegedly committed by Mr. Harding, codefendant Adrian Gordon, and unindicted alleged coconspirator Daryl Jones.

On January 25, 2016, the government produced discovery that contained, among other things, evidence of this series of fifteen armed robberies that occurred from September 23, 2011

*U.S. v. Harding, Motions in Limine*

through October 5, 2011. Some of the incidents involved a silver minivan. *See* Bates BG091466-092033.

On January 29, 2016, the government filed a consolidated statement of additional racketeering acts that it intended to introduce at trial. *See United States v. Williams, et al*., No. 13-cr-00764-WHO, Dkt. No. 851 (N.D. Cal. January 29, 2016) (United States' consolidated statement regarding additional acts that government intends to introduce at trial). Among other listed racketeering acts were the alleged: November 23, 2009 firearm possession by defendants Ferdinand and Harding; October 3, 2011 armed robbery by Harding; and fourteen separate robberies from September 23, 2011 through October 5, 2011 by defendants Harding and Adrian Gordon.

The court should exclude all evidence of racketeering acts that were disclosed after the disclosure deadline as discovery violations. There is no dispute that the deadline to disclose racketeering acts was on October 21, 2015. It is also not in dispute that on November 2, 2015, the government disclosed evidence regarding the alleged the November 23, 2009 firearm possession by defendants Ferdinand and Harding and the October 3, 2011 armed robbery by Harding. Moreover, it is not in dispute that on January 25, 2016, over three months after the court's deadline to produce all evidence of other racketeering acts, the government disclosed evidence of fifteen alleged robberies from September 23, 2011 through October 5, 2011 by defendants Harding and Adrian Gordon. Accordingly, these incidents should be excluded because disclosure was untimely admitting this evidence would prejudice Harding's substantial rights.

"[A] district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly." *United States v. Grace*, 526 F.3d 499, 508-509 (9th Cir. 2008). Federal Rule of Criminal Procedure 16(d)(1) gives the court broad authority to enforce Rule 16 including by any order "that is just under the circumstances." Fed Rules Crim Proc R 16. If a party fails to comply, the court may "prohibit that party from

introducing the undisclosed evidence; or enter any other order that is just under the circumstances." *Id.* Moreover, a court commits reversible error if, despite the government's discovery violation, it admits evidence that prejudices the substantial rights of the accused. *United States v. Baker*, 10 F.3d 1374, 1398 (9th Cir. 1993) (*overruled in part on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000).

The government disregarded the court's express October 21, 2015 disclosure deadline for the sole purpose of gaining a tactical advantage on the defense; there can be no argument to the contrary. The court's disclosure deadline was a full four years after these incidents occurred, and there is no sound reason that the government did not disclose them sooner. The court set this deadline to ensure that the first trial group could proceed efficiently and effectively and the government intentionally ignored its order. This is an obvious Rule 16 violation. Accordingly, the court should enforce its own order and exercise its broad power to exclude this untimely evidence.

**4. Motion to Exclude CAST Report, Exhibit 629, as untimely disclosed**

For the reasons set forth in Motion in Limine No. 3, the CAST Report related to the September 23 to October 5, 2011 robbery incidents must be excluded. In addition to the late disclosure of the incidents, there has to date been no disclosure of any expert related to these incidents. The very existence of a CAST report was disclosed on the government's exhibit list. For the reasons set forth in Motion in Limine No. 3, the court should exercise its supervisory power and exclude this evidence.

