1  JOHN R. GRELE (Bar. No. 167080)
   LAW OFFICE OF JOHN R. GRELE
2  1 Blackfield Dr., #158
   Tiburon, California 94920
3  Telephone: (415) 888-8912
   Facsimile: (415) 484-7003
4  jgrele@earthlink.net

5  Attorney for Defendant
   ALFONZO WILLIAMS
6

7

8              IN THE UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

              SAN FRANCISCO DIVISION

10
                                    CASE NO.  CR-13-0764-WHO
11 UNITED STATES OF AMERICA,

12              Plaintiffs,          **DEFENDANT WILLIAMS' MOTIONS IN
                                     LIMINE**
13 v.

14 ALFONZO WILLIAMS,

15              Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**I. General Reservations, Objections and Joinder** ..........................................................1

    A. Reservation of the Right to Respond to Theories of Admissibility ........................1

    B. The Government's Bates Numbering Prevents Identification of Exhibits
    for this Motion ..........................................................................................................2

    C. The Inability to Secure an Evidence Viewing ........................................................2

    D. Discovery Disclosed Recently ................................................................................2

    E. Joinder ....................................................................................................................2

**II. Motions in Limine** ........................................................................................................3

    #1: **The Court Must Preclude Evidence and Events Disclosed After
          Discovery Cutoff**......................................................................................3

    #2: **The Court Should Strike and Preclude Evidence of Insufficiently
           Indentified Acts** ......................................................................................4

        a. All Evidence of Young enticing, coercing prostitution ..................................4

        b. Statements by witnesses that Williams enticed, coerced prostitution.............4

        c. Evidence from *US v. Cheeves* .........................................................................4

        d. Evidence in *US v. Walker* ...............................................................................5

        e. Evidence concerning acts by co-conspirators .................................................5

    #3. **The Court Should Preclude all Law Enforcement Testimony**...............................5

    #4. **The Court Should Preclude Unspecified Evidence and
        Testimony Contained within Records that are Insufficient Designated
        and without Any Showing of Relevance**....................................................................5

        A. The Jail Calls Must be Precluded....................................................................5

        B. The Phone Downloads Must be Precluded conspirators..................................7

        C. Miscellaneous Designations that are Impossible to Determine
           Require Preclusion ..........................................................................................9

    D.   The 6 Terabytes of Pole Cam Data Must be Precluded
         Absent Further Specification ..................................................................9

    E.   The Phone Records Must be Precluded Absent Further Specification ...............9

    F.   Exhibits and Testimony Already Ruled Inadmissible Must be
         Precluded...........................................................................................10

**#5.   The Court Should Strike Testimony and Evidence of 1997 Drug
       Charge Against Mr. Williams; Strike Overt Act Allegation 17a;
       and  Preclude Impeachment with Conviction of Accessory**...........................10

**#6.    The Court Should Prelude Allegations, Evidence and Testimony of
       "Pimping" Concerning Mr. Williams…………………………………… 13**

       A.   The Language in the Indictment Must be Stricken………………………13

       B.   Overt Acts 17b, 17ee, 17gg and as Described in the Notice
          are Improperly Alleged and Must be Stricken and
          Precluded…………………………………………………………………13

      C.   The Allegations Against Mr. Williams Must be Stricken and
         Precluded ...........................................................................................14

**#7.   Preclude Expert Testimony of Agent Parker as to
       Element of Coercion**  ...........................................................................15

**#8.   Strike Evidence and Testimony of Act of Witness Intimidation,
       Overt Act17w; Request for Hearing** ....................................................14

**#9.   Preclude Admission or Display of Gang Validation Materials/Packets** ............17

**#10.  Preclude Rap Lyrics and Videos** ...........................................................18

**#11.  Preclude Gary Owens Phone Calls**.........................................................19

**#12.   Preclude Testimony and Evidence of Car Tracking**..........................................20

**#13.   Preclude Admission of Reports**...............................................................21

**#14.   Preclude Admission of Rule 404(b) Evidence**.................................................22

**#15.   Preclude Unidentified "Indicia"; Evidence from Searches**.............................23

      a.   Evidence from the December 15, 2011 search...............................23

ii

b.    Evidence obtained from the searches conducted surrounding
the October 6, 2009 witness intimidation incident**s**...................................24

c.    Evidence of a gun found during Mr. Williams' arrest…………………… 24

d.    Evidence Mr. Williams' possessed $6810 currency when arrested..........24

e.    Evidence from the rear apartment at 1458 Grove St after
Mr. Williams' arrest.................................................................................24

**#16.  Preclude Admission of the SFPD Search of Mr. Williams' Phone**..............24

**#17.  Preclude Admission of Credit Reports** ........................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Boyd v. City & County of San Francisco*, 576 F.3d 938 (9th Cir.2009)............................18

*Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011)....................................................11, 22

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) ............................................11, 21

*Rowland v. American General Finance*, 340 F.3d 187 (4th Cir. 2003)............................25

*United States v. Chea*, 231 F.3d 531 (9th Cir. 2000)..........................................................23

*United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007)........................................................8

*United States v. Herron*, No. 10-CR-615, 2014 WL 1871909 (E.D.N.Y. May 8, 2014) ..............................................................................................................................19

*United States v. Hill*, 953 F.2d 452 (9th Cir. 1991) ..........................................................13

*United States v. Jones*, 132 S. Ct. 945 (2012)....................................................................21

*United States v. Luna*, 21 F.3d 874 (9th Cir. 1994)..........................................................22

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) ........................................................15

*United States v. Montgomery*, 150 F.3d 983 (9th Cir.), *cert. denied*, 119 S. Ct. 267 (1998)............................................................................................................................23

*United States v. Ruggiero*, 726 F.2d 913 (2d Cir.), cert. denied, 469 U.S. 831 (1984)..................................................................................................................13, 14

*United States v. Vidal*, 504 F.3d 1072 (9th Cir. 2007)......................................................12

*United States v. Vizcarra-Martinez*, 66 F.3d 1006 (9th Cir. 1995) ................................12

*United States v. Wilson*, 493 F. Supp. 2d 484 (E.D.N.Y.2006) ........................................19

## STATE CASES

*Hannah v. State*, 420 Md. 339, 23 A.3d 192 (2011)..........................................................18

*Holmes v. State*, 306 P.3d 415 (Nev.2013).......................................................................19

*State v. Skinner*, 218 N.J. 496, 95 A.3d 236 (N.J.2014) ...............................................18, 19

# FEDERAL STATUTES

21 U.S.C. 841(a)(1)........................................................................................12

18 U.S.C. §1961.............................................................................................13

18 U.S.C. § 2242 ...................................................................................... 13-15

Fed. R. Evid. 403 ..................................................................................... passim

