MARK GOLDROSEN, ESQ. (CSBN 101731)
Attorney at Law
255 Kansas Street, Suite 340
San Francisco, CA 94103
Tel.: (415) 565-9600
Fax.: (415) 565-9601
Email: markgoldro@aol.com

Attorney for Defendant
ANTONIO GILTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ANTONIO GILTON,<br><br>    Defendant. | No. 3:13–cr–764 WHO<br><br>DEFENDANT ANTONIO GILTON'S OPPOSITIONS TO GOVERNMENT'S IN LIMINE MOTIONS; JOINDER<br><br>Date: July 19, 2016<br>Time: 9:00 a.m.<br>Judge: Hon. William H. Orrick |

Defendant Antonio Gilton submits the following oppositions to the government's in limine motions no. 1–3, 5, 6, and 8. Gilton joins in the co-defendants' oppositions to the government's other in limine motions.

**OPPOSITION TO IN LIMINE MOTION NO. 1: THE COURT HAS THE DISCRETION TO ADMIT EXTRINSIC IMPEACHMENT EVIDENCE, AND SHOULD NOT ISSUE A BLANKET ORDER EXCLUDING ALL SUCH EVIDENCE BEFORE SEEING IT**

The government moves for an order excluding all impeachment evidence other than cross-examination. It does not say what particular evidence, if any, it has in mind, or which of the many law enforcement or civilian witnesses it wishes to protect from this form of impeachment. Evidentiary rulings cannot be made in the abstract: the Court should deny the motion as premature, without prejudice to any specific objection the government may raise

during the trial. That has been this Court's practice in the past when faced with similar motions. *See United States v. White*, No. 3:14-cr-20, Dkt. 97, *4 (N.D. Cal. Dec. 22, 2014) (attached hereto as Exhibit A); *United States v. Cerna*, No. 3:08-cr-730, Dkt. 3644, *23 (N.D. Cal. Mar. 3, 2011 (attached hereto as Exhibit B).

In any event, the blanket order the government asks for is unsupported by the cases it cites. A trial court may, in its discretion, allow a witness's testimony on cross-examination to be impeached by contradiction using extrinsic evidence. *United States v. Castillo*, 181 F.3d 1129, 1134 (9th Cir. 1999) (rule against extrinsic evidence should not be "rigidly enforced so as to exclude all impeachment by contradiction of testimony given during cross-examination"). In fact, in *United States v. Kincaid-Chauncey*, 556 F.3d 923, 929–30 (9th Cir. 2009), the trial court did just that: it allowed the defense to call two witnesses in order to impeach a government witness, even though the testimony to be contradicted was elicited during cross-examination. This decision, the Court of Appeals held, was an "exercise of the discretion afforded in *Castillo*." *Id.* at 933. The Court also noted that the determination of whether the defense should be allowed to call impeachment witnesses is "particular to each witness." *Id.* at 930. In light of that, the general exclusion the government seeks is especially unwarranted. The Court should not fetter its discretion, under *Castillo* and *Kincaid-Chauncey*, to let the defense expose misstatements by government witnesses using extrinsic evidence.

Finally, both *United States v. Bosley*, 615 F.2d 1274 (9th Cir. 1980) and *United States v. Green*, 648 F.2d 587 (9th Cir. 1981) dealt with impeachment by the government. Unlike the prosecutors in those cases, Antonio Gilton has a right under the Fifth and Sixth Amendments to due process and to present a defense. If a rule of evidence were to deprive him of either of those rights, that rule would have to give way. *See Davis v. Alaska*, 415 U.S. 308, 320 (1974); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). But neither *Bosley* nor *Green* establish a categorical rule against impeachment using extrinsic evidence, as the Court of Appeals has repeatedly made clear. *Castillo*, 181 F.3d at 1133–34; *Kincaid-Chauncey*, 556 F.2d at 933.

