1  BRIAN J. STRETCH (CABN 163973)
   Acting United States Attorney
2
   DAVID R. CALLAWAY (CABN 121782)
3  Chief, Criminal Division

4  DAMALI A TAYLOR (CABN 262489)
   WILLIAM FRENTZEN (LABN 24421)
5  SCOTT D. JOINER (CABN 223313)
   Assistant United States Attorneys
6
        450 Golden Gate Avenue
7       San Francisco, California 94102
        Telephone: (415) 436-7600
8       Fax: (415) 436-7234
        damali.taylor@usdoj.gov
9       scott.joiner@usdoj.gov

10
   Attorneys for United States of America
11
                    UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13
                      SAN FRANCISCO DIVISION
14
   UNITED STATES OF AMERICA,          )  Case No. 13-0764 WHO
15                                     )
             Plaintiff,                )  GOVERNMENT'S OPPOSITION TO
16                                     )  DEFENDANT HARDING'S IN LIMINE
       v.                              )  MOTIONS
17                                     )
   MONZELL HARDING,                    )  Hearing date: July 19, 2016
18                                     )  Hearing time: 9:00 a.m.
             Defendants.               )
19  _____ )

20

21

22                           **INTRODUCTION**

23          Defendant Harding has filed a set of expansive *in limine* motions in a thinly veiled attempt to

24  exclude all inculpatory evidence against him.  For example, he seeks to exclude all expert *and civilian*

25  witness testimony about CDP membership—the very subject matter of the government's case.  He seeks

26  to exclude gang-related tattoos and gang-related photographs and homicide photographs and co-

27  conspirator statement and, essentially, all probative, admissible evidence.  He rarely cites to law in

28  support of these requests and, when he does, the cases are usually inapposite.  Some of the motions

overlap with *in limine* motions made by defendant Williams. To the extent the arguments made by defendant Harding mirror arguments in other motions, we will incorporate our responses by reference herein.[1]

## RESPONSES TO IN LIMINES

### I. Responses to *in Limine* No. 1 to Bring Other Motions in Limine

The government does not object to this motion, provided the Court uses its inherent authority to set appropriate limits. As of the date of this filing, counsel for defendant Harding has sought a briefing schedule from the government for additional motions to suppress—despite the significant number of motions that have already been briefed and argued in this case. The government respectfully requests that, at a minimum, the Court limit the number of additional motions each defendant is permitted to file. The government further requests that defendants should provide advance notice regarding the subject matter of the additional briefing.

### II. Response to in Limine No. 2 to Exclude Rule 404(b) Evidence

Defendant Harding seeks to exclude a number of incidents as irrelevant and prejudicial. The defendant is incorrect and his motion should be denied for the reasons below.

Rule 402 states that "[a]ll relevant evidence is admissible," except as otherwise provided by the Constitution, Congress, or other evidentiary or Supreme Court rules. In turn, Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "To be 'relevant,' evidence need not be conclusive proof of a fact sought to be proved, or even strong evidence of the same. All that is required is a 'tendency' to establish the fact at issue." *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007). The fact to be proved "may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action." Fed. R. Evid. 401 advisory committee's note.

The evidence described below is relevant to the government's RICO conspiracy charge. The RICO statute makes it unlawful for a person "to conspire to violate any of the provisions of subsections

---

[1] Following the hearing on May 6, 2016, the parties met and conferred and agreed that responses to motions *in limine* –both the government's and defendant Harding's—may be filed on May 9, 2016.

(a), (b), or (c) of this section." *See* 18 U.S.C. § 1962(d). "The elements predominant in a subsection (c) violation are: (1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity," but "[t]he relevant statutory phrase in § 1962(d) is 'to conspire.'" *Salinas v. United States*, 552 U.S. 52, 62-3 (1997). Thus, it is the agreement itself to conduct the conduct the affairs of an enterprise through a pattern of racketeering that is the crime. In other words, "Under *Salinas*, [the defendant] did not need to commit the substantive offense . . . in order to be guilty of the RICO conspiracy. Instead, it is sufficient that he '*knew about and agreed* to facilitate the scheme.'" *United States v. Fiander*, 547 F.3d 1036, 1041 (9th Cir. 2008) (quoting *Salinas*, 522 U.S. at 66 (additional citations omitted) (emphasis added)).

For RICO conspiracy, "[t]here is no requirement of some overt act or specific act . . . unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an 'act to effect the object of the conspiracy.'" *Salinas*, 522 U.S. at 63 (quoting 18 U.S.C. § 371). "[I]n order to convict a defendant on a RICO conspiracy charge, [the court] 'does not require proof that [a defendant] participated personally, or agreed to participate personally, in two predicate offenses.'" *United States v. Frega*, 179 F.3d 793, 810 n.21 (9th Cir. 1999) (quoting *United States v. Tille*, 729 F.2d 615, 619 (9th Cir. 1984)).

Harding objects to the evidence below as improper 404(b) evidence. It is not. The evidence will instead be offered to prove the existence of the charged CDP racketeering enterprise. Rule 404(b) does not apply.[2] Federal Rule of Evidence 404(b) precludes the admission of "other crimes, wrongs or acts" to prove the character or criminal propensity of the defendant, but allows such evidence to be used for the limited purposes of showing "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This rule does not apply, however, where evidence is directly related to or inextricably intertwined with the crimes charged in the indictment. *See United*

---

[2] The government's notice made clear that it did not consider the material disclosed "other acts" evidence subject to Rule 404(b). (Taylor Decl., Ex A.) It instead informed the defendant's that it would seek "to admit evidence of charged and uncharged crimes, as well as select crimes and arrests that demonstrate proof of the enterprise – including the crimes and arrests described in the incident reports noted above. The government believes that the [disclosed] incidents are direct evidence of the crimes charged and/or are inextricably intertwined to the charged acts (and therefore not Rule 404(b) or Rule 609 evidence)." (*Id.*) Accordingly the government indicated that its notice was only being provided in an an abundance of caution. (*Id.*)

*States v. Martinez-Rodriguez*, 472 F.3d 1087, 1091 (9th Cir. 2007) ("Rule 404(b) does not exclude evidence forming an essential element of the charged crime."); *United States v. DeGeorge*, 380 F.3d 1203, 1219 (9th Cir. 2004) (holding that evidence that was inextricably intertwined with alleged criminal activity was not subject to strictures of Rule 404(b)); *see, e.g.*, *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003) (holding that evidence that defendant stole cocaine was directly related to charged drug trafficking conspiracy). As the Ninth Circuit explained, "[t]he policies underlying Rule 404(b) are inapplicable when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions." *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993); *see also United States v. Montgomery*, 384 F.3d 1050, 1061-62 (9th Cir. 2004). This is particularly true in the context of racketeering prosecutions.

