1    BRIAN J. STRETCH (CABN 163973)
     United States Attorney
2
     DAVID R. CALLAWAY (CABN 121782)
3    Chief, Criminal Division

4    WILLIAM FRENTZEN (LABN 24421)
     DAMALI TAYLOR (CABN 262489)
5    SCOTT D. JOINER (CABN 223313)
     Assistant United States Attorneys
6
            450 Golden Gate Avenue, Box 36055
7           San Francisco, California 94102-3495
            Telephone: (415) 436-7200
8           FAX: (415) 436-6753
            william.frentzen@usdoj.gov
9           damali.taylor@usdoj.gov
            scott.joiner@usdoj.gov
10
     UNITED STATES OF AMERICA,          )    CASE NO. CR 13-00764 WHO
11                                      )
            Plaintiff,                  )    UNITED STATES' OPPOSITION TO
12                                      )    DEFENDANT ROBESON'S MOTIONS IN LIMINE
        v.                              )    (ECF No. 972)
13                                      )
     PAUL ROBESON,                      )    Date:      July 19, 2016
14                                      )    Time:      9:00 AM
            Defendant.                  )    Court:     Hon. William H. Orrick
15                                      )               Courtroom 4, 17th Floor
                                        )
16

17

18

19

20

21

22

23

24

25

26

27

28

INTRODUCTION ................................................................................................................. 1

I.    RESPONSE TO *MOTION IN LIMINE* NO. 1 ................................................................ 2

      A.    Evidence of Robeson's Flight from Police and the Possession of Crack
            Cocaine by Co-Defendant Heard and Another CDP Member is Relevant and
            Admissible. ................................................................................................................ 2

      B.    Rule 404(b) Does Not Apply ...................................................................................... 4

      C.    Evidence of this Incident Will Not Unfairly Prejudice Robeson ............................... 6

II.   RESPONSE TO MOTION *IN LIMINE* NO. 2 ................................................................ 6

      A.    Robeson Cannot Exclude Evidence of his Possession of 40 Rocks of Crack
            Cocaine on March 18, 2004. ...................................................................................... 6

      B.    Evidence of Robeson's Possession of 40 Rocks of Crack Cocaine Does Not
            Present "Unfair Prejudice" ......................................................................................... 8

III.  RESPONSE TO MOTIONS *IN LIMINE* NOS. 3, 4, AND 5. .......................................... 8

      A.    Evidence Relating to Robeson's Actions as a Pimp, Harassing Prostitutes, and
            Attempting to Kidnap a Potential Prostitute Are Each Relevant and
            Admissible Overt Acts. .............................................................................................. 8

      B.    Rule 404(b) Does Not Bar Evidence Relating to Robeson's Actions as a Pimp,
            Harassing Prostitutes, and Attempting to Kidnap a Potential Prostitute ................ 10

      C.    The Probative Value of the Relevant Evidence Underlying Paragraphs 17.h.,
            17.i., and 17.l is Not Substantially Outweighed by the Danger of Unfair
            Prejudice .................................................................................................................. 10

IV.   RESPONSE TO MOTIONS *IN LIMINE* NOS. 6 AND 7 .............................................. 11

      A.    Statement of Relevant Facts and Procedural History ............................................. 11

      B.    Analysis .................................................................................................................... 14

            1.    The Court Should Deny Motion *in Limine* No. 6 to Exclude
                  Incomplete Evidence of Text Messages and Facebook
                  Communications Between Robeson and the UC. ............................................ 15

                  (i)    Admissions of the Surviving Communications Will Not
                         Violate the Doctrine of Completeness. ............................................... 15

                  (ii)   Admission of the Surviving Communications is Not Unfairly
                         Prejudicial. ......................................................................................... 17

                  (iii)  Oral Testimony about the Contents of the Text Messages is
                         Admissible. ......................................................................................... 18

                  (iv)   Robeson's Request for an Adverse Inference Instruction is
                         Without Merit and Should be Rejected ............................................... 19

2. The Court Should Deny Motion *in Limine* No. 7 to Exclude Robeson's Facebook Profile and Related Material Post-Dating the Charged Conduct. ................................................................................................20

V. RESPONSE TO MOTION *IN LIMINE* NO. 8 ................................................................20

    A. Statement of Relevant Facts and Procedural Background ................................................20

    B. Analysis.................................................................................................................21

**INTRODUCTION**

The government respectfully submits this response to Defendant Paul Robeson's motions i*n limine* seeking to exclude evidence regarding the following: (1) a January 13, 2003, incident where Robeson, along with co-defendant Charles Heard and another CDP member, now deceased, fled from police and were later found in possession of approximately 4.83 grams of cocaine base; (2) Robeson's March 18, 2004, possession of 40 packaged rocks (approximately 4.73 grams) of cocaine base; (3) Robeson attempt to recruit an individual to work for Robeson as his prostitute on August 6, 2006; (4) Robeson enticement of a minor to engage in prostitution on November 6, 2005; (5) Robeson's attempt to kidnap a woman on March 10, 2007; (6) text messages and Facebook content regarding Robeson's communications with an undercover (UC) officer who he believed was an underage prostitute; and (7) gang tattoos concerning Robeson's membership in CDP. Robeson argues that such evidence is irrelevant under Federal Rule of Evidence 401, inadmissible under Rule 404(b), and/or unfairly prejudicial under Rule 403. He is incorrect. The challenged evidence is directly relevant to the charges in the Second Superseding Indictment and none of it is unfairly prejudicial. His motions should be denied accordingly.

Rule 402 states that "[a]ll relevant evidence is admissible," except as otherwise provided by the Constitution, Congress, or other evidentiary or Supreme Court rules. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007). "To be 'relevant,' evidence need not be conclusive proof of a fact sought to be proved, or even strong evidence of the same. All that is required is a 'tendency' to establish the fact at issue." *Id*. The fact to be proved "may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action." Advisory Committee Notes, Fed. R. Evid. 401. Further, in considering the broad definition of relevance under Rule 401, the Supreme Court holds that "[t]he Rule's basic standard of relevance … is a liberal one." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993).

All of the evidence Robeson seeks to exclude is directly relevant to the charges in the Second Superseding Indictment. In evaluating Robeson's motions, it is important to keep in mind that the RICO

statute makes it unlawful for any person "to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." *See* 18 U.S.C. § 1962(d). "The elements predominant in a subsection (c) violation are: (1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity," but "[t]he relevant statutory phrase in § 1962(d) is 'to conspire.'" *Salinas v. United States*, 552 U.S. 52, 62-3 (1997). Thus, it is the agreement itself to conduct the conduct the affairs of an enterprise through a pattern of racketeering that is the crime. In other words, "Under *Salinas*, [the defendant] did not need to commit the substantive offense . . . in order to be guilty of the RICO conspiracy. Instead, it is sufficient that he '*knew about and agreed* to facilitate the scheme.'" *United States v. Fiander*, 547 F.3d 1036, 1041 (9th Cir. 2008) (quoting *Salinas*, 522 U.S. at 66 (additional citations omitted) (emphasis added)).

