1  BRIAN J. STRETCH (CABN 163973)
   United States Attorney
2
   DAVID R. CALLAWAY (CABN 121782)
3  Chief, Criminal Division

4  WILLIAM FRENTZEN (LABN 24421)
   DAMALI TAYLOR (CABN 262489)
5  SCOTT D. JOINER (CABN 223313)
   Assistant United States Attorneys
6
        450 Golden Gate Avenue, Box 36055
7       San Francisco, California 94102-3495
        Telephone: (415) 436-7200
8       FAX: (415) 436-6753
        william.frentzen@usdoj.gov
9       damali.taylor@usdoj.gov
        scott.joiner@usdoj.gov
10
   Attorneys for United States of America
11

12  UNITED STATES OF AMERICA,              )   CASE NO. CR 13-00764 WHO
                                           )
13          Plaintiff,                     )   UNITED STATES' RESPONSE TO DEFENDANT
                                           )   ANTONIO GILTON'S MOTIONS IN LIMINE (ECF
14      v.                                 )   No. 967)
                                           )
15  ANTONIO GILTON,                        )   Date:       July 19, 2016
                                           )   Time:       9:00 AM
16          Defendant.                     )   Court:      Hon. William H. Orrick
                                           )               Courtroom 4, 17th Floor
17  _____)

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     RESPONSE TO MOTION IN LIMINE NO. 1 (READING INDICTMENT TO JURY) ..............................................................................................1

II.    RESPONSE TO MOTION IN LIMINE NO. 2 (JAIL CALLS) ....................................1

III.   RESPONSE TO MOTION IN LIMINE NO. 3 (CO-CONSPIRATOR STATEMENTS) ........................................................................................................1

IV.   RESPONSE TO MOTION IN LIMINE NO. 4 (UNSPECIFIED CO- ........................... CONSPIRATOR STATEMENTS) ...........................................................................6

V.    RESPONSE TO MOTION IN LIMINE NO. 5 (APRIL 19, 2007 FIREARM) ...........9

VI.   RESPONSE TO MOTION IN LIMINE NO. 6 (APRIL 6, 2008 FIREARM / MAY 1, 2008 NARCOTICS)..................................................................................9

VII.  RESPONSE TO MOTION IN LIMINE NO. 7 (PRIOR CONVICTIONS)...............14

VIII. RESPONSE TO MOTION IN LIMINE NO. 8 (WITNESS GUILTY PLEAS) .........16

IX.   RESPONSE TO MOTION IN LIMINE NO. 9 (MUG SHOTS)................................17

X.    RESPONSE TO MOTION IN LIMINE NO. 10 (HOMICIDE PHOTOS) .................19

XI.   RESPONSE TO MOTION IN LIMINE NO. 11 (EXCLUSION OF WITNESSES)..................19

XII.  RESPONSE TO MOTION IN LIMINE NO. 12 (WITNESS NOTICE)....................20

The United States respectfully submits the following responses to defendant Antonio Gilton's motions *in limine*.

## I.    RESPONSE TO MOTION IN LIMINE NO. 1 (READING INDICTMENT TO JURY)

Defendant Gilton seeks to preclude the reading of the indictment to the jury or, in the alternative, to strike certain allegations. The government does not intend to ask the Court to read or provide the Second Superseding Indictment to the jury. The government reserves the right, however, to revisit this issue if any of the defendants opens the door to reading the indictment or providing the jury with a copy. Until then the defendant's motion is moot and unripe, and should be denied accordingly.

## II.   RESPONSE TO MOTION IN LIMINE NO. 2 (JAIL CALLS)

Defendant Gilton seeks the wholesale exclusion of eight jail calls because "most of the conversation is wholly unrelated to the case." (ECF No. 967 at 8.) In addition, he argues that the calls should be excluded as unfairly prejudicial because Gilton "occasionally uses profanity, argues with his girlfriend… talks about problems he is having in his relationship [and] his girlfriend accuses him of being untruthful when he says he will call her back in 30 minutes." (*Id.*) The defendant's motion should be denied. As he admits, portions of the calls are related to the case. The government will not seek to introduce unrelated portions of the calls. Moreover, the use of profanity or the discussion of relationship problems fall far short of establishing unfair prejudice. Gilton provides no basis for the Court to find that the evidence should be excluded. Rule 403 permits a district court to exclude relevant evidence only if the evidence's probative value is *substantially* outweighed by the danger of *unfair* prejudice (emphasis added). *See, e.g.*, *United States v. Decinces*, 808 F.3d 785, 791 (9th Cir. 2015) ("Although the admission of the evidence may harm the defendants' case, that is not reason to exclude it under Rule 403, which refers only to *unfair* prejudice.") (emphasis in original). Evidence is unfairly prejudicial if it suggests a decision on an improper basis. *See* Fed. R. Evid. 403 Adv. Comm. Note. There is nothing in the jail calls or the alleged prejudicial portions identified by Gilton that would suggest a decision on an improper basis.

## III.  RESPONSE TO MOTION IN LIMINE NO. 3 (CO-CONSPIRATOR STATEMENTS)

Defendant Gilton now seeks a blanket exclusion of all co-conspirator statements, which were noticed by the government more than six months ago. In essence, he argues that none of these

statements further the goals of the conspiracy. He is wrong. Rule 801(d)(2)(E) provides that statements made "by a coconspirator of a party during the course and in furtherance of the conspiracy" are not hearsay.[1] To be "in furtherance of the conspiracy," the statements must "further the common objectives of the conspiracy." *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991). The Ninth Circuit has instructed that examples include:

> statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities . . . . When inquiring whether a statement was made 'in furtherance of' a conspiracy, we do not focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement.

*Id.* (citations omitted).

A co-conspirator's statement may be admitted under Fed. R. Evid. 801(d)(2)(E) "where the prosecution shows by preponderance of the evidence that (1) the conspiracy existed when the statement was made; (2) the defendant had knowledge of, and participated in, the conspiracy; (3) the statement was made 'in furtherance of' the conspiracy." *United States v. Larson*, 460 F.3d 1200, 1211 (9th Cir. 2006). When determining whether this foundation has been met, the court is not required to make any preliminary finding that the government has proved the conditional fact. *Id.* (*citing Huddleston v. United States*, 485 U.S. 681, 690). Instead, "[t]he court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." *Id.*; *see also United States v. Norris*, 428 F.3d 907, 914 (9th Cir. 2005).

