1  BRIAN J. STRETCH (CABN 163973)
   Acting United States Attorney

2
   DAVID R. CALLAWAY (CABN 121782)
3  Chief, Criminal Division

4  DAMALI A TAYLOR (CABN 262489)
   WILLIAM FRENTZEN (LABN 24421)
5  SCOTT D. JOINER (CABN 223313)
   Assistant United States Attorneys

6
        450 Golden Gate Avenue
7       San Francisco, California 94102
        Telephone: (415) 436-7600
8       Fax: (415) 436-7234
        damali.taylor@usdoj.gov; scott.joiner@usdoj.gov
9
   Attorneys for United States of America

10
                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12
                      SAN FRANCISCO DIVISION
13
   UNITED STATES OF AMERICA,            )   Case No. 13-0764 WHO
14                                       )
            Plaintiff,                    )   GOVERNMENT'S OPPOSITION TO
15                                       )   DEFENDANT WILLIAMS' IN LIMINE
        v.                               )   MOTIONS
16                                       )
   ALFONZO WILLIAMS, et al.,             )   Hearing date: July 19, 2016
17                                       )   Hearing time: 9:00 a.m.
            Defendants.                   )
18  _____  )

19

20                        **INTRODUCTION**

21          The government must prove beyond a reasonable doubt that the defendants agreed that an

22  enterprise would be established and that the defendants were aware of the general contours of the

23  conspiracy. *See, e.g.*, *United States v. Applins*, 637 F.3d 59, 77 (2d Cir. 2011).  With respect to

24  defendant Williams, this Court has previously found that "the theory of prosecution against him is

25  clearly laid out in the indictment, and he has a great deal of evidence concerning the government's case

26  against him."  *See* Docket No. 409 (denying motion for bill of particulars).  Nevertheless, defendant

27  Williams has filed a set of sweeping *in limine* motions—motions that seek to exclude just about every

28  piece of evidence in the Second Superseding Indictment that could arguably concern defendant

Williams. The grounds for the motions are primarily that the government's notice to him been "untimely." The government will attempt to address each of the arguments, but notes that, since some are repetitive, there may be overlap in the responses within this memorandum, as well as overlap with the government's responses to other memoranda.

## BACKGROUND

As a preamble to his motions, defendant Williams complains that 1) the government's bates numbering system makes identification of exhibits impossible and 2) the government has refused to provide an evidence viewing. With respect to the first complaint, the government has provided the defense with a table that provides a page by page match of bates numbers. After meeting and conferring with counsel for defendant Williams, the government understands that the defendant will either withdraw or amend this objection to the government's exhibit list.

With respect to defendant Williams' second grievance, the government is dismayed at the representations to the Court. At the request of the defense, the government held an evidence viewing at the FBI office in San Francisco to which all defense counsel was invited on September 19, 2014. Counsel in attendance viewed the evidence and took photographs. Counsel for defendant Williams did not attend. At that time, government informed the defense that—in order to preserve the integrity of the evidence—there would not be multiple evidence viewings. Indeed, undersigned counsel recalls, only counsel for defendants Gordon, Heard, Young, Robeson, Barry Gilton, and (perhaps) Elmore attended. All defendants were told that those who were unable to attend the evidence viewing should get together and coordinate a time for an additional viewing. Counsel waited until March 2016 to request another viewing—for the following week. Even with the short timetable, the government agreed to, once more, make all the physical evidence available to the defense. Again, members of the defense team could not coordinate a date on which everyone who wanted to view the evidence would be available. Undersigned counsel told the defense team to propose a date when all the interested parties were available. The defense camp has yet to propose another date. Defendant Williams' statement that the government has refused to make the physical evidence available is false.

## DISCLOSURES

As directed by the Court's scheduling order, on November 24, 2015, the government provided

the defense with certain co-conspirator statements and 404(b) evidence to be introduced in the government's case-in-chief. Those 404(b) disclosures clearly include the crimes committed in the silver van robbery series. *See* Taylor Declaration, Exhibit A. The co-conspirator statements disclosure lists a host of text messages on defendant Young's cell phone about pimping. *See id.*, Exhibit B. They also reference the murder of Donte Levexier. Those disclosures are submitted herewith. On December 3, 2015, the government notified the defense that it may seek to introduce an additional unsolved homicide (the Donte Levexier homicide), but was first speaking with local law enforcement, as it was an open case on the local level. *See* Docket No. 675. The disclosure also listed the materials from *U.S. v. Gregory Walker,* and *United States v. Cheeves* which had been provided to the defense in discovery in June and September of 2015. On January 15, 2016, as directed by the Court, the government provided the defense with a list of additional acts the government intends to introduce at trial. *See* Docket No. 808. This disclosure included the homicide of Donte Levexier, the silver van robbery series, pimping allegations against defendant Williams and unindicted CDP member Leon Parker.

Furthermore, the Second Superseding Indictment makes clear that CDP is an enterprise engaged in pimping, murder, attempted murder, illegal firearms possession, robbery, witness intimidation and a host of other crimes. SSI ¶ 4. With respect to the pimping allegations, for example, paragraph four lists pimping as one of the criminal activities members of CDP engage in; paragraph six does the same. Paragraph nine lists "pimping" as one of the purposes of the enterprise. Paragraph fourteen explains that it was part of the methods and means of the enterprise that CDP members would engage in pimping. *See* ¶¶ 4, 6, 9, 14. These are only examples from the first five pages of the Second Superseding Indictment. *See also* ¶¶ 15, 17, 48-51, 60-63. Moreover, the government has always made clear that it intends to introduce text messages on defendant Young's phone with other pimps and prostitutes, as well as the testimony of civilian witnesses. *See, e.g.*, Docket No. 323 (March 20, 2015). In addition to the charging document they were given and the voluminous discovery they were provided, from their initial appearances in magistrate court—government counsel has made clear on the record that the government intends to introduce evidence that CDP is a gang that makes their money from pimping, well beyond the substantive counts against defendants Young and Robeson.

## RESPONSES TO IN LIMINES

## I. Responses to *in Limine* No. 1 to Exclude Evidence Disclosed After October 21, 2015 and *in Limine* No. 2 to Exclude Insufficiently Identified Acts

In his first *in limine* motion, defendant Williams seeks to exclude a host of evidence he argues was disclosed in an "untimely" fashion. These include: 1) the homicide of Donte Levexier; 2) the homicide of Richard Barrett; 3) the silver van robberies committed by defendants Gordon, Harding and unindicted CDP member Daryl Jones; and 3) allegations that unindicted CDP member Leon Parker is a pimp. *See* Docket No. 851. Defendant Williams' second motion seeks to exclude acts he describes as "insufficiently identified." These include: 1) all evidence of defendant Young and prostitution; 2) any statements by witnesses regarding defendant Williams and prostitution; 3) all evidence from *United States v. Cheeves*; 4) all evidence from *United States v. Walker*; and 5) all evidence concerning acts by co-conspirators.