**5. Motion in Limine to Exclude All Photos and Rosters of Alleged Gang Members and All Reference to Individuals Being Gang Members**

The government must be precluded from any efforts to present evidence of gang membership through lay witness opinion testimony. Whether any individual is a member of CDP is within the jury's fact-finding ambit, and it is not proper for a lay witness's opinion to usurp this role of the jury. *United States v. Garcia*, 413 F.3d 201, 210-11 (2d Cir. 2005). A lay witness may provide useful testimony regarding the actions of another individual or of a defendant, based on the facts personally perceived by the witness. However, lay opinion testimony that an individual is a member of CDP in not helpful to the jury, as the jurors, after evaluation the facts set before it,

*U.S. v. Harding, Motions in Limine*

can render that opinion themselves.  *See United States v. Garcia-Ortiz*, 528 F.3d 74, 79-80 (1st Cir. 2008) (opinion of agent that defendant resembled photograph used in identification was wrongly admitted because the jury was perfectly capable of drawing its own conclusion); *United States v. Wantuch*, 525 F.3d 505, 514 (7th Cir. 2008) (cooperating witness's testimony that defendant knew what he was doing was illegal was unhelpful to the jury).  Furthermore, lay opinion testimony regarding this subject would run afoul of FRE 702, as the basis of such an opinion requires specialized knowledge or experience, and is subject to various measures of reliability.  FRE 104(a); 702.

The government's expert may also not testify whether any individual is a gang member.  First, such opinion was not among the expert opinions disclosed by the government.  Second, such testimony would be highly improper expert opinion, as this court has recognized in its previous orders, Dkt. Nos. 836 and 927.  In those orders, the court cites *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008), which explains that a gang expert's opinions on "elements of the charged offense [that] serve as shortcuts to proving guilt" are improper, because these opinions are merely "instructing the jury on the existence of facts needed to satisfy the elements of the charged offense."  *Id.* at 190-91.  It is hard to imagine an opinion more damning than testimony that an individual is a gang member.  As such, the government must be precluded from offering opinion testimony regarding any individual's gang membership.

Monzell Harding further requests that the court exclude exhibits that purport to be CDP rosters, including, but not limited to exhibits 1203 – 1205.  These are excludable because such documents are hearsay, are unreliable, lack foundation, are improper expert opinion, and are highly prejudicial.  FRE 801, 104, 702, 403.  Moreover, because the individuals on the lists cannot be identified as gang members, the list becomes irrelevant.  401, 402.

Mr. Harding further moves the court to exclude from the trial the photos identified as exhibits 0008-0044.  For the reasons above, it is improper to identify these individuals as "gang members."  In the absence of such information, the photographs are irrelevant in the trial, unless the government sets forth a basis for their relevance and admissibility.

Additionally, Mr. Harding moves the court to exclude any reference during the trial that Monzell Harding, Sr., defendant's father, is a gang member or associate. As far as the defense in aware, Mr. Harding, Sr. has no criminal convictions and for many years has operated a legitimate business in the area of Grove and Divisadero. With the exception of "gang rosters," there is no reference to Mr. Harding, Sr. in the discovery. From the discovery as it stands, it appears that there is reliable evidence of any gang membership or affiliation. It is unclear what his relevance is to the charges. However, such evidence would be unduly prejudicial to defendant Monzell Harding. For the reasons set forth above, the court should preclude the government from offering any evidence at trial that Monzell Harding, Sr. is a CDP member or associate.

Similarly, Mr. Harding moves that the court exclude any testimony, evidence, or reference during the trial that Aubrey Abrakasa was a gang member or associate. Based on defense investigation, it appears that he had no criminal record or tattoos, and that he attended school and worked. His name does not appear on any "gang rosters" that the defense is aware of. Mr. Harding has a tattoo on his hand in memory of Aubrey Abrakasa. The government has noted in prior filings that Mr. Abrakasa was a known CDP member. There is no basis for this in the discovery, and such assertions are highly prejudicial, as these claims are evidence that are expected to set forth to prove Mr. Harding is a CDP member. This evidence must be excluded. FRE 401, 402, 403.

If the court is inclined to admit any of the above testimony or evidence at trial, Mr. Harding requests a hearing out of the presence of the jury to determine foundation, relevance, and admissibility of this evidence.