Fed. R. Evid. 404(b)....................................................1, 4, 7, 12, 17, 18, 22, 23

Fed.R.Evid. 803(6)........................................................................................25

Rule of Criminal Procedure 16(a)(1)(E) ..........................................................1

# STATE STATUTES

Cal. Pen. Code §32........................................................................................12

Cal. Pen. Code §266h....................................................................................13

# ADDITIONAL AUTHORITY

Andrea L. Dennis, Poetic (In)Justice ? Rap Music Lyrics as Art, Life, and
    Criminal Evidence, 31 Colum. J.L. & Arts 1, 22 (2007).............................19


Kubrin, Charis E. and Erik Nielson, "Rap on Trial." Race and Justice 4:185-211
    (2014)...................................................................................................19

JOHN R. GRELE (Bar. No. 167080)
LAW OFFICE OF JOHN R. GRELE
1 Blackfield Dr., #158
Tiburon, California 94920
Telephone: (415) 888-8912
Facsimile: (415) 484-7003
jgrele@earthlink.net

Attorney for Defendant
ALFONZO WILLIAMS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiffs,<br><br>v.<br><br>ALFONZO WILLIAMS,<br><br>                    Defendant. | CASE NO.  CR-13-0764-WHO<br><br>**DEFENDANT WILLIAMS' MOTIONS IN LIMINE** |

Defendant Alfonzo Williams hereby moves *in limine* to preclude the following evidence and testimony.  Each such motion is made under the Fifth and Sixth Amendment rights to confrontation, effective defense, due process; Federal Rules of Evidence (FRE) 403, 404(b), 602, 702, 703, 705, 802, and 901; and Rule of Criminal Procedure 16(a)(1)(E) ("Rule 16").

I.      **General Reservations, Objections and Joinder**

        A.      <u>Reservation of the Right to Respond to Theories of Admissibility</u>

        The government has not articulated its theory of admissibility and relevance for a large number of these items.  Some are self-evident; others are not.  Once the government articulates admissibility, Mr. Williams requests the ability to respond with additional argument and exhibits, if necessary.

### B. The Government's Bates Numbering Prevents Identification of Exhibits for this Motion

The government's exhibit list (Doc. #926) does not use the existing bates numbering from the discovery. Instead, for many items, it uses a new bates numbering system. Grele Decl. pars. 2-3. It is impossible to figure out where in the existing discovery the newly-referenced documents are, so they may be reviewed for this Motion. *Id.* Nor can the subjects of witness testimony be easily discerned. *Id.* Mr. Williams reserves the right to address these a later date, when that evidence and testimony is discerned.

### C. The Inability to Secure an Evidence Viewing

The defense was unable to view the evidence on the exhibit list prior to this filing. The main obstacle was counsel scheduling, and the government's refusal to make it available in stages. Grele Decl. par. 4. Mr. Williams reserves the right to make further in limine motions once he views the exhibits.

### D. Discovery Disclosed Recently

The government has only recently disclosed thousands of pages of discovery containing numerous incidents. Grele Decl. par. 4. The undersigned has not had the opportunity to review those materials to determine what they are. Mr. Williams reserves the right to make further motions once the discovery is fully reviewed and cross-referenced.

### E. Joinder

Mr. Williams joins in the Motions in Limine filed by Defendant Antonia Gilton, Doc. 967. In addition, he joins motion #2 (jail calls) as they pertain to Mr. Gilton and himself; and motion #7 (use of prior convictions to impeach) as it pertains to Mr. Gilton and himself. Mr. Williams further joins in the Motions in Limine filed by Defendants Barry Gilton and Paul Robeson (Doc. 972).

///

## II.    Motions in Limine

### #1: The Court Must Preclude Evidence and Events Disclosed After Discovery Cutoff

Mr. Williams had made numerous applications for a list of criminal acts to be used at trial. Doc. #225, at 2; Doc. # 359, at 5; Doc. #363.  On June 5, 2015, the government represented it had disclosed all the acts it intended to use at trial, with the potential exception of one shooting not at issue here.  Doc.  409, at 3 (Order describing government's representation).  The Court ordered disclosure by October 21, 2015.  Doc. # 353.

On August 5, 2015, despite its previous assurances, the government released over 50 SFPD interactions with the defendants in Group 1, nearly all of which were not in the existing discovery or the indictment.  Grele Decl. pars. 6.  It continued to release additional material with hundreds of additional SFPD interactions and arrests, involving the remaining defendants and alleged co-conspirators.  Grele Decl. par.7.

In response, Mr. Williams again moved for a list of acts to be used at trial.  Doc.  575.  It was for acts contained within the discovery released by October 21, 2015. *Id*.  The Court ordered it, *in the nature of a bill of particulars*.  Doc. #758 at 3.  Instead, the government provided a generalized list of categories of discovery. Doc. 808.  The Court ordered a specified list.  The government then provided another list with some specification, but also containing continued generalities. Doc. 851.

Nearly the entirety of the specified items on the government's list is material not disclosed prior to October 21, 2015 that constitutes police reports clearly available to the government in the 6 years it has been investigating this case.  Grele Decl. par. 8.  It is too close to trial to permit them without the defense suffering great prejudice.  Grele Decl. par. 9.

Entire events were late disclosed:

a.    The Levexier homicide (exhibits 83-115; disclosed 1.20.16);

b.    The Barrett homicide (exhibits 552-584; disclosed 1.25.16);

3

c. The silver van robberies (exhibits 608-651; disclosed 1.25.16).

d. The 404b Reports (disclosed 11.24.15)

e. The Young Statutory Rape court evidence (disclosed 1.4.16)

Grele Decl. par. 10.

A full list of late-disclosed materials is not available because discovery continues to be produced. In general, any discovery bearing bates numbers BG 086947 and above (we are at BG 091469) and any discovery bearing bates with the new bates designations 29, 32 and 33 were produced after the cut-off date. *Id.* Mr. Williams will need to determine which incidents listed in the exhibit list and witness list correspond to which events and whether they were timely disclosed, and reserves the right to do so.

These late-disclosed matters should be precluded.