The government's motion should be denied. If the issue arises at trial, the Court should

bear in mind Gilton's constitutional right to present a defense, and the importance of the proffered impeachment evidence, in exercising its discretion under *Castillo*.

**OPPOSITION TO IN LIMINE MOTION NO. 2: BEFORE ADMITTING HEARSAY STATEMENTS, THE COURT SHOULD DEMAND INDEPENDENT CORROBORATION, AND SHOULD NOT CONSIDER UNRELIABLE OPINION TESTIMONY OR ILLEGALLY-OBTAINED EVIDENCE**

For the reasons given in Gilton's in limine motion no. 3, the Court should exclude certain alleged co-conspirator statements outright, and hold an evidentiary hearing with respect to the rest. As the government correctly notes, the Court is not bound by the rules of evidence at such a hearing. Fed. R. Evid. 104(a).[1] But there are four qualifications to this general principle.

First, Rule 104(a) does not excuse the government from its duty to prove the existence of a conspiracy, and the defendant's participation in it, using independent evidence. In *United States v. Silverman*, 861 F.2d 571, 578 (9th Cir. 1988), a case decided shortly after *Bourjaily v. United States*, 483 U.S. 171 (1987), the Ninth Circuit held that it was error to admit hearsay statements under the co-conspirator exception unless other evidence, apart from the statements themselves, shows that the defendant knew of and participated in the conspiracy. Although a trial judge *may* consider an alleged co-conspirator's out-of-court statement in assessing the statement's admissibility, "Rule 104(a) does not diminish the inherent unreliability of such a statement. Because of this presumptive unreliability, a co-conspirator's statement implicating the defendant in the alleged conspiracy must be corroborated by fairly incriminating evidence." *Silverman*, 861 F.2d at 578. Quoting with approval from the dissent in *Bourjaily*, the Court remarked that "[c]o-conspirator statements . . . . may constitute, at best, nothing more than the 'idle chatter' of a declarant or, at worst, malicious gossip." *Id.* (quoting *Bourjaily*, 483 U.S. at 197 (Blackmun, J., joined by Brennan and Marshall, JJ., dissenting)). The Court also cautioned that multiple hearsay statements cannot be treated as

---

[1] In support of this proposition, the government mistakenly cites the dissent in *United States v. Silverman*, 861 F.2d 571, 583 (9th Cir. 1988) (Wallace, J., dissenting). Judge Wallace was, however, quoting from the Supreme Court's decision in *Bourjaily v. United States*, 483 U.S. 171 (1987).

- 3 -

mutually corroborative, since "[o]ne presumptively unreliable statement cannot be invoked to corroborate another." *Id.* at 579; *accord United States v. Eubanks*, 591 F.2d 513, 519 (9th Cir. 1979) (exception requires "independent proof of the existence of the conspiracy and of the connection of the declarant and the defendant to it"). Before countenancing the admission of such statements, therefore, this Court should require corroboration from independent sources that "overcomes the presumption of unreliability." *Silverman*, 861 F.2d at 579.

Second, the Court should not consider evidence which it has already suppressed as the product of an unlawful search or seizure. The Fourth Amendment's exclusionary rule is a constitutional precept, not a judge-made rule of evidence that may be disapplied by Rule 104(a). *Mapp v. Ohio*, 367 U.S. 643, 649 (1961) (exclusionary rule is of constitutional origin, despite "passing references" to its being a rule of evidence). "The essence" of such a principle "is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." *Wong Sun v. United States*, 371 U.S. 471, 485 (1963) (quoting *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1963) (Holmes, J.)). The government should not be allowed to extend the taint of an illegal search by using what it turns up as a foundation for admitting hearsay statements.