For example, in *United States v. Rubio*, 727 F.2d 786, 797-98 (9th Cir. 1983), the Ninth Circuit found no error in the trial court's admission of evidence of the defendant's prior drug conviction as direct evidence, and not as Rule 404(b) material, proving the existence of the racketeering enterprise and association of the defendant in the enterprise. In addition, as Seventh Circuit explained in *United States v. Salerno*, 108 F.3d 730, 739 (7th Cir. 1997), the government must prove the existence of the enterprise, and evidence introduced to establish the existence and nature of the enterprise is not barred by Rule 404(b). Likewise, in *United States* v. *DiNome*, 954 F.2d 839, 843 (2d Cir. 1992), the Second Circuit explained that "[p]roof of [RICO] elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts. Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant. . . ." Significantly, the Ninth Circuit quoted *DiNome* in *United States* v. *Fernandez*, 388 F.3d 1199, 1243 (9th Cir. 2004), when the Ninth Circuit affirmed the denial of a severance motion in a racketeering case, explaining that all the "spillover" evidence about which the defendant complained would have been admissible against him anyway in a separate trial.

None of the challenged evidence that the government intends to present in its case in chief will be offered to prove mere criminal propensity. Rather, such evidence will be offered to prove the existence of the charged racketeering enterprise, which is directly probative of the elements of the racketeering-related charges.

1

**A.  Incidents Not at Issue (August 24, 2011; April 11, 2009; April 13, 2009; September 5, 2009; and October 6, 2009)**

2

3    The defendant spends a great deal of time objecting to evidence that does not appear in the

4  government's pretrial filings.  For example, the government has not listed exhibits pertaining to the

5  August 24, 2011 incident on its exhibit list and does not currently intend to introduce the incident during

6  its case-in-chief.   It reserves the right to introduce such evidence, however, depending on defense

7  arguments or cross-examination at trial and/or the production of reciprocal discovery from the

8  defendants (which the defense has so far failed to produce).  Similarly, the government has not identified

9  exhibits or witnesses for the following incidents described by Harding: April 11, 2009; April 13, 2009;

10  September 5, 2009; and October 6, 2009.[3]  As with the August 24, 2011 incident, however, the

11  government reserves the right to introduce evidence of these incidents depending on defense arguments

12  or cross-examination at trial and/or the production of reciprocal discovery from the defendants.  The

13  defense motion as to these incidents should therefore be denied as moot and unripe.

14    **B.  October 12, 2011 Incident**

15    Harding moves to exclude evidence of the October 12, 2011 encounter between police and

16  several CDP members at Grove and Divisadero Street, in the parking lot of Lily's BBQ. As described

17  below, the incident is relevant to show the relationship between known CDP members and their

18  presence together on a key piece of CDP territory.  The evidence at trial will show that the corner of

19  Grove and Divisadero, and Lily's BBQ parking in particular (which is just a couple of blocks away from

20  defendant Williams' residence at 1458 Grove Street) was a central hang-out for CDP members and one

21  of several key terrain features which will help the jury understand CDP territory. (*See, e.g.* Second

22  Superseding Indictment ¶ 17, Overt Act k; Taylor Decl. Ex.B incident report 070123642 regarding

23  firearm possession by defendant Heard in the parking lot Lily's BBQ)

24     The incident occurred after SFPD Sergeant Reese Burrows followed CDP member and

25  unindicted co-conspirator Tyrice Ivy. (Taylor Decl., Ex C110823126.)  Ivy sped away from Burrows

26

27  ---
[3] Harding seeks to exclude evidence of narcotics possession when booked into county jail on October 6,
2009.  He does not seek to exclude his involvement in the witness intimidation incident of the same date,
28  which is charged as Overt Act W in the Second Superseding Indictment. The witness intimidation
incident will feature prominently in the government's case in chief.

and ran a stop-sign after making eye contact with and presumably recognizing Burrows. Ivy eventually parked in the parking lot of Lily's BBQ at Grove and Divisadero. CDP member and un-indicted co-conspirator Vernon Carmichael jumped out of the right rear passenger seat and ran away. Burrows yelled for him to stop but he ignored the command. Ivy, the driver, and his other passenger, defendant Adrian Gordon, both got out of the car. Ivy was wearing a red hat with a "C" on it. Thirty seconds later Carmichael came back and said "Burrows I was just kidding ." Other officers arrived on scene to assist, and the vehicle was searched pursuant to defendant Gordon's search condition. During the investigation Harding walked up and watched. Burrows recognized Harding as another documented CDP member. (*Id.*)

Harding argues that evidence of the encounter should be excluded as irrelevant and "especially prejudicial" because Harding was merely present during the detention of others who were not doing anything illegal. This argument misses the mark. Evidence need not reflect illegal conduct to be relevant to show association. Nor need the evidence be specifically focused on Harding rather than his co-conspirators. To the contrary, where the government is required to prove a RICO conspiracy and association in fact, evidence that the defendants and their co-conspirators were repeatedly seen together, and on CDP turf, no less, is highly relevant. This incident will not be considered in isolation by the jury, but rather as part of the entire case. As described above, it is significant not just because the defendants were seen together with unindicted co-conspirators, but also because the location features prominently in several incidents and helps to define the territory claimed by CDP. Harding's motion should be denied accordingly.

## III.     Response to in Limine No. 3 to Exclude Racketeering Acts

The government opposes this motion for all of the reasons stated in the government's opposition to defendant Williams' Motion in Limine No. 2.

## IV.     Response to in Limine No. 4 to Exclude CAST Report of Silver Van Robberies

The defense objects to the introduction of the CAST report created by government expert regarding the silver van robbery series because production of the report was untimely. The report has been provided to the defense in discovery. The report certainly took longer to create than others, but there was no intentional delay. SA Solomon-Hill analyzed the movement of three phones over a two

month period—using records that were originally provided to the government in paper format. Moreover, SA Solomon-Hill is the only certified CAST agent in the Northern District of California—supporting federal, state and local agencies in cell phone analysis.

Furthermore, the defendant's argument that the report should be excluded is interesting given that, as of this date, the government has not yet received *any* discovery whatsoever from *any* of the defendants and the government cannot determine what the theory of defense case will be for any of the defendants. This violates Rule 16(b)'s requirement that the defense provide reciprocal discovery. Furthermore, for the defendant to achieve the result he seeks (i.e., the exclusion of the government's evidence), he would need to show prejudice. *See, e.g., United States v. Valencia*, 656 F.2d 412, 415-16 (9th Cir. 1981). He cannot meet this requirement—especially since he has had the underlying phone records for months—and he does not even try. This motion should also be denied.