For a RICO conspiracy, "[t]here is no requirement of some overt act or specific act . . . unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an 'act to effect the object of the conspiracy.'" *Salinas*, 522 U.S. at 63 (quoting 18 U.S.C. § 371). "[I]n order to convict a defendant on a RICO conspiracy charge, [the court] 'does not require proof that [a defendant] participated personally, or agreed to participate personally, in two predicate offenses.'" *United States v. Frega*, 179 F.3d 793, 810 n.21 (9th Cir. 1999) (quoting *United States v. Tille*, 729 F.2d 615, 619 (9th Cir. 1984).

## I.     RESPONSE TO *MOTION IN LIMINE* NO. 1.

### A.     Evidence of Robeson's Flight from Police and the Possession of Crack Cocaine by Co-Defendant Heard and Another CDP Member is Relevant and Admissible.

Robeson argues that the government should not be allowed to introduce evidence of overt act 17.c. Overt Act 17.c. alleges that co-defendant Charles Heard and another fellow CDP member possessed 4.73 grams of cocaine base (crack cocaine) on January 13, 2003. As indicated by the relevant police report, Robeson and the other two fled from police when they tried to pull over the vehicle in which the three co-conspirators were riding. Dkt. 139 ¶ 17.c; Rose Decl. Ex 2. Robeson suggests that Heard and the other CDP member's possession of crack cocaine was for personal use, which he claims cannot support a RICO conspiracy. He further argues that the government will not be able to present any evidence that he possessed the crack or was otherwise involved in criminal activity. His argument ignores key facts and demonstrates a fundamental misunderstanding of RICO law.

1    As noted in the incident report, Robeson was a passenger in the car that led police on a chase

2  when they attempted to pull it over. *See* Rose Decl. Ex 2. (Incident Report 030048337). After the car

3  sped away and ran a stop sign, the driver, co-defendant Heard, slowed down, at which point he leapt

4  from the still-moving vehicle. *Id.* at BG008090. Once the car came to a stop, Robeson and the other

5  passenger leapt from the car and ran. *Id.* After apprehending them, the officers recovered two bags of

6  crack cocaine, one of which contained ten individually wrapped rocks. *Id.*

7        Robeson cannot preclude the government from introducing evidence directly relevant to a

8  charged overt act. As described below, the Second Superseding Indictment makes clear that narcotics

9  distribution was a purpose, means and method of the charged conspiracy. Although Robeson may not

10  have personally possessed crack cocaine, the fact that other co-conspirators did is highly relevant. The

11  Second Circuit, which has a well-developed body of racketeering law, has long held that:

12        [P]roof of the enterprise and pattern elements of racketeering "may well entail evidence
          of numerous criminal acts by a variety of persons." A single pattern of racketeering may
13        be common to a number of defendants and, in such circumstances, even though
          individual defendants "may reasonable claim no direct participation" in the acts of others,
14        "evidence of those acts is relevant to the RICO charges against each defendant."
          Specifically, the "various criminal activities" of racketeering confederates are admissible
15        against each defendant "to prove: (i) the existence and nature of the RICO enterprise and
          (ii) a pattern of racketeering activity on the part of each defendant by providing the
16        requisite relationship and continuity of illegal activities."

17  *United States v. Basciano*, 599 F.3d 184, 207 (2d Cir. 2010), *quoting United States v. DiNome*, 954 F.2d

18  839, 843-44 (2d Cir. 1992) (footnote omitted); *see also United States v. Fernandez*, 388 F.3d 1199,

19  1241-46 (9th Cir. 2004) (relying on *DiNome* to reject claim that denial of severance motion resulted in

20  admission of unfairly prejudicial "spillover" evidence; explaining that, in racketeering case, same

21  evidence of criminal acts would have been admitted in separate trials anyway). Accordingly, evidence of

22  the January 2013 overt act is admissible against Robeson even if he did not personally possess the crack

23  cocaine he challenges. This is particularly true where, as here, Robeson was not only present, but also

24  fled from police with his co-conspirators.[1]

25

26  ---

[1] Such circumstances are also relevant to allegations in the indictment that one purpose of the enterprise
was "[p]roviding assistance to other CDP members who committed crimes for and on behalf of the
gang, to hinder, obstruct, and prevent law enforcement officers from identifying the offenders,
apprehending the offenders, and successfully prosecuting and punishing the offenders." Dkt. 139 ¶ 9.e
(Second Superseding Indictment); *see also id.* ¶ 4 (threatening and intimidating witnesses believed to be
cooperating with law enforcement, providing false information to law enforcement); ¶ 5 (avoiding
detection by law enforcement); ¶ (discussing CDP members' encounters with law enforcement and the

Further, even if the police did not catch Robeson in possession of crack cocaine, the government can nonetheless introduce evidence that he was associating with other CDP members as enterprise evidence. "While mere proximity to the scene of illicit activity is not sufficient to establish involvement in a conspiracy, a defendant's presence may support such an inference when viewed in context with other evidence." *United States v. Penagos*, 823 F.2d 346, 348 (9th Cir. 1987). This is also true in the RICO context, particularly where, as here, the entire purpose of the enterprise is criminal. *See United States v. Rubio*, 727 F.2d 786, 793 (9th Cir. 1984). In *Rubio*, the Ninth Circuit observed that simple association with a racketeering enterprise can be relevant evidence in a RICO prosecution. "If such a large portion of the subject organization's activities are illegitimate so that the enterprise could be considered, in effect, wholly illegitimate, then there would certainly be cause to believe that evidence of a suspect's association with that enterprise would aid in a RICO conviction." *Id.* at 793; *see also United States v. Posada-Rios*, 158 F.3d 832, 857-58 (5th Cir. 1998) ("Although a defendant's mere presence at the scene of a crime is not, by itself, sufficient to support a finding that the defendant is participating in a conspiracy, presence and association may be considered by the jury along with other evidence in finding that the defendant participated in a conspiracy."); *United States v. Locascio*, 6 F.3d 924, 945 (2d Cir. 1993) ("Locascio contends that this instruction improperly allowed the jury to convict him for his 'mere presence.' Considering the above discussion, however, it is clear that the district court quite properly instructed the jury that presence under circumstances that advance the purposes of the conspiracy would be sufficient to support a finding of guilt.").

### B.     Rule 404(b) Does Not Apply

Nor does Rule 404(b) preclude introduction of such evidence. As noted above, Overt Act 17.c. alleges that Robeson was together with co-defendant Heard and another CDP member when they were in possession of crack cocaine. Dkt. 139 ¶ 17.c. Evidence of the January 13, 2003 incident is therefore directly relevant to charged conduct.