So long as a statement meets the three requirements set forth above, it is admissible under Rule 801(d)(2)(E). There is no further requirement in the relevant case law that the person to whom a statement is made be a member of the conspiracy in order for the statement to be admissible under Rule 801(d)(2)(E). In *United States v. Martinez*, 657 F.3d 811 (9th Cir. 2011), for example, the Ninth Circuit

---

[1] This is also a well-recognized conspirator exception to the *Bruton* rule. *See, e.g.*, *United States v. Martinez*, 657 F.3d 811. Further, if a coconspirator's out-of-court statement is admissible under Rule 801, the Confrontation Clause is satisfied and the district court need not independently inquire into the reliability of the statements. *Bourjaily v. United States*, 483 U.S. 171, 181-84 (1987); *see also United States v. Lujan*, 936 F.2d 406, 410 (9th Cir. 1991) ("there is no Confrontation Clause problem raised since the requirements of Rule 801(d0(2)(E) are satisfied"); *United States v. Garcia*, 16 F.3d 341, 344 (9th Cir. 1994) (no Confrontation Clause or hearsay problem where statement falls under Rule 801(d)(2)(E)).

upheld the admission of statements of a Mexican Mafia member to a fellow prisoner about ordering a hit

on another individual against a different Mexican Mafia member. The Court reasoned:

> Part of the evidence against Valenzuela was the statement of Raul Leon, a Mexican Mafia member incarcerated at Pelican Bay prison, made to another prisoner and referring to Barragan, 'He was saying he was a Carnal. So as soon as he got up there to the High Desert, I had his ass killed.' The statement was admissible as that of a coconspirator advancing the conspiracy's aim to maintain power in the prisons. Valenzuela's objection to admission of the statement is meritless. Valenzuela also objects to testimony of another inmate that Abarca told this inmate to spread the word to Pelican Bay that 'the job was done,' a message calculated to enhance the power of the conspiring [sic] and therefore also admissible under Rule 801(d)(2)(E).

*Martinez*, 657 F.3d at 816; *see also United States v. Williams*, 989 F.2d 1061, 1068 (9th Cir. 1993)

(affirming admission of statement "not made to a coconspirator"); *United States v. Lujan*, 936 F.2d 406,

410 (9th Cir. 1991) (analyzing only coconspirator status of declarant); *United States v. Garcia*, 16 F.3d

341, 342, 344 (9th Cir. 1994) (statement made to undercover agent).

With respect to the challenged statements by defendant Young, the defendant's arguments are

unavailing. The defense must concede that the statements are admissible as a party admission against

Young. They are further admissible under Rule 801(d)(2)(E). First, the conspiracy had not ended with

the incarceration of Young and it was far from over at the time the statements were made. It is far from

over now. Indeed, as the government has often repeated and as Young himself made clear in the

recording, there are unindicted members of CDP who are still on the streets and active. Indeed, the case

law recognizes that coconspirator statements made after a defendant's arrest and incarceration can still

be admitted against him under Rule 801(d)(2)(E) because his membership in the conspiracy is deemed

to continue absent affirmative evidence of withdrawal from a conspiracy. *See United States v. Jimenez*

*Recio*, 537 U.S. 270, 274-77 (2003) (reiterating that a conspiracy is deemed to continue until there is

affirmative evidence of abandonment, withdrawal, or disavowal, and reversing *United States v. Cruz*,

127 F.3d 791 (9th Cir. 1997), which provided for an additional ground for termination of a conspiracy).

Moreover, the members of CDP who are in custody have a strong interest in acquiring and maintaining

power and status while in custody. Thus, the analysis is similar to what has been applied by the Ninth

Circuit in *Martinez* in admitting such statements. Moreover, defendant Young is continually

brainstorming on the recording regarding best practices to avoid RICO prosecution and/or conviction, all

of which further advances the aim of the conspiracy. This is the entire context of their conversation.

*See, e.g., Larson* , 460 F.3d at 1211 ("The broad context or circumstances in which the statement was made can serve as foundation adequate to establish the purpose of such identification. Moreover, the foundation need be sufficient only to *infer* the statement's purpose; it need not be laid bare on the pages of the trial transcript.").  Young also uses the informant as a means of acquiring information about suspected so-called snitches and about his co-conspirators—again, with the aim of evading prosecution and/or conviction.  Courts have found that statements that reflect an intent to avoid prosecution further the goals of the conspiracy.  As the Ninth Circuit found in *United States v. Lim*, "'[b]ecause the [conversation] was an attempt to conceal the conspiracy, it may also be considered to have been made 'in furtherance of' the conspiracy.'"  984 F.2d 331, 336 (9th Cir.), *cert. denied*, 508 U.S. 965 (1993).  The words of the informant to Young are apt in this respect: "[Y]ou know, that's why it's good for brothers to talk cause we give each other game."[2]

Defendant Gilton next takes issue with statements from CDP members to KOP member Gary Owens about the Helton/Turner double homicide.  These protestations must also fail.  It is without question that the listener need not be a member of the conspiracy for statements to be admissible.  The statements need only further an aim of the conspiracy.  This Court may recall that KOP and CDP were close allies until the August 14, 2008 double murder of Helton and Turner that began a bloody feud.  The statements to which the defendant objects (Nos. 3-5, 8) were statements made after the double homicide with the goal of helping CDP members evade capture and/or reprisal from KOP.  Every other statement—whether between members of CDP or to members of KOP *before* the feud began—is admissible as a statement made to induce enlistment or further participation in the group's activities, to prompt further action on the part of conspirators, to reassure members of a conspiracy's continued existence, to allay a co-conspirator's fears, to keep co-conspirators abreast of an ongoing conspiracy's activities, etc.  Defendant's objection to the introduction of defendant Young's text messages are similarly meritless.  Given that *pimping is one of the alleged methods and means of the enterprise*, the defendant's argument that defendant Young's text messages to prospective and actual prostitutes do no

---

[2] *United States v. Fielding*, 645 F.2d 719 (9th Cir. 1981) a case to which defendant cites, is inapposite on this point.  That case concerned statements made by the declarant about a prior conspiracy with the aim of convincing the listener to join a new conspiracy.

further the objectives of the enterprise is illogical.