In arguing that the disclosures are "untimely," defendant Williams argues that the government violated a purported discovery cutoff date of October 21, 2015. The government believes that the date the defendant references was a date for a production of "evidence of other racketeering acts not described in the Second Superseding Indictment" which was tied to the March 21, 2016 trial date, which was ultimately vacated. *See* Docket No. 353. The Order also listed November 23, 2015 as the date for Rule 404(b) disclosures and disclosure of co-conspirator statements. Defendant's arguments regarding the timeliness of the notice of the Richard Barrett homicide are puzzling, since this murder is specifically alleged as an overt act in the Second Superseding Indictment. With respect to the remainder of the government's notice, the defense was provided with the *United States v. Walker* materials on June 15, 2015 and with *United States v. Cheeves* material on September 4, 2015. The defendant has selected one order by this Court with respect to the date for disclosures and conveniently ignored others.

The argument that the evidence of defendant Young and prostitution is insufficiently identified is without basis. The government has provided, in detail, in multiple ways, the evidence it plans to introduce to show that defendant Young is a pimp. The defense has had this evidence for almost two years (defendant Young has had it for even longer).[1] Finally, it is also unclear how defendant Williams can per se seek to exclude every act committed by a co-conspirator or the statements of witnesses

---

[1] The only thing that the defense does not yet have are Jencks Act statements of witnesses.

against him.  He cites to no authority for this request and it should be denied.

**II.     Response to in Limine No. 3 to Exclude All Law Enforcement Testimony**

In his third motion, defendant Williams seeks to preclude all law enforcement testimony based on the timing of *Henthorn* disclosures.  He cites no authority for such an extraordinary ruling.  Nor could he.[2]  The extreme sanction requested by Williams would be unprecedented and unwarranted in this case.  The government requested that defense counsel approve a stipulated protective order to facilitate the production of law enforcement personnel records in December 2015.  Although certain counsel responded promptly, others did not, forcing the government to follow up repeatedly.  The government received final approval via email from the last remaining defense counsel at 8:16 PM on March 30, 2016.  Undersigned counsel filed the stipulated protective order with the Court at 9:12 AM on March 31, 2016 (Docket No. 956).  The Court entered the Protective Order on April 5, 2016 (Docket No. 963).  Government counsel received notification of the same via ECF at approximately 7:12 PM that night.  The government then produced law enforcement personnel records from the San Francisco Police Department the next day, on April 6, 2015.  Williams filed his motion *in limine* two days later, on April 8, 2016, claiming that no such records had been produced.[3]  Notably, Williams makes no attempt to demonstrate prejudice or bad faith.  That is because there is none.  There is no trial date.  Williams will have the information he seeks, to the extent the government is aware of it and can obtain it, well in advance of trial.  There is simply no basis for excluding all law enforcement testimony.  Williams' motion should be denied accordingly.

**III.    Response to in Limine No. 4 to Exclude Jail Calls, Phone Downloads, Pole Camera Data, Phone Records and Miscellaneous Items**
*Background and Applicable Law*

The conduct of this enterprise spans 15 years.  As such, the items on the exhibit list must encompass the breadth of such evidence.  The exhibit list also includes items that the government may mark to refresh recollection as needed, but will not move into evidence.  The defendants object to the list

---

[2] Counsel for Williams recently indicated by email that he intends to withdraw the motion.

[3] Williams' motion *in limine* is also troubling because he knew that the reason the records had not been produced was because the protective order had not yet been entered.  Yet he makes no mention of this in his argument – aside from an opaque statement that "[t]here may be reasons for this [delay]…" (Docket No. 977 at 5.)

provided by the government, contending that it is insufficiently detailed to allow them to prepare for trial. For example, defendant Williams claims to be perplexed about which portions of the pole camera footage the government intends to use, and which items from the defendants' phones the government intends to introduce. He further objects to the term "indicia" on the exhibit list—even though this term is routinely used on exhibit lists. *See* Taylor Decl., Exhibits C-F (exhibit lists in *Cerna*, *Wilde*, *Cyrus* and *Sleugh*). His arguments should fail. The government has charged RICO conspiracy with respect to an association-in-fact enterprise. As such, every time the defendants are together with each other and/or with other members of CDP, that is evidence the government plans to introduce to show the relationships among those associated with the enterprise. *See, e.g.*, *United States v. Coonan*, 938 F.2d 1553, 1559 (2d Cir.1991)("We have held that the existence of an association-in-fact is oftentimes more readily proven by 'what it does, rather than by abstract analysis of its structure.'"). If the defense were provided the specificity they seek, the exhibit list would easily be 1,000 pages long. Nothing in law or practice requires such level of detail.

No statute or rule requires the kind of detail the defense demands. Indeed, no statute or rule mandates disclosure of an exhibit list at all. Rule 16 does not indicate that discovery materials must be organized or indexed. Furthermore, the rule does not require that the government specify from among the discovery made available to defendant, which materials the government intends to use in its case-in-chief at trial. *See United States v. Valerio*, 737 F.Supp. 844, 847 (S.D.N.Y.1990) (denying request for list of exhibits as beyond the scope of Rule 16). Rule 12(b)(4)(B) is also not intended as a mechanism to ascertain the government's trial strategy via an exhibit list, *see United States v. de la Cruz-Paulino*, 61 F.3d 986, 993-94 (1st Cir. 1995), which is exactly what Defendant is attempting here. That rule has a very limited scope: to ensure that a suppression motion can proceed pretrial, and nothing more. *See* Fed.R.Crim.P. 12, advisory committee notes, 1974 amendment; *United States v. Lujan*, 530 F. Supp. 2d 1224, 1245-46 (D.N.M. 2008). ("interpreting Rule 12(b)(4)(B) as requiring the government to file an exhibit list expands the rule too far."). The purpose of the rule is not to reveal the government's trial strategy, but merely to provide the defendant with sufficient information to file the necessary suppression motions. Given the number of suppression motions the defendants have and continue to file in this case, there is no question that the aims of Rule 12(b)(4)(B) have been accomplished. Criminal

Local Rule 17.1-1(10) only contemplates that parties *address* the following in a pretrial conference statement: "Pretrial exchange of documents, exhibits, summaries, schedules, models or diagrams intended to be offered or used at trial, except materials that may be used only for impeachment or rebuttal." In short, no statute or rule compels the kind of detailed exhibit list the defendant demands. Had Rule 16 or Rule 12 or even the Criminal Local Rules contemplated the extensive, detailed exhibit list the defendant demands, they would have stated so expressly. Exhibit lists are a matter of procedure and practice, not law. Not only is the government's exhibit list sufficient, it is more detailed than some in comparable cases. *See* Taylor Decl., Exhibits C-F.