**6.  Motion in Limine to Exclude Evidence or Acts or Statements Prior to June 20, 1991**

Mr. Harding moves the court to exclude evidence and testimony of acts or statements by him or his alleged co-conspirators that took place prior to June 20, 2009, the day Mr. Harding turned eighteen years of age. Mr. Harding cannot lawfully be held criminally liable for acts that occurred prior to Mr. Harding reaching the age of majority and such acts are therefore irrelevant, inadmissible, and prejudicial to his defense. "A jury may not convict an adult defendant solely on the basis of 'acts of juvenile delinquency,' thereby eviscerating the protections afforded

juveniles under the JDA.  Instead, the jury must find post-majority conduct sufficient to establish that defendant participated in the conspiracy or racketeering enterprise after attaining the age of eighteen." *United States v. Delatorre*, 157 F.3d 1205, 1209 (10th Cir. 1998).  Because there is a great deal of evidence regarding acts of codefendants, that occurred prior to Mr. Harding's eighteenth birthday, that the government will use to establish the RICO conspiracy, that evidence should be excluded.  Mr. Harding is only charged with the RICO charge, and it will be difficult for the jury not to consider the act that occurred prior to his eighteenth birthday as evidence of his guilt.  As such these incidents should be excluded from the trial against Mr. Harding.

**7.  Motion in Limine to Exclude Alleged Coconspirator Hearsay Statements Because the Government Must Establish That Harding was a Member of the Conspiracy Before the Statements Can Be Used Against Him**

A co-conspirator's statement may be admitted against a defendant under Fed. R. Evid. 801(d)(2)(E) "where the prosecution shows by preponderance of the evidence that (1) the conspiracy existed when the statement was made; (2) *the defendant had knowledge of, and participated in, the conspiracy*; (3) the statement was made 'in furtherance of' the conspiracy." *United States v. Larson, 460 F.3d 1200, 1211* (9th Cir. 2006) (emphasis added).  Such statements are admissible under Fed. R. Evid. 801 (d)(2)(E) to show a defendants' participation in a conspiracy.  *United States v. Peralta, 941 F.2d 1003, 1007* (9th Cir. 1991).  However,

> [b]efore admitting a statement of a co-conspirator into evidence against a defendant, the court must have independent evidence of the existence of the conspiracy and of the defendant's connection to it, and must conclude that the statement was made both during and in furtherance of the conspiracy.

*United States v. Layton*, 720 F.2d 548, 555 (9th Cir. 1983); see also *Peralta*, 941 F.2d at 1007. This requires the government to prove three essential elements by a preponderance of the evidence before a co-conspirator's statement is admitted.  *Bourjaily v. United States*, 107 S. Ct. 2775, 2778 (1987).

While the court can consider the statements themselves as some evidence of these foundational requirements, out-of-court statements are presumptively unreliable and should not be admitted unless corroborated by "fairly incriminating evidence."  *See United States v. Silverman*, 861 F.2d 571 (9th Cir. 1988) ("Although . . . FED. R. EVID. 104(a) permits a trial

judge to consider the co-conspirator's out-of court statement in assessing the statement's admissibility, Rule 104(a) does not diminish the inherent unreliability of such a statement. . . . Evidence of wholly innocuous conduct or statements by the defendant will rarely be sufficiently corroborative of the co-conspirator's statement to constitute proof, by a preponderance of the evidence, that the defendant knew of and participated in the conspiracy"). This means that coconspirator statements do not necessarily become more reliable when they are corroborated by other co-conspirator statements. *Id*.

The government must prove more than just the existence of the conspiracy before cooperators' statements are can be used against Harding; the government must also prove both Harding and the declarant's connection to the conspiracy sufficient to prove knowing participation. *United States v. Dunn*, 564 F.2d 348, 357 (9th Cir. 1977). The government must establish the declarant knowingly participated in a conspiracy. See United States v. Castaneda, 16 F.3d 1504, 1507 (9th Cir. 1994) ("[A]n accused's knowledge of and participation in an alleged conspiracy with the putative co-conspirator are preliminary facts that must be established, by a preponderance of the evidence, before the co-conspirator's out-of-court statements can be introduced into evidence."). To establish that the declarant knowingly participated in a conspiracy, "the government cannot rely solely on the [alleged] co-conspirator statements themselves." *Id*. (citing *United States v. Silverman*, 861 F.2d 571, 578 (9th Cir. 1988)).