**#2: The Court Should Strike and Preclude Evidence of Insufficiently Identified Acts**

The following are too general and cover too many potential acts to be sufficiently noticed. As a result, the defense has no ability to effectively investigate, and any evidence and testimony pertaining to them should be precluded.

a. All Evidence of Young enticing, coercing prostitution: to the extent this is beyond the discovery disclosed after October 21, 2015, it cannot be discerned or determined as no dates or persons are listed. Grele Decl. par. 12.

b. Statements by witnesses that Williams enticed, coerced prostitution: this allegation is impossible to determine or investigate without a date, date range or persons involved. Grele Decl. par. 13. There are three potential SFPD incidents in the discovery, none of which are racketeering acts, and no SFPD witnesses are identified who will testify to those. Grele Decl. par. 14.

c. Evidence from *US v. Cheeves*: the act itself is a shooting by Elmore and Cheeves. Grele Decl. par. 15. The evidence within the 55 cds of discovery includes numerous incidents

4

within Elmore's entire alfa file (exh. 373); and 27 cds of jail calls containing who knows what discussions of acts and incidents (exh. 391). Any evidence of any act beyond the shooting itself should be precluded.

d. Evidence in *US v. Walker*: This involves a shooting. Grele Decl. par. 16. However, within the discovery are 4 cds of unidentified jail phone calls. (exhs. 429, 430, 440, 443). To the extent the "evidence" references additional acts and persons beyond the shooting, they should be precluded.

e. Evidence concerning acts by co-conspirators: The government lists 2000 pages of discovery concerning hundreds of incident reports involving the defendants and co-conspirators. It is beyond the capabilities of the defense to investigate and present a defense, or make appropriate motions relating to them. Grele Decl. par. 17.

**#3. The Court Should Preclude all Law Enforcement Testimony**

The government was ordered to disclose *Henthorn* impeachment material by November 23, 2015. Doc. 353, at 4. It still has not done so. Grele Decl. par. 18. There may be reasons for this, but the delay precludes effective defense investigation and impeachment. *Id*.

**#4. The Court Should Preclude Unspecified Evidence and Testimony Contained within Records that are Insufficient Designated and without Any Showing of Relevance**

Throughout the exhibit list, the government has listed large categories of evidence as a single exhibit. This is an insufficient designation that prevents a focused motion *in limine*, confrontation and an effective defense. In the absence of specification, the evidence must be excluded.

A. The Jail Calls Must be Precluded Due to Discovery Violation; Insufficient Identification; Lack of Notice; Denial of Confrontation or any Showing of Relevance

There are thousands of jail calls scattered throughout the discovery, nearly all of which are calls with loved ones discussing events within families, efforts to obtain counsel or deposits

for the commissary, visits, and the like. Exhibits 128 (Walker calls for a month); 144 (unidentified calls); 391 (27 CDs of unidentified calls); 429 (Walker calls for 1 day); 430 (Walker calls for 7 months)[1]; 440 (unidentified calls); 443 (unidentified calls); 563 (unidentified calls – may be Heard); 565 (unidentified calls); 583 (Heard calls for 2 weeks); 594 (unidentified calls); 648 (unidentified calls); 666 (unidentified calls); 749 (unidentified calls – may be Young); 823 (Young calls); 824 (Ferdinand calls); 838 (unidentified calls); 876 (7 calls by Mercado); 882 (3 calls by Mercado); 883 (7 calls by Williams); 884 (10 calls, 8 by A Gilton); 885 (5 by Mercado, 106 by Williams); 886 (16 by Mercado, 4 by unknown male); 1008 (unidentified calls for 6 month period); 1010 (unidentified calls for 2 weeks).[2] Grele Decl. par. 19.

The government was required to make its phone call designations by April 1, 2016. Doc. #831, at 3. They did not do so. Grele Decl. par. 21. Counsel requested this information so as to fashion a proper motion in limine, but no response was forthcoming. *Id.* For this reason alone, the calls must be precluded.

It is often impossible to figure out what phone calls involve which defendants or co-conspirators. This is because the jails do not record specific inmates, but rather the phone number of the recipient, as explained by Mr. Frentzen.[3] Grele Decl. par. 22.

Even if all the calls had been reviewed (which they have not), Mr. Williams is not going to waste resources detailing why each one is inadmissible when only a small fraction may be used. Mr. A. Gilton has detailed why nearly all are unnoticed statements by co-conspirators and

---

[1] In the BG discovery notations, one file contains 520 Walker calls.

[2] Only 391, 749, 838, 876, 882, 883, 884, 885, 886 have the bates numbering used for the past 3 years. The "SF" designations for exhibits 1008 and 1010 do not correspond to the state discovery designations. These may or may not contain the bulk of the calls in the discovery (BG 75356). Grele Decl. par. 20.

[3] Such identifications do exist because the FBI has to request the specific numbers, so it must have figured out what numbers are tied to whom. Mr. Williams' discovery motion for this information (Dkt. #362) was denied based on a representation that line sheets were available and searchable (Dkt. #409, at 6-7), which was never true for jail calls.

must be stricken.  FRE 801(d)(2)(E). The same holds true as they pertain to Mr. Williams, with the added feature that the A. Gilton calls are unnoticed co-conspirator statements as to Mr. Williams. They will also deny Mr. Williams his right to confrontation under the Sixth Amendment.

For Mr. Williams, the undersigned believes he has identified 2800 potential calls by him based on the phone numbers called (girlfriends), with an additional potential 530 that are unidentified and 375 that may be other group 1 defendants Mercado, A. Gilton and B. Gilton. Grele Decl. par. 23.  It is not apparent what value those calls have as they appear to be discussions with loved ones about counsel, money for commissary, events within his family and the like.  No admissions or efforts to further any conspiracy have been identified by the government in any of these.  FRE 402.  In addition, while Mr. Williams may use vulgar language, and argue with his loved ones or seek their aid, such interactions are inadmissible for any legitimate purpose, and are only offered to cast him in an unfavorable light.  FRE 403.

B.   <u>The Phone Downloads Must be Precluded Absent Identification of Relevance; Hearsay; Denial of the Right of Confrontation; and No Designation as Co-Conspirator Statements</u>

Another undefined designation is "phone downloads." [4]  These downloads and reports contain thousands of texts, photos, internet history, and videos. Grele Decl. par. 24. It is impossible to fashion motions without further designations by the government as to what it will actually use.  *Id.*  All of it involves statements by co-conspirators that were unnoticed, as discussed by A. Gilton.   FRE 801(d)(2)(E). Some involve apparent references to acts not contained in any of the notices (such as pictures of marijuana).  FRE 404b.

Further, for the most part, the relevance of the material is not apparent.  FRE 402.  At

---

[4] Exhibits 507, **Error! Main Document Only.**574, 582, **Error! Main Document Only.**595, **Error! Main Document Only.**656, 657, 658, 663, 796, 815, 819, **Error! Main Document Only.**847, 848, 879, 911, 914, **Error! Main Document Only.**1082-83, 1090, 1091, 1096, 1142.

most, it is being used to cast the defendants and their alleged friends or associates in a negative light with pictures of girlfriends in various states of undress; genitalia; sexts between consenting adults; derogatory language; photos taken of drugs off the internet, gangsta rap videos and photos; and general "ghetto culture." FRE 403; *See, e.g. United States v. Curtin*, 489 F.3d 935, 964 (9th Cir. 2007). Mr. Williams has already noted the difficulty this type of character evidence presents when his jury will under-represent African-Americans by 50%.