Third, for similar reasons, the Court should not consider statements which it has suppressed as violations of Gilton's Fifth Amendment privilege against compulsory self-incrimination. *See Mapp*, 367 U.S. at 656 ("nothing could be more certain that that when a coerced confession is involved, 'the relevant rules of evidence' are overridden"). In any case, Rule 104(a) does not relax the evidentiary rules relating to privilege. Just as the government cannot compel Gilton to make a statement at a Rule 104(a) hearing, it cannot use a coerced statement to prove the existence of a conspiracy at such a hearing.

Fourth, the Court should give no weight to unqualified opinions offered by Sgt. Jackson about gang alliances and rivalries, characteristics of gangs, and use of rap music. Gilton anticipates that the government will rely on his testimony to argue that certain statements were meant to garner "respect" for the speaker and others, thereby furthering the objectives of the alleged conspiracy, and are hence not subject to the Ninth Circuit's rule

excluding "casual admission[s] of culpability." *See United States v. Fielding*, 645 F.2d 719, 726 (9th Cir. 1981). But the Court has already noted the reliability issues that plagued much of Sgt. Jackson's testimony in its order partially disqualifying him as an expert. Order on Government's Gang Expert Testimony, Dkt. 927, at *14–15, *17–18. The Court also found that most of his opinions about the group dynamics of gangs were within the jury's common experience, and would not help them in their factfinding task. *Id.* at *15–18. There is no reason to think that those opinions would be any more helpful to the Court sitting alone. Finally, Sgt. Jackson's testimony does not establish the existence of a conspiracy for the purpose of the hearsay exception. As the Court remarked in its order: "The government needs to prove the existence of a criminal enterprise and the violent crimes committed on its behalf on the basis of evidence from lay witnesses, not through the opinions of a police officer who has spent most of his career, among other things, investigating people in the group against whom this case is brought." *Id.* at *8. The Court is entitled to award Sgt. Jackson's unfounded opinion testimony "such weight as [its] judgment and experience counsel." *Silverman*, 861 F.2d at 583. It can and should give his evidence zero weight.

**OPPOSITION TO IN LIMINE MOTION NO. 3: COOPERATION AGREEMENTS SHOULD BE EXCLUDED**

If the credibility of a co-operating witness is challenged, the government asks that the witness's plea agreement be automatically admitted in order to rebut such a challenge. The government does not say what is in the plea agreements. Based on past experience, however, it is likely that they contain promises to tell the truth, coupled with warnings of dire consequences if the witness fails to be completely honest. The Court should not pre-admit these written promises. Their probative value is minimal, and it is highly likely that they will mislead the jury.

Referring to a witness's promise to testify truthfully *before* any challenge to the witness's credibility is always improper vouching. *United States v. Shaw*, 829 F.2d 714, 716–17 (9th Cir. 1987). But the converse is not true: a witness's plea agreement is not automatically admissible merely because his credibility has been attacked. *See United States*

*v. Dominguez*, No. 3:12-cr-834, Dkt. 138, *9–10 (N.D. Cal. Feb. 4, 2014) (attached hereto as Exhibit C) (denying similar motion; even after impeachment, "plea agreements are not admitted *in toto* as a matter of course"). Rather, the district court must weigh the probative value of evidence offered to rehabilitate a witness who has been impeached for bias against its prejudicial impact. *United States v. Roberts*, 618 F.2d 530, 536 (9th Cir. 1980). Describing the "strong case" that can be made for excluding plea agreement promises to tell the truth, the Ninth Circuit spelled out the prejudice that admitting such evidence may cause:

> The witness, who would otherwise seem untrustworthy, may appear to have been compelled by the prosecutor's threats and promises to come forward and be truthful. The suggestion is that the prosecutor is forcing the truth from his witness and the unspoken message is that the prosecutor knows what the truth is and is assuring its revelation.