**V.     Response to in Limine No. 5 to Exclude All Evidence of Individuals Being Gang Members**

The defendant has taken the novel position that civilian witnesses with first-hand knowledge of these defendants should somehow be precluded from testifying that these defendants are members of CDP—in a RICO case where CDP is the charged enterprise. He is further moving to exclude any expert testimony on this issue. In other words, he is ignoring the Court's orders with respect to the government's expert and further trying to exclude any testimony from any civilian witness that he was part of the charged enterprise. This position is unsupported by law or reason. More importantly, the Court has already ruled on this issue. *See* Docket. Nos. 836 and 927. Indeed, the Court already recognized and ruled that the government can present first-hand testimony via witnesses about the CDP organization and its membership. *See* Docket. No. 836 at 3. That conclusion should not be disturbed. The motion overreaches and should be denied.

First, defendant Harding claims that lay witness testimony about CDP members should be excluded because it will usurp the role of the jury and because it is improper under Federal Rule of Evidence 702. Motion at 12-13. He further asks the Court to exclude CDP gang photos because "it is improper to identify [] individuals as 'gang members.'" Motion at 13. The notion that civilian witnesses with knowledge of the gang can't testify about the gang and its members in a RICO case is unreasonable. Indeed, the Court explicitly anticipated that the Government could prove CDP's

membership with direct evidence—the way these matters are proven in all RICO cases.  *See* Docket. No. 836 at 3.   The Federal Rules of Evidence are clear: a lay witness can offer opinion testimony that is based on the witness's perception, helpful to determining a fact in issue, and not based on scientific, technical, or specialized knowledge.  Fed. R. Evid. 701.  Courts routinely allow lay witnesses to offer opinions on subjects that are unfamiliar to the jury but that are familiar to the witness.  *See, e.g. United States v. Durham*, 464 F.3d 976, 982-83 (9th Cir. 2006) (concluding that lay witness could properly identify burnt substance as marijuana given her familiarity with the drug in both its fresh and burnt forms); *United States v. Henderson*, 68 F.3d 323, 326 27 (9th Cir. 1995) (finding that lay witness could offer opinion that the defendant was pictured in a surveillance image given his familiarity with the defendant).  Here, the government will present testimony from civilian witnesses who are familiar with the defendants, with CDP, its activities, and its members.  Such testimony is entirely appropriate and will help the jury decide that defendant Harding is a CDP member.

**VI.     Response to in Limine No. 6 to Acts/Statements Prior to June 20, 1991**

Defendant Mozell Harding moves to exclude evidence and testimony of acts or statements by him or his co-conspirators that took place prior to June 20, 2009, the date of Harding's 18th birthday.[4] This motion should be denied because the overt acts committed by Harding in furtherance of the conspiracy as alleged in the Second Superseding Indictment occurred after his 18th birthday and because Harding ratified his involvement in the conspiracy after he reached the age of majority.

Harding argues that he cannot lawfully be held criminally liable for acts that occurred before he reached the age of majority because "[a] jury may not convict an adult defendant solely on the basis of 'acts of juvenile delinquency'" and that such acts are therefore irrelevant, inadmissible, and prejudicial to his defense.  (Docket. No. 976 at 14 (citing *United States v. Delatorre*, 157 F.3d 1205, 1209 (10th Cir. 1998)).)  Harding is incorrect.

The overt acts alleged to have been committed by Harding in the Second Superseding Indictment as acts in furtherance of the racketeering conspiracy were acts committed *after* Harding reached the age

---

[4] The heading for Harding's Motion *in Limine* No. 6 asks for exclusion of evidence or acts or statements prior to June 20, 1991.  That date appears to be a typographical error.  Harding's date of birth is June 20, 1991 and his 18th birthday was on June 20, 2009.

of majority.  Specifically, the Second Superseding Indictment alleges that (1) "[o]n or about October 6, 2009, MONZELL HARDING, JR., ESAU FERDINAND, and others known and unknown, attempted to intimidate a testifying witness during a court hearing concerning the November 25, 2008 murder of Richard Barrett; and (2) "[o]n or about January 15, 2010, MONZELL HARDING, JR. robbed an iPod from Victim 1."  Dkt. No. 139 ¶ 17(w), (x).  Therefore, the government will prove that Harding joined or ratified his participation in the conspiracy while he was 18 or older.  That is all the case law requires.  While Harding may not be responsible as an adult for substantive actions taken by coconspirators before he turned 18, he is responsible for the conspiracy and its actions prior to the time that he joined the conspiracy.  Defendants who join a conspiracy accept the conspiracy as they find it.  Similarly, "late joiners" to a conspiracy are not liable for substantive crimes which were committed prior to their joining of the conspiracy pursuant to *Pinkerton* liability, but they are liable for the entire scope and duration of the conspiracy prior to the date they joined.  *United States v. Traylor*, 656 F.2d 1326 (9th Cir. 1981) ("A person may join a conspiracy that has already been formed and is in existence.  The new conspirator will be bound by all that has gone on before in the conspiracy") (citations omitted).

The sole case cited by Harding actually supports the government's position.  In *United States v. Delatorre*, 157 F.3d 1205, 1209 (10th Cir. 1998), the Tenth Circuit adopted the view of other Circuits regarding participation in a conspiracy that continues beyond the person's 18th birthday.  *Id.* at 1211 ("[W]e agree with the First, Fifth, Seventh, and Eleventh Circuits that where an adult defendant is properly charged with a continuing crime, that defendant's pre-majority conduct is admissible on the same basis as post-majority conduct") (citations omitted).  The Court clarified that "[t]he Government must introduce evidence . . . which will allow a reasonable jury to conclude that defendant's participation in the conspiracy or racketeering enterprise continued after his eighteenth birthday.  *Id.* (citing *United States v. Cruz*, 805 F.2d 1464, 1476 (11th Cir. 1986)).  Nowhere in *Delatorre* does the Tenth Circuit state that evidence of a defendant's involvement in a conspiracy and evidence of the conspiracy prior to that defendant turning 18 is inadmissible.  Rather, in *Delatorre*, the Court found that the [Juvenile Delinquency Act (JDA)'s, 18 U.S.C. §§ 5031-42] did "not apply to a defendant like Delatorre who is not a juvenile and has not been charged with committing an act of juvenile delinquency."  *Id.* at 1211.  *See also id.* at 1210 ("We find nothing in the language or legislative history

of the JDA [] which affords any special protection to a defendant properly indicted as an adult whose participation in alleged continuing criminal activity spans his eighteenth birthday.")  The Court therefore condoned the government's prosecution of Delatorre as an adult "so long as the Government establishe[d] that Delatorre participated in the continuing crimes with which he is charged beyond his eighteenth birthday." *Id.*  Because Harding's activities and participation in the conspiracy continued beyond his 18th birthday, evidence and testimony of acts or statements by him or his co-conspirators prior to June 20, 2009 is relevant and admissible.