Federal Rule of Evidence 404(b) precludes the admission of "other crimes, wrongs or acts" to prove the character or criminal propensity of the defendant, but allows such evidence to be used for the

identities of suspected cooperators with law enforcement); and ¶ 64 (agreeing to kill individuals suspected of cooperating with law enforcement).

CR 13-764 WHO                                    4

limited purposes of showing "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* This rule does not apply, however, where the evidence that the government seeks to introduce is directly related to or inextricably intertwined with the crimes charged in the indictment. *See United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1091 (9th Cir. 2007) ("Rule 404(b) does not exclude evidence forming an essential element of the charged crime."); *United States v. DeGeorge*, 380 F.3d 1203, 1219 (9th Cir. 2004) (holding that evidence that was inextricably intertwined with alleged criminal activity was not subject to strictures of Rule 404(b)); *see, e.g.*, *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003) (holding that evidence that defendant stole cocaine was directly related to charged drug trafficking conspiracy). As the Ninth Circuit explained, "[t]he policies underlying Rule 404(b) are inapplicable when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions." *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993); *see also United States v. Montgomery*, 384 F.3d 1050, 1061-62 (9th Cir. 2004). This is particularly true in the context of racketeering prosecutions.

For example, in *United States v. Rubio*, 727 F.2d 786, 797-98 (9th Cir. 1983), the Ninth Circuit found no error in the trial court's admission of evidence of the defendant's prior drug conviction as direct evidence, and not as Rule 404(b) material, proving the existence of the racketeering enterprise and association of the defendant in the enterprise. In addition, as the Seventh Circuit explained in *United States v. Salerno*, 108 F.3d 730, 739 (7th Cir. 1997), the government must prove the existence of the enterprise, and evidence introduced to establish the existence and nature of the enterprise is not barred by Rule 404(b)'s prohibitions. Likewise, in *United States* v. *DiNome*, 954 F.2d 839, 843 (2d Cir. 1992), the Second Circuit explained that "[p]roof of [RICO] elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts. Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant. . . ." Significantly, the Ninth Circuit quoted *DiNome* in *United States* v. *Fernandez*, 388 F.3d 1199, 1243 (9th Cir. 2004), when the Ninth Circuit affirmed the denial of a severance motion in a racketeering case, explaining that all the "spillover" evidence about which the defendant complained would have been admissible against him anyway in a separate trial.

**C.**     **Evidence of this Incident Will Not Unfairly Prejudice Robeson**

Nor should the evidence be excluded as unfairly prejudicial. The Advisory Committee Notes to Rule 403 makes clear that. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* Rule 403, however, "excludes only evidence where the prejudice is 'unfair'—that is, based on something other than its persuasive weight." *United States v. Cruz-Garcia*, 344 F.3d 951 (9th Cir. 2003). Indeed, "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'" *Dollar v. Long Mfg., N. C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977). The Ninth Circuit therefore cautions against using Rule 403 to preclude otherwise relevant evidence:

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."

*United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (citation omitted).

In the context of a RICO conspiracy, evidence that Robeson ran from police with other CDP members who were in possession of crack cocaine, will not so inflame the emotions of the jurors that they reach a decision regarding RICO violations on an improper basis. Nor does any prejudicial effect substantially outweigh its relevance. Such evidence is highly relevant to the charged enterprise and conspiracy, and Robeson need not have personally committed the crime to be liable for RICO conspiracy. *See, e.g.*, *Frega*, 179 F.3d at 810 n.21 (defendant need not have participated personally, or agreed to participate personally, in predicate offenses). His motion should be denied accordingly.

**II.**     **RESPONSE TO MOTION *IN LIMINE* NO. 2**

    **A.**     **Robeson Cannot Exclude Evidence of his Possession of 40 Rocks of Crack Cocaine on March 18, 2004.**

Robeson also seeks to use a prior guilty plea to exclude relevant evidence regarding Overt Act 17.e. On March 18, 2004, Robeson was arrested with roughly 40 rocks of crack cocaine – a distribution amount. He subsequently pled guilty to a lesser offense of transportation of a controlled substance. He now argues that possession for personal use cannot serve as a predicate act under RICO and that

evidence of his narcotics possession should be excluded. He is incorrect.

Robeson ignores the fact that prior convictions do not have a collateral estoppel effect in RICO cases. A defendant cannot stipulate to the existence of a particular conviction related to a predicate act and then preclude the government from introducing additional evidence related to that conviction. *See Rubio*, 727 F.2d at 797-98. Consequently, Robeson's prior guilty plea cannot shield him from the full force of the facts underlying Overt Act 17.e.

To the contrary, Robeson's possession of significant amounts of crack on March 18, 2004, is highly relevant to the charged enterprise and conspiracy. The Second Superseding Indictment alleges that:

> Members of CDP have engaged in criminal activity, including murder, attempted murder, *narcotics distribution*, assault, robbery, extortion, interstate transportation in aid of racketeering, pimping, pimping of minors, illegal firearms possession, and obstruction of justice by threatening and intimidating witnesses whom they believed to be cooperating with law enforcement and by destroying evidence and providing false information to law enforcement.

Dkt. 139 ¶ 4 (emphasis added). In discussing the structure of CDP, it further alleges that:

> There are leaders of CDP. While they have no official titles, there are individuals who are feared, respected, and whose directions have been followed by other members. Below the leaders are "shooters," those gang members who have been prepared and known to commit violence on behalf of the gang and to protect each other. Below the shooters are gang members *who have dealt narcotics*, pimped out women and/or minors, or who commit robberies, but who were either hesitant to commit other violent acts on behalf of the gang, or who had not had an opportunity to commit other violent acts.

*Id.* ¶ 6 (emphasis added). Paragraph 9 describes one of the purposes of the enterprise as:

> Promoting and enhancing the enterprise and the activities of its members and associates, including, but not limited to, murder, attempted murder, conspiracy to murder, *narcotics trafficking*, robbery, pimping, and other criminal activities.

*Id.* ¶ 9.b (emphasis added). The indictment further alleges that among the "means and methods of the enterprise" was that CDP members and associates discussed "plans and agreements regarding the commission of future crimes, including murder, robbery, extortion, *narcotics distribution*, illegal possession of firearms, and assault, as well as ways to conceal these crimes; and the enforcement of the rules of CDP." *Id.* ¶ 11 (emphasis added). The indictment also alleges that:

> It was further part of the means and methods of the enterprise that the defendants and

other members and associates of CDP *agreed to distribute narcotics*, to commit robbery, extortion, to engage in pimping, including the pimping of minors, and other crimes, and to conceal their criminal activities by obstructing justice, threatening and intimidating witnesses, and other means.

*Id.* ¶ 14 (emphasis added). And although the government was not required to allege overt acts, the Indictment goes on to allege the March 18, 2004 possession of crack cocaine as an overt act demonstrating the existence of the conspiracy.