Finally, the defendant takes issue with statements by CDP declarants made to "unknown" persons. He fails to mention that most of these people are actually identified in the disclosure and by other discovery. Testimony will establish, for example, that Bradley claimed the phone number at issue in No. 22, that Ferdinand referred to the individual as "Robert" and "Mister" (Robert Huntley's nickname) in No. 15, and that Ferdinand himself refers to Ivy in No. 18. This is all information that the defendant already has in his possession. More importantly, however, he misstates the law on the issue. In order for the statements at issue to be admissible, the Court must know the identity of the *declarant*— the Court does not need to know the identity of the person to whom the declarant is speaking. In *United States v. Mouzin*, 785 F.2d 682 (9th Cir. 1986), the sole case on which the defendant relies, the statement at issue was a ledger and the identity of the ledger's author was not discernable. Here, the identity of the declarant is clearly defendant Ferdinand. That case has no bearing whatsoever on this inquiry. And it is well settled that the statements by the individuals to whom the CDP declarants are speaking are, of course, not hearsay to the extent they are offered for context and not for the truth of the matter asserted. *See, e.g.*, *United States v. Moore*, 365 F. App'x 800, 802 (9th Cir. 2010) (holding that "statements were used solely to provide context for . . . statements about the logistics of the operation, so they are not hearsay and do not run afoul of the Confrontation Clause . . ."); *United States v. Whitman*, 771 F.2d 1348, 1352 (9th Cir. 1985) (upholding the admission of taped conversations between conspirators and a government informant because informant's statements "not admitted for their truth but to enable the jury to understand [defendant's] taped statements."); *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314-15 (6th Cir. 2009) (statements made by a caller looking for heroin were admissible, since they were not being offered for the truth of the matter asserted); *see also United States v. Gadson*, 763 F.3d 1189, 1212 (9th Cir. 2014) *cert. denied*, 135 S. Ct. 2350 (2015) ("A witness making statements to provide clarification and context for other statements is not offering evidence for the truth of the matter asserted, and such testimony does not run afoul of any hearsay prohibition."); *United States v. Chung*, 659 F.3d 815, 833 (9th Cir. 2011) (tasking list found in an associates home contained no declaration of fact and was not hearsay)

For all of the above reasons, the motion should be denied without a hearing. When determining

whether this foundation has been met, the court is not required to make any preliminary finding that the government has proved the conditional fact. *Larson*, 460 F.3d at 1211. Instead, "[t]he court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." *Id.*; *see also Norris*, 428 F.3d at 914. Moreover, the Court can consider any information when making its preliminary factual determination under Fed. R. Evid. 104, including material submitted in connection with various pretrial motions and the hearing on the government's proposed gang expert.

## IV. RESPONSE TO MOTION IN LIMINE NO. 4 (UNSPECIFIED CO-CONSPIRATOR STATEMENTS)

Defendant Gilton further seeks to exclude numerous evidentiary items, which he characterizes as co-conspirator statements, on the basis that they were not included in the government's letter from November 2015. The defendant's motion appears to be an overbroad "catch-all" motion into which he has pasted numerous exhibits. In his list of challenged exhibits, he includes a large swath of government evidence without regard to whether the exhibits actually constitute hearsay, let alone whether these items would require admission under the co-conspirator exception to the hearsay rule. Many of these items, on their face, do not appear to be hearsay evidence at all. For example, the defendant references numerous cell phone downloads, Facebook pages, an in-court guilty plea, a note which simply contains phone numbers (rather any out-of-court statement subject to the hearsay rule) which was possessed by defendant Barry Gilton in jail, and even victim phone downloads. A large number of the cited exhibits contain evidence that does not constitute out-of court-statements that will be offered for the truth of the matter asserted (most obviously photographs or mechanically generated logs of phone numbers dialed or contact lists).[3]

Notably the defendant does not argue that these items were withheld from discovery or that he

---

[3] Of course, to be hearsay, the statement must be an "assertion," made by a person, offered to prove the truth of the matter asserted. Fed. R. Evid. 801(a)-(c). Imperatives and questions are generally not hearsay unless intended as an assertion. *See, e.g.*, *United States v. Waters*, 627 F.3d 345, 358 (9th Cir. 2010) ("'Tell the truth' is an imperative and not an assertion of fact. It therefore does not fall within the meaning of 'statement' in Rule 801(a) and cannot be hearsay, because a nonassertion cannot have been offered to prove the truth of the matter asserted."). Nor are photographs. *United States v. May*, 622 F.2d 1000, 1007 (9th Cir.1980). Similarly, machine-generated information cannot be hearsay because it is not a statement made by a person. *United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1109 (9th Cir. 2015).

has somehow been prejudiced. Nor could he. All of the items cited by Gilton were produced in discovery and have been available to the defendants for many months or even years. The defendant's arguments instead hinge on the Court's initial scheduling order that required that co-conspirator statements be produced by November 23, 2015, a date tied to the March 21, 2016 trial date which has since been vacated. (ECF No. 353.) When making its disclosure, the government attempted in good faith to put the defendants on notice of the co-conspirator statements to be used at trial. In doing so, the government made clear, however, that "the attached table is not a complete, exhaustive verbatim list of all co-conspirator statements" and referred the defendant's to the discovery already produced. (Def. Ex. B.) Without actually specifying the portions of the dozens of exhibits he claims violated the Court's pretrial order, defendant now casts this as a Rule 16 violation requiring the extreme sanction of preclusion. He cites no authority in support of his demand. The defendant goes too far, and his motion should be denied.