Moreover, as of this date, the government has not yet received *any* discovery whatsoever from *any* of the defendants and the government cannot determine what the theory of defense case will be for any of the defendants. This, of course, violates Rule 16(b)'s requirement that the defense provide reciprocal discovery. It also does not allow the government to further delineate which exhibits that will be needed to rebut the defense case. Finally, for the defendant to achieve the result he seeks (i.e., the outright exclusion of a large percentage of the government's evidence), he would need to show prejudice resulting from the purportedly insufficiently detailed exhibit list. *See, e.g., United States v. Valencia*, 656 F.2d 412, 415-16 (9th Cir. 1981). He has not even attempted to do so.

*Jail Calls*

Notwithstanding the above, the government has agreed to provide the defense with a winnowed list of jail calls the government plans to introduce in its case-in-chief. Given the lack of any discovery by any of the defendants, the government reserves the right to supplement this list once it receives disclosures from the defense and depending on the arguments presented at trial.

*Phone Downloads*

The government has identified downloads of phones belonging to specific defendants. The defense moves to exclude these downloads on the basis that he "cannot prepare" without specific indication of "how the records are being used." There is nothing unusual about the way the records are described in the government's exhibit list. The government has attached, for example, the exhibit list used in the *Cerna* case. That list identifies "Telephone Records," much like exhibit lists in other cases. *See* Taylor Decl., Exhibits A-D.

*Pole Camera Data*

Defendant Williams claims to be perplexed about which portions of the pole camera footage the government intends to use. This is again much ado about nothing. Every time the defendants are together with each other and/or with other members of CDP, the government is entitled to use that evidence. Beyond the date of the Sneed murder, there is footage of defendant Williams, as well as other CDP members (e.g., Leon Parker, Vernon Carmichael and Donovan Noordzee) at 1458 Grove Street, CDP headquarters. The government is entitled to present all such footage.

*Exhibits Ruled Inadmissible*

The government has submitted an exhibit list that is necessarily over-inclusive. The government does not plan to introduce evidence that has been ruled inadmissible or suppressed by this Court. However, such items may be needed to refresh recollection—for example, police reports and items from law enforcement files. Having such material pre-marked will permit a long, and what could be a disorderly trial to proceed in a somewhat orderly fashion.

## IV. Response to in Limine No. 5 to Strike Overt Act 17(a)

Williams' fifth motion *in limine* seeks to "strike testimony and evidence of 1997 drug charge…; strike overt act allegation 17a.; and preclude impeachment with conviction of accessory." (Docket No. 977 at 10.)[4] The defendant misunderstands the nature of the charges against him.

### A. There is No Basis to Strike Overt Act 17.a.

The defendant's motion to strike is improper in light of the fact that the government is not required to plead or prove an overt act to convict him. The defendant has identified no legal basis for striking overt act allegation 17a and fails to cite a single case that would provide legal authority for the relief he seeks.[5] Moreover, the government does not intend to ask the Court to provide a copy of the

---

[4] Because there is no testimony or evidence to strike (at least until after witnesses are called at trial), the government interprets the first part of this motion as a motion to preclude the introduction of evidence concerning overt act 17a. In addition, within the argument section for this motion there are a number of tangential arguments and demands for relief, but given the lack of organization and citation to authority, the government is unable to formulate a response to them all. It therefore relies on the defendant's initial characterization of the motion to formulate this response.

[5] Moreover, the government does not intend to ask the Court to provide a copy of the pending Indictment to the jury. The government, however, reserves the right to revisit this issue if any of the defendants opens the door to providing the jury with a copy of the Indictment. Until then, however, the defendant's motion to strike is also unripe and/or moot.

pending Indictment to the jury.[6]  Until then, however, the defendant's motion to strike is also unripe and/or moot.

Count One of the Second Superseding Indictment charges a RICO conspiracy under 18 U.S.C. §1962(d).  To be convicted, there is no requirement that defendant Williams – or anyone else involved in the conspiracy –commit any predicate act.  In *Salinas v. United States*, the Supreme Court explained that:

> The RICO conspiracy statute, simple in formulation, provides:  It shall be unlawful for any person to violate any provisions of subsection (a), (b), or (c) of this section.  There is no requirement of some overt act or specific act in the statute before us, unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed "an act to effect the object of the conspiracy."  The RICO conspiracy provision, then, is even more comprehensive than the general conspiracy offense in § 371.

522 U.S. 52, 65 (1997) (internal citations omitted).  Accordingly, an indictment under § 1962(d) does not need to allege either "overt acts" or "specific predicate acts that the defendant agreed to personally commit."  *United States v. Glecier*, 923 F.3d 496, 500 (7th Cir. 1991).  Rather, when charging a RICO conspiracy, the government must "allege . . . that the defendant agreed to the commission of multiple violations of a specific statutory provision that qualifies as a pattern of RICO racketeering activity." *Applins*, 637 F.3d at 82.  The indictment must allege specific crimes or types of crimes that the conspiracy *agreed to commit* and that would constitute a "pattern of racketeering activity" *if* they were carried out.  As the *Glecier* court put it:  "[T]o list adequately the elements of section 1962(d) [RICO conspiracy], an indictment need only charge – after identifying [1] a proper enterprise and [2] the defendant's association with that enterprise – that the defendant [3] knowingly joined a conspiracy the objective of which was to operate that enterprise through an [4] identified pattern of racketeering activity."  *Glecier*, 923 F.2d at 500.

The government has fulfilled this requirement.  Although *Glecier* and its progeny do not require that a RICO conspiracy count allege specific racketeering acts, the government has done so here.  The Second Superseding Indictment identifies the specific types of racketeering offenses that the conspirators agreed would be committed.  As paragraph 17 (a) – (ii) of the Indictment sets forth, the

---

[6] The government, however, reserves the right to revisit this issue if any of the defendants opens the door to providing the jury with a copy of the Indictment.

defendant and his co-conspirators agreed to commit multiple acts involving murder, pimping, robbery, extortion, dealing in controlled substances, obstruction of justice, and other acts. There is no basis for striking overt act 17 a.