> [M]ere association with members of a conspiracy, the existence of and opportunity to join the conspiracy, or simple knowledge, approval of, or acquiescence in the objective or purpose of the conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator.

*Melchor-Lopez*, 627 F.2d at 890. Furthermore, close associations are not enough to establish a conspiracy. *United States v. Castaneda*, 9 F. 3d 761 (9th Cir. 1993).

This rule prohibiting mere "guilt by association" mirrors the rule prohibiting the courts from finding reasonable suspicion or probable cause for a search or detention based on mere association with known participants in criminal activity. *Cf. Ybarra v. Illinois*, 444 U.S. 85, 91

*U.S. v. Harding, Motions in Limine*

(1979*); United States v. Brown*, 951 F.2d 999, 1002-03 (9th Cir. 1991) (allegedly corrupt police officers' mere membership in police unit and presence at apartment where sting operation was conducted did not establish probable cause that the officers were engaged in illegal activity); *United States v. Rubio*, 727 F.2d 786, 793 (9th Cir. 1983) (mere membership in Hell's Angels organization, without facts linking suspect to specific criminal activity, insufficient to establish reasonable suspicion of criminal activity).

Finally, although a pretrial evidentiary hearing is not required, such hearing is requested here because of the number of statements involved. *See Bourjaily*, 107 S.Ct. at 2779 n. 1; *United States v. Tamez*, 941 F.2d 770, 775 (9th Cir. 1991); *see also United States v. James*, 590 F.2d 575 (5th Cir. 1979) (suggesting that a pre-trial determination is appropriate). Without a pre-trial hearing on the admission of the statements against Harding, a tremendous amount of court time will be used which will disrupt an orderly presentation of evidence at this trial.

## 8.   Motion in Limine to Preclude any Reference to Monzell Harding Having Been Shot or Having Been the Victim of Gun Violence

Mr. Harding has a visible scar on his neck related to a gunshot wound and the related surgery.  The government must be precluded from presenting any testimony or evidence about these scars or making any reference to them.  His scars are irrelevant to the charge he faces.  Any statements or references that they are the result of gang related activity, that he has a violent lifestyle, statements or references that call attention to them, or any other statements that he or any other defendant has been the victim of gun violence is highly prejudicial, wastes time, confuses the issues, misleads the jury, and will cause undue delay, and should therefore be excluded.  FRE 401, 402, 403.

## 9.   Motion in Limine to Exclude Any Mug Shots as Not Relevant and Unfairly Prejudicial

Harding moves to exclude any mug shots listed in the government's exhibit list, including exhibit numbers 590-592 and 603, because such mug shots are not relevant to any elements of the crimes charged and do not make any fact or consequence more or less probable.  FRE 401, 402.  Moreover, any probative value these mug shots may hold are substantially outweighed by unfair prejudice in violation of FRE 403.

There is hardly any other evidence that, in one glance and without explanation, can be as prejudicial as showing a mug shot of a defendant. The government would not be using these mug shots for any other purpose but to show Harding, or any other defendant, is a criminal. Mug shot photos are equally as prejudicial and guilt presumptive as having Harding wearing and orange jumpsuit throughout the trial. The mug shots add nothing necessary to the government's case and should be excluded.