This problem can be seen in Mr. Williams' phone downloads (4 exhibits for the same phone; 336 pages of text and internet data in 1 examination alone). His girlfriend is posing for him naked in 4 photos. There is discussion of sexual preferences and enjoyment. There are texts back and forth between Mr. Williams and several girlfriend, and photos. There are evidence of internet searches involving pornography. Grele Decl. par. 25. There are no allegations these have anything to do with this case – there is no evidence they were involved in prostitution or that he was involved in such activities with them. *Id*. In fact, there are no texts, photos or videos that infer prostitution at all, and no postings on Facebook, Instagram or the like. *Id.*

While some of the information, such as the fact of texting and calling around the time of the Sneed homicide (as opposed to some of the content), might be relevant, the vast majority of it is not. They are personal and private. The only use for them appears to get the jury to dislike Mr. Williams because he had several girlfriends at the same time, one of whom was a Caucasian dancer at the Mitchell Brothers club, and was that he was juggling them. Such material is not evidence of any crime and is classically prejudicial. FRE 403. But, the first step is for the government to designate what it intends to use. Perhaps then a more cogent resolution can take place.

C.    Miscellaneous Designations that are Impossible to Determine Require Preclusion

A large number of exhibits could not be determined as the descriptions are too generic and either the materials cannot be easily located or may be buried within a large number of

similar evidence.  This occurs mainly with unspecified phone records and photographs. Exhibits 1-4 and 8 – 40 (these have never been provided); Exhibits 155-65 (photos of defendants and others making symbols); Exhibits 172-177 (jail letters); Exhibits 183-84 (unidentified photos – there are many photos of the garage and residence on that date and in general); Exhibits 189-90, 192 (unidentified phone records);  Exhibit 199 (GTF folder with 80 pages on CDP – unaware of this disclosure); Exhibit 225 ("Heard" without any description);  Exhibit 226 ("Northcutt without any description); Exhibit 227 (gun photos); unnumbered ("parole-Northcutt");  Exhibit 232 ("statement"); Exhibit 251 and 254 (statements); Exhibit 257 (Indicia); Exhibit 421 (miscellaneous items); Exhibit 433 (photos of documents); Exhibit 937 (photos); 1004 (photos of documents) 1021 (same); 1093; 1094.   "Miscellaneous" evidence includes photos of guns and ammunition that is not further described and cannot be addressed.  Exhibits 1212-1223.

All such materials should be precluded.

D.     The 6 Terabytes of Pole Cam Data Must be Precluded Absent Further Specification

The government listed video from the pole cam, which is 6 terabytes of data from a camera that operated for 4 months.  Exhibits 110-114, 1186-1189.  This is separate from the videos surrounding the night of the Sneed homicide.  Grele Decl. par. 26.  It is impossible without further designation for the defense to prepare motions and confront this. *Id*.

E.     The Phone Records Must be Precluded Absent Further Specification

The government intends to use the hundreds of thousands of pages of phone records in this case. *See e.g.*   12334-12242. Each pages contains 50-100 entries.  Grele Decl. par. 27. Without some indication how these records are being used, the defense cannot prepare.  *Id.*

Some of this information is obviously relevant. As to several phones, CAST reports have been prepared with tacking movements as to critical events. But, as to the remainder, it is impossible to ferret out the significance.  The government did produce a list of calls made by Mr.

Williams to certain persons during a certain time, but that list does not appear to be an exhibit (at least as far as can be discerned). *Id.*

      F.      <u>Exhibits and Testimony Already Ruled Inadmissible Must be Precluded</u>

Certain items have already been ruled in admissible. Exhibits 196-97 reference the SF Sheriff Department classification documents, which Mr. Williams supposes are here in case the Circuit overturns the Court. The Court has already ruled the search of Mr. Williams residence in 1997 to be inadmissible. Doc. 891. Yet, items from that search are listed. The government lists a statement of Mr. Williams. Exhibit 904. All such statements have been ruled in admissible. Doc. 891. The Court has limited the CDP gang testimony. Doc. 927. Yet, there are witnesses listed who will testify to the precluded subject areas. *See* Underseal Witness List, SFPD officers listed as discussing CDP. And, there are entire gang alpha files, or GTF files, listed on the exhibit list, as well as a CDP roster authored by SFPD and the FBI, apparently. Exhibits 1203-1209. For what purpose is not clear. Such rosters and diagrams are not admissible given the limitations on the testimony that is permitted.

**#5.    The Court Should Strike Testimony and Evidence of 1997 Drug Charge Against Mr. Williams; Strike Overt Act Allegation 17a; and Preclude Impeachment with Conviction of Accessory.**

This alleged overt act concerns an observation of Mr. X and his travels throughout the area selling drugs over several days' time in April, 1977. At some point, officers observed Mr. Williams in X's car; he then ran from officers as they approached. As he ran, he threw a small bag (golf ball size) with a white substance the officers then retrieved. The officers then searched his apartment at 1458 Grove St. and found a larger quantity of white substance. Later analysis by the SFPD lab determined the substance to be cocaine. Grele Decl., par. 28. (bg 8050-59).

The case was resolved prior to preliminary hearing, without any confrontation of witnesses against him. Mr. Williams agreed to a conviction of accessory after the fact, without any admission of involvement with drugs. He was granted probation. Grele Decl., par. 29.

10

(bg8077-85). It remains his only criminal charge, and only conviction.

The evidence from the search of Mr. Williams' apartment has been suppressed. Doc. 891. It is assumed the evidence the government intends to use concerns the small bag tossed by Mr. Williams, and the "indica" not associated with the apartment, which consists of a driver's license and $309. Grele Decl., par. 28.

It is believed Exhibit 337 is photographs of indica found at the apartment as well as Mr. Williams' person. Grele Decl., par. 30. (bg 8043-48). This is inadmissible. Even the "indica" in his pocket should be suppressed as "indica" are for the purpose of tying an individual to his residence, which is irrelevant here because the residence search is inadmissible. FRE 403.

Exhibit 338 and 340 are the lab reports (bg 8062-63). Grele Decl., par. 31. Exhibit 339 (bg8049) is the "ROI", which is a report of investigation by the District Attorney's investigator that includes the amount of cocaine, the original charges, and the charges which were resolved. *Id.* None are admissible, as they are clearly testimonial. *Melendez–Diaz v. Massachusetts*, 557 U.S. 305 (2009). The ROI is hearsay and irrelevant. *Bullcoming v. New Mexico*, 131 S.Ct. 2705 (2011). Neither the investigator nor the criminalist (Madden) are on the witness list; in fact, no criminalist testimony was offered in the expert disclosures as to this evidence. Grele Decl., par. 31.