*Id.*; *accord Shaw*, 829 F.2d at 717 (noting the necessary "implication, however muted, that the government has some means of determining whether the witness has carried out his side of the bargain"). Moreover, such promises have scant probative value. Witnesses already face prosecution if they tell material falsehoods on the stand. A written promise to tell the truth will only influence a co-operating witness's testimony if he believes that the government knows the truth and will prosecute him if his testimony—however helpful it is—does not accord with the truth. In any case, the point of an attack on a co-operating witness's credibility is not necessarily that the witness has explicitly promised to tell lies for the government; it may just as well be that the witness is lying both to the government and to the Court in exchange for favorable treatment. A written promise to tell the truth, embodied in a plea agreement, does very little to rebut *that* form of impeachment. *Cf. United States v. Tham*, 665 F.2d 855, 862 (9th Cir. 1981) (rebuttal proper where "counsel argued that the plea agreement required [witness] not to testify truthfully, but to testify favorably to the government"). Plea agreement promises, in short, add virtually nothing to the oath all witnesses take, and should not be used to salvage the credibility of a co-operating witness in the face of legitimate challenge.

The propriety of rebuttal using a plea agreement promise to tell the truth depends on the nature and extent of the impeachment, *Dominguez,* No. 3:12-cr-834, Dkt. 138 at *9 (citing

*United States v. Rohrer*, 708 F.2d 429, 433 (9th Cir. 1983)), and the precise phrasing of the rebuttal argument, *Shaw*, 829 F.2d at 717. The Court should wait to see how witnesses are impeached before deciding how that impeachment can be rebutted. It should therefore deny the government's motion as premature. If, in spite of the risk of prejudice, the Court permits reference to written promises to tell the truth, it should ensure that the jury is not led to believe that the government is "monitoring" the testimony for truthfulness, *cf. Roberts*, 618 F.2d at 534; it should also remind the jury, "whenever the plea agreement is mentioned during the trial," that an "agreement requiring the witness to testify truthfully [does] not mean that the testimony [is] in fact truthful." *See United States v. Brooklier*, 685 F.2d 1208, 1218–19 (9th Cir. 1982).

**OPPOSITION TO IN LIMINE MOTION NO. 5: THE COURT SHOULD NOT EXCLUDE DURESS OR SELF-DEFENSE EVIDENCE**

The government moves to exclude any evidence tending to show that Gilton acted in self-defense or under duress unless he first makes an offer of proof. These defenses, however, are not among the affirmative defenses which must be disclosed to the government. *See* Fed. RR. Crim. P. 12.1, 12.2, 12.3, 12.4. Nor do any of the cases cited by the government require an offer of proof in advance: that issue appears to be within the trial court's discretion. *Compare United States v. Shapiro*, 669 F.2d 593, 596–97 (9th Cir. 1982) (trial court excluded evidence of duress after insufficient offer of proof) *with United States v. Karr*, 742 F.2d 493, 497 (9th Cir. 1984) (trial court received duress evidence, but declined to give duress instruction). The motion risks requiring Gilton to offer a preview of defenses which he need not disclose before trial. It should be denied as premature, like the government's identical motion in *Cerna*. No. 3:08-cr-730, Dkt. 3644, *24–25.

**OPPOSITION TO IN LIMINE MOTION NO. 6: THE COURT SHOULD NOT EXCLUDE "THIRD-PARTY CULPABILITY" EVIDENCE**

The government moves to forbid Gilton from offering evidence that anyone except himself committed the charged crimes, unless he proffers the evidence in advance, and meets a "heavy evidentiary burden" in which his proffered evidence would be "treated with great

skepticism" and be made subject to "strict limitations." Such a procedure is without support in the Ninth Circuit's cases, and subverts the presumption of innocence that is traditionally accorded criminal defendants. This motion, too, was denied by the Court in *Cerna*. No. 3:08-cr-730, Dkt. 3644, *24–25. It should do the same again.