The Ninth Circuit has ruled that where a defendant continued to participate in the conspiracy following his 18th birthday, he was properly charged with the entire scope of the conspiracy as an adult. *See United States v. Baker* 10 F.3d 1374, 1419 (9th Cir. 1993) (*overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000)).  In *Baker*, the court admitted evidence of the defendant's juvenile participation in the conspiracy along with his adult participation in the conspiracy. The Eleventh Circuit's decision in *Cruz*, 805 F.2d at 1476-77, which was cited favorably by the Ninth Circuit in *Baker*, is directly contrary to Harding's position.  In *Cruz*, the Eleventh Circuit held that not only is a defendant who continues in a conspiracy past his 18th birthday triable as an adult, but that all the evidence related to conduct prior to his 18th birthday is admissible. *Id.*  The evidence of the entire scope of the conspiracy is admissible and the activities of each defendant prior to his 18th birthday are admissible to prove that entire scope and to put into context the acts committed after the defendant turned 18. *Id.*  Since *Cruz* has been adopted by the Ninth Circuit in *Baker*, Harding has no basis to exclude this evidence.

Courts in this district have followed the Ninth Circuit's holding in *Baker* to deny the exclusion of overt acts alleged to have occurred prior to the defendant's age of majority.  In *United States v. Cerna*, Honorable William Alsup denied defendants' motion to strike the overt acts from the third superseding indictment on the grounds that they took place when defendant Guevara was under 18 years of age. *See Cerna*, No. CR 08-0730 WHA, 2010 U.S. Dist. LEXIS 35085, *7 (N.D. Cal. Apr. 9, 2010).  In that case, overt acts 3 and 4 alleged that on or about July 26, 1996, defendant Guevara and others fought with a group of people and that Guevara shot and wounded six people. *Id.*  Guevara argued that these acts should be struck on the grounds that they could constitute racketeering acts against him because they

took place when he was only 16 years old. *Id.* The Court noted that although "[i]t is true that the [JDA] provides that federal courts have no jurisdiction over certain prosecutions for acts of juvenile delinquency unless the cases have been certified for prosecution . . . conspiracy is a continuing crime, and the [JDA] does not apply to a defendant who became involved in a conspiracy while a minor but whose conspiracy activity continued after he turned 18. *Id.* (citing *United States v. Baker*, 10 F.3d 1374, 1419 (9th Cir. 1993) (*overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000)). The Court concluded that "[w]hile defendant cannot be held liable for pre-majority conduct, such conduct is relevant to put post-majority conduct in context" and that Guevara was "alleged to have continued with conspiracy activity after his eighteenth birthday." Thus, the Court found that the alleged overt acts involving the defendant's activities as a minor were relevant to the charges against him.

Based on the controlling authority in this and other Circuits, defendant Harding has no basis to exclude this evidence and this sixth motion should be denied.

## VII. Response to in Limine No. 7 to Exclude Co-conspirator Statements

In his seventh motion, defendant Harding objects to the admission of unspecified co-conspirator statements. Because Harding does not identify any challenged statements, there is no basis for the Court to exclude anything. The motion should be denied on that basis alone. *See United States v. Valdez*, 861 F.2d 427, 432 (5th Cir. 1988) (Rejecting challenge for lack of specificity: "Without identifying any statement by a particular declarant, Valdez makes a blanket hearsay objection to four other witnesses' testimony. These references to erroneous district court rulings are too vague to permit us to address them."). Instead, the primary purpose of defendant's motion appears to be to generate a pretrial hearing. For the reasons described below, such a hearing is unnecessary.

Rule 801(d)(2)(E) of the Federal Rules of Evidence excepts from the definition of hearsay any statement offered against a party opponent that was "made by the party's coconspirator during and in furtherance of the conspiracy." To qualify as a coconspirator statement under Rule 801(d)(2)(E), the Government must show, "by preponderance of the evidence that (1) the conspiracy existed when the statement was made; (2) the defendant had knowledge of, and participated in, the conspiracy; (3) the statement was made 'in furtherance of' the conspiracy." *United States v. Larson*, 460 F.3d 1200, 1211 (9th Cir. 2006). In addition,

> [w]hen determining whether there is sufficient evidence to satisfy Rule 104(b), the court is not required to make any preliminary finding that the government has proved the conditional fact. [citing *Huddleston v. United States*, 485 U.S. 681, 690]. Instead, "[t]he court simply examines all the evidence in the case and decides *whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence.*" *Id.*

*United States v. Norris*, 428 F.3d 907, 914 (9th Cir. 2005) (emphasis added).

The Supreme Court has held that in making a preliminary factual determination under Rule 104(b) to determine the admissibility of a coconspirator statement, a trial court may consider "any evidence whatsoever," except for privileged information, and "receive the evidence and give it such weight as his judgment and experience counsel." *Bourjaily v. United States*, 483 U.S. 171, 178 (1987); *see United States v. Brewer*, 947 F.2d 404, 409 (9th Cir. 1991) ("[i]n determining whether the Government established the existence of a conspiracy for the purpose of Fed. R. Evid. 801(d)(2)(E), Rule 104 'on its face allows the trial judge to consider any evidence whatsoever, bound only by the rules of privilege.' *Bourjaily v. United States*, 483 U.S. 171, 178 (1987)"). As part of this Rule 104 inquiry, the trial court may consider the disputed coconspirator statement itself along with other evidence. *See Bourjaily*, 483 U.S. at 181.

There is no requirement under Rule 801(d)(2)(E) that the defendant against whom the statement is offered must have been a member of the conspiracy at the same time the statement was made. Coconspirator statements made prior to a defendant's participation in a conspiracy are admissible against the defendant. *See*, *e.g.*, *United States v. Gypsum Co.*, 333 U.S. 364, 393 (1948) ("declarations and acts of various members, even though made or done prior to the adherence of some . . . become admissible against all"); *United States v. Anderson*, 532 F.2d 1218, 1230 (9th Cir. 1976) ("Statements of a coconspirator are not hearsay even if made prior to the entry of the conspiracy by the party against whom [the statements are] used"), *cited in United States v. Segura-Gallegos*, 41 F.3d 1266, 1272 (9th Cir. 1994); *United States v. Brown*, 943 F.2d 1246, 1255 (9th Cir. 1991) ("The prevailing view among the circuits is that previous statements made by co-conspirators are admissible against a defendant who subsequently joins the conspiracy. We join in that holding. The fact that appellant may have joined the conspiracy after its inception does not make his co-conspirators' previous statements inadmissible.") (citations from First, Second, Third, Fourth, Fifth, Seventh, Eighth, and Eleventh Circuits, and citation to *Anderson*, omitted).