In summary, the indictment alleges that Robeson and his co-defendants engaged in a RICO conspiracy, by, among other things, conspiring to engage in "multiple acts involving dealing in controlled substances, in violation of 21 U.S.C. Sections 841(a)(1) and 846," among numerous other crimes. *Id.* ¶ 15.b. Robeson's possession of the 40 rocks of crack cocaine is one example that is appropriately alleged as an overt act in furtherance of the RICO conspiracy. At trial, Robeson may challenge the government's proof that the crack he possessed on March 18, 2004, was for personal use or somehow unrelated to the conspiracy. He cannot preclude, however, the admission of all such evidence before trial.[2]

**B.** **Evidence of Robeson's Possession of 40 Rocks of Crack Cocaine Does Not Present "Unfair Prejudice"**

Nor does Rule 403 bar the admission of evidence Overt Act 17.e. It is highly relevant and there is nothing in the facts to be presented to the jury that would outweigh such evidence or suggest decision on an improper basis.

**III.** **RESPONSE TO MOTIONS *IN LIMINE* NOS. 3, 4, AND 5.**

Robeson also moves to exclude three groups of evidence in motions nos. 3, 4, and 5. Given the overlap among these motions, the government addresses all three motions together.

**A.** **Evidence Relating to Robeson's Actions as a Pimp, Harassing Prostitutes, and Attempting to Kidnap a Potential Prostitute Are Each Relevant and Admissible Overt Acts.**

Evidence of the overt acts alleged in paragraphs 17.h, 17.i, and 17.l of the Second Superseding Indictment is relevant and admissible. In describing the hierarchy of the enterprise, paragraph 6 notes

---

[2] As described throughout the government's oppositions to the defendants' motions in limine, such evidence is direct evidence of the charged conspiracy and is not therefore subject to Rule 404(b).

that "leaders" are at the top, followed by "shooters," followed by "gang members who have dealt

narcotics, *pimped out women and/or minors*, or who commit robberies, but who were either hesitant to

*commit other violent acts* on behalf of the gang, or who had not had an opportunity to commit other

violent acts." Dkt 139 ¶ 6 (emphasis added). Thus, Robeson's actions of harassing and recruiting a

prostitute (¶ 7.h.), enticing a minor to engage in prostitution (¶ 7.i.), and attempting to kidnap a women

(¶ 7.l.) are all relevant and consistent with the alleged the hierarchy of the enterprise and RICO

conspiracy.

In addition, the alleged purposes of the conspiracy include the acts Robeson now challenges. For

instance, the indictment alleges that purposes of the conspiracy included "[p]reserve[ing] and

protect[ing] the power, territory, reputation, and profits of the enterprise, its members, and family

members, through the *use of intimidation*, *violence*, *threats of violence*, assaults, and murder." *Id.* ¶ 9.a.

Another stated purpose is, "[p]romoting and enhancing the enterprise and the activities of its members

and associates, including, but not limited to, murder, attempted murder, conspiracy to murder, narcotics

trafficking, robbery, *pimping*, *and other criminal activities*." *Id.* ¶ 9.b. The alleged means and methods

of the enterprise similarly state that CDP would use acts of violence, and "engage in pimping, including

the pimping of minors." *Id.* ¶¶ 13, 14.

It is difficult to comprehend, as Robeson now argues, how direct evidence of Robeson's

involvement in harassing and recruiting a prostitute, enticing a minor to engage in prostitution, and

kidnapping a woman do not have "any tendency to make the existence of" the RICO enterprise more

probable than it would be without the evidence. Fed. R. Evid. 401. To the contrary, these allegations go

to the core of the enterprise and Robeson's role in the RICO conspiracy.[3]

---

[3] Robeson also argues that the overt acts 17.h, 17.i., and 17.l. are irrelevant because they do not constitute standalone RICO predicate acts and therefore "cannot constitute an over act," *See e.g.*, Robeson's Motion in Limine at 7:23-8:3. He is mistaken. An overt act need not constitute a predicate crime to be relevant and admissible. Curiously, Robeson relies on two civil RICO cases pertaining to standing. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291 (9th Cir. 1990); *Dees v. California State Univ., Hayward*, 33 F. Supp. 2d 1190 (N.D. Cal. 1998). These cases predate *Salinas* and do not discuss the criminal RICO conspiracy line of cases, which hold that no overt act needs to be proved in a RICO conspiracy and that a defendant need not even be guilty of substantive RICO to be guilty of a RICO conspiracy. *See e.g.*, *Salinas v. United States*, 552 U.S. 52, 63 (1997); *United States v. Applins*, 637 F.3d 59 (2d Cir. 2011); *United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004); *United States v Fiander*, 547 F.3d 1036 (9th Cir. 2008); *United States v. Glecier*, 923 F.2d 496 (7th Cir. 1991); *United States v. Martinez*, 657 F.3d 811, 816 (9th Cir. 2011).

**B.     Rule 404(b) Does Not Bar Evidence Relating to Robeson's Actions as a Pimp, Harassing Prostitutes, and Attempting to Kidnap a Potential Prostitute**

The evidence underlying overt acts 17.h., 17.i., and 17.l. of the indictment constitutes proof of the existence of the CDP racketeering enterprise and does not fall under the ambit of Fed. R. Evid. 404(b).  None of the evidence that the government intends to present in its case in chief – including the evidence underlying the allegations in paragraphs 17.h., 17.i., and 17.l – will be offered to prove mere criminal propensity.  Rather, such evidence will be offered to prove the existence and contours of the charged racketeering enterprise, which is directly probative of the elements of the racketeering-related charges.  *See, e.g.*, *United States v. Applins*, 637 F.3d 59, 77 (2d Cir. 2011).  Accordingly, Rule 404(b) does not apply.

**C.     The Probative Value of the Relevant Evidence Underlying Paragraphs 17.h., 17.i., and 17.l is Not Substantially Outweighed by the Danger of Unfair Prejudice**

Nor is the evidence unduly prejudicial under Rule 403.  Federal Rule of Evidence 403 provides that, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ."  *Id.*  However, evidence that is probative of an element of the crimes charged is generally not unfairly prejudicial.  *See, e.g.*, *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) (explaining there can be no unfair prejudice from evidence that does not "lure a factfinder into declaring guilt on a ground different from proof specific to the offense charged").

The Second Circuit, which has a well-developed body of racketeering law, has long held that

> proof of the enterprise and pattern elements of racketeering "may well entail evidence of numerous criminal acts by a variety of persons."  A single pattern of racketeering may be common to a number of defendants and, in such circumstances, even though individual defendants "may reasonable claim no direct participation" in the acts of others, "evidence of those acts is relevant to the RICO charges against each defendant."  Specifically, the "various criminal activities" of racketeering confederates are admissible against each defendant "to prove: (i) the existence and nature of the RICO enterprise and (ii) a pattern of racketeering activity on the part of each defendant by providing the requisite relationship and continuity of illegal activities.