Even assuming that some of the material in the exhibits identified in Gilton's motion could qualify as co-conspirator statements that were not included November 2015 letter, wholesale exclusion is not warranted. There is no Rule 16 violation. All of the materials were previously disclosed to the defense in discovery. What the defendant takes issue with is an alleged failure by the government to summarize these materials for him. But Rule 16 contains no requirement that the government create work product for the defense summarizing witness statements. For example, in *United States v. Bernard*, 625 F.2d 854, 859 (9th Cir. 1980), the Ninth Circuit was confronted with a law enforcement agent who admitted that he intentionally failed to "reduce to writing" a witness's statement in order to avoid the risk of creating inconsistencies. The Ninth Circuit criticized the agent, but ultimately held that the agent's conduct was not reversible error, explaining:

> [W]e can find no statutory basis for compelling the creation of Jencks Act material. The Jencks Act requires the prosecution to produce "written statements" of various types or their equivalent. The purpose of the Act was to make any existing prior statements made by a government witness equally available to the defense and the prosecution. Descriptions of interviews with witnesses that are not "substantially verbatim" are not discoverable under the Jencks Act. We cannot read into this requirement a further requirement that the government create such discoverable statements in the first instance. Nor can we find a constitutional basis for compelling the creation of such material under *Brady*.

*Id.*, 625 F.2d at 859-60 (9th Cir. 1980) (citations omitted).

Further, exclusion is only one of several possible remedies under Rule 16. Among the remedies available under Rule 16 are permitting discovery or inspection of the late-disclosed materials, granting a continuance, the exclusion of the evidence, or entry of "any other order that is just under the circumstances." Fed. Rule Crim. Proc. 16(d)(2). By invoking exclusion, the defendant ignores the important principle that the "trial court should not impose a sanction harsher than necessary to accomplish the goals of Rule 16." *United States v. Gee*, 695 F.2d 1165, 1167 (9th Cir. 1983). "Exclusion is an appropriate remedy for a discovery rule violation only where 'the omission was willful and motivated by a desire to obtain a tactical advantage.'" *United States v. Finley*, 301 F.2d 1000, 1018 (9th Cir. 2002) (quoting *Taylor v. Illinois*, 484 U.S. 400, 415 (1988)). There are no such omissions or violations here. All of the material was turned over to the defense – in its complete, unabridged form – long ago.

*Gee* is instructive in this case. There the government used transcripts of recordings at trial that it had not disclosed to the defendant, despite a prior defense request. *Gee*, 695 F.2d at 1166-67. The government played the recordings for defense counsel on several occasions prior to trial and had even given the defendant a copy of them, but it did not produce the transcripts that it used during the trial. *Id.* The Ninth Circuit affirmed the denial of the defendant's objection to the use of the transcripts. *Id.* at 1170.

Similarly, in *United States v. Carson*, 486 F.3d 618, 619 n.1 (9th Cir. 2007), the Ninth Circuit upheld the district court's refusal to exclude the testimony of an expert witness or to grant a continuance of the trial where the government disclosed the expert in an untimely manner. The expert's testimony was that "drug dealers often possess weapons and drug paraphernalia." *Id.* The court found no abuse of discretion in that this testimony "could not have been very surprising to defendant, nor was it readily susceptible to refutation in the event that a continuance had been granted." *Id.*

Finally, exclusion is not warranted where, as here, there has been no showing of any prejudice to the defendant. "Failure to produce such materials [those listed in Rule 16] on request may require reversal if the defendant can show prejudice to his defense from their use at trial." *Gee*, 695 F.2d at 1167. In moving to exclude the government's evidence, the defendant does not even attempt a showing of prejudice. There is none, and his motion should be denied.

## V.   RESPONSE TO MOTION IN LIMINE NO. 5 (APRIL 19, 2007 FIREARM)

The defendant objects to evidence of his April 19, 2007 firearm possession.  This incident should not be a surprise to him.  The government produced the discovery on this incident to the defendant in one of its first productions on May 23, 2014 (BG008331 - BG008461).  He has now had this discovery in his possession for almost two years.  The incident was again described in the government's witness and exhibits lists on March 8, 2016 – approximately three months before the now-vacated June 6, 2016 trial date.  The defendant is correct that the government failed to specifically list this incident in several pretrial disclosures.  The disclosures were provided in good faith and the omission was completely inadvertent.[4]   Notably, Overt Act M describes defendant Gilton's firearm possession on April 6, 2007 – thirteen days prior to the incident now complained of by the defendant.  In preparing its pretrial disclosures, the government mistakenly conflated the two April 2007 firearm incidents.  In the process of preparing its exhibit and witness lists, however, the government properly separated and described the two incidents.  It was not until the defendant filed the instant motion that the government became aware of the omission.  There is no prejudice to the defendant, and he claims none.  The motion to exclude this evidence should be denied accordingly.

## VI.   RESPONSE TO MOTION IN LIMINE NO. 6 (APRIL 6, 2008 FIREARM / MAY 1, 2008 NARCOTICS)

Defendant Gilton notes that he is alleged to have participated directly in only three charged overt acts: firearm possession on April 6, 2007 (¶ 17.m.); possession of crack cocaine (¶ 17.o.); and the murder of Calvin Sneed (¶ 17.cc.).  (ECF No. 967 at 13-14.)  He now seeks to preclude the government from introducing any evidence of two of these three overt acts.  He then demands that the Court arbitrarily limit the government to offering proof of no more than five overt acts at trial.  He cites no valid authority for such a severe limitation on the government's prosecutorial discretion or any proper justification for impairing the truth-seeking mission of the jury.

Count One charges the defendant with RICO conspiracy and alleges, among other things, that members of CDP are "expected to protect the name, reputation, and status of the gang…To protect the

---

[4] *See* ECF No. 758 at 3 (requiring "good faith list of additional acts").