**B.    It Would be Improper to Exclude Evidence of Overt Act 17.a**

It would also be improper to preclude evidence related to overt act 17.a. As the defendant admits, the government may properly introduce evidence that Williams was observed with a suspected narcotics trafficker, fled the vehicle, and then tossed a golf ball sized baggie with a white substance during his attempted escape from the police. (Docket No. 977 at 12.)[7] The government has already indicated that it will not introduce evidence of the cocaine seized from inside Williams' residence. (Docket No. 700). His arguments concerning such evidence are therefore moot and have been for some time. The currency and other indicia found on the defendant's person, however, were not subject to the Court's suppression order and remain admissible at trial. Indeed, this evidence is relevant and admissible to support the government's charges that one of the alleged purposes of the CDP enterprise was to "promot[e] and enhance[e] the enterprise and the activities of its members... including narcotics trafficking." (Second Superseding Indictment ¶10.b.) Similarly, one of the charged means and methods of the enterprise was an agreement to distribute narcotics. (*Id.* ¶ 14.) It should be left to the jury to decide what weight to afford this evidence in light of the RICO allegations against the defendants and all of the evidence that will be presented at trial.

Williams also claims that the incident "does not rise to the level of a racketeering act "does not rise to the level of a racketeering act" and is "insufficient to constitute an overt act." This argument ignores controlling law. As described above, an overt act need not be a crime at all to be alleged, and it need not be a federal crime. "'[T]he function of the overt act in a conspiracy prosecution is simply to manifest that the conspiracy is at work and is neither a project still resting solely in the

---

[7] The defendant also claims that the government refused to provide him with photographs or property reports regarding the incident. As has become the pattern with counsel's statements, this allegation is incorrect. The government produced all of the incident reports and related documents in its possession concerning this incident in discovery at BG008043-BG008085, which was produced on May 23, 2014. Color photos were no longer available given the amount of time that had passed. Defense counsel is therefore in the same position as the government. The issue is also moot. Since the government does not have additional documentation in its possession, it cannot introduce such information at trial. There is no prejudice and little reason to waste the Court's time arguing about this non-issue.

minds of the conspirators nor a fully completed operation no longer in existence.' " *United States v. Garcia–Santana*, 774 F.3d 528, 537 (9th Cir. 2014) (quoting *Yates v. United States*, 354 U.S. 298, 334, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957)). Jurors do not need to agree whether any of the overt acts were committed. *Salinas v. United States*, 522 U.S. 52, 63 (1997); *cf. United States v. Gonzalez*, 786 F.3d 714, 718–19 (9th Cir.2015) ("[S]o long as jurors in a federal criminal trial unanimously agree that the Government has proven each element of a conspiracy, they need not unanimously agree on the particular overt act that was committed in furtherance of the agreed-upon conspiracy." (citation omitted)). For RICO conspiracy, "[t]here is no requirement of some overt act or specific act ..., unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an 'act to effect the object of the conspiracy.' " *Salinas v. United States*, 522 U.S. 52, 63 (1997). In addition, "the government in a conspiracy case may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment." *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir.2011).

Williams also objects to the evidence as improper 404(b) evidence. It is not Rule 404(b) evidence. The evidence will instead be offered to prove the existence of the charged CDP racketeering enterprise. One of the alleged purposes of that enterprise was to "promot[e] and enhance[e] the enterprise and the activities of its members... including narcotics trafficking." (Second Superseding Indictment ¶10.b.) Similarly, one of the charged means and methods of the enterprise was an agreement to distribute narcotics. (*Id.* ¶ 14.) The 1997 incident is therefore appropriately charged as an overt act, and Rule 404(b) does not apply.[8] Federal Rule of Evidence 404(b) precludes the admission of "other crimes, wrongs or acts" to prove the character or criminal propensity of the defendant, but allows such evidence to be used for the limited purposes of showing "proof of motive, opportunity, intent,

---

[8] The government's notice made clear that it did not consider the material disclosed "other acts" evidence subject to Rule 404(b). (Taylor Decl., Ex A.) It instead informed the defendant's that it would seek "to admit evidence of charged and uncharged crimes, as well as select crimes and arrests that demonstrate proof of the enterprise – including the crimes and arrests described in the incident reports noted above. The government believes that the [disclosed] incidents are direct evidence of the crimes charged and/or are inextricably intertwined to the charged acts (and therefore not Rule 404(b) or Rule 609 evidence)." (*Id.*) Accordingly the government indicated that its notice was only being provided in an an abundance of caution. (*Id.*)

preparation, plan, knowledge, identity, or absence of mistake or accident." This rule does not apply, however, where evidence is directly related to or inextricably intertwined with the crimes charged in the indictment. *See United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1091 (9th Cir. 2007) ("Rule 404(b) does not exclude evidence forming an essential element of the charged crime."); *United States v. DeGeorge*, 380 F.3d 1203, 1219 (9th Cir. 2004) (holding that evidence that was inextricably intertwined with alleged criminal activity was not subject to strictures of Rule 404(b)); *see, e.g., United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003) (holding that evidence that defendant stole cocaine was directly related to charged drug trafficking conspiracy). As the Ninth Circuit explained, "[t]he policies underlying Rule 404(b) are inapplicable when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions." *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993); *see also United States v. Montgomery*, 384 F.3d 1050, 1061-62 (9th Cir. 2004). This is particularly true in the context of racketeering prosecutions.

For example, in *United States v. Rubio*, 727 F.2d 786, 797-98 (9th Cir. 1983), the Ninth Circuit found no error in the trial court's admission of evidence of the defendant's prior drug conviction as direct evidence, and not as Rule 404(b) material, proving the existence of the racketeering enterprise and association of the defendant in the enterprise. In addition, as Seventh Circuit explained in *United States v. Salerno*, 108 F.3d 730, 739 (7th Cir. 1997), the government must prove the existence of the enterprise, and evidence introduced to establish the existence and nature of the enterprise is not barred by Rule 404(b). Likewise, in *United States* v. *DiNome*, 954 F.2d 839, 843 (2d Cir. 1992), the Second Circuit explained that "[p]roof of [RICO] elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts. Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant. . . ." Significantly, the Ninth Circuit quoted *DiNome* in *United States* v. *Fernandez*, 388 F.3d 1199, 1243 (9th Cir. 2004), when the Ninth Circuit affirmed the denial of a severance motion in a racketeering case, explaining that all the "spillover" evidence about which the defendant complained would have been admissible against him anyway in a separate trial.