**10. Motion *in Limine* 3 to Preclude the Government from Eliciting Testimony that Photographs Extracted or obtained from Harding's and Others' Phones Were, In Fact, Extracted from Their Phones Because Such Testimony Lacks Foundation**

Harding moves this court for an order precluding the government from eliciting testimony that any photographs extracted or otherwise obtained from Mr. Harding's, Vernon Carmichael's, and Marzette Parker's phones following their October 6, 2009 arrest were, in fact, extracted or obtained from their phones because such testimony lacks foundation. *See* Bates BG087357-087360; BG087411-087414; BG087396-087410; BG087418-087435. The government has failed to disclose an extraction report, identities of cellphone experts related to these phones, chain of custody documents, warrants or warrant returns. Accordingly, testimony regarding these photos as being extracted from these phones would lack foundation, is improper expert opinion, and is unfairly prejudicial. FRE 403, 702. Additionally, the phone itself is irrelevant and should be excluded. FRE 401, 402. These are believed to be exhibits 332-335.

**11. Motion *in Limine* to Exclude the Government from Introducing Evidence of Harding's DNA Taken on December 03, 2009 Because Such Evidence Violates FRE 702 and 403**

Harding moves for an order that the government be precluded from introducing evidence of Harding's DNA taken during the execution of a December 3, 2009 warrant following the November 23, 2009 alleged possession of a firearm case. The government has not disclosed any DNA laboratory analysis reports or results, identified any DNA experts related to this DNA, maintenance logs of equipment, etc. Accordingly, evidence regarding this DNA or using this DNA to link Harding to other places, people or crimes would be improper expert opinion and unfairly prejudice Harding. FRE 402, 702.

**12. Motion *in Limine* to Preclude the Government from Introducing Evidence from Harding's Cellphone Download That Occurred Following His January 15, 2010 Arrest as Violating the Court's Suppression Order**

*U.S. v. Harding, Motions in Limine*

The Government listed this evidence on their exhibit list as exhibits 588 and 595. *See United States v. Williams, et al.*, No. 13-cr-00764-WHO, Dkt. No. 926 (N.D. Cal. March 9, 2016) (United States' exhibit list). However, this court ordered this evidence suppressed on December 1, 2015 as an illegal search. *See United States v. Williams, et al.*, No. 13-cr-00764-WHO, Dkt. No. 632 (N.D. Cal. December 01, 2015) (Order granting Harding's motion to suppress cell phone data). All suppressed evidence and reference thereto must be precluded. Furthermore, any reference to the phone number of this phone being associated with Mr. Harding must also be excluded, as this number was only obtained after the illegal extraction of data.

**13. Motion *in Limine* to Preclude the Government from Introducing Evidence from Harding's Cellphone Download That Occurred Following its February 4, 2014 Seizure as Lacking Foundation and Violating FRE 702 and 403**

Harding moves for an order precluding the government from introducing any evidence extracted from Harding's phone that was seized on February 4, 2014. The Government listed this evidence on their exhibit list as exhibit 606. *See United States v. Williams, et al.*, No. 13-cr-00764-WHO, Dkt. No. 926 (N.D. Cal. March 9, 2016) (United States' exhibit list). However, the government has failed to disclose an extraction report, identity of a cellphone expert related to these phone, chain of custody documents, warrants or warrant returns, any contents extracted from this phone. Accordingly, any testimony regarding evidence extracted from these phones would lack foundation, be improper expert opinion, and be unfairly prejudicial.

**14. Motion *in Limine* to Preclude the Government from Introducing Photographs of Shoes or Shoeprints as Violating FRE 702 and 403**

The government must be precluded from introducing evidence of an August 27, 2013 alleged burglary and possession of stolen property by Harding and other CDP members. *See United States v. Williams, et al.*, No. 13-cr-00764-WHO, Dkt. No. 851 (N.D. Cal. January 29, 2016) (United States' consolidated statement regarding additional acts that government intends to introduce at trial). According to San Francisco Police Report No. 130-713-080 associated

with that case, officers found shoe prints at the victim's house and took pictures of Harding's shoes upon his arrest.[2]

However, the government has not disclosed the identity of any shoe print experts, the expert's opinions or analysis, means of analysis, or any other necessary information as required under 702. Accordingly, the government should be precluded from introducing the photographs or eliciting testimony from a witness that the footprints found at the crime scene matched Harding's shoes. Such evidence and testimony are only properly introduced through an expert, and any other disclosure of such evidence would be unfairly prejudicial to Harding under FRE 403.