A larger difficulty is that the criminalist who conducted the testing, Ms. Madden, was found to have taken and used drugs during her tenure. DA Kamala Harris dismissed all of Madden's cases where retesting was unavailable. Grele Decl., par. 32 and exhibit A (AUSA sentencing memorandum in *US v. Madden*). There is no reason why this Court should do anything different.

Typical of Ms. Madden's work, the SFPD lab reports are unreliable on their face, and reflect the fruits of the illegal search. Evid. R. 702. They make no distinction between the small bag and the remainder of the alleged cocaine that was illegally seized. We do not even know if

11

the small bag was analyzed.  Given the description of a golf ball size, it is impossible that it constituted 13 ounces of cocaine base (358 grams).  In fact, the ROI report states that the *total* seized was 358 grams, as does the police report (bg8059). Grele Decl., par. 32.

Confounding matters, the government has declined to provide all the photographs or property reports pertaining to this incident.  Grele Decl., par. 33.  As a result, it is impossible to determine whether the small bag is what was examined and tested.  The refusal to provide clear Rule 16 material requires the incident be precluded.

Mr. Williams' plea transcript (exh. 341; bg 8077-85) is inadmissible. Not only was the plea the result of the illegal search, it contains no admission to any drug sales or gang-related activity – it is a plea to an accessory after the fact with an individual not associated with any CDP or gang activity.  Cal. Pen. Code §32 (conceal or aids another with intend to assist in avoiding arrest).  There is no factual basis for the plea given, or a stipulation by Mr. Williams that one exists (only by his counsel, without Mr. Williams' agreement).  Grele Decl. par. 34 and exhibit (bg 8077-85).  Accessory after the fact is a separate crime, without any tether to the crime involved.  *United States v. Vidal,* 504 F.3d 1072, 1077 & 1081 (9th Cir. 2007).

The government is therefore limited to testimony of the observation, the flight and the small bag with an unknown substance in it.  This apparent possession of a small, undetermined amount of what might or might not be drugs does not rise to the level of a racketeering act under 21 U.S.C. 841(a)(1).  This act was 5 years before any other alleged overt act in this case.  There is no indication in the discovery that CDP existed at this time, or that Mr. Williams was a part of it. No other alleged co-conspirators were involved.  In fact, as discussed in relation to the SFPD records subpoena, the only recorded record of CDP organization and structure omitted mention of Mr. Williams.  This is insufficient to constitute an overt act, and too prejudicial and remote to be admissible.  FRE 403.  Even if it were noticed as 404b evidence (which it was not), it would nto b admissible. *See United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1015 (9th Cir. 1995);

*United States v. Hill*, 953 F.2d 452, 457 (9th Cir. 1991).

**#6.     The Court Should Prelude Allegations, Evidence and Testimony of "Pimping" against Mr. Williams**

Allegations of racketeering acts must be acts that satisfy the elements of the statute. *United States v. Ruggiero*, 726 F.2d 913, 920 (2d Cir.), cert. denied, 469 U.S. 831 (1984). "Pimping" is not a racketeering act.    "Pimping" is defined as living with or obtaining support from those engaged in prostitution.   Cal. Pen. Code §266h.   It is not a federal crime, nor is it specified in the racketeering statute as a crime that constitutes an enterprise or predicate act.   18 U.S.C. §1961.   By contrast, there are federal statutes that prohibit certain types of conduct relating to the encouragement or coercion of sex acts by others.   Those are conduct relating to minors and mail (or internet), and transportation across state lines (the "White Slavery Act" or "Mann Act").   18 U.S.C. section 2242(a) and (b).   These are predicate acts under section 1961, and have been charged as such in the indictment.   Doc. 139, par. 15c.   They do not involve the profiteering or benefit elements of "pimping",   and require additional elements such as coercion, minors or state lines.

A.       The Language in the Indictment Must be Stricken

The allegation in the indictment cites the correct statute.   However, the parenthetical description is "coercion and enticement of a person to engage in prostitution", when the statute itself requires additional elements.   That language, therefore, is misleading as to elements required, improper and cannot be amended without variance, so must be stricken.

B.       Overt Acts 17b, 17ee, 17gg and as Described in the Notice are Improperly Alleged and Must be Stricken and Precluded

For the same reason, several related overt act allegations cannot be used as predicate acts for the conspiracy.   *See* Doc. 139, pars. 17b (Young allegation re minor); 17ee (same); 17gg (Robeson).   The same difficulty arises from all the related allegations in the government's Notice.

13

(Doc. 851). For allegations against Defendants Robeson and Young, the government has alleged sexual acts with minors as "pimping." Doc. 851. That is incorrect, and such allegations should be stricken. As with the allegation as to co-conspirator Parker, all three fail to allege the federal jurisdictional elements of section 2242(b). They are, therefore, defective as racketeering acts, proof of a pattern of racketeering, and cannot form the basis for any findings of conspiracy to form an enterprise through the use of such acts.[5]

      C.      <u>The Allegations Against Mr. Williams Must be Stricken and Precluded</u>

As to allegation in the government's notice concerning Mr. Williams, it is equally insufficient. The government's allegation is that Mr. Williams, on unspecified occasions, "has been engaged in persuading, inducing, enticing and coercing individuals to engage in prostitution." Doc. #851 at 2. The government indicated it would prove these allegations by means of "statements by witnesses." *Id*. The allegation uses the language of section 2242(a) ("persuade, induce, entice, or coerce"), but without the allegation of interstate travel or use of a minor. It cannot be a racketeering act and should be precluded as such. *United States v. Ruggiero*, 726 F.2d 913, 920 (2d Cir.), cert. denied, 469 U.S. 831 (1984).[6]

Because these are alleged overt acts and not predicate acts, the Court must engage in an analysis of whether they are admissible as evidence in furtherance of the conspiracy as against any individual defendant, and then must craft appropriate limiting instructions even if they are. To date, there is no evidence that these alleged acts furthered anything having to do with the alleged enterprise, or even the other coconspirators. It is submitted that given the nature of the allegations and the conflicting evidence, the allegation of "pimping" too prejudicial to be

---

[5] This is in contrast to the allegation of an overt acts 17dd and. 17ff, and counts 16, 17, 21 and 22.

[6] As noted above, there are two instances of Mr. Williams engaging with adult prostitutes on the street in San Francisco that may be described as evidence of coercion. Grele Decl. par. 14. However, they are not in the government's Notice, not included in the incidents alleged in the 404b Notice, and for which no witnesses are listed. It is assumed they are not being used at trial.

permitted.  FRE 403. The government should stick to the statutory definitions and not wander into generalized allegations that are salacious character evidence.