"A defendant is entitled to introduce evidence which tends to prove someone else committed the crime." *United States v. Perkins*, 937 F.2d 1397, 1400 (9th Cir. 1991); *accord United States v. Crosby*, 75 F.3d 1343, 1347 (9th Cir. 1996) ("fundamental standards of relevancy . . . require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged"); *United States v. Brannon*, 616 F.2d 413, 418 (9th Cir. 1980). Despite the government's statement to the contrary, *Crosby* did not impose "strict limitations" on this form of evidence, nor did it "focus[] on the potential that such evidence . . . would confuse and mislead the jury." Quite the reverse: *Crosby* described the evidence as "crucial," and spent some time outlining its acute relevance to the defense's case. 75 F.3d at 1347–48. It held that its admission "could have decreased" the jury's confusion by explaining a prosecution witness's change of testimony. *Id*. Indeed, it is difficult to see how evidence that someone else committed the crime is any more "confusing" than other evidence that casts doubt on the prosecution's theory of the case.

*Crosby* also demonstrates the limits of the Ninth Circuit's holding in *United States v. Spencer*, 1 F.3d 742 (9th Cir. 1992). In *Spencer*, the defendant, a passenger in a car, was charged with being a felon in possession of a firearm after a gun was found under his seat; the court excluded evidence that the owner of the car was later found driving the car with a gun under *his* seat. *Id.* at 743–44. But, as *Crosby* makes clear, exclusion was proper not because third-party culpability evidence is somehow inherently suspect, but rather because the question who *owned* the gun was irrelevant to the possession charge: all that mattered was whether the defendant *knew* it was there. 75 F.3d at 1349. In *Crosby*, by contrast, where the government "did not contend" that the defendant and the accused third party "acted in concert," evidence inculpating the third party tended to exculpate the defendant, and so should

have been admitted. *Id.* The Court quoted Wigmore to explain why such evidence should be put before the jury:

> [I]f the evidence [that someone else committed the crime] is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt.

*Id.* (quoting 1A John Henry Wigmore, Evidence in Trials at Common Law § 139 (Tillers rev. 1983). The same reasoning applies here.

Nor does *Brannon* provide any support for the government's proposal. In that case, the defendant was allowed to put on testimony that a third party committed the bank robbery, but was not permitted to adduce a photograph of the third party so that it could be compared in court with surveillance photographs. *Brannon*, 616 F.2d at 417. The Court found no abuse of discretion, although it noted that "it would have been preferable to admit the photographs." *Id.* at 418. It did not say anything about subjecting third-party culpability evidence to a special pre-screening procedure at which it would be "treated with great skepticism" for fear of reputational injury to the uncharged third parties. Rule 403 of the Evidence Code plainly does not authorize this procedure, still less mandate exclusion of the evidence. If it did, it would be an unconstitutional abridgement of the defendant's right to have "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 330 (2006) (right abridged where state rule excluded evidence of third-party culpability because there was "strong evidence" of defendant's guilt); *see also United States v. Stever*, 603 F.3d 747, 755 (9th Cir. 2010) (right includes, "at a minimum, . . . the right to put before a jury evidence that might influence the determination of guilt.").

**OPPOSITION TO IN LIMINE MOTION NO. 8: THE COURT NEED NOT ORDER PARTIES TO ADHERE TO THE RULES OF EVIDENCE**

Gilton's defense intends to adhere to the rules of evidence, as no doubt do all parties. This motion is therefore unnecessary. *See White*, No. 3:14-cr-20, Dkt. 97 at *4. If the Court is inclined to issue a "no speaking objections" order, however, Gilton asks that it apply to government counsel as well.

## MOTION FOR JOINDER IN OPPOSITIONS TO IN LIMINE MOTIONS NO. 4, 7, 9, AND 10–13

Gilton moves to join in the oppositions to the government's in limine motions no. 4, 7, 9, and 10–13 to be filed by co-defendants.

Dated: May 6, 2016

Respectfully submitted,

/s/ Mark Goldrosen
MARK GOLDROSEN
Attorney for Defendant
ANTONIO GILTON