Likewise, coconspirator statements made after a defendant's arrest and incarceration can still be admitted against him under Rule 801(d)(2)(E) because his membership in the conspiracy is deemed to continue absent affirmative evidence of withdrawal from a conspiracy. *See United States v. Jimenez Recio*, 537 U.S. 270, 274-77 (2003) (reiterating that a conspiracy is deemed to continue until there is affirmative evidence of abandonment, withdrawal, or disavowal, and reversing *United States v. Cruz*, 127 F.3d 791 (9th Cir. 1997), which provided for an additional ground for termination of a conspiracy).

Furthermore, a statement need not have been made to another conspirator in order to be admissible under Rule 801(d)(2)(E). *See, e.g.*, *United States v. Martinez*, 657 F.3d 811, 816-17 (9th Cir. 2011) ("Part of the evidence against Valenzuela was the statement of Raul Leon, a Mexican Mafia member incarcerated at Pelican Bay prison, made to another [non-conspirator] prisoner and referring to Barragan, 'He was saying he was a Carnal. So as soon as he got up there to the High Desert, I had his ass killed.' The statement was admissible as that of a coconspirator advancing the conspiracy's aim to maintain power in the prisons. Valenzuela's objection to admission of the statement is meritless. Valenzuela also objects to testimony of another [non-conspirator] inmate that Abarca told this inmate to spread the word to Pelican Bay that 'the job was done,' a message calculated to enhance the power of the conspiring [sic] and therefore also admissible under Rule 801(d)(2)(E).").

Moreover, statements can be made "in furtherance" of a conspiracy in a variety of ways:

> Statements made to induce enlistment or further participation in the group's activities are considered to be "in furtherance" of the conspiracy. Likewise, statements made to prompt further action on the part of conspirators are admissible under 801(d)(2)(E), as are those made to "reassure" members of a conspiracy's continued existence. Statements made to allay a coconspirator's fears are admissible. Most importantly, statements made to keep coconspirators abreast of an ongoing conspiracy's activities satisfy the "in furtherance" of requirement.

*United States v. Yarbrough*, 852 F.2d 1522, 1535-36 (9th Cir. 1988); *United States v. Crespo de Llano*, 838 F.2d 1006, 1017 (9th Cir. 1987) ("We have previously held that statements are in furtherance of the conspiracy if they are made to keep a person abreast of the conspirators' activities, to induce continued participation in the conspiracy, or to allay fears."); *United States v. Eaglin*, 571 F.2d 1069, 1083 (9th Cir. 1977) (same). Thus, retrospective statements can still be "in furtherance" of a conspiracy. *See, e.g.*, *United States v. Bowman*, 215 F.3d 951, 961 (9th Cir. 2000) (holding that a conspirator's statements to his conspirator girlfriend stating that the defendant participated in past bank robberies were made in

furtherance of the conspiracy because "Penney [the girlfriend] had to know Kirkpatrick [the defendant] was a bank robber in order to help him"); *United States v. Flores*, 572 F.3d 1254, 1264 (11th Cir. 2009) (holding that conspirator Sandoval's statements about a murder committed years before were made in furtherance of conspiracy and admissible under Rule 801(d)(2)(E): "Both Alamia and the witness who testified before him, Rodolfo Perez, stated that Sur-13 members who shot rival gang members were entitled to respect and high status in the gang. Because Sandoval's statements to Alamia served to inform Alamia about Flores's reliability and stature, and thus foster cohesiveness within the gang, these statements furthered the interests of the conspiracy. Thus, the district court did not abuse its discretion by admitting Alamia's testimony."); *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994) (holding that "[w]hile statements that are merely 'idle chatter' or that are 'entirely retrospective' are not in furtherance of the conspiracy, statements relating past events meet the in-furtherance test if they serve some current purpose in the conspiracy, such as to promote cohesiveness, or to provide reassurance to a coconspirator") (additional internal quotation marks, citations, and alterations omitted); *United States v. Maldonado-Rivera*, 922 F.2d 934, 958-59 (2d Cir. 1990) (holding that "statements that provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy" are in furtherance of a conspiracy under Fed. R. Evid. 801(d)(2)(E)).

In this case, the government respectfully submits that there is no need for a pre-trial hearing in order to determine the admissibility of statements under Rule 801(d)(2)(E). As the government noted in its motions *in limine*, the Court can consider *any* information when making its preliminary factual determination under Fed. R. Evid. 104, including material submitted in connection with various pretrial motions and the hearing on the government's proposed gang expert. The government also anticipates that, as the trial develops, there will be ample evidence that the defendant was a member of the CDP conspiracy. Thus, the only inquiry left will be whether a particular statement offered under Rule 801(d)(2)(E) was made "in furtherance" of the conspiracy.

As courts have ruled time after time, that inquiry is best reserved for determination at trial, with the benefit of the trial record. The government expects that whether a particular statement was made "in furtherance" of the conspiracy will be fairly obvious at the time it is offered. Of course, even if the

answer to a particular "in furtherance" inquiry is not obvious, the coconspirator statement can still be provisionally admitted, subject to a further motion to strike. *See*, *e.g.*, *United States v. Loya*, 807 F.2d 1483, 1490 (9th Cir. 1987); *United States v. Zemek*, 634 F.2d 1159, 1169 (9th Cir. 1980); *United States v. Turner*, 528 F.2d 143, 162 (9th Cir. 1975). There is no need for a pre-trial hearing to determine the admissibility of coconspirator statements.

The defendant relies on a non-Ninth Circuit case to support his claim for a hearing: *United States v. James*, 590 F.2d 575 (5th Cir. 1978). Even still, the defendant's reliance on *James* is misplaced. In *James*, the Fifth Circuit revisited the procedure under which co-conspirator statements were admitted. It concluded that the trial court alone must make the preliminary finding of admissibility, and reversed its prior ruling in *United States v. Apollo*, 476 F.2d 156 (5th Cir. 1973), which called for the judge and the jury together to decide preliminary facts. *See id*. at 581-83. There is nothing in *James* that requires that a trial court conduct a pre-trial hearing to determine the admissibility of co-conspirator statements. Moreover, to the extent *James* expressed a preference for such a hearing, the *James* approach was explicitly rejected by the Ninth Circuit more than 30 years ago. *Zemek*, 634 F.2d at 1169 n.13.[5] The defendant's motion to exclude and his request for a hearing should be denied accordingly.