*United States v. Basciano*, 599 F.3d 184, 207 (2d Cir. 2010) (quoting *United States v. DiNome*, 954 F.2d 838, 843-44 (2d Cir. 1992) (footnote omitted)); *see also United States v. Fernandez*, 388 F.3d 1199, 1241-46 (9th Cir. 2004) (in rejecting claim that denial of severance motion resulted in admission of

unfairly prejudicial "spillover" evidence, relying on *DiNome* and explaining that, in racketeering case, all the same evidence of criminal acts would have been admitted in separate trials anyway).

The breadth of relevant evidence is even broader in the context of a RICO conspiracy charge, which is an inchoate offense that has no overt act requirement. *See Salinas*, 522 U.S. at 63. Moreover, as the Ninth Circuit has recognized, even outside the racketeering context, "[i]n conspiracy prosecutions, the government has considerable leeway in offering evidence of other offense." *United States v. Bonanno*, 467 F.2d 14, 17 (9th Cir. 1972).

Here, evidence of Robeson's harassment and recruitment of a prostitute, his enticement of a minor, and his attempt to kidnap a woman, are all extremely probative of the existence and contours of the charged racketeering conspiracy and the charged racketeering enterprise. This evidence lies at the core of how the enterprise operated and, specifically, how Robeson operated within the conspiracy. There is no undue prejudice in direct evidence of the charged conspiracy.

## IV. RESPONSE TO MOTIONS *IN LIMINE* NOS. 6 AND 7

### A. Statement of Relevant Facts and Procedural History[4]

Before joining the RICO case, Robeson was indicted in a separate proceeding for the attempted sex trafficking crimes charged in Counts Sixteen and Seventeen.[5] (*See* CR 13-453.) The charges against Robeson in Counts Sixteen and Seventeen of the Second Superseding Indictment stem from an undercover operation in 2012 whereby a San Francisco Police Department officer, who was part of the Human Trafficking Division of SFPD's Special Victim's Unit (hereinafter the "UC"), was working undercover on the internet posing as an under-aged girl.

On or about October 1, 2012, Robeson initiated contact with the UC via a false Facebook profile set up by the UC. After a series of Facebook exchanges with Robeson, the UC provided him with her telephone number and Robeson began sending text messages to the UC from his telephone. During the

---

[4] The facts relating to Robeson's attempted enticement of a minor to engage in prostitution were set out in detail in the United States' Opposition to Robeson's Motion to Suppress (Dkt. No. 252 at 2-5) and are reiterated here for the Court's convenience.

[5] These charges are attempted enticement of an individual to travel for prostitution, in violation of 18 U.S.C. Section 2422(a) and attempted enticement of a minor to engage in prostitution, in violation of 18 U.S.C. Section 2422(b). Those charges were subsumed within the instant case (Counts Sixteen and Seventeen).

course of several text message conversations, Robeson asked the UC to send him explicit photographs. The UC informed Robeson that she was working as a prostitute in Reno, Nevada and that she was only 16 years old. Undeterred, Robeson asked the UC in text messages if she wanted to move to San Francisco and leave her current pimp. The UC informed Robeson that she was not currently with a pimp and she asked if he wanted her to work the "track."

On or about October 5, 2012, the UC had a telephone conversation with Robeson, which was audio recorded and has been provided to the defense. Early in the conversation, Robeson confirmed with the UC that she is only 16, and can be heard exclaiming "you're 16 for real?!" The UC confirmed that she was in fact 16. Robeson complimented her maturity, saying that by her photographs she did not look "a day under 19." He told her that, being 16, it makes sense that she wouldn't have ID. Robeson asked the UC if her former pimp had procured a fake ID card for her. Robeson told the UC that she needs to be prepared to be arrested by the police since she is a juvenile; he further gave her tips on what to do if arrested. In his words: "if you get caught up and you're 16 years old, they're definitely going to take you down, they're going to take you to juvy or they might take you to jail so they can figure out who you is if you give them your alias, so you definitely have to have something you like to use. You don't want to use your name. If you don't have no record and you still a juvenile you good, you can use a Jane Doe and that will be your name for the rest of your mother fuckin life."

During the recorded October 5 phone call, the UC asked Robeson what he wanted her to call him and Robeson told the UC to call him "Daddy." Robeson also explained to the UC the importance of advertising on prostitution related websites. The UC told Robeson that she was not currently advertising on any websites. Robeson told the UC that he would set up a profile for her on myredbook.com and several other websites. Robeson asked the UC to send him "exclusive" photographs to use in the advertisements. Following the telephone conversation, the UC sent Robeson an image of her face and two sexually explicit images, obtained from the Internet, of a woman that did not show her face. Robeson then sent a text message to the UC stating that his "choosing fee" was "5 stacks." Robeson then asked the UC via text message her identifying statistics such as her height, weight, eye color, hair color, and bra cup size. The ads were provided to the defense in discovery.

On October 6, 2012, Robeson sent the UC a text message stating that he had posted

advertisements for her on prostitution-related websites. Robeson stated that the ads were for both in-calls and out-calls in the Reno area. Robeson instructed the UC to go to myredbook.com and search for her telephone number to find the advertisement. He told the UC to read that ad so she would know what to say to callers. The UC located an advertisement on www.myredbook.com, ad number 423067, which listed rates for "Honey Bunny" and the UC's telephone number. The ad listed her age as 21-24, blue eyes, blond hair, height 5'5" – 5'7" and her "kitty" as bald. The UC sent Robeson a text message stating that she had found the advertisement. Robeson responded that he had posted two ads for San Francisco and one for Reno.

Robeson subsequently sent text messages telling the UC to remain loyal to him as her pimp and not work with any other pimps. Specifically, on October 7, 2012, Robeson sent a text message to the UC stating "u betta be stayin in pocket out dere foe me I don't wawnt my bitch fuckin off wid niggas cause im not round ya stay to ya self less it bout sum $."

On October 8, 2012, during a text message conversation with Robeson, he told the UC "… bring you ass and see how u want it ta be wid me? …" The UC told Robeson that she could take a bus from Reno for $34.00. Robeson responded "yeah ok get ya shyt together and be on ya way than either downtown Frisco or Oakland ima come get u Frm dere k let me knw whe u on ya way got ya ticket and shyt ok." On that same date, Robeson asked her how much money she had left for him. He told her to make sure she keeps his money tucked away. Later that night, Robeson asked the UC if she was close to San Francisco and told her that he was going to get a hotel room for them. The UC sent Robeson a text message stating that while on the bus she was solicited for an act of prostitution and got off the bus in Sacramento. He then directed her throughout the transaction, telling her how much to charge and what to do. The following morning the UC sent Robeson a text message stating that she had made $800.00 from the act of prostitution. Robeson stated "ok das coo he beat dat young pussy up hug lol…was he in love after u got make him a reguale all ya clients can be regs if ya make it possible." These messages and exchanges were provided to the defense in discovery.