1  gang and to enhance its reputation, CDP members [are] expected to use any means necessary…

2  including acts of intimidation and violence."  Second Superseding Indictment ¶ 3.  Count One goes on to

3  allege that members of CDP "have engaged in criminal activity, including murder, attempted murder,

4  narcotics distribution, assault, robbery, extortion… illegal firearms possession and obstruction of

5  justice…" (*id.* ¶ 4) and that the purposes of CDP include "[p]reserving the power, territory, reputation,

6  and profits of the enterprise, its members, and family members, through the use of intimidation,

7  violence, threats of violence, assaults and murder," as well as "[p]romoting and enhancing the enterprise

8  and the activities of its members and associates, including, but not limited to, murder, attempted murder

9  … narcotics trafficking, robbery, and other criminal activities." *Id.* ¶¶ 9.a. – 9.b.  In addition, the

10  indictment alleges that it was "part of the means and methods of the enterprise that the defendants and

11  other members and associates of CDP agreed to purchase, possess, maintain, use, and circulate a

12  collection of firearms for use in criminal activity by the members and associates of CDP," and "It was

13  further part of the means and methods of the enterprise that the defendants and other members and

14  associates of CDP agreed to distribute narcotics…" *Id.* ¶¶12, 14.  The defendant himself is charged with

15  murder in Count Two.

16      Against these allegations, which describe a violent criminal enterprise engaged in murder,

17  assault, pimping, and narcotics trafficking for more than a decade, the defendant now argues that his

18  possession of a firearm and possession of crack cocaine is irrelevant because "[m]any people illegally

19  carry guns or drugs without being involved in an overarching criminal conspiracy."  (ECF No. 967 at

20  17.)  He goes on to argue that "possession of a firearm is not even included in the definition of

21  racketeering activity."  (*Id.*) The defendant's argument misses the mark and ignores the law.  His

22  possession of a firearm and illegal narcotics, in connection with additional evidence showing his

23  membership in CDP, is relevant to the government's theory of the case as laid out in the indictment.

24  Indeed, these overt acts track directly with the purposes, methods and means of the conspiracy described

25  in the charging document.

26      The government must prove beyond a reasonable doubt that the defendants agreed that an

27  enterprise would be established and that the defendants were aware of the general contours of the

28  conspiracy. *See, e.g.*, *United States v. Applins*, 637 F.3d 59, 77 (2d Cir. 2011).  The overt acts alleged in

1 the indictment, including Gilton's unlawful possession of a firearm and crack cocaine, are directly

2 relevant to proving the existence and contours of the enterprise and conspiracy. The Court previously

3 found that "the theory of prosecution against [defendant Williams, who is also charged in the Sneed

4 murder] is clearly laid out in the indictment, and he has a great deal of evidence concerning the

5 government's case against him." *See* ECF No. 409 (denying motion for bill of particulars). The same is

6 true of defendant Antonio Gilton.

7 An overt act need not be a crime at all to be alleged, and it certainly need not be a federal crime.

8 "'[T]he function of the overt act in a conspiracy prosecution is simply to manifest that the conspiracy is

9 at work and is neither a project still resting solely in the minds of the conspirators nor a fully completed

10 operation no longer in existence.'" *United States v. Garcia–Santana*, 774 F.3d 528, 537 (9th Cir. 2014)

11 (quoting *Yates v. United States*, 354 U.S. 298, 334, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957)). Jurors do

12 not need to agree whether any of the overt acts were committed. *Salinas v. United States*, 522 U.S. 52,

13 63 (1997); *cf. United States v. Gonzalez*, 786 F.3d 714, 718–19 (9th Cir.2015) ("[S]o long as jurors in a

14 federal criminal trial unanimously agree that the Government has proven each element of a conspiracy,

15 they need not unanimously agree on the particular overt act that was committed in furtherance of the

16 agreed-upon conspiracy." (citation omitted)). For RICO conspiracy, "[t]here is no requirement of some

17 overt act or specific act ..., unlike the general conspiracy provision applicable to federal crimes, which

18 requires that at least one of the conspirators have committed an 'act to effect the object of the

19 conspiracy.'" *Salinas v. United States*, 522 U.S. 52, 63 (1997). Moreover, "the government in a

20 conspiracy case may submit proof on the full scope of the conspiracy; it is not limited in its proof to the

21 overt acts alleged in the indictment." *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir.2011); *see also*

22 *United States v. Cruz–Ramirez*, No. CR 08–0730 WHA, 2011 WL 5599630, at *3 (N.D. Cal. Nov. 17,

23 2011); *United States v. Neapolitan*, 791 F.2d 489, 506 (7th Cir.1986) ("[E]vidence of unindicted crimes,

24 while irrelevant as predicate acts used to establish a RICO violation, can serve as circumstantial

25 evidence of the defendant's connection to the enterprise and/or the conspiracy.") holding modified by

26 *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir.2000) and abrogated on other grounds

27 as recognized by *United States v. Rogers*, 89 F.3d 1326, 1336 (7th Cir.1996).

28 Nor are the two overt acts concerning Antonio Gilton unfairly prejudicial. Rule 403 permits a

district court to exclude relevant evidence only if its probative value is *substantially* outweighed by the danger of *unfair* prejudice. *See, e.g.*, *United States v. Deinces*, 808 F.3d 785, 791 (9th Cir. 2015) ("Although the admission of the evidence may harm the defendants' case, that is not reason to exclude it under Rule 403, which refers only to *unfair* prejudice.") (emphasis in original). Evidence is unfairly prejudicial if it suggests a decision on an improper basis. *See* Fed. R. Evid. 403 Adv. Comm. Note. Rule 403 does not provide a basis for excluding the overt acts complained of by Gilton here. To the contrary, Rule 403 "favors admissibility." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). As the Ninth Circuit observed in *Hankey*,

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing.

*Hankey*, 203 F.3d at 1172 (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir.1983)). There is nothing in the challenged overt acts which would suggest a decision on an improper basis. Gilton's possession of the firearm and crack cocaine, when considered in connection with other evidence at trial showing his membership in CDP, tend to make it more likely that he agreed to participate in a RICO conspiracy involving the CDP enterprise, the purpose of which included "[p]reserving the power, territory, reputation, and profits of the enterprise, its members, and family members, through the use of intimidation, violence, threats of violence, assaults and murder," as well as "[p]romoting and enhancing the enterprise and the activities of its members and associates, including, but not limited to, murder, attempted murder … narcotics trafficking, robbery, and other criminal activities." Second Superseding Indictment ¶¶ 9.a. – 9.b. His possession of a firearm and narcotics is also directly relevant to the "means and methods of the enterprise," which included an agreement "to purchase, possess, maintain, use, and circulate a collection of firearms for use in criminal activity by the members and associates of CDP," as well as an agreement to "distribute narcotics" *Id.* ¶¶12, 14. As noted above, the defendant is charged in an indictment that alleges multiple counts of murder, attempted murder, narcotics distribution and sex trafficking. He himself is charged with murder. It is inconceivable that proof that the defendant possessed a firearm or illegal narcotics would overly prejudice a jury given the general subject matter of the case.