None of the challenged evidence that the government intends to present in its case in chief will be offered to prove mere criminal propensity. Rather, such evidence will be offered to prove the

existence of the charged racketeering enterprise, which is directly probative of the elements of the racketeering-related charges.

### C. The Defendant's Arguments Concerning his 1998 Guilty Plea Are Not Ripe

At present the government does not intend to introduce evidence of the defendant's 1998 guilty plea and conviction in its case in chief. It reserves the right to revisit the issue, however, if the defendant testifies or otherwise opens the door to such evidence. The Court should therefore reserve ruling on this issue unless and until it becomes ripe for decision at trial.

## V. Response to in Limine No. 6 to Exclude Evidence of Pimping

Defendant Williams takes issue with allegations in Count One of the Second Superseding Indictment that the enterprise engaged in pimping. He argues that "pimping" is not a federal crime, unless there is some interstate nexus. He misses the point and the law. An overt act need not be a crime at all to be alleged, and it certainly need not be a federal crime. "'[T]he function of the overt act in a conspiracy prosecution is simply to manifest that the conspiracy is at work and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence.' " *United States v. Garcia–Santana*, 774 F.3d 528, 537 (9th Cir. 2014) (quoting *Yates v. United States*, 354 U.S. 298, 334, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957)). Jurors do not need to agree whether any of the overt acts were committed. *Salinas v. United States*, 522 U.S. 52, 63 (1997); *cf. United States v. Gonzalez*, 786 F.3d 714, 718–19 (9th Cir.2015) ("[S]o long as jurors in a federal criminal trial unanimously agree that the Government has proven each element of a conspiracy, they need not unanimously agree on the particular overt act that was committed in furtherance of the agreed-upon conspiracy." (citation omitted)). For RICO conspiracy, "[t]here is no requirement of some overt act or specific act ..., unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an 'act to effect the object of the conspiracy.' " *Salinas v. United States*, 522 U.S. 52, 63 (1997). Also, "the government in a conspiracy case may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment." *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir.2011); *see also United States v. Cruz–Ramirez*, No. CR 08–0730 WHA, 2011 WL 5599630, at *3 (N.D.Cal. Nov. 17, 2011); *United States v. Neapolitan*, 791 F.2d 489, 506 (7th Cir.1986) ("[E]vidence of unindicted crimes, while irrelevant as

predicate acts used to establish a RICO violation, can serve as circumstantial evidence of the defendant's connection to the enterprise and/or the conspiracy.") holding modified by *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir.2000) and abrogated on other grounds as recognized by *United States v. Rogers*, 89 F.3d 1326, 1336 (7th Cir.1996).

Finally, the defendant's argument that the pimping allegations in Count One do not allege interstate travel is peculiar. The Second Superseding Indictment alleges that the enterprise affected interstate commerce. That is sufficient under Ninth Circuit law, especially since only a de minimus effect on interstate commerce is required. *United States v. Fernandez*, 388 F.3d 1199, 1218 (9th Cir. 2004) (RICO indictment "need not set forth facts alleging how interstate commerce was affected, nor otherwise state any theory of interstate impact."). The defendant cites to a Second Circuit case, *United States v. Ruggiero*, 726 F.2d 913, 920 (2d Cir. 1984) in support of his argument that the overt acts must also allege interstate travel or the use of a minor. But *Ruggiero* does not discuss what is required for an overt act. That case concerns whether conspiracy to conduct an illegal gambling operation can properly be charged as a *predicate* act in a racketeering conspiracy. Moreover, *Ruggiero* has been abrogated by the Supreme Court decision in *Salinas*. For all of the above reasons, this motion should be denied.

## VI. Response to in Limine No. 7 to Preclude Sex Trafficking Expert Testimony

Defendant Williams moves to preclude expert testimony from Special Agent Martha Parker. This is a belated attempt to re-litigate an issue that has already been properly decided. The Court previously held that:

> Parker has the training and experience to testify as an expert generally, and her disclosure shows that her opinions are at a general level and not CDP-specific. Numerous courts have found that the topics she will discuss are not generally known by jurors, who may benefit from the background she provides. *See, e.g.*, *United States v. Taylor*, 239 F.3d 994, 998 (9th Cir. 2001) ("By and large, the relationship between prostitutes and pimps is not the subject of common knowledge.").

(Docket No. 834 at 4.) There is no legitimate reason to disturb this ruling, and Williams offers none. His motion should be denied accordingly.

## VII. Response to in Limine No. 8 to Strike Overt Act 17w

Citing no further legal basis for his motion, Defendant Williams' seeks an order to strike Overt Act 17w on the basis that it is overly prejudicial. Docket No. 977 at 16. Overt Act 17w alleges that "On

or about October 6, 2009, Monzell Harding Jr., Esau Ferdinand, and others known and unknown, attempted to intimidate a testifying witness during a court hearing concerning the November 25, 2008 murder of Richard Barrett." Docket No. 139. The defendant is charged in an indictment that alleges multiple charges of murder, attempted murder, and sex trafficking. He himself is charged with murder. It is inconceivable that a witness intimidation allegation would overly prejudice a jury given the general subject matter of the case.

Moreover, the Second Superseding Indictment specifically alleges that CDP is an enterprise which has engaged in criminal activity including, "obstruction of justice by threatening and intimidating witness whom they believed to be cooperating with law enforcement." *See* Docket No. 139. Here, a group of CDP members intimidated a testifying witness in open court. This coordinated effort by members of CDP to intimidate a witness is highly probative of the CDP enterprise. The motion is hollow and should be denied.

## VIII. Response to in Limine No. 9 to Exclude Gang Validation Packets

Defendant Williams objects to the introduction of gang validation packets (Exhibits #373, 1206-1209). These exhibits are marked for identification only and the government does not intend to admit them in evidence. The defendant's motion is moot.