**15. Motion *in Limine* to preclude the government from introducing any hearsay statements, including hearsay statements regarding identifications, and other statements made by the unnamed, alleged victim in this matter.**

The government may attempt to elicit testimony from a witness regarding statements made by the alleged victims in the San Francisco police reports in this matter. Such statements include, but are not limited to, statements that the alleged victims were robbed at gunpoint or by intimidation, and that Harding was previously identified as the suspect either through cold shows, six-pack identifications, or by other means. Any such testimony would constitute inadmissible hearsay not subject to an exception. Accordingly, the court should order such testimony excluded. Fed. R. Evid. 801-804. Furthermore, all such statements are testimonial in nature, and their admission would violate the Confrontation Clause. *Crawford v. Washington*, 541 U.S. 36 (2004).

**16. Motion in Limine to Exclude Gruesome Photographs as Unduly Prejudicial and Cumulative in Violation of FRE 403**

It has long been established in the Ninth Circuit that photographs of a deceased's body "in a homicide case should be excluded where their principal effect would be to inflame jurors against a defendant because of the horror of the crime...." *Rivers v. United States*, 270 F.2d 435, 437 (9th

---

[2] Listed under "miscellaneous 404(b) evidence" in the government's exhibit list is exhibit 655, "photographs of Harding's shoes." *See United States v. Williams, et al.,* No. 13-cr-00764-WHO, Dkt. No. 926 (N.D. Cal. March 9, 2016) (United States' exhibit list). However, this exhibit is unidentifiable as it is unclear what particular evidence the government is referring to – assuming the exhibit is photographs of Harding's shoes from the August 27, 2013 alleged burglary, Harding moves to exclude for the reasons above.

*U.S. v. Harding, Motions in Limine*

Cir. 1959). The court acknowledged that there are circumstances under which photographs have probative value and "... may be circumstantially relevant to prove both the commission of the acts charged to the accused, and the intent and purpose with which those acts were committed." *Id*. at 438. The court reiterated this view in *U.S. v. Brady*, 579 F.2d 1121, 1129 (9th Cir. 1978) where it noted that photographs will be inadmissible where their probative value is outweighed by the danger of inflaming the jury.

Harding suggests two point that this court should consider: First, there are alternative ways of demonstrating how individuals died–particularly during the testimony of pathologists. There are pathologists' diagrams of the location of wounds on all the victims of the VICAR murder charges. These illustrate the location of wounds without the distraction of autopsy photos. Second, the concern here is to avoid the use of repetitive, and gruesome, photographs of decedents at the scene, or during the autopsy. The Government will have ample means to demonstrate the cause of death and mechanisms of injury. Thus, this court should exclude gruesome and repetitive photographic evidence related to crimes of violence. FRE 403.

**17. Motion in Limine that Monzell Harding be allowed to dress in civilian clothes for trial.**

Monzell Harding moves the court to order that he be allowed to dress in civilian clothing when the jury is present, and that he be permitted to shower and shave daily during the trial. As the Supreme Court has recognized, the right to wear street clothes during trial stems from the presumption of innocence and the right to a fair trial. See *Estelle v. Williams*, 425 U.S. 501, 503-04, 512 (1976).

**18. Motion in Limine that Witnesses Be Excluded from the Courtroom**

Monzell Harding moves the court to order that all witnesses be excluded from the courtroom at all stages of the trial. The court should order witnesses excluded from the courtroom during trial, except for those permitted by law to be present. Fed. R. Evid. 615.

Dated: April 6, 2016                               Respectfully Submitted,

                                        _____/s/_____
                                        Severa Keith CSBN: 218167

*U.S. v. Harding, Motions in Limine*

Attorney for Defendant
IVAN SPEED
214 Duboce Avenue
San Francisco, CA 94103
(415) 626-6000
severa@keithlawoffice.com

*U.S. v. Harding, Motions in Limine*