**#7.  Preclude Expert Testimony of Agent Parker as to Element of Coercion**

Because Mr. Williams did not receive notice of the allegations he was involved in coercion of prostitution until after the October 21, 2015 cutoff date; Agent Parker's expert disclosure (Doc. #752-1 at 23-25) did not identify any evidence in this case that she reviewed or what events or persons it would relate to, nor has there been any disclosures as to that evidence review; and, the government did not offer Parker's testimony as relevant to anyone's activity other than Young or Robeson (Doc. 725), there was insufficient notice that this proposed testimony would be used against him.  Mr. Williams, therefore, joined in the motion by Robeson (Doc. 645), and reserved his rights to challenge further that proposed disclosure and to offer his own expert opinions.

Of particular concern here, and not discussed by Defendant Robeson, is Agent Parker's proposed testimony about the pimp/prostitute relationship and methods and means of control, and that the relationship is necessarily coercive. *Id.* at 24-25.   As discussed above, "pimping" does not involve coercion as a matter of law.  Rather, "coercion" is a factual element of the crime act the government needs to prove against the defendants as part of a pattern of racketeering.  18 U.S.C. 2242(a).  It is improper to offer expert testimony that an element of a crime, overt act or predicate act is established in this manner.  Congress has determined what the elements of a crime are; the courts have established what must be proven.  Essentially, the government intends to present testimony that Mr. Williams is a pimp, and that, therefore, the element of coercion of sex activity is established.  This is improper. *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) (cannot shortcut required proofs with expert testimony that they exist); FRE Rule 704(b).

The Court should be aware that there may be a real life example in this case. There was preliminary hearing testimony in state court proceedings that Mr. Williams' girlfriend traveled to

Las Vegas, but she did so on her own, with her friends, and met up with Mr. Williams there. Grele Decl. par. 35. Even if the purpose was to involve prohibited sex acts there (for which there is no evidence), the government would still have to establish that Mr. Williams encouraged, enticed or coerced it. The government's approach would allow it to skip that step with expert testimony that because Mr. Williams was a pimp, he must have coerced the activity. That is exactly what expert testimony cannot do.

**#8.     Strike Evidence and Testimony of Act of Witness Intimidation, Overt Act 17w; Request for Hearing**

It is alleged that several CDP members (not the Group 1 defendants), stood up as an identification witness testified during a trial where Mr. Heard was the defendant. There is no dispute that Mr. Heard's attorney, Safire, arranged the stand up with the young men in a misguided effort to demonstrate that the Caucasian witness could not distinguish between young African-American men. It was the central issue at the trial. There was a full investigation and hearing in the state trial court (including interview with the trial judge as a witness), and findings by that court and the appellate court to this effect, that must be credited by this Court. Grele Decl., par. 36. (exhibits from state court inquiry; Safire statements; findings).

Given this record, and the absence of any contrary evidence of attempted intimidation, the overt act must be stricken and the testimony and exhibits (exhs. 325-336) precluded. Alternatively, a hearing is required with a sufficient showing of some connection to the conspiracy allegations beyond what is in the discovery before it can be admitted. Not every act by alleged CDP members is one done in furtherance of the conspiracy, and this one has strong evidence to the contrary. It is so prejudicial that its admission will prevent a fair trial. FRE 403. It is also highly likely to devolve into a separate trial about the attorney's conduct, and involve testimony from the judge, who gave a recorded statement. The undue consumption of time for a collateral matter that is overly prejudicial is improper. FRE 403.

**#9.     Preclude Admission or Display of Gang Validation Materials/Packets**

The government lists several gang validation packets (alpha files) as evidence.  Exh. 373; Exhs. 1206-1209. Although the new discovery designations prevent itemized objections, the old discovery included a face sheet for "validation" and then every police report or traffic violation mentioning each subject.  Others are listed as "GTF" files "for reference".  Exhs. 199-211. Most of these allegations were never noticed in the indictment or the government's notice of acts (at least the specified acts).  Grele Decl. par. 37.  CDP charts are also offered.  Exhibits 1203-1205. None of it is dated nor is authorship or authentication evident, including the validations done by an unknown officer at an unknown time. *Id.*

Even if the defense could figure out what within this mountain of late-disclosed reports the government seeks to introduce, it would still be inadmissible.  This Court has already ruled, and the government has conceded, that such validations aren't admissible. Doc. 891. Rather, membership and structure will be established through lay witness testimony.  The fact that several reports list individuals as seen together, or what the particular activities were, can only come in through the testimony of those who saw them, not the hearsay of someone testifying as to the reports.  Any statements therein, and any acts described are are un-noticed.  FRE 801(d)(2)(E); FRE 404b; Doc. 851.  Further, the spectacle of a witness having a stack of reports and referencing them as the "gang", "GTF" or "alpha" files is simply too prejudicial.  FRE 403.

There is another difficulty with "alpha" files.  According to SFPD and the government, they are concocted when there is a prosecution, not kept as a regular business compilation.  And, they change over time, depending upon the stages of prosecution. Grele Decl. par. 38. This is why, for example, Ms. Taylor could represent that the defense had such files when the only thing the defense had was the sheriff department classification documents. *Id.* Then, months later, the government produced a different packet, the one with the validation and police reports, and represented those were the alpha files now.  *Id.*  Thus, introduction of such materials will devolve

17

into testimony about what the packets constitute, and why, and may even involve presentation of testimony about what was in the discovery at what time so as to establish that such records are a litigation-driven compilation that did not exist until August of 2015, rather than actual gang records. The undue consumption of time on collateral matters precludes admission. FRE 403.

**#10.   Preclude Rap Lyrics and Videos**

Mr. Williams has already extensively briefed the need for expert testimony regarding rap lyrics and will not repeat it here.  As the Court noted, there is a threshold issue concerning admissibility of the rap videos and lyrics in the first place.  Incredibly, the government announced on April 1, 2016 that it was seeking introduction of an entirely new set of videos not previously noticed, along with lyrics not previously produced. Grele Decl. par. 39. The undersigned still has not seen them, and therefore cannot address them here.  *Id.*  This is outrageous. For this reason alone, they should be precluded.

In any event, they are all inadmissible.  None of the rap evidence concerns lyrics or videos made by any defendants. Grele Decl. par. 40.  No court has permitted the rap evidence contemplated here, and this Court should reject it as well.

The government's stated purpose in showing the videos and offering the lyrics is that they are evidence of the conspiracy.  It did not include any rap lyrics or statements in videos in its FRE 801(d)(2)(E) co-conspirator statement disclosure; did not include any referenced activity therein in its 404(b) notice; and did not include any such allegations arising from or relating to the rap evidence in its racketeering notice (Doc. 851).  For this reason, they should be precluded.