**VIII.    Response to in Limine No. 8 to Exclude Any Reference to Harding Being Shot**

Defendant Harding's eighth motion in limine seeks to exclude "[a]ny statements or references" that "call attention" to defendant Harding's gunshot scar or suggest that Mr. Harding "has a violent lifestyle[.]" Motion at 17. Significantly, defendant Harding provided no explanation or analysis to support his broad assertion that such evidence will be "highly prejudicial, waste[] time, confuse[] the issues, mislead[] the jury and [] cause undue delay[.]" Nor could he.

Harding's gunshot scar is admissible under Federal Rule of Evidence 401's liberal standard. Ignoring this, defendant Harding argues that evidence of his wound should be excluded because it would

---

[5] *Bourjaily* also casts doubt on *James*: the *James* decision was decided before *Bourjaily*, and the framework *James* set forth provided that the disputed coconspirator statements themselves could not be considered when determining their admissibility under 801(d)(2)(E), contrary to *Bourjaily*. The defendant also implies that *Bourjaily* supports the use of a pretrial hearing. The Court in *Bourjaily*, however, made no finding whatsoever on the proper procedure for determining admissibility. *Bourjaily*, 483 U.S. at 176 n.1. The defendant's citation to *Tamez* is equally puzzling. *Tamez* confirmed that a pretrial hearing is not required under *Bourjaily*. *United States v. Tamez*, 941 F.2d 770, 775 (9th Cir. 1991).

be "highly prejudicial[.]" Motion at 17. However, evidence is only "unfairly prejudicial" when it has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) quoting Fed. R. Evid. 403 Advisory Committee Notes. Because of this, "the application of Rule 403 must be cautious and sparing" and "limited to excluding matter of scant or cumulative probative force[.]" *Id.* The United States must prove that defendant Harding is a member of CDP—a gang actively engaged in and renowned for violence. Members of violent criminal gangs are more likely to be victims of violent gang crime than members of the general population. As such, defendant Harding's wound is relevant to his membership in the enterprise. While not the smoking gun, it is probative evidence. Defendant is free to argue that it is possible to get shot without being a gang member. But the fact that an alternative explanation is possible is not the standard for admissibility. The Court should deny this motion as well.

## IX. Response to in Limine No. 9 to Exclude Mug Shots

Defendant Harding next moves *in limine* to exclude any mug shots listed in the government's exhibit list, including exhibits 590-592 and 603. He contends that this evidence is not relevant under Rule 401, and that any probative value provided by the mug shots is substantially outweighed by unfair prejudice under Rule 403. The defendant's motion should be denied.

First, the mug shots of defendant Harding, his co-defendants, and co-conspirators that the government seeks to admit are relevant to the offense conduct in this case. Contrary to the defendant's argument, identification issues do exist, and all of the mug shots will be used to identify the defendants, other members and associates of the CDP racketeering enterprise, and victims or rivals of the CDP racketeering enterprise.

Second, the Federal Rules of Evidence strongly favor admitting relevant evidence, and the probative value of the mug shots is not substantially outweighed by unfair prejudice. All of the mug shots that the government intends to introduce into evidence are "head and shoulders" shots that display only the neckline of each individual's shirt. These images show almost no indication that they were taken by law enforcement officials: the images contain no police markings, placards, or identification numbers; they are all set against a neutral background with no height lines or anything else indicating where they were taken; there are no dates of any nature on the front or back of the photographs; and

some of the mug shots show individuals in street clothing. The only indicia that these are photos taken by law enforcement officials is that some of the individuals are wearing orange shirts in their mug shot, but it is doubtful that members of the general public will recognize these photographs as being mug shots. *See Reiger v. Christensen*, 789 F.2d 1425, 1429-31 (9th Cir. 1985) (holding that a trial was not rendered fundamentally unfair where mug shots "did not betray any link with the police or suggest that [the defendant] had a past criminal record."); *see also United States v. Torres-Flores*, 827 F.2d 1031, 1036 (5th Cir. 1987) ( "Where all police or prison identification numbers, notations or other indicia have been completely excised, most courts have held that it is permissible to introduce photographs of a defendant.").

Third, the defendants are charged with serious crimes, including murder and attempted murder. It is therefore no secret that the defendants would have been arrested on the charges at issue in this proceeding. To the extent that jurors recognize some of these photographs as mug shots, they will naturally infer that the mug shots were taken when the defendants were arrested for the current offenses. Any potential for unfair prejudice by using these mug shots is low, and certainly does not "substantially outweigh" the high probative value of using this evidence to identify defendants, other members and associates of the criminal enterprise, and the enterprise's victims and rivals. Fed. R. Evid. 403.

Finally, the mug shots will provide the jury with a visual roadmap of the CDP racketeering enterprise. Indeed, mug shots have been used in other large criminal racketeering cases in this District, such as *United States v. Cerna*, 08-CR-0730-WHA (N.D. Cal.) (MS-13 racketeering case), in order to clarify complicated relationships and enterprise structures for the jury while moving through identification issues more quickly. In fact, mug shots were used as an illustrative aid as recently as Monday, May 2, 2016, in the *United States v. Cervantes* trial. *See* CR 12-0792 (YGR).

Notwithstanding the above, the government will endeavor to either crop the photographs to attempt to remove the orange sweatshirt from the images or change the sweatshirt color to a more neutral white or black.

## X. Response to in Limine No. 10 to Exclude Photographs From Phones

Defendant Harding objects to photographs being admitted into evidence without the proper foundation being laid as to authenticity. This is a non-starter. The government will lay the proper

1  foundation for each item of evidence it seeks to introduce.  With respect to the disputed photographs, the

2  government will call officers who obtained the photographs from the respective cell phones.

3  **XI.     Response to in Limine No. 11 to Exclude Evidence of DNA Collection from Harding**

4          Harding moves to exclude DNA taken during the execution of a search warrant on December 3,

5  2009.  The challenged DNA evidence does not appear on the government's exhibit list and, as Harding

6  notes, no experts have been noticed.  The defendant's motion is moot and should be denied accordingly.