Robeson was provided with a substantial amount of discovery relating to the facts summarized above, including, but not limited to, Facebook communications between Robeson and the UC, the UC's police report and chron, the recorded telephone call on October 5, the UC's Facebook profile, Robeson's

Facebook page, photographs exchanged between Robeson and the UC, materials obtained as a result of a search warrant on Robeson's phone, advertisements posted by Robeson for the UC online, logs of phone calls between Robeson and the UC, text messages between the UC and Robeson.

When the government became aware in approximately July 2013 that certain text messages between the UC and Robeson were missing, the government notified the defense and undertook efforts to retrieve those messages. Although the government was able to recover approximately a dozen of the missing text messages, it was unable to recover approximately 30 additional texts. None of those text messages convey substantive or exculpatory information and, to date, the defense has offered nothing other than conclusory accusations to suggest the opposite.

**B.    Analysis**

Through his motions *in limine*, Robeson attempts to resurrect arguments that have previously been briefed by the parties and ruled on by the Court. Specifically, on December 8, 2014 Robeson filed a motion to compel discovery or to suppress the following: (1) text messages and other communications between himself and an undercover agent relating to the UC's age; (2) Facebook records; (3) law enforcement emails or notes relating to any discussion of the UC's representation of herself as a minor to Robeson; and (4) communications between the UC's representation of herself to others on social media and private communications. Dkt. No. 222 at 14-28. In that motion, Robeson repeatedly accused the government of failing to preserve evidence during its investigation, negligence, destruction or loss of records, inexcusable behavior, allowing critical records to disappear, misrepresenting the completeness of its discovery, and suggesting that the government acted in bad faith. *See id.* at 16, 17, 20; Dkt. No. 262 at 2, 5.

On February 13, 2015, the Court issued an Order on Robeson's motion. Dkt. No. 289. Acknowledging the amount of discovery that the government had produced relating to communications between Robeson and the UC, "and the likely inadvertence of the destruction of the 30 texts," the Court refused to hold a hearing "to determine if the government's failures to maintain the texts or the October 2012 Facebook page of the agent warrants additional relief, such as dismissal of the indictment or suppression of the evidence." *Id.* at 8. The Court emphasized that the "gaps in the evidence do not mean that the government has failed to disclose 'material exculpatory evidence' sufficient to constitute a

denial of Robeson's due process rights" and that although "[t]he missing texts may be potentially exculpatory [,] *there is no evidence that they are apparently exculpatory or that they were destroyed in bad faith*." *Id.* at 9 (citations omitted) (emphasis added).

Ignoring the Court's findings, Robeson has now filed two motions *in limine* that essentially regurgitate his previous accusations against the government. Robeson again claims that the government "failed to preserve key interactions between the UC and Mr. Robeson" and asks the Court to prevent the government from relying on what it characterizes as "poor conduct to justify the use of an inferior form of evidence." Dkt. No. 972 at 23, 24. Citing to Rule 403, relevance, and the original document rule, Robeson argues that "[t]o allow the introduction of some, but not all, of the text messages and Facebook communications between Mr. Robeson and the UC would reward the government for its own negligence at the expense of Mr. Robeson's ability to present a full defense." *Id.* at 24. Robeson provides nothing new to support his renewed accusations, however. Indeed, all he has done is re-state his failed motion to suppress as a motion *in limine* in an attempt to exclude admissible evidence that is relevant to the charges he faces. Because Robeson's arguments lack merit and his accusations against the government have been previously rejected by the Court, his motions should be denied.

### 1. The Court Should Deny Motion *in Limine* No. 6 to Exclude Incomplete Evidence of Text Messages and Facebook Communications Between Robeson and the UC.

#### (i) Admissions of the Surviving Communications Will Not Violate the Doctrine of Completeness.

Robeson argues that introducing the text messages between Robeson and the UC, without introducing the unrecovered text messages, would violate the doctrine of completeness under Federal Rule of Evidence 106 because it would take the matter of his knowledge of the UC's age out of context, would not allow for the establishment of his *mens rea*, and would deprive him of his right to a fair trial. Robeson's arguments are without merit.

Rule 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. The rule of completeness embodied in Rule 106 is designed to avoid any misleading impression created by

taking a statement out of context. *United States v. Dorrell*, 758 F.2d 427, 434 (9th Cir. 1985).[6]

Accordingly, under the rule, omitted portions of a statement should be admitted when relevant and "necessary to qualify, explain, or place into context the portion already introduced." United States v. Branch, 91 F.3d 699, 728 (5th Cir. 1996). "The Rule does not, however, require the introduction of *any* unedited writing or statement merely because an adverse party has introduced an edited version." *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014). If the "complete statement does not serve to correct a misleading impression in the edited statement that is created by taking something out of context, the Rule of Completeness will not be applied to admit the full statement." *Id.* (citations omitted).

The Court would be well within its discretion to deny Robeson's motion. *United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir.), *cert. denied*, 454 U.S. 830 (1981) (application of the rule of completeness is a matter for the trial judge's discretion.) First, Robeson has pointed to no misleading impression that would otherwise need to be corrected. In light of all the available (and previously produced) evidence relating to Robeson's and the UC's discussions regarding her age it is not clear how anything could be taken out of context. The defense has provided nothing more than speculation to substantiate its claim of what it believes was in the missing text messages. Indeed, the Court has already found that the gaps in the evidence do not mean that the government has failed to disclose 'material exculpatory evidence' sufficient to constitute a denial of Robeson's due process rights" and found no evidence that the missing texts were destroyed in bad faith. Dkt. No. 289 at 9 (citations omitted). Because the existing text messages and related evidence produced to the defense sufficiently supports Robeson's understanding and belief as to the UC's status as a minor, his argument lacks merit and

---

[6] In *United States v. Dorrell,* the defendant entered Vandenburg Air Force Base and damaged a building that housed missiles. Defendant's written confession included his political and moral reasons for his action. When the government offered a redacted version of the confession in evidence, the defense sought to have defendant's reasons admitted under the rule of completeness. The Ninth Circuit agreed with the district judge that excising defendant's political and religious motivations for his actions did not violate Federal Rule of Evidence 106 because the excision did not change the meaning of the portions of his confession submitted to the jury and did not undercut his confession. *Dorrell,* 758 F.2d at 435. The court observed that defendant's "motivation did not excuse the crimes" because it did not relate to a recognized defense. *Id.; see also United States v. Komisaruk,* 885 F.2d 490, 496 (9th Cir. 1989) (permissible to redact defendant's description of her subjective political motivation for vandalizing an Air Force computer because "her explanation was neither legally exculpatory nor relevant").

1    should be denied.