The two district court cases cited by Gilton do not require a different result.  Indeed, there is no authority for arbitrarily narrowing the government's proof to five overt acts.   Such a limitation would be highly improper, especially before trial has even begun, when the facts involve a complex RICO conspiracy, spanning more than 15 years, which involves 11 defendants and countless criminal acts in a variety of contexts.  Notably, the defendant relies on *United States v. Gotti*, 399 F. Supp. 2d 417 (S.D.N.Y. 2005).  But *Gotti* was decided mid-trial, after a proffer conducted outside the presence of the jury, after the government had already presented a substantial amount of evidence against the defendant.  There is nothing in *Gotti* that would support a pretrial limit on the number of overt acts that the government is allowed to prove, let alone the exclusion of 2/3 of the overt acts charged against a particular defendant in the indictment.  Nor does the recent *Cervantes* decision support the defendant's requested relief.  In that decision, Judge Gonzalez Rogers admitted the vast majority of challenged evidence against the defendants.  The only acts that were excluded were acts that were not charged in the indictment and occurred after the defendants were incarcerated (one involved a prison riot and the other involved an assault on another inmate).  The court found these acts too "disjointed in time, place, defendant participation, and the type of act" to avoid a 404(b) analysis, and therefore granted the defendant's motion without prejudice to the government's ability to admit such evidence subject to a 404(b) analysis.  *United States v. Cervantes*, No. 12-CR-0792 YGR, 2016 WL 1029585, at *8 (N.D. Cal. Mar. 15, 2016).  Nothing in *Cervantes*, however, stands for the proposition that charged overt acts should be excluded wholesale, or that the government should be artificially limited – before even calling a single witness – to proving an arbitrary number of overt acts at trial.  The same is true of the *Reyes* decision cited by the defendant.  There, the defendant sought post-trial relief because the court admitted evidence of three murders in which the defendant did not participate.  The court rejected the defendant's claim, holding that "[t]he government doesn't have to prove its case through the least prejudicial means." *United States v. Reyes*, No. 2:11-CR-00077-PPS, 2014 WL 4722505, at *17 (N.D. Ind. Sept. 23, 2014).  The court also noted that it had made sure to avoid cumulative testimony during trial and further emphasized that a "RICO conspiracy, by its nature, requires substantial evidence of criminal activity by various members of the conspiracy that may not have been committed by the particular defendant." *Id.* at *17 (citing *United States v. Salerno,* 108 F.3d 730, 739 (7th Cir.1997)).  The same is

true here.

The defendant's request to exclude two-thirds of the overt acts alleged against him and to arbitrarily limit the government's proof at trial to only five overt acts finds no support in the law or the facts of this case. It should be denied accordingly.

## VII.    RESPONSE TO MOTION IN LIMINE NO. 7 (PRIOR CONVICTIONS)

Defendant Antonio Gilton has moved *in limine* to bar the government from using two prior felony convictions to impeach him if he testifies. The first conviction is a 2008 felony conviction for possession of cocaine base for sale on or about May 1, 2008; the second is a 2007 felony conviction for unlawful possession of a concealed firearm on or about April 6, 2007. The Court should deny the motion because the probative value of both acts – which are specifically alleged in the indictment as overt acts in furtherance of the RICO conspiracy – outweighs the prejudicial effect to the defendant.

Federal Rule of Evidence 609 provides the rule for admissibility of prior convictions as impeachment evidence. Rule 609(a)(1) states that, for the purpose of attacking the credibility of a testifying defendant, evidence that the defendant has been convicted of a crime punishable by death or imprisonment in excess of one year "must be admitted . . . if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B).[5]

There are five factors, derived from *United States v. Cook*, 608 F.2d 1175, 1185 n.8 (9th Cir. 1979) (en banc), *overruled on other grounds*, *Luce v. United States*, 469 U.S. 38 (1984), that the Court must consider in balancing the probative value of prior convictions against their prejudicial impact:

(1) the impeachment value of the prior crime;

(2) the point in time of the conviction and the defendant's subsequent history;

(3) the similarity between the past crime and the charged crime;

(4) the importance of defendant's testimony; and

(5) the centrality of the defendant's credibility.

---

[5]    For convictions for which 10 years have passed since the date of conviction or date of release from confinement, Rule 609(b) provides that evidence of such convictions are admissible only if the probative value of the conviction <u>substantially</u> outweighs its prejudicial effect. *See* Fed. R. Evid. 609(b) (emphasis added). But as Gilton concedes, Rule 609(b) does not apply. *See* Mot. at 25 (conceding "[b]oth convictions are . . . just short" of the limit imposed by Rule 609).

*See also United States v. Hursh*, 217 F.3d 761, 768 (9th Cir. 2000).