## IX. Response to in Limine No. 10 to Exclude Rap Lyrics and Videos

The government has moved *in limine* to admit lyrics of select rap songs that are relevant to this case. The grounds for their admissibility are explained in the briefing for that motion. *See* Docket No. 974. The government does note, however, that there are inaccuracies and omissions in the defendants representations of the cases on which he relies. Docket No. 977 at 18-19. For example, he cites to *Boyd v. City & County of San Francisco* for the proposition that rap videos—and especially rap videos promoting prostitution—are inherently dangerous. 576 F.3d 938, 949 (9th Cir. 2009). But this is not the holding of *Boyd*. That case involved the slaying of a police officer. The district court admitted the rap lyrics found in the defendant's car as highly probative of his animosity towards police officers. The Ninth Circuit took issue—not with the lyrics about the police—but with the fact that the district court neglected to exclude portions of the lyrics that had nothing to do with the charged crime, but that instead focused on prostitution:

However, with regards to the rap lyrics, the district court provided no justification nor explanation for its admission of certain portions of the lyrics. Although the district court admitted the lyrics on the ground that they demonstrated an animosity towards the police, the court neglected to exclude the portions of the lyrics that had nothing at all to do with police officers, but instead referenced and advocated prostitution. Failure to exclude these lyrics was error, as they had no probative value regarding Cammerin's alleged activities on Larch Way, and were unfairly prejudicial in light of their offensive nature.

*Id.* Defendant Williams also cites to state court opinions out of New Jersey and Maryland in support of what he suggests is a universal condemnation of the admission of rap lyrics. In doing so, he again overreaches. Notwithstanding the fact that these are not binding authority, they do not stand for the proposition defendant professes. *See State v. Skinner* , 218 N.J. 496 (N.J. 2014) (rejecting introduction of lyrics re crimes and other bad acts unconnected to the facts of the attempted-murder charge against defendant)("Although the case had nothing to do with women or violence that involved women, the material that the State read to the jury also included depictions of rape and other violent and demeaning treatment of women"); *see also Hannah v. State* , 420 Md. 339 (2011)(rejecting use of lyrics about graphic murders to impeach defendant who simply stated he had no interest in guns). His motion should be denied.

## X. Response to in Limine No. 11 to Exclude Wiretap Evidence

Defendant Williams moves to exclude Exhibits 91-94 concerning Gary Owens as hearsay. The government is cognizant of the rules of evidence, and understands that hearsay may be admitted only under certain exceptions with appropriate sponsoring witnesses. The government will present its case according to the rules of evidence. Marking an exhibit for identification, however, is not the same as seeking to have the exhibit admitted. For example, the government's exhibits can also be used to refresh recollection or, in certain instances, for impeachment. Williams' motion is therefore premature and the Court should defer ruling on whether the evidence is admissible unless and until the government seeks to introduce such exhibits at trial.

## XI. Response to in Limine No. 12 to Exclude Evidence of Car Tracking

Defendant Williams' twelfth motion *in limine* seeks to exclude evidence of vehicle tracking and states that "[a] motion to suppress will ensue." (Docket No. 977 at 21.) His motion in limine should be denied.

Williams asserts that the vehicle tracking evidence should be excluded because of alleged

discovery violations and the absence of expert testimony.  In support he makes a number of irrelevant and/or erroneous claims.  First, he claims that the government refused to provide a "security dangle" to open the raw files. (Docket No. 977-1 ¶ 42.)  This is false.  The government provided the software necessary to open the files with its production and is not aware of the need for any additional security "dangle" to open the files.[9]  When Williams claims he needed additional assistance with the purported security feature, the government asked for a description of the security issue and also offered to help trouble-shoot the data issues the defendant claimed to be experiencing.  Before any trouble-shooting could occur, however, counsel for Defendant Williams informed the government, on December 4, 2015, that he had successfully accessed the files and that trouble-shooting would be unnecessary.  This series of events is not a discovery violation.  Defendant Williams has suffered no prejudice.  By his own admission he has been able to access the raw tracking data that he sought.  This cannot serve as the basis for excluding evidence.

The defendant also requested additional discovery regarding vehicle tracking devices: (i) reports on the placement of the vehicle trackers; (ii) reports on how each tracking device was transmitting data; (iii) reports on where the data was stored, how the data was stored, how the data was accessed; (iv) reports of testing done on the devices, service, maintenance, and calibration history for the same; (v) and all documents and correspondence relating to the categories above.  This demand was made after the Court denied the defendant's almost motion to compel discovery for similar materials.  (*See* Docket No. 659 at 1) (denying motion to compel because "[t]he request is so broad and so vague that it does not allow the government to know what to search for or where to search for it. Nor does it give the government sufficient notice so that it can assess whether to assert any privilege with respect to the documents actually sought.")  The government therefore refused to search for or produce any such information unless the defendant could narrow his request and demonstrate that such information was relevant and material to the defense.  He failed to do so.  The government therefore declined to provide the additional categories of documents because, even if such documents existed, the defendant's request

---

[9] The government produced vehicle tracker information for defendant Williams' vehicles on July 15, 2014.  This discovery included not only reports interpreting the tracker data, but also the data itself and the software required to read it.  All of these items were produced together in native format under Bates No. BG075358.

was so broad that it exceeded the scope of permissible discovery and sought information protected by the law enforcement privilege.  *See, e.g.*, *United States v. Van Horn*, 789 F.2d 1492, 1508 (11th Cir. 1986) (holding that law enforcement "privilege applies equally to the nature and location of electronic surveillance equipment. Disclosing the precise locations where surveillance devices are hidden or their precise specifications will educate criminals regarding how to protect themselves against police surveillance.  Electronic surveillance is an important tool of law enforcement, and its effectiveness should not be unnecessarily compromised.").  Defendant Williams declined to bring another motion to compel.  He now seeks to revisit the issue, however, in a motion *in limine* based on so-called "discovery violations."  As described above, there have been no such violations and his motion should be denied accordingly.

Finally, Williams seeks to require expert testimony to admit vehicle tracking evidence.  None is required here.  The jury is perfectly capable of understanding the use of GPS technology without the aid of an expert.  In any event, Williams' objection goes to foundation rather than relevance.  Any ruling on evidentiary foundation should be reserved until the government seeks to admit the evidence at trial.

## XII.     Response to in Limine No. 13 to Exclude Admission of Police Reports

The government is cognizant of the rules of evidence, and does not seek to admit police reports into evidence.  The government will present its case according to the rules of evidence.  Marking an exhibit for identification is not the same as seeking to have the exhibit admitted.

## XIII.     Response to in Limine No. 14 to Exclude 404(b) Evidence

Defendant Williams' fourteenth motion *in limine* seeks to preclude what he calls "404(b)" evidence.  The defendant identifies only one incident with specificity.  The remaining incidents he generally claims are inadmissible, though he does not explain in detail why he thinks so.  As with his other motions *in limine*, Williams' motion misunderstands the nature of the charges against him and should be denied.