Rap videos are inherently prejudicial. *Boyd v. City & County of San Francisco*, 576 F.3d 938, 949 (9th Cir.2009) (rap evidence highly prejudicial and inadmissible; lyrics advocating prostitution); *See State v. Skinner*, 218 N.J. 496, 95 A.3d 236 (N.J.2014); *Hannah v. State,* 420 Md. 339, 23 A.3d 192, 204–05 (2011).  Experts have universally condemned the use of such videos to prejudice juries. *See, e.g.,* Andrea L. Dennis, *Poetic (In)Justice ? Rap Music Lyrics as*

*Art, Life, and Criminal Evidence,* 31 Colum. J.L. & Arts 1, 22 (2007) ( "gangsta" is a subgenre of rap that "purports to reflect life in the inner city," draws on devices such as metaphor, braggadocio, and exaggeration for effect, and uses words that may be offensive and prone to misinterpretation by jurors and courts unfamiliar with rap). The reasons for this are well-established. *Holmes v. State*, 306 P.3d 415, 423 (Nev.2013) (Saitta, J., dissenting).

The material here is no different from that which has been condemned above. As Professor Kubrin has opined, the videos are well within the standard Gangsta Rap genre and present nothing out of the ordinary for the art form. Dkt. #830, exhibit G [disclosure and CV]; Dkt. #743. The displays of guns and drugs; discussion of prostitution; and claiming an area, are all well within that genre. *Id*; Kubrin, Charis E. and Erik Nielson. "Rap on Trial." Race and Justice 4:185-211 (2014) (previously submitted to the Court).

Those instances where rap evidence has been admitted have required the material be tethered to the individual defendant – lyrics the defendant himself wrote about the crime alleged. *Holmes v. State*, 306 P.3d 415, 418 (Nev.2013) (Defendant's own lyric about his robbing); *United States v. Herron*, No. 10–CR–615, 2014 WL 1871909, *2–*3 (E.D.N.Y. May 8, 2014) (show Defendant identifying as a member of the Gowanus-based Murderous Mad Dogs, conversing with alleged gang associates, firing weapons, vowing retaliation after an alleged associate is shot by a rival, and bragging that other people will do his bidding); *United States v. Wilson*, 493 F.Supp.2d 484, 488–89 (E.D.N.Y.2006) (Defendant's own rap lyrics about the crime). None of that is present here. Even then, that may not be enough to render it admissible given the ensuing prejudice. *State v. Skinner*, 218 N.J. 496 (N.J.2014).

**#11.    Preclude Gary Owens Phone Calls Evidence**

Within the Levexier homicide evidence is reference to phone calls from inmate Gary Owens to his mother and girlfriend. Exhibits 91-94. Although it has been impossible to identify this material in the existing Levexier discovery, that discovery did contain police reports

19

describing these conversations. It appears Owens' girlfriend told Owens that her friend told her that another friend said that "Alfonzo and them" paid Esau Ferdinand to kill Levexier, and that his mother, in a separate conversation, repeated this rumor. Grele Decl. par. 41.

It is impossible to determine how such rank hearsay will ever be permitted. If the government has witnesses with first-hand knowledge who can testify to those facts, so be it. But, even if they do, the Owens calls aren't admissible.

#### #12.    Preclude Testimony and Evidence of Car Tracking

The government intends to use car tracking done of Mr. Williams Acura and his girlfriend's Mercedes vehicles. Exhibits 1230-31. The evidence should be precluded because of discovery violations and the absence of any expert testimony concerning the devices and their accuracy and reliability.

Initially, Mr. Williams moved for discovery on the devices – their repair history, reliability history, the manuals involved and how they were affixed to the vehicles. Docs. 479 and 573 ("the reports, correspondence, memoranda, information as to how the data was obtained and from where, and the data for vehicle tracking"; "what device was used; how it got there; the reliability data; etc). This was denied as not specific enough. Doc. 659. It was also impossible to review the raw data, and some of the tracking was not disclosed. Discovery of this information was denied as well. *Id.*

Subsequently, in a series of attempts to request the specific information as to the devices, including their repair history, how they were affixed, how they are supposed to be used, and the raw data, the government refused to provide anything. Grele Decl. par. 42. Luckily, an expert was able to use programs he possessed to hack the data and retrieve some of the information. Grele Decl. par. 43. As a result, Mr. Williams was able to discern that the devices are regular, commonly-known devices discussed in cases and whose schematics and design have been fully divulged on the internet for years. Beagle Declaration. The devices require they be affixed to the

cars, either internally in the engine compartment or within the frame.  A motion to suppress will ensue. *United States v. Jones*, 132 S.Ct. 945 (2012).

The review also discloses that the defense has only four days relevant raw data on the Acura.  Tracking data from July 29, 2010 to August 25, 2010 is missing.  Thus, most of that report cannot be reviewed for accuracy.  A large section of the Acura report is also missing – from August 30, 2010 to October 20, 2010.  Beagle Declaration.

In examining some of the tracking data, it is readily apparent that not all the data was disclosed.  *Id*.  There are no reports concerning the accuracy of these devices such as repair history; specifications as to standard error rates; manuals as to how to use them properly and reports as to how they were used.  Beagle Declaration.  The denial of basic tools to discover and confront the evidence against him, and to challenge it, violates Mr. Williams' rights to confrontation and effective counsel, and prevents effective pretrial litigation as to admissibility under FRE 702.

Furthermore, the government did not list any expert to testify as to the devices, how they work, what it means to have "stops" at certain locations, whether they are reliable and how accurate they may be.   Without such foundational testimony, the tracking reports are inadmissible.

**#13.    Preclude Admission of Reports**

The exhibit list contains numerous lab, forensic and police reports that are being sought to be introduced as evidence rather than for reference.[7]  It is now well-established that admission of such reports violates the right to confrontation and are hearsay. *Melendez-Diaz v. Massachusetts*,

---

[7] Exhibits 45, 46, 48, 57, 60, 83, 107, 108, 140, 214, 228, 237, 265, 298, 338, 339, 340, 343, 345, 348, 350, 352, 353, 356, 357, 370, 392, 395, 398, 416, 425, 450, 451, 454, 455, 500, 501, 518, 525, 526, 629, 663, 694, 734, 741, 759, 772, 777, 841, 866, 911, 914, 932, 940, 941, 955, 960, 966, 967, 973, 982, 983, 984, 990, 995-97, 1005-1007, 1012-13, 1024-25, 1048, 1050, 1055, 1059, 1064, 1080, 1082, 1083, 1108, 1203-1209, 1217, 1222-23, 1230-31, 1233.

557 U.S. 305 (2009).  Even testimony by others as to the reports is improper. *Bullcoming v. New Mexico*, 131 S.Ct. 2705 (2011).

**#14.     Preclude Admission of Rule 404(b) Evidence**

In its November 24, 2015 notice of evidence it intends to offer at trial pursuant to Federal Rule of Evidence 404(b), the government listed numerous acts having nothing to do with Mr. Williams.  It also listed San Francisco Police Department Incident Report number 070124561. Grele Decl. par. 44. None of these are admissible Rule 404b evidence as to Group 1 defendants.