7  **XII.    Response to in Limine No. 12 to Exclude Evidence of January 15, 2010 Phone Download in**

8          **Light of Suppression Order**

9          The government has submitted an exhibit list that is necessarily over-inclusive.  The government

10  is cognizant of and will fully comply with the Court's suppression order and does not plan to introduce

11  evidence that has been ruled inadmissible or suppressed by this Court.  However, such items may be

12  needed to refresh recollection—for example, police reports and items from law enforcement files—or to

13  impeach a defendant who provides inconsistent testimony.  Even suppressed evidence may properly be

14  used on cross-examination to impeach subsequent inconsistent testimony. *See, e.g., United States v.*

15  *Havens*, 446 U.S. 620, 629 (1980)("We…hold that a defendant's statements made in response to proper

16  cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise

17  proper impeachment by the government, albeit by evidence that has been illegally obtained and that is

18  inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt."); *Kansas v.*

19  *Ventris*, 556 U.S. 586, 594 (2009)(An "informant's testimony, concededly elicited in violation of the

20  Sixth Amendment, was admissible to challenge [the defendant's] inconsistent testimony at trial.");

21  *United States v. Ailemen*, 2002 WL 1763743, *4 (9th Cir. 2002) (evidence obtained through a

22  suppressed wiretap admissible to impeach); *United States v. Ortega*, 203 F.3d 675, 681 (9th Cir. 2000)

23  (same).

24          The government also reserves the right to introduce evidence from the phone if the defendant

25  opens the door to such evidence at trial.  *James v. Illinois*, 493 U.S. 307, 311-312 (1990) (Supreme

26  Court "has carved out exceptions to the exclusionary rule ... where the introduction of reliable and

27  probative evidence would significantly further the truthseeking function of a criminal trial and the

28  likelihood that admissibility of such evidence would encourage police misconduct is but a 'speculative

possibility."); *see also United States v. Rosales-Aguilar*, No. 14-50315, 2016 WL 1425877, at *4 (9th Cir. Apr. 12, 2016) (Defendant's voluntary but non-Miranda-compliant statements admissible to impeach psychiatrist's hearsay testimony supporting defendant's contention he lacked specific intent). The issue is not yet ripe for decision and the Court should therefore reserve ruling unless and until it arises at trial.

## XIII.    Response to in Limine No. 13 to Exclude Evidence of February 4, 2014 Phone Download

The defendant has put forward no basis for excluding this piece of physical evidence that was lawfully seized from him.  The motion should be denied.

## XIV.    Response to in Limine No. 14 to Exclude Admission of Shoe Print Photographs

Defendant Harding's fourteenth motion *in limine* seeks to exclude photographs and testimony that shoeprints at the scene of a burglary he committed matched defendant Harding's shoes.  Motion at 19-20.  Significantly, defendant Harding cites no cases to support his Motion, and he also completely ignores Federal Rule of Evidence 701's applicability in this matter.

A lay witness can offer opinion testimony that is based on the witness's perception, helpful to determining a fact in issue, and not based on scientific, technical, or specialized knowledge.  Fed. R. Evid. 701.  Several courts have held that shoeprint comparison testimony is admissible under FRE 701. For example, the Sixth Circuit recently held that a district court properly admitted a police officer's testimony about the similarities between the defendant's shoes and shoeprints found at a crime scene. *United States v. Shields*, 480 F. App'x 381, 386 87 (6th Cir. 2012).  The court approved of the officer's testimony because: (1) the officer "had sufficient personal knowledge to testify about whether the prints in the field were similar to the tread on [the defendant's] shoes;" and (2) "the jury benefitted from [the] testimony" because the officer had "significantly more time to study and compare the evidence" than the jury.  *Id.*; *see also United States v. Davis*, 44 M.J. 13, 17 (C.A.A.F. 1996) (holding that the trial court properly admitted lay opinion testimony about the physical similarities (i.e. shoe size, shoe type, and pattern wear) between the defendant's shoeprint and shoeprints at a crime scene).

As in *Sheilds* and *Davis*, the Court should permit the Government's witness to testify about the similarities between the tread on Defendant Harding's shoes and the shoeprints found at Defendant Harding's alleged burglary.  Specifically, the officer noted that the imprint left in the windowsill had a

1  distinctive "Adidas" design based on his personal observations.  The officer will testify that the imprint

2  he observed on the windowsill looks like the tread on Harding's sneaker, which was seized from him.

3  The idea that a lay witness cannot testify that he looked at two things and one appeared to him to be

4  similar to the other would alter jury trials as they have been conducted for eons.  The motion cites to no

5  authority for this proposition and is specious.  It should be denied.

6  **XV.    Response to in Limine No. 15 to Exclude Victim Statements**

7          Harding's fifteenth motion *in limine* seeks to exclude as-yet unidentified hearsay statements from

8  victims.  It is unduly vague and fails to provide the government with a basis to respond or the Court with

9  a basis to decide.  It should be denied.  The government understands and will comply with the Federal

10  Rules Evidence and the Constitution.  It also bears noting that, to the extent the motion seeks to exclude

11  prior identifications as hearsay, the motion must fail as a matter of law so long as the eyewitness is

12  available and subject to cross examination.  Fed. R. Evid. 801(d)(1)(C); *United States v. Owens*, 484

13  U.S. 554, 564 (1988) ("neither the Confrontation Clause nor Federal Rule of Evidence 802 is violated by

14  admission of an identification statement of a witness who is unable, because of a memory loss, to testify

15  concerning the basis for the identification."); *United States v. Elemy*, 656 F.2d 507, 508 (9th Cir. 1981)

16  (FBI agent's testimony concerning eyewitness's identification statements was not hearsay and was

17  admissible where the eyewitness was available for cross-examination); *United States v. Hill*, 47 F.

18  App'x 502, 503-504 (9th Cir. 2002) (proper to admit law enforcement testimony regarding witnesses'

19  prior identifications).

20  **XVI.    Response to in Limine No. 16 to Exclude Homicide Photographs**

21          Defendant Harding's sixteenth *in limine* motion seeks to exclude all photographs of the homicide

22  victims in this case.  It should be denied for obvious reasons—i.e., this is a case involving multiple acts

23  of murder and the government is required to prove that those murders occurred and how.  It should

24  further be denied because the defendant has failed to demonstrate that any of these photographs would

25  be unduly prejudicial or lack probative value.  It is striking that, here, without identifying a single

26  particular photograph that the defendants claim to be unduly prejudicial, the defendant argues that under

27  Rule 403 of the Federal Rules of Evidence, the Court should exclude all photographs of the homicide

victims in this murder case, including photographs taken from the crime scenes, autopsies, and medical examinations. Defendant Gilton makes a similar specious motion. *See* Harding MIL (Docket No.976), pages 20-21; and A. Gilton MIL (Docket No. 967), page 23. Defendant Harding appears to argue that use of any photographs of the deceased would be prejudicial, and then, in a bizarre turn, invites the Court to consider "alternative ways of demonstrating how individuals died …." *See* Harding MIL, page 21. Again, defendant Harding fails to point to any particular photograph as being unduly prejudicial, and neither defendant has met the burden for exclusion of relevant evidence under Rule 403.