2              **(ii)      Admission of the Surviving Communications is Not Unfairly
3                          Prejudicial.**

4            Robeson argues that the surviving communications (Facebook and text) are random references to

5    the UC's age, with no context of how the subject was initially broached, and would confuse the jury as

6    to his state of mind.  Dkt. No. 972 at 27.  He also argues that a partial sample of the text messages would

7    be highly prejudicial to him and should be excluded because they may suggest to a jury that he intended,

8    and was predisposed, to pimp a minor.  *Id.*

9            Admission of the surviving Facebook communications and text messages satisfies the balancing

10   test of Federal Rule of Evidence 403.  Federal Rule of Evidence 401 defines "relevant evidence" as

11   "evidence having any tendency to make the existence of any fact that is of consequence to the

12   determination of the action more probable or less probable than it would be without the evidence."

13   Federal Rule of Evidence 403, of course, states that "[a]lthough relevant, evidence may be excluded if

14   its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

15   or misleading the jury. . . ."

16           "Unfair prejudice" is defined in the Advisory Committee Notes to Rule 403 as an "undue

17   tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional

18   one."  The touchstone of Rule 403 is the notion of "unfair prejudice."  Rule 403 "excludes only evidence

19   where the prejudice is 'unfair'—that is, based on something other than its persuasive weight."  *United

20   States v. Cruz-Garcia*, 344 F.3d 951 (9th Cir. 2003).  Put another way, "unfair prejudice" refers to "the

21   capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground

22   different from proof specific to the offense charged."  *Old Chief v. United States*, 519 U.S. 172, 180

23   (1997).  Thus, the Ninth Circuit has cautioned against using Rule 403 to preclude otherwise relevant

24   evidence:

25                   Relevant evidence is inherently prejudicial; but it is only unfair prejudice,
                     substantially outweighing probative value, which permits exclusion of
26                   relevant matter under Rule 403.  Unless trials are to be conducted as
                     scenarios, or unreal facts tailored and sanitized for the occasion, the
27                   application of Rule 403 must be cautious and sparing.  Its major function
                     is limited to excluding matter of scant or cumulative probative force,
28                   dragged in by the heels for the sake of its prejudicial effect."

1  *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (citation omitted).  In light of these

2  principles, the defendant's claims should be rejected and his motion denied accordingly.

3          The evidence produced to the defense regarding the UC's age does not consist of "random

4  references," as Robeson suggests.  Indeed, the evidence against Robeson of soliciting a minor is

5  extensive, consistent and damning.  It consists of concrete evidence about his state of mind and Robeson

6  has made no convincing argument that such evidence would confuse the jury.  To the contrary, it would

7  provide the jury with a clear picture of Robeson's intentions—to pimp a minor—which is precisely why

8  he seeks to have that evidence excluded.  The fact that it is prejudicial to him because it is evidence of

9  his guilt does not mean it is *unfairly* prejudicial.  His motion should be denied accordingly.

10                    **(iii)    Oral Testimony about the Contents of the Text Messages is**
                              **Admissible.**
11

12          Robeson's argument for the exclusion of oral testimony relating the content of the text messages

13  under Federal Rule of Evidence 1002 completely ignores this Court's previous ruling.  Although

14  Robeson correctly asserts that Rule 1004 does not require original documents unless the proponent acted

15  in bad faith, he cites to various cases to suggest that the government's conduct was improper.  *See* Dkt.

16  No. 972 at 27-28.  He first cites to an out of district case, *Sacramona v. Bridgestone/Firestone, Inc.*, 106

17  F.3d 444, 447 (1st Cir. 1997) for the proposition that if destroyed evidence is mishandled through

18  carelessness, and the other side is prejudiced, the district court is entitled to consider exclusion of

19  evidence."  *See* Dkt. No. 972 at 27.  Robeson has not shown how he was prejudiced and the Court made

20  no such finding, so his reliance on this case is misplaced.

21          In addition, although Robeson concedes that original documents may not be required absent a

22  showing of bad faith, he interestingly cites to a Ninth Circuit case that involved destruction and

23  spoliation of evidence, neither of which is at issue here and which is directly contrary to this Court's

24  previous ruling.  *See* Dkt. No. 972 at 28 (citing *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993)).

25          Finally, Robeson argues that oral testimony regarding the contents of the communications should

26  be excluded because human memory fails.  *Id.* (citing *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1319 (9th

27  Cir. 1986)).  The inevitable deterioration of human memory over time is not a proper metric for the

28  exclusion of evidence and no case cited by Robeson supports such a theory.  In any event, the discovery

provided to the defense in this case consists of reports, recordings, and other information that could assist the UC to refresh her recollection at trial if necessary. Because Robeson was one of only two potential targets that the UC was regularly communicating with at that time and stood out to her "because of his extreme eagerness to become [her] pimp," the UC's memory regarding her interactions with Roberson are less likely to be an issue. *See* Declaration of Julia Angalet in Support of United States' Opposition to Motion to Compel Discovery ("Angalet Decl."), Dkt. No. 252 at 15, ¶ 11. For these reasons, Robeson's argument fails.

<blockquote>

**(iv)** **Robeson's Request for an Adverse Inference Instruction is Without Merit and Should be Rejected.**

</blockquote>

Robeson cites to out of district and civil cases for the proposition that although bad faith is not required for an adverse inference instruction, a culpable state of mind will suffice, and concludes that the government's conduct here satisfies that description. Robeson's statement of the law is incorrect.

The Ninth Circuit has recognized that to warrant a missing evidence instruction, a criminal defendant must establish that evidence was lost or destroyed in bad faith, and that he suffered prejudice as a result. *See United States v. Romo-Chavez*, 681 F.3d 955, 961 (9th Cir. 2012). In *Romo-Chavez*, the Court explained that an instruction permitting the jury to draw an adverse inference against the prosecution "usually makes sense only where the evidence permits a finding of bad faith destruction; ordinarily, *negligent* destruction would not support the logical inference that the evidence was favorable to the defendant") (citation omitted) (emphasis in the original). The Court further clarified that the standard in civil cases is different, something that Robeson has utterly failed to recognize. *See id.* Indeed, the Court emphasized that "the bad faith requirement, absent from the general civil standard, exists in criminal cases because it 'limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it.'" *Id.* (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1998); *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004) (per curiam)).

An adverse inference instruction is not warranted here. The Court previously found no evidence that the missing text messages were destroyed in bad faith. Dkt. No. 289 at 9. Indeed, the government underwent extensive and successful efforts to recover and produce a plethora of text messages, MMS

exchanges, Facebook exchanges, photographs, myRedBook.com posting, as well as the recording of a telephone call on October 5, 2013. Robeson's argument should be rejected and his motion denied.

### 2. The Court Should Deny Motion *in Limine* No. 7 to Exclude Robeson's Facebook Profile and Related Material Post-Dating the Charged Conduct.