Here, the probative value of the defendant's 2007 and 2008 convictions outweighs their prejudicial effect for several reasons. First, it bears emphasis that the Second Superseding Indictment specifically alleges that the RICO conspiracy involved a pattern of racketeering activity including "multiple acts involving dealing in controlled substances"; that "[o]n or about April 6, 2007, ANTONIO GILTON carried a loaded, concealed firearm in his vehicle"; that "[o]n or about May 1, 2008, ANTONIO GILTON possessed approximately 9.84 grams of cocaine base"; and that such overt acts were done "[i]n furtherance of the conspiracy and in order to effectuate the object thereof." *See* ECF No. 139 ¶¶ 15(b), 17, 17m, & 17o. These acts, therefore, are highly relevant because they demonstrate the pattern of racketeering activity and the overt acts in furtherance of the conspiracy, and the judgments are the best – if not indisputable – evidence that the defendant committed those acts. "Prior convictions are routinely admitted into evidence at subsequent RICO trials." *See United States v. Northington*, 2012 WL 5996956, at *2 (E.D. Pa. Nov. 30, 2012) (citing *United States v. Pelullo*, 14 F.3d 881, 888 (3d Cir. 1994)). Indeed, "the Government may introduce evidence of prior convictions to establish the commission of predicate acts in a RICO prosecution." *Id.* (citing *United States v. Tocco*, 200 F.3d 401, 417-18 (6th Cir. 2000)); *Pelullo*, 14 F.3d at 888. Notably, the defendant does not dispute that the 2008 felony conviction for possession of cocaine base for sale constitutes a predicate act within the definition of "racketeering activity" of 18 U.S.C. § 1961(1); Mot. at 17:23-24. Nor does he identify any prejudice that may flow from admission of the judgments (as opposed to other evidence of the acts). Because the 2008 and 2007 convictions are admissible as evidence of racketeering activity and overt acts in furtherance of the conspiracy, whatever prejudicial impact that flows from admission for impeachment purposes is small, at best.

In addition, under the *Cook* analysis, the defendant's felony convictions are admissible as impeachment evidence if he testifies. With respect to the first factor, under Ninth Circuit law, a drug conviction for selling narcotics undermines the defendant's veracity and is probative. *See United States v. Alexander*, 48 F.3d 1477, 1488 (9th Cir. 1995) (holding prior drug conviction admissible against defendant in bank robbery trial, because prior convictions for drug offenses "are probative of veracity"). Likewise, the defendant's 2007 conviction for possessing a concealed firearm shows that the defendant

1   flagrantly disregards social and legal rules, in unlawfully carrying a dangerous weapon.

2       With respect to the second factor, as the defendant concedes, both convictions are outside of the

3   limitations imposed by Rule 609(b).

4       The third factor also weighs in favor of the government.  Where a prior conviction "is

5   sufficiently similar to the crime charged," there is a substantial risk that the jury will impermissibly

6   conclude that "because [the defendant] did it before, he must have done it again."  *United States v.*

7   *Browne*, 829 F.2d 760, 763 (9th Cir.1987) (quotations omitted).   If they serve a proper impeachment

8   purpose, however, prior convictions may be admissible in spite of their similarity to the offense at issue.

9   *Id.* (noting that a prior "conviction [is] not inadmissible per se, merely because the offense involved was

10  identical to that for which [the defendant] was on trial" (quotations omitted) (alterations in original)).   In

11  this case, all of the convictions are sufficiently distinct from the charged crime.  The defendant is

12  charged with RICO conspiracy.  While the prior convictions involved guns and drugs, they are not the

13  same offense.  *See Alexander*, 48 F.3d at 1488.

14      Finally with respect to the fourth and fifth factors, the Ninth Circuit has held that, "[w]hen a

15  defendant takes the stand and denies having committed the charged offense, he places his credibility

16  directly at issue."  *Alexander*, 48 F.3d at 1489 (citing numerous cases).  Thus, if the defendant testifies

17  in this case that he did not commit the acts, that they were not in furtherance of the conspiracy, or that

18  they were not part of a pattern, he puts his credibility directly at issue and his prior convictions should be

19  admitted to impeach him.

20      To the extent any prejudice may arise by evidence of any of these prior convictions, it can be

21  addressed by Ninth Circuit Jury Instruction No. 4.6:

22          You have heard evidence that defendant has previously been convicted of a crime. You
            may consider that evidence only as it may affect the defendant's believability as a
23          witness.  You may not consider a prior conviction as evidence of guilt of the crime for
            which the defendant is now on trial.
24

25  It must be assumed that the jury will follow the instructions given to it by the Court.  *See United States*

26  *v. Nelson*, 137 F.3d 1094, 1107 (9th Cir. 1998).  For these reasons, the Court should deny the motion.

27  **VIII.   RESPONSE TO MOTION IN LIMINE NO.  8 (WITNESS GUILTY PLEAS)**

28      In his eighth motion in limine, the defendant seeks to prevent the government from introducing

the guilty pleas or conviction documents of defendant Gilton's co-conspirators as substantive evidence of guilt against Gilton. The defense concedes that such evidence is admissible to allow the jury to assess the credibility of the witnesses.

The government anticipates that the defendants, including Gilton, will attack the government's cooperating witnesses' credibility in part because of their plea agreements. If the defendants do so, the government would request that the Court admit the plea agreements into evidence to rebut defense arguments about the witness's credibility. There is ample authority in the Ninth Circuit to support the admission of such cooperation agreements for this purpose. *See, e.g.*, *United States v. Brooklier*, 685 F.2d 1208, 1218 (9th Cir. 1982) (holding that the government is allowed to introduce cooperating witness's plea agreement in rebuttal after defense attorney referred to witness as "perjurer, paid informant, and murderer who escaped the death penalty by cooperating with the FBI"); *United States v. Rohrer*, 708 F.2d 429, 433 (9th Cir. 1983) (holding that trial court properly admitted full text of cooperation agreement into evidence because it "was relevant to material facts at issue"); *see also United States v. Tham*, 665 F.2d 855, 862 (9th Cir. 1981) (in response to defense argument that plea agreement required witness to testify favorably for the government, "it was proper for the prosecutor to rebut that argument by arguing the language of the plea agreement and how it might affect the witness's motivation"). The government is well aware of the proscription against bolstering the truthfulness of the witness's testimony, and will avoid any such bolstering. Nonetheless, as the *Rohrer* court held, the full text of the cooperation agreements in this case will likely be "relevant to material facts at issue" and should be admitted if and when the defendants attack the credibility of any cooperating witness.

## IX.    RESPONSE TO MOTION IN LIMINE NO. 9 (MUG SHOTS)

Defendant Gilton next moves *in limine* to exclude any mug shots listed in the government's exhibit list, including exhibits 590-592 and 603. He contends that this evidence is not relevant under Rule 401, and that any probative value provided by the mug shots is substantially outweighed by unfair prejudice under Rule 403. The defendant's motion should be denied.