Williams' second argument is easily disposed of.  He claims that unidentified evidence is inadmissible against the "Group 1" defendants because it is "unrelated."  (Docket No. 977 at 23.)  His sole argument is that evidence pertaining to other conspirators should not be admitted in the Group 1 trial.  This argument ignores long-standing RICO law.  The Second Circuit, which has a well-developed

body of racketeering law, has long held that:

> [P]roof of the enterprise and pattern elements of racketeering "may well entail evidence of numerous criminal acts by a variety of persons." A single pattern of racketeering may be common to a number of defendants and, in such circumstances, even though individual defendants "may reasonable claim no direct participation" in the acts of others, "evidence of those acts is relevant to the RICO charges against each defendant." Specifically, the "various criminal activities" of racketeering confederates are admissible against each defendant "to prove: (i) the existence and nature of the RICO enterprise and (ii) a pattern of racketeering activity on the part of each defendant by providing the requisite relationship and continuity of illegal activities."

*United States v. Basciano*, 599 F.3d 184, 207 (2d Cir. 2010), *quoting United States v. DiNome*, 954 F.2d 839, 843-44 (2d Cir. 1992) (footnote omitted); *see also United States v. Fernandez*, 388 F.3d 1199, 1241-46 (9th Cir. 2004) (relying on *DiNome* to reject claim that denial of severance motion resulted in admission of unfairly prejudicial "spillover" evidence; explaining that, in racketeering case, same evidence of criminal acts would have been admitted in separate trials anyway). Accordingly it makes little difference whether the evidence concerns the Group 1 or the Group 2 defendants. It remains admissible to prove the charged CDP enterprise and pattern elements of the racketeering conspiracy.

The same is true of the 2007 incident cited in Williams' motion. As reflected in the incident report, attached as Exhibit L to the defendant's motion, police responded to San Francisco General Hospital at around 8:45 PM following the attempted murder of CDP member and unindicted co-conspirator Leon Parker. (Def. Ex. L, BG84947.) When they arrived, several individuals associated with CDP fled from the waiting room, including defendant Williams. (*Id.*) One of the officers saw Williams attempt to hide in the bathroom with a "panicked look" on his face. (*Id.*) As the officers were leaving the hospital, they then encountered 20-25 individuals standing outside in the parking lot, two of whom the officer recognized as CDP members Esau Ferdinand and Ronnie Louvier. (*Id.*) The officer recognized Williams and the three other CDP members from previous investigations and contacts in the vicinity of 1458 Grove Street. (*Id.*) Shortly after this, at about 9:00 PM, a civilian discovered a firearm hidden in the wheel well of his parked car in the same area where the officers had observed the individuals in the parking lot. (*Id.*, BG084949.)

This evidence is not 404(b) evidence. Instead it is direct evidence of the charged RICO conspiracy. Fed. R. Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less

probable than it would be without the evidence." Fed. R. Evid. 403, of course, states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." However, evidence that is probative of an element of the crimes charged is generally not unfairly prejudicial. *See, e.g.*, *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) (explaining there can be no unfair prejudice from evidence that does not "lure a factfinder into declaring guilt on a ground different from proof specific to the offense charged").

Here, the incident at General Hospital is highly relevant and admissible to prove the existence of the charged CDP enterprise. First, it shows that members of CDP went to the hospital after a rival gang attempted to kill one of their own. Second, it puts the defendants in the presence of their co-conspirators in the midst of a war with a rival gang. Third, it shows Defendant Williams actively attempting to avoid police contact. Fourth, it presents evidence consistent with the allegation in the Second Superseding Indictment that "[m]embers of CDP have engaged in criminal activity, including…. illegal firearms possession." (Docket No. 130 ¶ 4.) All of this has the tendency to make the existence of the charged enterprise – a fact of consequence to the determination of the action – more probable. The jury is therefore entitled to consider the evidence in determining whether the government has met its burden of proving that an enterprise (an association in fact) existed for purposes of the charged conspiracies. It is not subject to a 404(b) analysis and should be admitted accordingly. *See United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir.2004) ("We conclude that each action was 'inextricably intertwined' with the conspiracy, and therefore not subject to Rule 404(b), because each occurred within the temporal scope of the conspiracy and comprised the conspiracy."); *United States v. Neapolitan*, 791 F.2d 489, 506 (7th Cir.1986) ("[E]vidence of unindicted crimes, while irrelevant as predicate acts used to establish a RICO violation, can serve as circumstantial evidence of the defendant's connection to the enterprise and/or the conspiracy."); *see also United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir.2011) (holding that "the government in a conspiracy case may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment.").

## XIV. Response to in Limine No. 15 to Exclude Indicia/Evidence from Searches

Defendant Williams also seeks to exclude various physical evidence seized by law enforcement

1  during the investigation.  The proffered legal basis for excluding such items is unclear and his motion

2  should be denied.

3      Evidence Seized from December 2011 Search of 1458 Grove Street: The evidence at trial will

4  show that the residence at 1458 Grove Street is the location where Defendant Williams lived and that

5  this residence was at the heart of CDP gang territory and activity.[10]  The search warrant executed at

6  1458 Grove Street in December 2011 uncovered a variety of ammunition and other items.  While on the

7  premises officers also photographed a wall with numerous CDP members' name written on it.  This

8  evidence is relevant and admissible to show, among other things, that 1458 Grove Street was a focal

9  point for CDP activity and that Williams and his co-conspirators had access to ammunition.  This in turn

10  made it more likely that the defendants also had access to firearms, which are at the center of many of

11  the overt acts alleged in the Second Superseding Indictment.  *United States v. Curtin*, 489 F.3d 935, 943

12  (9th Cir. 2007) ("To be 'relevant,' evidence need not be conclusive proof of a fact sought to be proved,

13  or even strong evidence of the same.  All that is required is a 'tendency' to establish the fact at issue.")

14  (citation omitted).  Based on his counsel's declaration, Williams now argues that there is only a

15  "tenuous" connection between this evidence and the RICO charges against him.  This statement lacks

16  factual support, as described above.  Williams provides no basis for the Court to find that the evidence

17  should be excluded.  Rule 403 permits a district court to exclude relevant evidence only if the evidence's

18  probative value is *substantially* outweighed by the danger of *unfair* prejudice (emphasis added).  *See,*

19  *e.g.*, *United States v. Decines*, 808 F.3d 785, 791 (9th Cir. 2015) ("Although the admission of the

20  evidence may harm the defendants' case, that is not reason to exclude it under Rule 403, which refers

21  only to *unfair* prejudice.") (emphasis in original).  Evidence is unfairly prejudicial if it suggests a

22  decision on an improper basis.  *See* Fed. R. Evid. 403 Adv. Comm. Note.  There is nothing in the

23  evidence from the December 2011 search that would suggest a decision on an improper basis.