As to Incident Report number 070124561, SFPD officers responded to San Francisco General Hospital to investigate the shooting of Leon Parker and Floyd Barrow.  Upon arriving at the hospital, the officers searched Mr. Williams (illegally), and found nothing.  There were "about twenty to twenty-five unknown black males" in the area.  About twenty minutes later, a "citizen", Mr. S, approached a police officer at the hospital and reported finding a handgun in the parking lot of the hospital, on top of his car's tire.  The firearm was not connected to Mr. Williams, or any anyone other than Mr. S.

Evidence of a prior bad act may be admissible when it is introduced for a purpose other than to prove that a defendant acted in conformity therewith. Fed. R. Evid. 404(b); *United States v. Luna*, 21 F.3d 874, 878 (9th Cir. 1994). For example, evidence of a prior act can be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b); *Luna*, 21 F.3d at 878. Before such evidence is admissible, however, the government must establish that (1) the prior act tends to prove a material issue in the action, (2) the prior act is not "too remote" from the charged offense, (3) the prior act is similar to the charged offense, and (4) the defendant committed the prior act. *United States v. Montgomery*, 150 F.3d 983, 1000 (9th Cir.), *cert. denied*, 119 S. Ct. 267 (1998); *see also United States v. Chea*, 231 F.3d 531, 534 (9th Cir. 2000). "If the evidence meets this test under Rule 404(b), the court must then decide whether the probative value is substantially

outweighed by the prejudicial impact under Rule 403." *Chea*, 231 F.3d at 534.

The incident at San Francisco General fails two of the four requirements. First, the government cannot establish that any of the "twenty to twenty-five black males" possessed the firearm, much less Mr. Williams. Even if the government could connect Mr. Williams, the incident would not tend to prove any material issue in the case. Evidence that Mr. Williams' possessed (apparently lawfully) a firearm on one occasion not connected to any criminal act by Mr. Williams does nothing to prove Mr. Williams intent to participate in or knowledge of the charged racketeering conspiracy. And, the probative value of this incident would be so slight that the Court would be bound to exclude it under Rule 403.

The rest of the government's proffered 404(b) materials are unrelated to the Group 1 defendants. Therefore, the incidents are not admissible at their trial.

### #15. Preclude Unidentified "Indicia"; Evidence from Searches

Throughout the exhibit list, the government identifies various items secured in searches of the defendant's residences and those of alleged co-conspirators. Unfortunately, Mr. Williams cannot discern where within the existing discovery much of this material may be found. For instance, exhibit 116 lists items found at the Carmichael residence as "indicia"; exhibit 120 is photographs of the search; and exhibits 119 and 183 are photographs of the search at 1458 Grove.

a.  <u>Evidence from the December 15, 2011 search</u> of the rear downstairs apartment at 1458 Grove includes a scale with undefined "white substance", ammunition, and a small amount of marijuana. Grele Decl. par. 45. It is reported that Mr. Williams was not residing there at the time, and was not present. *Id.* The only tie to anyone in this case is that Mr. Gordon was seen entering the 1548 Grove St. residence, but which part is unclear. *Id.* No lab reports verify any drugs. Evidence with such a tenuous connection to anyone involved is too prejudicial, particularly as against Mr. Williams. FRE 403.

b.    Evidence obtained from the searches conducted surrounding the October 6, 2009 witness intimidation incident. "Indicia" without further identification are listed. Exhibit 334 (from 1458 Grove St.).  Other references are to "gang letters" (exh. 334); CDs taken from a residence that may contain anything (Exh. 334); a scale that is unidentified (exh. 335); a DVD that may contain anything (Exh. 334).  Without existing bates numbering, and examination of this evidence, it is too difficult to tease out what this material is or may contain. Grele Decl. par. 46.

c.    Evidence of a gun found during Mr. Williams' arrest.  Several cars stopped at a gas station.  One of cars, not Mr. Williams', contained a firearm. Exhibit 1037 (photos). This possession is not linked to Mr. Williams or any defendant, and is not one of the noticed acts. Grele Decl. par. 47.  It is inadmissible.  FRE 403.

d.    Evidence Mr. Williams' possessed $6810 currency when arrested.  Apparently, the government wishes to introduce this, although it's not clear. Exhibit 937 (photos from arrest); Exhibit 1143.  Grele Decl. par. 48.  There is no tie to any criminal activity.  It appears the government's argument is that because he was unemployed, such monies must have come from illegal efforts of some kind.  This is improper and prejudicial.  FRE 403.

e.    Evidence from the rear apartment at 1458 Grove St after Mr. Williams' arrest. The government listed "indicia" and money orders as evidence from this search.  Exhibits 1135, 1138.  What is being considered is not apparent.  Grele Decl. par. 49.  As stated above, indicia of residence such as government notices may be admissible, but evidence of pornographic magazines, traffic violations, or money untethered to any criminal activity is not.  FRE 403.

#16.    **Preclude Admission of the SFPD Search of Mr. Williams' Phone**

While the Court ruled that phone download by SFPD was subject to the good faith exception (Doc. 891), there remained the matter of establishing how the download was accomplished by whom, under what circumstances and what device was used and how.  *Id.* (ordering disclosure upon request).  None of that material has been forthcoming.  Grele Decl. par.

24

50.  It is impossible to determine whether it was done correctly, conduct expert examination of the methodology, or prepare for examination of the government's expert.  FRE 705 requires these disclosures, as does Rule 16 and the Confrontation and Effective Defence clauses.

**#17.  Preclude Admission of Credit Reports**

The government has listed credit reports for Mr. Williams and his brother. Exhibits 1225-29.  It appears this is an effort to argue that Mr. Williams had not viable means of income.  Or, it could be to use identification of records such as phone numbers or addresses.  This is improper and such inferences from data found on a credit report are unreliable.  FRE 403.

Further, credit reports are inadmissible.  Fed.R.Evid. 803(6); *Rowland v. American General Finance*, 340 F.3d 187, 195 (4th Cir. 2003) ("the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail.").  Credit reporting agencies do not create or record the data they report.  Instead, they amalgamate data from "[r]oughly 30,000 data furnishers, including creditors, collections agencies, public offices, and others."  See FTC Report to Congress, January 2015.[8]  Even if they could be said to be reliable, no authentication is offered here. FRE 801(d)(2)(A) & (B).

Date:   April 8, 2016                          Respectfully submitted,

                                               /s/  John Grele

                                               JOHN R GRELE
                                               Attorney for Defendant

---

[8]  Available at: https://www.ftc.gov/system/files/documents/reports/section-319-fair-accurate-credit-transactions-act-2003-sixth-interim-final-report-federal-trade/150121factareport.pdf