Indeed, the Ninth Circuit has routinely affirmed the admission of such photographs in cases like the one presently before this Court. Crime scene and autopsy photographs may not be pleasant, but they constitute powerful, probative, and necessary evidence, and the defendants have failed to offer any evidence of undue prejudice. The admissibility of this evidence is amply supported by the law. *See, e.g., See Maxwell v. United States,* 368 F.2d 735, 739 (9th Cir. 1966) (upholding the admission of autopsy photographs as "relevant and material evidence tending to prove the crime charged"); *United States v. Boise*, 916 F.2d 497, 504 (9th Cir. 1990). "If the mere gruesomeness of the evidence were ground for its exclusion, then it would have to be said that the more gruesome the crime, the greater the difficulty of the prosecution in proving its case." *Rivers*, 270 F.3d at 438. This motion should be denied.

Defendants Harding (and defendant Gilton in his motin) incorrectly relies on *Rivers v. United States*, 270 F.2d 435 (9th Cir. 1959) – a case that has not been disturbed since it was published over fifty-six years ago. However, in *Rivers*, the Ninth Circuit upheld the admission of photographs of a dismembered murder victim in a homicide prosecution. There, the deceased – Paul Rivers – had been murdered in the night and his body dismembered by his murderer, portions of the body scattered on the beach and other portions drifting in the sea approximately one-half mile away from the hotel where the decedent had been a resident. *Id.* at 436. Indeed, the victim's head, upper torso, pelvis, arms, and legs

had been thrown into the sea.  *Id.*  His fingertips, toes, nose, lips, eyebrows, and scalp were found scattered about the beach.  *Id.*  Ultimately, Mr. Rivers' wife was indicted and convicted for the murder of her husband.  *Id.*  During the trial, the deceased's fingertips and toe, which were found near the hotel, and pieces of flesh and hair found beneath the window of the room occupied by Mr. Rivers and his wife were offered *and received* into evidence.  *Id.*  Photographs of the body that were taken at the morgue which disclosed the manner in which the body had been cut up were also received in evidence over the objection of the defense.  *Id.*  The defense had objected to the admission of "parts[] or photographs of parts of the dismembered portions of the body of the deceased man."  *Id.* at 437.[6]  As the Ninth Circuit described, "these objections were made upon the ground that this evidence was so gruesome and horrifying that it would inflame and excite the jurors and prejudice them against the defendant to such an extent as to deprive the defendant of a fair trial."  *Id.*  This is an argument not unlike this one in this case.  Nevertheless, the Ninth Circuit affirmed the admission of these photographs of the victim.  *Id.* at 437-38, citing *People v. Chavez*, 50 Cal.2d 778, 329 P.2d 907, 916 ("Such photographs should be excluded where their principal effect would be to inflame the jurors against the defendant because of the horror of the crime; on the other hand, if they have a probative value with respect to a fact in issue that outweighs the danger of prejudice to the defendant, they are admissible …..").  Indeed, the Court noted that "Pictures that accurately represent the true state of the thing depicted are admissible if they have probative value upon some element of the crime charged ….  Competent evidence is not prejudicial just because it is gruesome."  *Id.* at 438, citing *State v. Griffith,* 52 Wash.2d 721, 328 P.2d 897, 900 (1958). Moreover, the admissibility of evidence is not determined by whether the facts they portray could be described in witness testimony, but rather by whether it would be helpful to permit a witness to supplement his testimony with the use of the evidence.  *Id.*

---

[6] The defendant argued, in part, that she did not kill the victim, but instead any dismemberment occurred after the victim already died.

The government has the burden of proof and must demonstrate, not only that the victims were murdered, but in what manner and by whom. Government counsel is unaware of any instance in this District in which crime scene and autopsy photographs have been excluded in a homicide case. Moreover, none of the victims in this case were tortured or dismembered. While death is always tragic and unjustifiable, there is nothing so extraordinarily gruesome about the manners of death in this case that warrants the exclusion of this most basic evidence.

Finally, the government does not intend to offer every photograph of the victims in its possession. Of course, the government will not offer photographs that are not relevant to the cause of death. For example, the government will not offer irrelevant autopsy photographs that show no wounds and only gratuitous depictions of a victim's genitalia, or photographs of the bodies after the medical examiner has begun to cut them open to remove organs. But the government is entitled to demonstrate the entire crime scene to the jury to show the cause and manner of death will offer a sufficient number of photographs to do so. For example, the government will offer photographs of the victims as they were found to demonstrate positions of the bodies. The government will also offer autopsy photographs sufficient to demonstrate things such as entry and exit wounds, visible trauma to the body, and any other relevant aspect of a wound such as soot, stippling, etc. These types of photographs are routinely admitted in murder trials and they are far less shocking than others which have been properly admitted. *See*, *e.g*., *Maxwell, supra* (photographs of murder victim); *Boise,* 916 F.2d at 504 (affirming admission of autopsy photograph of infant murder victim); *Batchelor v. Cupp,* 693 F.2d 859, 865 (9th Cir. 1982) (affirming admission of photographs of naked female murder victim).

**XVII.    Response to in Limine No. 17 to Allow Defendant to Wear Civilian Clothes**

The government has no objection to any defendant wearing civilian clothes.

**XVIII.    Response to in Limine No. 18 to Exclude Witnesses from the Courtroom**

The United States has no objection to this request, as long as appropriate witnesses are allowed to remain. The government requests that the Court allow FBI Special Agent Jacob Millspaugh to be

present at counsel table during the trial.  Under Federal Rule of Evidence 615(c), "a person whose presence a party shows to be essential to presenting the party's claim or defense" should not be ordered excluded from the court during trial.  The case agent's knowledge of the evidence and facts of the case makes him essential to United States' presentation of its case.  As such, his presence at trial is necessary to the United States.

## CONCLUSION

For the reasons stated herein, the government respectfully requests that all the defendant's motions, with the exceptions of motion number one, number seventeen and number eighteen, be denied.


Dated: May 9, 2016                                      Respectfully submitted,

                                                        BRIAN J. STRETCH
                                                        United States Attorney


                                                        _____/s/_____

                                                        DAMALI A. TAYLOR
                                                        WILLIAM FRENTZEN
                                                        SCOTT D. JOINER
                                                        Assistant United States Attorneys