Relying on Rules of Evidence 401 and 403, Robeson seeks to exclude the content of his Facebook profile downloaded after the alleged conduct occurred, arguing that those downloads are irrelevant as to what his profile looked like at the time of the charged offense and will mislead the jury into thinking that Facebook materials captured in September 2013 are probative of similar contents from October 2012. Dkt. No. 972 at 30-31. Robeson argues, in conclusory fashion, that such evidence is prejudicial because "presenting the jury with potentially-altered document with incriminating content will mislead jurors into accepting unreliable evidence as fact." *Id.* at 31.

Robeson fails to explain what evidence was presumably altered or how any relevant evidence would be unreliable. Indeed, other than cite to cases describing the "dynamic nature of Facebook and other social network sites," Robeson posits no convincing argument that such evidence would be irrelevant or misleading. Here, the Facebook information downloaded in September 2013 included all prior communications between the UC and Robeson. *See* Angalet Decl. (Dkt. No. 252 at 16, ¶15 ("I have never deleted any communications between myself and Robeson, whether via text, MMS, Facebook message, Facebook post, or otherwise.")) In addition, the UC's Facebook profile did not change between October 2012 and September 2013, because she was always posing on Facebook as an underage prostitute. *Id.* at 15 ¶ 5; Dkt. No 289 at 7. Accordingly, Robeson's argument fails.

## V. RESPONSE TO MOTION *IN LIMINE* NO. 8

Defendant Robeson moves to exclude evidence of the three tattoos on his forearms: "UPT," "Mafia Boy," and "D Boyz." He claims that the tattoos are irrelevant, or, in the alternative, unfairly prejudicial. Because the tattoos are highly probative of the defendant's association with CDP, his motion should be denied.

### A. Statement of Relevant Facts and Procedural Background

On October 21, 2015, the government disclosed San Francisco Police Sergeant Damon Jackson as a gang expert. A supplemental disclosure was provided on November 15, 2015. Several defendants

filed *Daubert* motions in response. *See* Dkt. Nos. 634, 643, 651. Following arguments by the parties on January 22, 2016, the Court issued an Order on *Daubert* Motions, limiting the parameters of the gang expert's testimony and directing the government to file a revised disclosure. Dkt. No. 836 at 3-4. The government subsequently filed a Supplemental Notice Regarding Gang Expert. Dkt. No. 858. Sgt. Jackson testified at a *Daubert* hearing on February 12 and 16, 2016. Dkt. Nos. 876, 882, 883, 892. Following the hearing, the Court issued an Order detailing the permissible scope of Sgt. Jackson's testimony at trial. Dkt. No. 927.

Relevant to this motion, the Court held that Sgt. Jackson's extensive experience provides a reliable basis for his opinions that Uptown and Downtown' gangs use a variety of symbols, including certain hand signals, codes, and tattoos. *Id.* at 9. Sgt. Jackson may also give his opinions on the existence of various gangs in the Western Addition and their respective territories. *Id.* This includes the opinion that Central Divisadero Players generally claim the area from Divisadero Street to Central Avenue and from Fulton Street to Hayes Street (referred to as the "D" to mean Divisadero or CDP territory). *Id.*

### B.    Analysis

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. To be "relevant," evidence need not be conclusive proof of a fact sought to be proved, or even strong evidence of the same. All that is required is a "tendency" to establish the fact at issue. The Advisory Committee Notes to the 1972 Proposed Rules remind us that "[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case. In that relation, "[t]he fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action." *Id.* A fact of consequence is not limited to the ultimate issue in the case; instead a fact of consequence can be any step along a path of inference that leads to an ultimate fact. *Old Chief v. United States,* 519 U.S. 172, 179. (1997).

All relevant evidence is admissible except as otherwise provided by the Constitution, by Act of Congress, or by applicable rule. Fed. R. Evid. 402; *United States v. Abel*, 469 U.S. 45, 50-51 (1984). If

evidence is otherwise relevant and not otherwise inadmissible, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury [or] wasting time." Fed. R. Evid. 403. However, evidence that is probative of an element of the crimes charged is generally not unfairly prejudicial. *See United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) (explaining there can be no unfair prejudice from evidence that does not "lure a factfinder into declaring guilt on a ground different from proof specific to the offense charged"). In general, material gang affiliation evidence is admissible as probative and unlikely to lead to unfair prejudice, confusion of the issues, or misleading the jury. *See United States v. Takahashi*, 205 F.3d 1161, 1164 (9th Cir. 2000).

The Ninth Circuit has upheld the admission of tattoos to prove gang membership. *See United States v. Fernandez*, 388 F.3d 1199, 1245-1246 (9th Cir. Cal. 2004). In *Fernandez,* the district court found that photographs of tattoos that tended to prove gang membership were relevant and admissible. *Id.* The district court excluded evidence of tattoos that were not indicative of gang membership. *Id.* Thus, the Ninth Circuit found that the "balance between probative value and prejudicial effect was fairly struck by the court and the admission of the relevant tattoo photographs and stipulations did not unfairly prejudice the appellants." *Id.* at 1246. Evidence of gang related tattoos has been admitted in the government's case in chief in multiple cases in this district. *See, e.g.*, *United States v. Cyrus*, No. 05-cr-00324-MMC; *United States v. Cerna*, No. 08-cr-00730-WHA, Dkt. No. 2781 (Dec. 17, 2010); *United States v. Flores* No. 12-cr-00119-SI, Dkt. No. 1085 (Jun. 16, 2014).

Here, a jury could readily find that the defendant's tattoos tend to prove his membership in CDP. A jury could reasonably infer that "UPT" is short for "Uptown." Similarly, hearing expert testimony that "the D" indicates CDP territory, a jury could infer that a "D Boyz" tattoo shows membership and allegiance to CDP. While the defendant claims the tattoos simply refer to the neighborhood he grew up in, the fact of a competing inference does not render the evidence inadmissible.

The defendant cites *United States v. Chandler*, No. 2:10-CR-00482-GMN, 2011 WL 1979713, at *2 (D. Nev. May 19, 2011) for the proposition that tattoos can often have highly prejudicial connotations, including the implication that the defendant has committed severe crimes. In *Chandler,* the defendant was on trial for being a felon in possession of a firearm. *Id.* He requested permission to

use makeup to cover a facial teardrop tattoo under the theory that it could cause jurors to believe that he was a member of a gang. *Id.* The government did not object. *Id.* Unlike the present case, the defendant's teardrop tattoo had no relevance to the crime with which he was charged. Here, the defendant's association with CDP is squarely at issue. The fact that the defendant has chosen to permanently display "UPT," "D Boyz," and "Mafia Boy" on his body is highly probative of his association with CDP. The relevance of the tattoos is not outweighed by any unfair prejudice. The defendant's motion should be denied accordingly.

## CONCLUSION

For the foregoing reasons, the defendant's motions *in limine* should be denied as set forth above.

DATED: May 9, 2016

Respectfully submitted,

Brian J. Stretch
United States Attorney

_____/s/_____
SCOTT D. JOINER
DAMALI A. TAYLOR
WILLIAM FRENTZEN
Assistant United States Attorneys