First, the mug shots of defendant Gilton, his co-defendants, and co-conspirators that the government seeks to admit are relevant to the offense conduct in this case. Contrary to the defendant's argument, identification issues do exist, and all of the mug shots will be used to identify the defendants,

1    other members and associates of the CDP racketeering enterprise, and victims or rivals of the CDP

2    racketeering enterprise.

3         Second, the Federal Rules of Evidence strongly favor admitting relevant evidence, and the

4    probative value of the mug shots is not substantially outweighed by unfair prejudice.  All of the mug

5    shots that the government intends to introduce into evidence are "head and shoulders" shots that display

6    only the neckline of each individual's shirt.  These images show almost no indication that they were

7    taken by law enforcement officials:  the images contain no police markings, placards, or identification

8    numbers; they are all set against a neutral background with no height lines or anything else indicating

9    where they were taken; there are no dates of any nature on the front or back of the photographs; and

10   some of the mug shots show individuals in street clothing.  The only indicia that these are photos taken

11   by law enforcement officials is that some of the individuals are wearing orange shirts in their mug shot,

12   but it is doubtful that members of the general public will recognize these photographs as being mug

13   shots.  *See Reiger v. Christensen*, 789 F.2d 1425, 1429-31 (9th Cir. 1985) (holding that a trial was not

14   rendered fundamentally unfair where mug shots "did not betray any link with the police or suggest that

15   [the defendant] had a past criminal record."); *see also United States v. Torres-Flores*, 827 F.2d 1031,

16   1036 (5th Cir. 1987) ( "Where all police or prison identification numbers, notations or other indicia have

17   been completely excised, most courts have held that it is permissible to introduce photographs of a

18   defendant.").

19        Third, the defendants are charged with serious crimes, including murder and attempted murder.

20   It is therefore no secret that the defendants would have been arrested on the charges at issue in this

21   proceeding.  To the extent that jurors recognize some of these photographs as mug shots, they will

22   naturally infer that the mug shots were taken when the defendants were arrested for the current offenses.

23   Any potential for unfair prejudice by using these mug shots is low, and certainly does not "substantially

24   outweigh" the high probative value of using this evidence to identify defendants, other members and

25   associates of the criminal enterprise, and the enterprise's victims and rivals.  Fed. R. Evid. 403.

26        Finally, the mug shots will provide the jury with a visual roadmap of the CDP racketeering

27   enterprise.  Indeed, mug shots have been used in other large criminal racketeering cases in this District,

28   such as *United States v. Cerna*, 08-CR-0730-WHA (N.D. Cal.) (MS-13 racketeering case), in order to

clarify complicated relationships and enterprise structures for the jury while moving through identification issues more quickly.  In fact, mug shots were used as an illustrative aid as recently as Monday, May 2, 2016, in the *United States v. Cervantes* trial.  *See* CR 12-0792 (YGR).

Notwithstanding the above, the government will endeavor to either crop the photographs to attempt to remove the orange sweatshirt from the images or change the sweatshirt color to a more neutral white or black.

## X.    RESPONSE TO MOTION IN LIMINE NO.  10 (HOMICIDE PHOTOS)

Defendant Gilton seeks to exclude homicide photographs.  Defendant Harding brings a similar motion.  (ECF No. 976.)  For the sake of efficiency, both motions are addressed together in the government's response to Harding's motion in limine.  (ECF No. 1006.)  The  government therefore respectfully incorporates its responses to that motion here.  (*See* ECF No. 1006 at 20-23.)

## XI.    RESPONSE TO MOTION IN LIMINE NO.  11 (EXCLUSION OF WITNESSES)

The defendant seeks an order excluding witnesses from the courtroom.  The government has no objection to excluding witnesses and directing them not to discuss their testimony (with limited exceptions discussed below).  The government would ask that the exclusion be applied to defense witnesses as well.  Regarding government witnesses, there are two exceptions.  First, the government's designated case agent should be permitted to remain in the courtroom pursuant to Rule 615.  *See United States v. Valencia-Riascos*, 696 F.3d 938, 939-950 (9th Cir. 2012) (case agent permitted to remain in courtroom and need not testify first).  Second, victims and family members of deceased victims should be permitted to attend trial including during opening statements.  Part of the Crime Victims' Rights Act allows for victims to attend trial even when the victim might be a percipient witness.  Title 18 United States Code Section 3771(a)(3) provides for "[a] crime victim has the following rights . . . [t]he right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding."  Section 3771(b)(1) provides that "[b]efore making a determination described in subsection (a)(3), the court shall make every effort to permit the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim from the criminal proceeding."  The definition of crime victim "means a person directly and

proximately harmed as a result of the commission of a Federal offense . . . . In the case of a crime victim

who is . . . deceased, the . . . family members . . . may assume the crime victim's rights under this

chapter . . . ." 18 U.S.C. § 3771(e).  This is an important right and ignoring the rights of the victims has

been held to be reversible error where the procedures were not followed.  *In re: Mikhel*, 453 F.3d 1137

(9th Cir. 2006).  Certain victims and family members should therefore be permitted to attend trial.  The

government will provide specific notice to the Court of any victim witnesses that wish to attend portions

of the trial, and will do so sufficiently in advance of their attendance so that the Court can determine if

"clear and convincing evidence" supports an exception to the Crime Victims' Rights Act.

## XII.    RESPONSE TO MOTION IN LIMINE NO.  12 (WITNESS NOTICE)

The defense has requested a week's worth of advance notice of the government's witnesses

during the course of the trial.  This is too much.  Trials are dynamic and the government will need, not

only to accommodate witness schedules, but to adjust to the arguments and cross-examinations by the

defense in real time.  The government will agree to provide the defense with 48 hours' advance notice

regarding anticipated witnesses.  Any greater amount of time would be unreasonable and unreliable.

<strong>CONCLUSION</strong>

For the foregoing reasons, the defendant's motions *in limine* should be denied as set forth above.


DATED:  May 10, 2016                                    Respectfully submitted,

Brian J. Stretch
United States Attorney


_____/s/_____
SCOTT D. JOINER
DAMALI A. TAYLOR
WILLIAM FRENTZEN
Assistant United States Attorneys