24      Evidence Obtained After October 6, 2009 Witness Intimidation: Williams also seeks to exclude

25  items contained in exhibits 334 and 335.  He has not identified any basis for doing so except for a

26

27  _____

[10] Although defense counsel claims that "Mr. Williams was not residing there at the time," he provides
no support for this assertion.  Nor do the materials attached to his declaration support this statement.
28  Regardless, counsel admits that the residence was linked to Williams' co-defendant and co-conspirator
Gordon.  (Docket No. 977 at 23.)  The results of the search are relevant on this basis alone.

complaint regarding Bates numbers. Bates numbers have been provided to defense counsel, and the government has offered to make the physical evidence available for defense inspection. The Court should deny the motion, without prejudice to Williams' ability to bring another motion after inspecting the evidence.

Evidence of a gun found during defendant Williams' Arrest: Following the murder of Calvin Sneed, Williams was arrested as part of a four-vehicle convoy being surveilled by police in Fairfield, California. (Def. Ex. N.) Williams was driving a silver Land Rover at the front of the convoy. As the four vehicles pulled into a gas station, the fourth vehicle, a black Land Rover, pulled in behind Williams. (*Id.*) When police converged on the vehicles to arrest Williams, CDP member and unindicted co-conspirator Leon Parker ran and jumped into the black Land Rover (in which he had just been riding as a passenger) and began manipulating the center console. (*Id.*) He ignored commands to show police his hands. (*Id.*) After Parker's arrest, police found a 9mm semi-automatic Glock pistol in a hidden compartment in the center console. (*Id.*) Williams now moves to exclude this evidence because he claims the firearm was not in his possession. If Williams was charged with a different crime (for example, if he was the sole defendant in a prosecution for the illegal possession of a separate firearm) his arguments concerning unfair prejudice would be better taken. But Parker is an unindicted CDP co-conspirator (Williams himself has demanded discovery concerning Parker). Williams' personal possession of the firearm therefore carries little weight when analyzed under the currently charged RICO conspiracy. *See, e.g.*, *United States v. Basciano*, 599 F.3d 184, 207 (2d Cir. 2010) ("even though individual defendants may reasonable claim no direct participation in the acts of others, evidence of those acts is relevant to the RICO charges against each defendant.. .various criminal activities of racketeering confederates are admissible against each defendant to prove: (i) the existence and nature of the RICO enterprise and (ii) a pattern of racketeering activity on the part of each defendant by providing the requisite relationship and continuity of illegal activities.")

The firearm hidden by Parker is therefore relevant to show "the requisite relationship and continuity of illegal activities." In particular, it is admissible to show that Williams was riding in a convoy with another armed CDP member, and Parker's subsequent efforts taken to conceal firearm possession from the police. At the very least, these facts are admissible to show the existence of the

CDP enterprise and RICO conspiracy.  *See also United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012) (evidence admissible "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."); *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004) (same).   Rule 403 does not provide a basis for excluding such evidence.  To the contrary, Rule 403 "favors admissibility."  *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).  As the Ninth Circuit observed in *Hankey*,

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing.

*Hankey*, 203 F.3d at 1172 (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir.1983)).

Evidence of Williams Possession of $6,810 When Arrested:  Similarly, the defendant's motion to exclude evidence of the thousands of dollars in cash possessed by Williams when arrested should also be denied.  Williams offers no explanation as to how this evidence is unfairly prejudicial.  By contrast, the possession of large amounts of cash is relevant to the government's charges that CDP members intended to promote and enhance the enterprise through a wide variety of activities, including narcotics trafficking, robbery, and pimping, as well as "providing financial support to CDP members."  (Second Superseding Indictment ¶¶ 9.b., 9.d., 14.)

Evidence from 1458 Grove Street After Williams' Arrest:  Defendant also moves to exclude indicia and money orders seized from Williams' residence after his arrest (Exhibits 1135, 1138).[11] Indicia (as counsel is well aware and as described on the government's exhibit list) consists of physical items that connect an individual with a particular location.  The challenged evidence is in the name of Alfonso Williams and is relevant to show that he lived at 1458 Grove Street and connect him to other items of evidentiary value seized from the residence (such as the photographs from the funeral of deceased CDP member Julius Hughes (Exhibit 1134)).  None of it would result in unfair prejudice.  (*See* photos attached as Exhibit G to the Taylor Decl.)

---

[11] Exhibit 1135: "Indicia in the names of Alfonzo Williams and Erin Hagler; Vehicle registration suspension notice for 6RYG496; Four (4) money order receipts." (Docket No. 926 at 39.)

Exhibit 1138: "Indicia in the name of Alfonzo Williams."  (*Id.*)

1  **XV.     Response to in Limine No. 16 to Exclude Results of Search of Williams' Phone**

2          This Court has previously denied defendant Williams' motion to suppress evidence from his

3  phone.  *See* Docket 891.  Now the defendant seeks to exclude this material on the basis that he doesn't

4  understand "how the download was accomplished by whom."  The government has provided both expert

5  notice and the underlying material to the defendant.  *See* Exhibit H (10/21/2015 U.S. Expert Disclosure).

6  The representations in this motion are false.  It should be denied.

7  **XVI.    Response to in Limine No. 17 to Exclude Credit Reports**

8          Defendant Williams moves to exclude Exhibits 1225-1229 (credit reports) as hearsay.  The

9  government is cognizant of the rules of evidence, and understands that hearsay may be admitted only

10  under certain exceptions with appropriate sponsoring witnesses.  The government will present its case in

11  accordance with the rules of evidence.  The government does not currently intend to admit credit reports

12  into evidence. The reports have been marked for identification, along with many other items.  The

13  government's exhibits may also be used to refresh recollection or, in certain instances, for impeachment.

14  Williams' motion is therefore premature and the Court should defer ruling on whether the evidence is

15  admissible unless and until the government seeks to introduce such exhibits into evidence at trial.

16                                              **CONCLUSION**

17          For the reasons stated herein, the government respectfully requests that all of defendant's

18  motions be denied.

19  Dated: May 10, 2016                                   Respectfully submitted,

20                                                         BRIAN J. STRETCH
                                                           United States Attorney
21

22                                                         _____/s/_____

23                                                         DAMALI A. TAYLOR
                                                           WILLIAM FRENTZEN
24                                                         SCOTT D. JOINER
                                                           Assistant United States Attorneys
25

26

27

28